**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| IN RE: TOYOTA HYBRID BRAKE LITIGATION | Case No.: 4:20-cv-00127-ALM **MASTER CONSOLIDATED CLASS ACTION COMPLAINT** **DEMAND FOR JURY TRIAL** |

## MASTER CONSOLIDATED CLASS ACTION COMPLAINT

**TABLE OF CONTENTS**

*Page*

I   INTRODUCTION ...................................................................................................1

II   JURISDICTION AND VENUE .............................................................................3

III   PARTIES .................................................................................................................4

   A.   Plaintiffs ....................................................................................................... 4

      1.   Texas .................................................................................................4

         a.   Plaintiff Willie Rose ............................................................. 4

         b.   Plaintiff Jeffrey Warner Rasco.............................................. 5

      2.   Arkansas............................................................................................6

         a.   Plaintiff Kamran Khan .......................................................... 6

      3.   California ...........................................................................................7

         a.   Plaintiff Jason Medeiros ....................................................... 7

         b.   Plaintiff Nancy Bennett-Hauser............................................ 8

         c.   Plaintiff Glenn Alcaraz ......................................................... 9

         d.   Plaintiff Chong Eun ............................................................ 10

         e.   Plaintiff Andrea Kent .......................................................... 11

         f.   Plaintiff Nancy Kwan .......................................................... 12

      4.   Colorado...........................................................................................13

         a.   Plaintiff Stephanie Owens................................................... 13

      5.   Florida..............................................................................................15

         a.   Plaintiff David Siegel.......................................................... 15

         b.   Plaintiffs Gregory Vasquez and Madeline Vasquez ..................... 16

         c.   Plaintiff Yvette Winia ......................................................... 17

      6.   Illinois..............................................................................................18

         a.   Plaintiffs Raul Rivera and Cristina Rivera.................................. 18

## TABLE OF CONTENTS (cont.)

*Page*

7. New Jersey .................................................................................................19

    a. Plaintiff Enrique Pabon ................................................................ 19

    b. Plaintiff Bryan Feinberg ............................................................. 20

8. North Carolina ........................................................................................21

    a. Plaintiff Lois Felts ....................................................................... 21

9. Washington ..............................................................................................22

    a. Plaintiff Laura Turner ................................................................. 22

B. Defendants .......................................................................................................... 23

1. Toyota Motor Corporation ....................................................................23

2. Toyota Motor Sales, U.S.A., Inc. ...........................................................23

3. Toyota Motor North America, Inc. .........................................................24

4. Toyota Engineering & Manufacturing North America, Inc. ....................24

IV FACTUAL ALLEGATIONS ......................................................................................27

A. The Class Vehicles Suffer from a Dangerous Brake Defect ............................... 27

B. Toyota's Knowledge of the Toyota Brake Defect's Safety Implications ............ 29

1. NHTSA Consumer Complaints of Brake Defect Resulting in Crashes .....31

2. NHTSA Consumer Complaints of Brake Defect in the Prius V ...............96

3. Toyota's Warranty-Related Practices ....................................................127

V TOLLING OF STATUTES OF LIMITATIONS ...........................................................130

VI CLASS ALLEGATIONS ...........................................................................................131

VII CAUSES OF ACTION ..............................................................................................134

A. Claims Brought on Behalf of the Nationwide Class, or alternatively, the State Classes ................................................................................................................ 134

    COUNT I    VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT (15 U.S.C. § 2301, *et seq.*) ..............134

**TABLE OF CONTENTS (cont.)**

*Page*

B.  Claims Brought on Behalf of the Texas Class ...................................................... 136

     COUNT II     VIOLATIONS OF THE DECEPTIVE TRADE
                        PRACTICES ACT – CONSUMER PROTECTION
                        ACT (Tex. Bus. & Com. Code §§ 17.41, *et seq.*)............136

     COUNT III    BREACH OF IMPLIED WARRANTY (Tex. Bus. & Com.
                        Code § 2.314)...................................................................139

     COUNT IV    BREACH OF EXPRESS WARRANTIES (Tex. Bus.
                        & Com. Code § 2.313)......................................................140

     COUNT V     FRAUD BY CONCEALMENT (Based on Texas Law) .143

     COUNT VI    UNJUST ENRICHMENT (Based on Texas Law) ..........145

C.  Claims Brought on Behalf of the Arkansas Class................................................ 146

     COUNT VII   VIOLATIONS OF THE ARKANSAS DECEPTIVE
                        TRADE PRACTICES ACT (Ark. Code. Ann. §§ 4-88-01,
                        *et seq.*)............................................................................146

     COUNT VIII  BREACH OF IMPLIED WARRANTY OF
                        MERCHANTABILITY (Ark. Code §§ 4-2-314
                        and 4-2A-212)...................................................................149

     COUNT IX    BREACH OF EXPRESS WARRANTY (Ark. Code
                        §§ 4-2-313 and 4-2A-210) ...............................................150

D.  Claims Brought on Behalf of the California Class ............................................. 153

     COUNT X     VIOLATIONS OF THE CONSUMER LEGAL
                        REMEDIES ACT ("CLRA") (Cal. Civ. Code § 1750, *et
                        seq.*)...................................................................................153

     COUNT XI    VIOLATIONS OF THE CALIFORNIA UNFAIR
                        COMPETITION LAW (Cal. Bus. & Prof. Code § 17200, *et
                        seq.*)...................................................................................157

     COUNT XII   VIOLATION OF CALIFORNIA FALSE ADVERTISING
                        LAW (Cal. Bus. & Prof. Code § 17500, *et seq.*) .............158

     COUNT XIII  BREACH OF IMPLIED WARRANTY (Cal. Com.
                        Code §§ 2314 and 10212)................................................160

## TABLE OF CONTENTS (cont.)

*Page*

COUNT XIV  BREACH OF EXPRESS WARRANTY (Cal. Com. Code §§ 2313 and 10210) ................................................ 162

COUNT XV  VIOLATIONS OF THE SONG-BEVERLY ACT – BREACH OF IMPLIED WARRANTY (Cal. Civ. Code §§ 1792, 1791.1, *et seq.*) .................................................... 164

COUNT XVI  COMMON LAW FRAUDULENT CONCEALMENT (Based on California Law) ................................................ 166

COUNT XVII  COMMON LAW FRAUDULENT CONCEALMENT (Based on California Law) ................................................ 168

E.  Claims Brought on Behalf of the Colorado Class ................................................ 169

COUNT XVIII  VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT (Col. Rev. Stat. § 6-1-101, *et seq.*) 169

COUNT XIX  BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY (Col. Rev. Stat. § 4-2-314 and 4-2.5-212) ................................................ 172

COUNT XX  BREACH OF EXPRESS WARRANTY (Colo. Rev. Stat. §§ 4-2-313 and 4-2.5-210) ................................................ 173

COUNT XXI  BREACH OF COMMON LAW WARRANTY (Based on Colorado Law) ................................................ 176

COUNT XXII  FRAUD BY CONCEALMENT (Based on Colorado Law) ................................................ 176

COUNT XXIII  UNJUST ENRICHMENT (Based On Colorado Law) ... 178

F.  Claims Brought on Behalf of the Florida Class ................................................ 179

COUNT XXIV  VIOLATION OF FLORIDA UNFAIR & DECEPTIVE TRADE PRACTICES ACT (Fla. Stat. § 501.201, *et seq.*) ........................................................................... 179

COUNT XXV  BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (Fla. Stat. § 672.314) ............... 182

COUNT XXVI  BREACH OF EXPRESS WARRANTY (Fla. Stat. § 672.313) ...................................................................... 183

COUNT XXVII  BREACH OF CONTRACT/COMMON LAW WARRANTY (Based on Florida Law) .......................... 185

## TABLE OF CONTENTS (cont.)

*Page*

COUNT XXVIII FRAUD BY CONCEALMENT
(Based on Florida Law) ..................................................186

COUNT XXIX UNJUST ENRICHMENT (Based on Florida Law).......188

G.     Claims Brought on Behalf of the Illinois Class ................................. 189

COUNT XXX VIOLATION OF THE ILLINOIS CONSUMER FRAUD
AND DECEPTIVE TRADE PRACTICES ACT
(815 ILCS 505/1, *et seq.* and 720 ILCS 295/1a)..............189

COUNT XXXI BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (810 ILCS §§ 5/2-314 and
5/2A-212).........................................................................192

COUNT XXXII BREACH OF EXPRESS WARRANTY (810 ILCS
§§ 5/2-313 and 5/2A-210).................................................193

COUNT XXXIII BREACH OF COMMON LAW WARRANTY
(Based on Illinois Law)....................................................195

COUNT XXXIV FRAUD BY CONCEALMENT
(Based on Illinois Law)....................................................196

COUNT XXXV UNJUST ENRICHMENT
(Based on Illinois Law)....................................................198

H.     Claims Brought on Behalf of the New Jersey Class ........................... 199

COUNT XXXVI VIOLATION OF NEW JERSEY CONSUMER
FRAUD ACT (N.J. Stat. Ann. § 56:8-1, *et seq.*) .............199

COUNT XXXVII BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (N.J. Stat. Ann. § 12A:2-314)...202

COUNT XXXVIII BREACH OF EXPRESS WARRANTY
(N.J. Stat. Ann. § 12A:2-313)...........................................203

COUNT XXXIX BREACH OF CONTRACT
(Based on New Jersey Law) .............................................205

COUNT XL     UNJUST ENRICHMENT
(Based on New Jersey Law) .............................................206

I.     Claims Brought on Behalf of the North Carolina Class .................... 207

## TABLE OF CONTENTS (cont.)

*Page*

COUNT XLI   VIOLATIONS OF NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT (N.C. Gen. Stat. § 75-1.1, *et seq.*)..............................................207

COUNT XLII  BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY (N.C. Gen. Stat. § 25-2-314) ....210

COUNT XLIII BREACH OF EXPRESS WARRANTY (N.C.G.S.A. §§ 25-2-313 and 252A-210)...............................211

COUNT XLIV  BREACH OF CONTRACT/COMMON-LAW WARRANTY (Based on North Carolina Law)..............213

COUNT XLV   FRAUDUENT CONCEALMENT AND/OR OMISSION (Based on North Carolina Law).......................214

COUNT XLVI  UNJUST ENRICHMENT (Based on North Carolina Law).......................217

J.       Claims Brought on Behalf of the Washington Class .......................................... 217

COUNT XLVII VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT (Wash. Rev. Code Ann. § 19.86.010, *et seq.*)..................................217

COUNT XLVIII BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (Wash. Rev. Code §§ 62A.2-313 and 62A.2A-210) ............................................221

COUNT XLIX  BREACH OF EXPRESS WARRANTY (Wash. Rev. Code §§ 62A.2-313 and 62A.2A-210)...........................222

COUNT L     FRAUDUENT CONCEALMENT AND/OR OMISSION (Based on Washington Law).............................224

COUNT LI    UNJUST ENRICHMENT (Based on Washington Law).............................226

VIII   PRAYER FOR RELIEF ....................................................................227

JURY DEMAND .....................................................................................230

Plaintiffs Jason Medeiros, Nancy Bennett-Hauser, Laura Turner, Glenn Alcaraz, Chong Eun, Stephanie Owens, Enrique Pabon, Bryan Feinberg, David Siegel, Gregory Vasquez, Madeline Vasquez, Lois Felts, Willie Rose, Jeffrey Warner Rasco, Yvette Winia, Raul Rivera, Cristina Rivera, Kamran Khan, Andrea Kent, and Nancy Kwan (collectively, "Plaintiffs"), individuals, on behalf of themselves and a class of other similarly situated individuals, complain of and allege the following causes of action against Defendants Toyota Motor Corporation, Toyota Motor Sales, U.S.A., Inc., Toyota Motor North America, Inc., Toyota Motor Engineering & Manufacturing North America, Inc., (collectively "Toyota") and Does 1 through 50, inclusive, as follows:

## I       INTRODUCTION

1.      This Complaint seeks damages against Toyota for breach of the manufacturer's warranty and for unfair or deceptive acts or practices pertaining to its design and manufacture of 2010-2015 Prius and Prius PHV, 2012-2015 Prius V, 2012-2014 Camry Hybrid, and 2013-2015 Avalon Hybrid vehicles (the "Class Vehicles").

2.      Plaintiffs are informed and believe, and thereon allege, that Toyota and Does 1 through 50, manufacture and sell the Class Vehicles throughout the United States, including within the State of Texas.

3.      The Class Vehicles contain a significant design and/or manufacturing defect in their braking systems (the "Toyota Brake Defect" or "Defect"). Plaintiffs are informed and believe, and thereon allege, that Toyota defectively designed and/or manufactured defective break booster pump assemblies in the Class Vehicles, which cause their braking systems to fail. Plaintiffs are informed and believe, and thereon allege, that the Toyota Brake Defect directly affects Plaintiffs' use, enjoyment, safety, and value of the Class Vehicles.

4.      Indeed, this material and dangerous defect has been brought to light by no less than Mr. Roger Hogan, the owner and president of two Toyota dealerships located in Southern California. Like Toyota, Mr. Hogan is familiar with the Toyota Brake Defect and he has recently

petitioned the National Highway Traffic Safety Administration (NHTSA) to open an investigation into Toyota's failure to adequately address the Toyota Brake Defect. In that petition, Mr. Hogan states that the Toyota Brake Defect is "causing crashes that are injuring people—and Toyota is mishandling it."

5.      The Toyota Brake Defect poses an obvious and material safety risk to the operator and passengers of all Class Vehicles. The dangers of a defective brake system are manifest, including increased risk of injury or death. As discussed further herein, numerous owners and lessees of the Class Vehicles have experienced the Toyota Brake Defect already, and Toyota is gambling with the lives and safety of hundreds of thousands of additional drivers and passengers whose brakes are defective, and for whom their failure is only a matter of time.

6.      For years, Toyota concealed the Toyota Brake Defect from owners and lessees of the Class Vehicles, withholding its knowledge because once known to those owners, the Toyota Brake Defect would diminish the Class Vehicles' intrinsic and resale value and cause Toyota automobile owners to demand immediate and costly repairs.

7.      After several years of dodging, Toyota finally acquiesced to extend their warranties only to those vehicles where the Toyota Brake Defect manifested by way of certain "diagnostic trouble codes" (or DTCs) registered by certain vehicles. But Toyota is aware that all of the Class Vehicles have been and are subject to the Toyota Brake Defect, and further knows that the defect will cause a material percentage of brake systems to fail. But as Mr. Hogan stated in his NHTSA petition, "Toyota is leaving the owners to helplessly experience the life-threatening brake failure or malfunction before Toyota will provide the replacement brake components needed to make the vehicle safe."

8.      In other words, Toyota has determined that instead of proactively recalling and replacing the defective brake parts, it will gamble its drivers' lives and only fix vehicles that have already failed. This sort of risk may satisfy Toyota's accountants, but Toyota simply cannot

ignore hundreds of thousands of vehicles still on the road with a known defect in their brake systems, any of which could fail at any moment with calamitous results.

9.     The Toyota Brake Defect not only threatens every passenger in a Class Vehicle, it materially undermines the Class Vehicles' intrinsic value as well. Plaintiffs and other Toyota automobile owners and/or lessees would have been less likely to purchase and/or lease their vehicles had they known about the Toyota Brake Defect prior to their purchase or lease, or they would have paid substantially less for them.

10.     Because of Toyota's unfair, deceptive, and/or fraudulent business practices, owners and/or lessees of the Class Vehicles, including Plaintiffs, have suffered an ascertainable loss of money and/or property and/or loss in value. Toyota further conducted the unfair and deceptive trade practices described herein in a manner giving rise to substantial aggravating circumstances.

11.     As a result of the Toyota Brake Defect, Plaintiffs and the Class members have suffered injury in fact, incurred damages, and have otherwise been harmed by Toyota's conduct.

12.     Accordingly, Plaintiffs bring this action to redress Toyota's violations of the consumer protection statutes, and also seek recovery for Toyota's breaches of express warranty, implied warranty, and its duty of good faith and fair dealing, and its fraudulent omissions and concealment of the Toyota Brake Defect.

**II     JURISDICTION AND VENUE**

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more Class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one member of the class of plaintiffs and one defendant are citizens of different States. Alternatively, this court has federal question subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331, based on Plaintiffs allegations that Defendants have violated The Magnuson-Moss Warranty Act, 15

U.S.C. § 2301, *et seq.*, and supplemental jurisdiction over the alleged state law claims pursuant to 28 U.S.C. § 1367.

14.     This Court has specific personal jurisdiction over Toyota because Toyota's United States headquarters is located in this district. Toyota also conducts business in Texas, has purposefully availed themselves of the benefits and protections of Texas by continuously and systematically conducting substantial business in this judicial district, directing advertising and marketing materials to districts within Texas, and intentionally and purposefully placing Class Vehicles into the stream of commerce within the districts of Texas and throughout the United States with the expectation and intent that consumers would purchase them. Thousands of Class Vehicles have been sold in Texas and are operated within the State and this judicial district.

15.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Toyota has its United States headquarters in this district, transacts business in this district, is subject to personal jurisdiction in this district, and therefore is deemed to be a citizen of this district. Additionally, there are one or more authorized Toyota dealers within this district, Toyota has advertised in this district, and Toyota has received substantial revenue and profits from its sales and/or leasing of Class Vehicles in this district; therefore, a substantial and material part of the events and/or omissions giving rise to the claims occurred within this district.

**III     PARTIES**

**A.     <u>Plaintiffs</u>**

    **1.     Texas**

        **a.     Plaintiff Willie Rose**

16.     Plaintiff Willie Rose ("Rose") is a resident of Richmond, Texas.

17.     In March 2013, Mr. Rose purchased a new 2013 Toyota Avalon Hybrid (for the purposes of this section "the Vehicle") from Sterling McCall Toyota, Houston, Texas.

18.     Mr. Rose uses the Vehicle for personal, family, and/or household uses.

- 4 -

19.     After the purchase of the Vehicle, and prior to 2019, Mr. Rose was driving the Vehicle when the driver of the vehicle in front of him stopped abruptly, forcing Mr. Rose to quickly apply his brakes. In response, the Vehicle's braking did not seem to respond normally, as the Vehicle pulled down to one side. Mr. Rose's son reported to him during the time frame up to 2019 that the Vehicle's brakes had felt funny and had not reacted normally as they do on different vehicles he had driven through 2019. In 2019, the Vehicles brakes felt mushy and soft. There were several incidents in 2019 in which the brake pedal had to be applied almost all the way to the floor in order to get the Vehicle to stop.

20.     In January 2020, one of Mr. Rose's children took the Vehicle back to Sterling McCall Toyota to have the brakes checked. Toyota did not repair the Vehicle and instead of addressing his concerns, falsely stated that the brakes were fine. The Vehicle has not been recalled. Mr. Rose is concerned and fearful regarding the integrity of the braking system of the Vehicle.

21.     Had Mr. Rose known of the Toyota Brake Defect at the time he purchased the Vehicle, he would have not purchased it or would have paid substantially less for it.

22.     Mr. Rose has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Toyota Brake Defect and Toyota's refusal to correct the defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**b.     Plaintiff Jeffrey Warner Rasco**

23.     Plaintiff Jeffrey Warner Rasco ("Rasco") is a resident of Woodcreek, Texas.

24.     In or about November 2010, Mr. Rasco purchased a new 2010 Toyota Prius (for the purposes of this section "the Vehicle") from its authorized dealer, San Marcos Toyota, in San Marcos, Texas.

25.     Mr. Rasco uses the Vehicle for personal, family, and/or household uses.

26.     Neither Toyota, nor any of its agents, dealers, or other representatives informed Mr. Rasco of the Toyota Brake Defect's existence prior to, or at the time of, his purchase.

27.     On several occasions while driving his 2010 Prius, Mr. Rasco has experienced upon applying the brakes that they did not take. The Vehicle has not been recalled. Mr. Rasco is concerned and fearful regarding the integrity of the braking system of the Vehicle.

28.     Had Mr. Rasco known of the Toyota Brake Defect at the time he purchased the Vehicle, he would have not purchased it or would have paid substantially less for it.

29.     Mr. Rasco has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Toyota Brake Defect and Toyota's refusal to correct the defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**2.      Arkansas**

**a.      Plaintiff Kamran Khan**

30.     Plaintiff Kamran Khan ("Khan") is a resident of Little Rock, Arkansas.

31.     In May 2019, Mr. Khan purchased a used 2010 Toyota Prius (for the purposes of this section "the Vehicle") from an individual in Greenbrier, Arkansas.

32.     Mr. Khan uses the Vehicle for personal, family, and/or household uses.

33.     Shortly after purchasing the Vehicle, Mr. Khan noticed that the brakes failed to respond to normal foot pressure, requiring Mr. Khan to apply the brake almost all the way to the floor to get the vehicle to stop. Mr. Khan witnessed the Vehicle's master warning light, brake system warning light, and/or slip indictor light illuminate in response to these events.

34.     When Mr. Khan took the vehicle to his local Toyota dealership for a service oil change, he asked the dealership to address the brake issue.  The Toyota dealership would not address the brake issue without Mr. Kahn first paying it diagnostic testing charges to do so.  Mr. Kahn refused to pay for the diagnostic testing. At this point, the Vehicle's brake system warning light is always illuminated when the Vehicle is on.

35.     Had Mr. Khan known of the Toyota Brake Defect at the time he purchased the vehicle, he would have not purchased it or would have paid substantially less for it.

36.     Plaintiff Khan has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Toyota Brake Defect and Toyota's refusal to correct the defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**3.     California**

**a.     Plaintiff Jason Medeiros**

37.     Plaintiff Jason Medeiros is a resident of Oxnard, California.

38.     Mr. Medeiros owns a 2015 Toyota Prius Hatchback (for the purposes of this section "the Vehicle"), which he purchased as a certified pre-owned vehicle from Toyota of Downtown L.A., located in Los Angeles, California.

39.     Mr. Medeiros uses the Vehicle for personal, family, and/or household uses.

40.     Prior to purchasing the Vehicle, Mr. Medeiros reviewed the sticker Toyota placed on the window. The window sticker advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and crash test ratings) and Mr. Medeiros relied on the advertisements contained within the window sticker when deciding to purchase the Vehicle. The window sticker did not disclose that the Vehicle possessed any defects.

41.     Neither Toyota, nor any of its agents, dealers, or other representatives informed Mr. Medeiros of the Toyota Brake Defect's existence prior to, or any time after, his purchase.

42.     Mr. Medeiros began experiencing the defect within his first 10,000 miles of driving after purchasing the Vehicle. In particular, he noticed that when driving over dips, railroad tracks, manhole covers, and other bumpy obstacles, the Vehicle continued to travel at previous speeds even when he depressed the brake pedal to slow down the Vehicle. On several

occasions, Mr. Medeiros witnessed the Vehicle's master warning light, brake system warning light, and/or slip indictor light illuminate in response to these events.

43.     Mr. Medeiros received a "bulletin letter" making him aware of a potential problem with the brakes, whereupon he took the Vehicle to his local dealership, Ventura Toyota, and told service technicians there about the problem. Ventura Toyota told him the Vehicle was functioning normally.

44.     Had Mr. Medeiros known of the Toyota Brake Defect at the time he purchased the Vehicle, he would have not purchased it or would have paid substantially less for it.

45.     Mr. Medeiros has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Toyota Brake Defect and Toyota's refusal to correct the defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

### b.     Plaintiff Nancy Bennett-Hauser

46.     Plaintiff Nancy Bennett-Hauser is a resident of Santee, California.

47.     Ms. Bennett-Hauser owns a 2012 Toyota Prius V (for the purposes of this section "the Vehicle"), which she purchased new from Mossy Toyota, located in San Diego, California.

48.     Ms. Bennett-Hauser uses the Vehicle for personal, family, and/or household uses.

49.     Prior to purchasing the Vehicle, Ms. Bennett-Hauser saw the sticker Toyota placed on the window. The window sticker advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and crash test ratings) and Ms. Bennett-Hauser relied on the advertisements contained within the window sticker when deciding to purchase the Vehicle. The window sticker did not disclose that the Vehicle possessed any defects.

50.     Neither Toyota, nor any of its agents, dealers, or other representatives informed Ms. Bennett-Hauser of the Toyota Brake Defect's existence prior to, or any time after, her purchase.

51.     Ms. Bennett-Hauser learned of Toyota's "Customer Support Program" under which Toyota was replacing the brake booster assembly and brake booster pump assembly on certain Model Year 2010-2015 Prius vehicles through a third-party source on the internet.

52.     Ms. Bennett-Hauser did not receive a "bulletin letter" informing owners of the Customer Support Program.

53.     Ms. Bennett-Hauser contacted her local Toyota dealership, El Cajon Toyota, to inquire as to why she did not receive notice of the Customer Support Program. After providing her vehicle identification number to the dealership, she was informed that her vehicle was not included within the Customer Support Program and, therefore, she was not eligible for the replacement of the brake booster assembly and the brake booster pump assembly.

54.     Had Ms. Bennett-Hauser known of the Toyota Brake Defect at the time she purchased the Vehicle, she would have not purchased it or would have paid substantially less for it.

55.     Ms. Bennett-Hauser has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Toyota Brake Defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

### c.     Plaintiff Glenn Alcaraz

56.     Plaintiff Glenn Alcaraz is a resident of Highland, California.

57.     In December 2014, Mr. Alcaraz's mother purchased a new 2015 Prius II (for the purposes of this section "the Vehicle") from Elmore Toyota in Westminster, California. In February 2015, Mr. Alcaraz purchased the Vehicle used from his mother.

58.     Mr. Alcaraz uses the Vehicle for personal, family, and/or household uses.

59.     Neither Toyota, nor any of its agents, dealers, or other representatives informed Mr. Alcaraz's mother of the Toyota Brake Defect's existence prior to, or any time after, his

purchase. Likewise, Mr. Alcaraz was not informed of the Toyota Brake Defect's existence prior to, or any time after, his purchase of the Vehicle.

60.     In 2019, Mr. Alcaraz began to notice that the brake pedal was feeling soft and that his ABS brake warning light was flashing. On October 23, 2019, Mr. Alcaraz had his vehicle serviced at a third party Toyota repair facility but was told that there was nothing wrong with the brakes.

61.     Had Mr. Alcaraz known of the Toyota Brake Defect at the time he purchased the Vehicle, he would have not purchased it or would have paid substantially less for it.

62.     Mr. Alcaraz has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Toyota Brake Defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

### d.     Plaintiff Chong Eun

63.     Plaintiff Chong Eun is a resident of Huntington Beach, California.

64.     Mr. Eun owns a 2013 Toyota Prius (for purposes of this section, "the Vehicle"), which based on information and belief, was purchased new from Toyota of Huntington Beach.

65.     Mr. Eun uses the Vehicle for personal, family, and/or household uses.

66.     Prior to purchasing the Vehicle, Mr. Eun reviewed the sticker Toyota placed on the window. The window sticker advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and crash test ratings) and Mr. Eun relied on the advertisements contained within the window sticker when deciding to purchase the Vehicle. The window sticker did not disclose that the Vehicle possessed any defects.

67.     Neither Toyota, nor any of its agents, dealers, or other representatives informed Mr. Eun of the Toyota Brake Defect's existence prior to, or any time after, his purchase.

68.     Mr. Eun has experienced the Toyota Brake Defect on numerous occasions since owning the Vehicle, one of which resulted in collision with another vehicle.

69.     In 2016, Mr. Eun was driving the Vehicle at a low rate of speed nearby his residence when the brakes failed to engage, causing him to rear-end the vehicle stopped ahead. Following the incident, Mr. Eun complained to his local Toyota dealership about the brake defect, citing concerns over the decreased stopping distance of the Vehicle. The technicians at the dealership dismissed Mr. Eun's concerns and told him that nothing was wrong with the Vehicle's brakes. Since that time, Mr. Eun has driven the Vehicle minimally due to his fear that the brakes will malfunction and cause another accident.

70.     In 2019, Mr. Eun received a "bulletin letter," confirming his previous concerns about the Vehicle's brakes. He contacted his local dealership to inquire further about the letter. At that time, the Toyota dealership informed Mr. Eun that his vehicle was ineligible for replacement of the brake booster pump and brake booster assembly under the Customer Support Program.

71.     Had Mr. Eun known of the Toyota Brake Defect at the time he purchased the Vehicle, he would have not purchased it or would have paid substantially less for it.

72.     Mr. Eun has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Toyota Brake Defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

        **e.      Plaintiff Andrea Kent**

73.     Plaintiff Andrea Kent is a resident of Santa Rosa, California.

74.     In July 2014, Ms. Kent purchased a new 2014 Toyota Prius V (for purposes of this section, "the Vehicle"), from Dublin Toyota, in Dublin, California.

75.     Ms. Kent uses the Vehicle for personal, family, and/or household uses.

76.     Prior to purchasing the Vehicle, Ms. Kent reviewed the sticker Toyota placed on the window. The window sticker advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and crash test ratings) and Ms. Kent

relied on the advertisements contained within the window sticker when deciding to purchase the Vehicle. The window sticker did not disclose that the Vehicle possessed any defects.

77.     Neither Toyota, nor any of its agents, dealers, or other representatives informed Ms. Kent of the Toyota Brake Defect's existence prior to, or any time after, her purchase.

78.     Ms. Kent experienced brake failure in or about August 2014, when she tried to apply the brakes and had to put the pedal all the way to the floor to activate them. There was no brake system warning light or malfunction indicator illuminated prior to this incident occurring.

79.     Following the incident, Ms. Kent presented the Vehicle to Dublin Toyota with her complaint about the brake performance of the Vehicle and asked the dealer to examine the brakes to determine what had happened. The technicians at the dealership dismissed Mr. Kent's concerns and told her that nothing was wrong with the Vehicle's brakes. Since that time, Ms. Kent has experienced the same phenomenon of the brake pedal traveling all the way to the floor, again without there being any associated brake warning lights or messages indicating a fault in the Vehicle's brake system.

80.     Had Ms. Kent known of the Toyota Brake Defect at the time she purchased the Vehicle, she would have not purchased it or would have paid substantially less for it.

81.     Ms. Kent has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Toyota Brake Defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**f.     Plaintiff Nancy Kwan**

82.     Plaintiff Nancy Kwan is a resident of Union City, California.

83.     Ms. Kwan owns a 2015 Toyota Prius (for purposes of this section, "the Vehicle"), which based on information and belief, was purchased in California.

84.     Ms. Kwan uses the Vehicle for personal, family, and/or household uses.

85.     Prior to purchasing the Vehicle, Ms. Kwan reviewed the sticker placed on the window. The window sticker advertised the Vehicle's various features (such as the price,

specifications, gas mileage, equipment and warranty details and crash test ratings) and Ms. Kwan relied on the advertisements contained within the window sticker when deciding to purchase the Vehicle. The window sticker did not disclose that the Vehicle possessed any defects.

86.     Neither Toyota, nor any of its agents, dealers, or other representatives informed Ms. Kwan of the Toyota Brake Defect's existence prior to, or any time after, her purchase.

87.     Ms. Kwan is concerned about the safety of the Vehicle due to the Toyota Brake Defect.

88.     Ms. Kwan has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Toyota Brake Defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**4.     Colorado**

**a.     Plaintiff Stephanie Owens**

89.     Plaintiff Stephanie Owens is a resident of Wheat Ridge, Colorado.

90.     Ms. Owens owns a 2013 Toyota Prius (for purposes of this section, "the Vehicle"), which was purchased from Stevinson Toyota East in Aurora, Colorado, on or around April 2015.

91.     Ms. Owens uses the Vehicle for personal, family, and/or household uses.

92.     Prior to purchasing the Vehicle, Ms. Owens reviewed the sticker Toyota placed on the window. The window sticker advertised the Vehicle's various features and Ms. Owens relied on the representations contained therein when deciding to purchase the Vehicle. Neither the window sticker nor any other representations regarding the Vehicle disclosed that it possessed any defects.

93.     Neither Toyota, nor any of their agents, dealers, or other representatives informed Ms. Owens of the Toyota Brake Defect's existence prior to her purchase.

94.     Beginning in 2018, Ms. Owens has experienced the effects of the Toyota Brake Defect on numerous occasions since owning the Vehicle. On at least four occasions, the Toyota

Brake Defect resulted in loss of braking power—with the brake pressing completely to the floor—and sudden loss of vehicle control.

95.     In August 2019, Ms. Owens received a "bulletin letter" making her aware of a potential problem with the brakes, whereupon she contacted Toyota's customer support line to inquire further about the letter and complain about her experiences with the Vehicle's brakes. At that time, Toyota's representatives asked Ms. Owens to contact her local Toyota dealership about the bulletin letter and the brake problems she was experiencing.

96.     Soon thereafter, Ms. Owens presented the Vehicle to her local Toyota dealership—Mountain States Toyota in Twin Lakes, Colorado—for diagnostic testing. After performing the diagnostic tests, the dealership technicians told Ms. Owens that she was ineligible for the replacement of the brake booster assembly and the brake booster pump assembly. At that time, Ms. Owens expressed specific safety concerns regarding the performance of the brakes and requested repair recommendations, even if they were not covered under existing Toyota extended warranty programs. However, the dealerships technicians stated they would need to duplicate the condition during a test drive or detect specific diagnostic trouble codes in order to recommend and perform any repairs.

97.     After continuing to experience the performance in the following months, Ms. Owens presented the Vehicle to a different local Toyota dealership—Stevinson Toyota East in Lakewood, Colorado—for inspections related to overall brake system function and performance as well as specific diagnostic testing pursuant to the Customer Support Program. After performing diagnostic and field tests on the Vehicle, the dealership technicians told Ms. Owens that she was ineligible for the replacement of the brake booster assembly and the brake booster pump assembly.

98.     Ms. Owens returned to Mountain States Toyota and requested that the repairs described by the Customer Support Program be made to the Vehicle, despite having to pay out of pocket for them. According to Mountain States Toyota, the repairs would cost approximately

$3,100 and could not be completed until the parts became available due to being on national backorder.

99.     Had Ms. Owens known of the Toyota Brake Defect at the time she purchased the Vehicle, she would have not purchased it or would have paid substantially less for it.

100.     Ms. Owens has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Toyota Brake Defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

### 5.     Florida

#### a.     Plaintiff David Siegel

101.     Plaintiff David Siegel is a resident of Boynton Beach, Florida.

102.     Mr. Siegel owns a 2012 Toyota Prius (for the purposes of this section "the Vehicle") which he purchased used from a Florida Mercedes-Benz dealership in or around 2014.

103.     Since owning the Vehicle, Mr. Siegel has experienced the Toyota Brake Defect on several occasions.

104.     Mr. Siegel uses the Vehicle for personal, family, and/or household uses.

105.     In January 2020, Mr. Siegel learned through a third-party internet source of Toyota's "Customer Support Program," under which Toyota was replacing the brake booster assembly and brake booster pump assembly on certain 2010-2015 Prius vehicles.

106.     Mr. Siegel did not receive a "bulletin letter" informing owners of the Customer Support Program.

107.     Mr. Siegel is fearful that the Toyota Brake Defect will at some point result in injuries and/or fatalities to himself and/or others.

108.     Had Mr. Siegel known of the Toyota Brake Defect at the time he purchased the Vehicle, he would have not purchased it or would have paid substantially less for it.

109.     Mr. Siegel has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Toyota Brake Defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**b.     Plaintiffs Gregory Vasquez and Madeline Vasquez**

110.     Plaintiffs Madeline and Gregory Vasquez (the "Vasquez Plaintiffs") are residents of Winston Salem, North Carolina.

111.     The Vasquez Plaintiffs co-own a 2011 Toyota Prius (for purposes of this section, "the Vehicle") purchased new from an authorized Toyota dealership in, or around, Sunrise, Florida, in May 2011.

112.     The Vasquez Plaintiffs use the Vehicle for personal, family, and/or household uses.

113.     Prior to purchasing the Vehicle, the Vasquez Plaintiffs reviewed the sticker Toyota placed on the window. The window sticker advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and crash test ratings) and the Vasquez Plaintiffs relied on the advertisements contained within the window sticker when deciding to purchase the Vehicle. The window sticker did not disclose that the Vehicle possessed any defects.

114.     Neither Toyota, nor any of their agents, dealers, or other representatives informed the Vasquez Plaintiffs of the Toyota Brake Defect's existence prior to, or any time after, their purchase.

115.     In March 2019, the Vasquez Plaintiffs noticed an abnormal sound resonating from the Vehicle's brakes. During this time, the Vasquez Plaintiffs also noticed that the Vehicle's brakes felt "spongy"—requiring an unusual amount of force before they fully engaged. These problems became progressively worse over the course of the next eight to nine months.

116.     In or around January 2020, the Vasquez Plaintiffs presented the Vehicle to Modern Toyota, located in Winston-Salem, North Carolina for routine maintenance. According

to the technicians at the dealership, the issue stemmed from the brake module, which they replaced at that time.

117.    Within weeks of presenting the Vehicle to Modern Toyota, the Vehicle's ABS warning light illuminated. The ABS light remained on until the brake pedal was pressed completely to the floor.

118.    The Vasquez Plaintiffs presented the Vehicle again to Modern Toyota for inspection and repair. Technicians diagnosed the issue as a failure of the Vehicle's brake booster pump and brake booster pump assembly. Modern Toyota replaced these parts without cost to the Vasquez Plaintiffs, but failed to disclose the Toyota Brake Defect.

119.    The Vasquez Plaintiffs learned through a third-party internet source of Toyota's "Customer Support Program," under which Toyota was replacing the brake booster assembly and brake booster pump assembly on certain 2010-2015 Toyota Prius vehicles.

120.    The Vasquez Plaintiffs never received a "bulletin letter" informing owners of the Customer Support Program.

121.    Had the Vasquez Plaintiffs known of the Toyota Brake Defect at the time they purchased the Vehicle, they would have not purchased it or would have paid substantially less for it.

122.    The Vasquez Plaintiffs have suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Toyota Brake Defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

### c.    Plaintiff Yvette Winia

123.    Plaintiff Yvette Winia is a resident of Indialantic, Florida.

124.    In November 2019, Ms. Winia purchased a used 2012 Prius V (for the purposes of this section "the Vehicle") from Eau Gallie Auto Sales in Indian Harbour Beach, Florida.

125.    Ms. Winia uses the Vehicle for personal, family, and/or household uses.

- 17 -

126.    On January 13, 2020, while driving Ms. Winia's Prius V, Thomas Johnson, Ms. Winia's husband, drove over a pot-hole and when he pressed his foot on the brake pedal, his brakes failed, causing his vehicle to strike another vehicle resulting in damage to both vehicles.

127.    Neither at the time of, or prior to, the incident on January 13, 2020, did any brake system warning lights or messages appear in the instrument display of Ms. Winia's Vehicle.

128.    Following this incident, Ms. Winia presented the Toyota vehicle to an authorized Toyota dealer to have the brake issue addressed, but the Toyota technician could not identify the problem and did not replace any parts.

129.    Had Ms. Winia known of the Toyota Brake Defect at the time she purchased the Vehicle, she would have not purchased it or would have paid substantially less for it.

130.    Ms. Winia has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Toyota Brake Defect and Toyota's refusal to correct the defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**6.      Illinois**

**a.      Plaintiffs Raul Rivera and Cristina Rivera**

131.    Plaintiffs Raul Rivera and Cristina Rivera (the "Rivera Plaintiffs") are residents of Huntley, Illinois.

132.    In February 2014, the Rivera Plaintiff purchased a certified pre-owned 2010 Toyota Prius (for the purposes of this section "the Vehicle") from Arlington Toyota in Palatine, Illinois.

133.    The Vehicle is driven only by Mr. Raul Rivera. Mr. Rivera uses the Vehicle for personal, family, and/or household uses.

134.    Shortly after purchasing the Vehicle, Mr. Rivera noticed that every time he applied the brake and hit a bump in the road, the brake pedal drops to zero pressure causing the

- 18 -

vehicle to spring forward. This causes Mr. Rivera to aggressively push down on the brake pedal to avoid slamming into vehicles in front of him.

135.    The Rivera Plaintiffs informed the Pauly Toyota dealership in Crystal Lake, Illinois, of the brake issue, and the dealership attributed the problem to the floor mats and removed them. The issue continues without the floor mats.

136.    Had the Rivera Plaintiffs known of the Toyota Brake Defect at the time they purchased the Vehicle, they would have not purchased it or would have paid substantially less for it.

137.    The Rivera Plaintiffs have suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Toyota Brake Defect and Toyota's refusal to correct the defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

### 7.    New Jersey

#### a.    Plaintiff Enrique Pabon

138.    Plaintiff Enrique Pabon is a resident of Nanuet, New York.

139.    Mr. Pabon owns a 2013 Avalon Hybrid (for the purposes of this section "the Vehicle"), which he purchased new from Prestige Toyota in Ramsey, New Jersey.

140.    Mr. Pabon has experienced the Toyota Brake Defect on several occasions since owning the Vehicle.

141.    Mr. Pabon uses the Vehicle for personal, family, and/or household uses.

142.    Prior to purchasing the Vehicle, Mr. Pabon reviewed the sticker Toyota placed on the window. The window sticker advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and crash test ratings) and Mr. Pabon relied on the advertisements contained within the window sticker when deciding to purchase the Vehicle. The window sticker did not disclose that the Vehicle possessed any defects.

143.    Neither Toyota, nor any of their agents, dealers, or other representatives, informed Mr. Pabon of the Toyota Brake Defect's existence prior to his purchase.

144.    Mr. Pabon learned of Toyota's "Customer Support Program" through Car-Fax's email notification, whereby he learned that Toyota was replacing the brake booster assembly and brake booster pump assembly on certain 2013-2015 Toyota Avalon Hybrid vehicles.

145.    Mr. Pabon has taken the Vehicle to his local Toyota dealership numerous times for regular maintenance but has never been told that the Vehicle's brake booster assembly and brake pump were defective and/or eligible for replacement under the Customer Support Program.

146.    Mr. Pabon did not receive a "bulletin letter" informing owners of the Customer Support Program.

147.    Had Mr. Pabon known of the Toyota Brake Defect at the time he purchased the Vehicle, he would have not purchased it or would have paid substantially less for it.

148.    Mr. Pabon has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Toyota Brake Defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

### b.    Plaintiff Bryan Feinberg

149.    Plaintiff Bryan Feinberg is a resident of Egg Harbor Township, New Jersey.

150.    Mr. Feinberg owns a 2015 Toyota Avalon Hybrid (for purposes of this section "the Vehicle"), which he purchased new from Shore Toyota in Hamilton, New Jersey.

151.    Mr. Feinberg uses the Vehicle for personal, family, and/or household uses.

152.    Prior to purchasing the Vehicle, Mr. Feinberg saw the sticker Toyota placed on the window. The window sticker advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment, warranty details, and crash test ratings) and Mr. Feinberg relied on the advertisements contained within the window sticker when deciding to purchase the Vehicle. The window sticker did not disclose that the Vehicle possessed any defects.

- 20 -

153.    Neither Toyota, nor any of their agents, dealers, or other representatives has given Mr. Feinberg any information about the Toyota Brake Defect's existence prior to, or any time after, his purchase.

154.    Mr. Feinberg has yet to experience the Toyota Brake Defect but is concerned about sudden brake loss after reading several online reports about the defect. Mr. Feinberg is fearful about continuing to drive the Vehicle without a replacement of its defective brake assembly and brake booster pump.

155.    Mr. Feinberg has asked his local Toyota dealership about the Toyota Brake Defect on several occasions, but it has failed to provide any explanation, much less a remedy that alleviates his concerns about the Toyota Brake Defect.

156.    Mr. Feinberg never received a "bulletin letter" informing owners of the Customer Support Program.

157.    Had Mr. Feinberg known of the Toyota Brake Defect at the time he purchased the Vehicle, he would have not purchased it or would have paid substantially less for it.

158.    Mr. Feinberg has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Toyota Brake Defect, including but not limited to, out-of-pocket losses, diminished value of the Vehicle, and consequential damages.

**8.    North Carolina**

**a.    Plaintiff Lois Felts**

159.    Plaintiff Lois Felts is a resident of Mocksville, North Carolina.

160.    Ms. Felts owns a 2013 Toyota Camry Hybrid (for the purposes of this section "the Vehicle") which she purchased new within the State of North Carolina.

161.    Ms. Felts uses the Vehicle for personal, family, and/or household services.

162.    Prior to purchasing the Vehicle, Ms. Felts saw the sticker Toyota placed on the window. The window sticker advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment, warranty details , and crash test ratings) and Ms. Felts

- 21 -

relied on the advertisements contained within the window sticker when deciding to purchase the Vehicle. The window sticker did not disclose that the Vehicle possessed any defects.

163.    Neither Toyota, nor any of their agents, dealers, or other representatives has given Ms. Felts any information about the Toyota Brake Defect's existence prior to, or any time after, her purchase.

164.    On December 21, 2019, Ms. Felts was involved in a single vehicle auto-collision resulting from the Toyota Brake Defect. While driving at a low rate of speed, Ms. Felts attempted to engage the brakes, but this failed to stop the Vehicle. As a result, the Vehicle continued across a three-lane highway and crashed into a curb. Because of damage to the undercarriage, Ms. Felts's insurance carrier calculated a total loss of the Vehicle's value.

165.    In January 2020, Ms. Felts learned through a third-party internet source of Toyota's "Customer Support Program," pursuant to which Toyota was replacing the brake booster assembly and brake booster pump assembly on certain 2012-2014 Camry Hybrid vehicles.

166.    Ms. Felts never received a "bulletin letter" informing her of the Customer Support Program.

167.    Had Ms. Felts known of the Toyota Brake Defect at the time she purchased the Vehicle, she would have not purchased it or would have paid substantially less for it.

168.    Ms. Felts has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Toyota Brake Defect, including but not limited to, out-of-pocket losses, diminished value of the Vehicle, and consequential damages.

**9.    Washington**

 **a.    Plaintiff Laura Turner**

169.    Plaintiff Laura Turner is a resident of Seattle, Washington.

170.    In November 2017, Ms. Turner purchased a used 2014 Toyota Prius (for the purposes of this section "the Vehicle") from Toyota of Seattle, in Seattle, Washington.

- 22 -

171.     Ms. Turner uses the Vehicle for personal, family, and/or household services.

172.     Neither Toyota, nor any of their agents, dealers, or other representatives gave Ms. Turner any information about the Toyota Brake Defect's existence prior to, or any time after, her purchase.

173.     Ms. Turner never received a "bulletin letter" informing her of the Customer Support Program.

174.     Ms. Turner learned of the Brake Defect regarding the brake booster assembly and brake booster pump assembly on certain Model Year 2010-2015 Prius vehicles from a friend.

175.     Had Ms. Turner known of the Toyota Brake Defect at the time she purchased the Vehicle, she would not have purchased it or would have paid substantially less for it.

176.     Ms. Turner has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Toyota Brake Defect, including but not limited to, out-of-pocket losses, diminished value of the Vehicle, and consequential damages.

**B.      Defendants**

**1.      Toyota Motor Corporation**

177.     Defendant Toyota Motor Corporation ("TMC") is a Japanese corporation with its principal place of business located at 1 Toyota-Cho, Toyota City, Aichi Prefecture, 471-8571, Japan. TMC is the parent corporation of Toyota Motor Sales, U.S.A., Inc. TMC, through its various entities, designs, manufactures, markets, distributes and sells Toyota, Lexus and Scion automobiles in California and multiple other locations in the United States and worldwide.

**2.      Toyota Motor Sales, U.S.A., Inc.**

178.     Defendant Toyota Motor Sales, U.S.A., Inc. ("TMS") is incorporated and headquartered in Plano, Texas. TMS is TMC's U.S. sales and marketing arm, which oversees sales and other operations in 49 states. TMS distributes Toyota, Lexus, and Scion vehicles in the United States and sells these vehicles through its network of dealers. Money received from the

- 23 -

purchase of a Toyota vehicle from a dealer flows from the dealer to TMS. Money received by the dealer from a purchaser can be traced to TMS and TMC.

### 3.   Toyota Motor North America, Inc.

179.   Defendant Toyota Motor North America, Inc. ("TMNA") is a California corporation headquartered in Plano, Texas as of May 2017. TMNA operates as a wholly owned subsidiary of Toyota Motor Corporation ("TMC"), the Japanese parent company, and is the corporate parent of Toyota Motor Sales, U.S.A., Inc. ("TMS"). TMNA oversees government and regulatory affairs, energy, economic research, philanthropy, corporate advertising, and corporate communications for all of TMC's North American operations.

### 4.   Toyota Engineering & Manufacturing North America, Inc.

180.   180.   Defendant Toyota Engineering & Manufacturing North America, Inc. ("TEMA") is a Kentucky corporation with its corporate headquarters located at 6565 Headquarters Drive, Plano, Texas 75024.

181.   TEMA is responsible for automobile engineering, manufacturing, research, and design in North America for Toyota motor vehicles. TEMA designs, develops, tests, manufactures, assembles, and evaluates Toyota motor vehicles in the United States. TEMA also develops parts for North American Toyota vehicles. TEMA operates factories which manufacture Toyota vehicles and operates research and development facilities.

182.   TMS, TMC, TMNA, and TEMA are collectively referred to in this complaint as "Toyota" or the "Defendants," unless identified as TMS, TMC, TMNA or TEMA.

183.   At all times herein mentioned, the Toyota Defendants designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected or failed to inspect, repaired, retrofitted or failed to retrofit, failed to recall, labeled, advertised, promoted, marketed, supplied, distributed, wholesaled, and/or sold Toyota vehicles, including the vehicles operated by Plaintiffs.

184.    There exists, and at all times herein mentioned existed, a unity of ownership between TMS, TMC, TMNA, and TEMA and their agents such that any individuality or separateness between them has ceased and each of them is the alter ego of the others. Adherence to the fiction of the separate existence of Defendants, would, under the circumstances set forth in this complaint, sanction fraud, or promote injustice.

185.    For example, upon information and belief, Defendants TMS, TMNA, and TEMA communicate with TMC concerning virtually all aspects of the Toyota products TMS, TMNA, and TEMA distribute within the United States, including appropriate repairs for pervasive defects, and whether Toyota will cover repairs to parts customers claim to be defective. Toyota's decision not to disclose the alleged defects to Plaintiffs or the Class, or whether to cover repairs to the same pursuant to an extended warranty or goodwill program, was a decision made jointly by TMC, TMS, and TMNA.

186.    TMS also oversees Toyota's National Warranty Operations (NWO), which, among other things, reviews and analyzes warranty data submitted by Toyota's dealerships and authorized technicians in order to identify defect trends in vehicles. Upon information and belief, Toyota dictates that when a repair is made under warranty (or warranty coverage is requested), service centers must provide Defendants with detailed documentation of the problem and the fix that describes the complaint, cause, and correction, and also save the broken part in the event Defendants decide to audit the dealership. NWO collects this information, makes it available to other Toyota divisions, and assists Toyota in determining whether particular repairs are covered by an applicable Toyota warranty or are indicative of a pervasive defect.

187.    Toyota also jointly designs, determines the substance of, and affixes to its vehicles the window stickers visible on each new Toyota vehicle that is offered for sale at its authorized dealerships, including those omitting mention of the alleged defects. Plaintiffs and the Class reviewed these stickers prior to purchasing or leasing Class Vehicles. Toyota controls the content of these window stickers; its authorized dealerships have no input with respect to their

content. Vehicle manufacturers like Toyota are legally required to affix a window sticker to every vehicle offered for sale in the United States pursuant to the Automobile Information Disclosure Act of 1958, 15 U.S.C. §§ 1231-1233, *et seq.* The Act specifically prohibits the removal or alteration of the sticker prior to the sale of the car by anyone other than the ultimate purchaser, including the dealership at which the vehicle is offered for sale.

188.     Toyota developed the marketing materials to which Plaintiffs and the Class were exposed, owner's manuals, informational brochures, warranty booklets, and information included in maintenance recommendations and/or schedules for the Class Vehicles, all of which fail to disclose the Defect.

189.     Toyota also employs a Customer Experience Center, the representatives of which are responsible for fielding customer complaints and monitoring customer complaints posted to Toyota or third-party web sites: data which informs NWO's operations, and through which Toyota acquires knowledge of defect trends in its vehicles.

190.     Toyota manufactured, sold, and warranted the Class Vehicles throughout the United States. Toyota and/or its agents, divisions, or subsidiaries designed, manufactured, and installed the defective braking system on the Class Vehicles.

191.     Toyota distributes vehicles through a network of dealers who are agents of TMS and TMC.

192.     Toyota manufactured, sold, and warranted the Class Vehicles throughout the United States. Toyota and/or its agents, divisions, or subsidiaries designed, manufactured, and installed the defective braking system on the Class Vehicles.

193.     The true names and capacities of the Defendants sued herein as DOES 1 through 50, inclusive, are currently unknown to Plaintiffs, who therefore sue such Defendants by such fictitious names. Each Defendant designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein. Plaintiffs will seek leave of Court to amend this

Complaint to reflect the true names and capacities of any Defendants designated herein as DOES when such identities become known.

194.    Based upon information and belief, Plaintiffs allege that at all times mentioned herein, each and every Defendant was acting as an agent and/or employee of each of the other Defendants, and at all times mentioned was acting within the course and scope of said agency and/or employment with the full knowledge, permission, and consent of each of the other Defendants. In addition, each of the acts and/or omissions of each Defendant alleged herein were made known to, and ratified by, each of the other Defendants.

## IV    FACTUAL ALLEGATIONS

### A.    The Class Vehicles Suffer from a Dangerous Brake Defect

195.    The Class Vehicles suffer from the Toyota Brake Defect, which is a significant and material brake defect capable of leading to complete failure of the Class Vehicles' braking systems. The Toyota Brake Defect materially threatens the health and safety of drivers and passengers who ride in the Class Vehicles.

196.    Plaintiffs and numerous Class Vehicle owners and lessees have reported that the Toyota Brake Defect causes brake failures, effectively making their brakes inoperative under normal driving conditions.

197.    Mr. Hogan explains the history of the Toyota Brake Defect, and how Toyota has put profits in front of public safety. In June 2013, Toyota undertook a "voluntary safety recall" to "address an issue with the brake booster pump assembly"—Toyota Safety Recall 13V-235. In the Defect Information Report that Toyota sent to the NHTSA, Toyota described the problem as one caused by "brake pressure accumulators consisting of a metal plunger containing brake fluid encased in a metal housing." Toyota explained that the "plunger is designed with metal pleated bellows to allow for motion," and that "nitrogen gas is sealed between the plunger and the housing." The recall was issued because Toyota recognized the "possibility that a fatigue crack could develop in the bellows due to the vertical vibration of the plunger while driving." Toyota's

concern was that if this occurred, "nitrogen gas could lead into the brake fluid and gradually cause the brake pedal stroke to become longer, resulting in decreased hydraulic pressure." The condition "could affect stopping distance and increase the risk of a crash."

198.    Toyota investigated this potential flaw from May 2010-October 2011, a period of nearly 18 months. Toyota determined that one potential cause of the cracking was that "location of the weld points . . . could create a tendency for cracks to develop near the weld points." Toyota did additional testing and ruled out that explanation but determined that "some accumulators experienced larger impact forces despite the same test conditions." What Toyota found was "variation in the amount of clearance between the metal housing and the bellows." Toyota confirmed that the amount of clearance was related to the variation in impact force being exerted onto the bellows. After additional testing, Toyota determined that "if the amount of clearance is large, large impact forces may be exerted onto the metal bellows, which could result in gradual damage to the bellows."

199.    While Toyota voluntarily undertook to recall vehicles with this problem, the recall was carefully limited only to certain 2010 Toyota Prius and Lexus HS250h vehicles. Toyota has not recalled any of the Class Vehicles. Instead, on September 4, 2019, Toyota issued Technical Service Bulletin (TSB) 0130-19 for 2012-2014 Camry Hybrids and 2013-2015 Avalon Hybrids. TSB 0130-19 states that the covered condition "may be caused by a small internal brake fluid leak in the brake booster assembly with master cylinder," similar to the circumstances that triggered Toyota's 2013 recall. This brake fluid leak results in certain DTCs that, when triggered, Toyota will cover the cost of repair under an extended warranty program. A week after Toyota issued TSB 0130-19, Toyota explained that there had been "certain internal malfunctions of the Brake Booster Assembly" in 2012-2014 Camry hybrids and 2013-2015 Avalon hybrids.

200.    Just recently, Toyota commenced another safety recall in July 2019 for certain Lexus vehicles with brake problems. In its report to the NHTSA on the recall, Toyota explained that a certain number of Lexus vehicles "had a brake booster pump containing a plastic brush

holder produced with an improper shape." Because of the brush holder's improper shape, there was a "possibility that the plastic brush holder may have become stuck in the brush holder." Should that occur, Toyota explained that "the brush would be unable to maintain an electrical connection within the motor and may cause the pump motor to stop operating." And if that happened, Toyota explained, the result could be a "sudden and complete loss of braking assist," increasing stopping distance and, ultimately, the risk of a crash. Toyota deemed this risk sufficient to engage in a prophylactic safety recall of these vehicles so as to avoid any such potential tragedy.

201.    These recalls involved a relatively small number of vehicles, but the Toyota Brake Defect alleged herein affects hundreds of thousands of vehicles, and thus Toyota seeks to avoid the responsibility and expense of making these vehicles sound to drive. But there is very little, if any, difference between the circumstances of the Toyota Brake Defect and the defects that led to both of Toyota's earlier brake system-related safety recalls. The primary distinguishing characteristic is the scope of the problem:  It will be very expensive for Toyota to repair the defect in hundreds of thousands of vehicles.

202.    Indeed, Mr. Hogan reports that the DTCs covered by Toyota's post-failure warranty enhancement plan for the Toyota Brake Defect are the same as those codes which present an unreasonable risk to safety under Toyota's earlier recalls. In particular, DTC C1256 is triggered when there is a "significant drop in accumulator pressure." This DTC is being stored at "alarmingly high rates in hybrids" that remain excluded from Toyota's safety recalls. Toyota knows that these defects implicate basic safety features of the vehicle, and that the defect puts lives at risk. Nevertheless, Toyota refuses to repair these defects until *after* a failure occurs, instead requiring unsuspecting consumers to bear this risk.

**B.    Toyota's Knowledge of the Toyota Brake Defect's Safety Implications**

203.    An important source of field data is the NHTSA's Consumer Complaint Database. This publicly available database contains all motor vehicle-related consumer complaints

submitted to NHTSA since January 2000. Consumers submit what is called a "Vehicle Owner Questionnaire" in which they are asked to provide information that includes, the make, model, and model year of the vehicle, the approximate incident date, the mileage at which the incident occurred, whether the incident involved a crash or a fire, whether any persons were injured or killed in the incident, the speed of the vehicle at the time of the incident, and a description of the incident along with a description of the vehicle components they believe were involved in the incident. The majority of consumer complaints are submitted online at www.safercar.gov where consumers can input this information directly into the database through their computer. They can also submit complaints by telephone through the Auto Safety Hotline, through submitting a paper Vehicle Owner Questionnaire form, and by mailing consumer letters to NHTSA. This information is then entered into NHTSA's ARTEMIS database where it can be searched and reviewed by the general public and vehicle manufacturers alike, by make, model, model year, and component. NHTSA promotes this database as a valuable consumer information tool.

204.    Excluding the Model Year 2010 Prius vehicles that were the subject of Toyota's previous voluntary safety recall—for which there were a staggering 832 complaints in the category of "Service Brakes, Hydraulic" and 315 complaints in the category of "Service Brakes" submitted to NHTSA—there have been an additional combined 289 complaints relating to the Toyota Brake Defect submitted to the NHTSA for the Model Year 2011-2015 Prius and Prius PHV, 2012-2015 Prius V, 2012-2015 Toyota Camry Hybrid, and 2013-2015 Toyota Avalon Hybrid.

205.    Of those 289 complaints of brake malfunction, 63 were reported to have resulted in crashes, injuring a combined 22 people. These accident and injury numbers do not include accidents and injuries involving the 2010 Prius and Prius PHV.

| Toyota Brake Defect Complaints Submitted to NHTSA | | | | |
|---|---|---|---|---|
| Model Year/Model | Prius/V/PHV | Camry Hybrid | Avalon Hybrid | Total |
| 2011 | 114 | N/A | N/A | 114 |
| 2012 | 77 | 8 | N/A | 85 |
| 2013 | 30 | 6 | 2 | 38 |
| 2014 | 9 | 6 | 3 | 18 |
| 2015 | 8 | 24 | 2 | 34 |
| Total | 238 | 44 | 7 | 289 |

206.    But even more alarming, and the primary reason why Toyota limits its Customer
Support Program only to cases where the Toyota Brake Defect has already manifested in the
vehicle, is that of these 289 complaints, 63 reportedly resulted in accidents, injuring 22 people.

**1.      NHTSA Consumer Complaints of Brake Defect Resulting in Crashes**

207.    The following are the consumer complaints submitted to NHTSA regarding the
Toyota Brake Defect in the Class Vehicles that resulted in crashes: [1]

October 9, 2019 **NHTSA ID NUMBER: 11267321**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 11267321

**Incident Date** October 8, 2019

**Consumer Location** SAN FRANCISCO, CA

**Vehicle Identification Number** JTDKN3DU3B1****

**Summary of Complaint**

---

[1] The following complaints are reproduced as they appear on the NHTSA website. Any typographical errors are attributable to the original author of the complaint. Emphasis added to original text is denoted by bold and underlining.

**CRASHYes**

**FIRENo**

**INJURIES1**

**DEATHS0**

AFTER APPLYING BRAKES CAR CONTINUED TO MOVE FORWARD THROUGH GARAGE OPENING CRASHING INTO WALL AT END OF GARAGE BEFORE IT STOPPED. BRAKE WAS NOT SLOWING/STOPPING VEHICLE

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2011 |

November 29, 2018 **NHTSA ID NUMBER: 11154783**

**Components: SERVICE BRAKES, ELECTRONIC STABILITY CONTROL, ELECTRICAL SYSTEM**

**NHTSA ID Number:** 11154783

**Incident Date** November 29, 2018

**Consumer Location** OXFORD, GA

**Vehicle Identification Number** JTDKN3DU1B0****

**Summary of Complaint**

**CRASHYes**

**FIRENo**

**INJURIES0**

**DEATHS0**

DRIVING VEHICLE DOWN HIGHWAY, TAPPED BRAKES BUT BRAKES DID NOT WORK, ALL THE LIGHTS ON MY DASH LIT UP. I LOST TRACTION IN BRAKES CAUSING VEHICLE TO LOSE CONTROL.

**1 Affected Product**

### a.   Vehicle

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2011 |

July 11, 2018 **NHTSA ID NUMBER: 11110691**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 11110691

**Incident Date** September 12, 2013

**Consumer Location** WAYNE, NJ

**Vehicle Identification Number** JTDKN3DU9B1****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**0

**DEATHS**0

MY BRAKES CONSISTENTLY LOCK AND THE CAR LUNGES FORWARD WHEN I HIT A POTHOLE WHILE BRAKING. THIS CAUSED A CRASH WHEN THE CAR WAS ONLY A COUPLE YEARS OLD WHEN THE BRAKES FAILED TO STOP THE VEHICLE AND IT LUNGED FORWARD INTO THE BACK OF A CAR. THIS IS EXTREMELY DANGEROUS AND I'VE SEEN THIS COMMENT OFTEN WITH THIS VEHICLE. I DON'T UNDERSTAND WHY TOYOTA HAS NOT ADDRESSED THIS ISSUE.

**1 Affected Product**

### b.    Vehicle

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2011 |

August 24, 2016 **NHTSA ID NUMBER: 10898350**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 10898350

**Incident Date** April 1, 2013

**Consumer Location** WAYNE, NJ

**Vehicle Identification Number** N/A

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**0

**DEATHS**0
WHEN THE BRAKES ARE PRESSED, IF YOU HIT A BUMP OR POTHOLE, THE
BRAKES LOCK AND THE CAR HYDROPLANES FORWARD. I HIT THE BACK OF
SOMEONE BECAUSE OF THIS DEFECT.

**1 Affected Product**

### c.    Vehicle

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2011 |

---

July 22, 2016 **NHTSA ID NUMBER: 10887699**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 10887699

**Incident Date** July 20, 2016

**Consumer Location** NOKESVILLE, VA

**Vehicle Identification Number** JTDKN3DU8B1****

**Summary of Complaint**

**CRASHYes**

**FIRENo**

**INJURIES1**

**DEATHS0**
CAR WAS IN MOTION ABOUT 20MPH. WHEN BRAKES WAS APPLIED, THE CAR
FAILED TO SLOW DOWN BUT INSTEAD QUICKLY ACCELERATED.
CONTINUOUSLY APPLYING THE BRAKES DID NOTHING. CAR CAME TO A STOP
APPLY RUNNING INTO ANOTHER CAR.

**1 Affected Product**

### d.     Vehicle

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2011 |

June 16, 2014 **NHTSA ID NUMBER: 10598545**

**Components: STRUCTURE, SERVICE BRAKES**

**NHTSA ID Number:** 10598545

**Incident Date** March 27, 2014

**Consumer Location** ANACORTES, WA

**Vehicle Identification Number** JTDKN3DU1B1****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**0

**DEATHS**0

WHILE PULLING INTO A PARKING SLOT IN A PARKING LOT, WHICH WAS ON A SLOPE, I APPLIED THE FOOT BRAKE WITHOUT ANY RESPONSE WHATSOEVER. THE VEHICLE GAINED ENOUGH SPEED TO JUMP THE SMALL STOP-CURB AND HIT A CONCRETE WALL NEXT TO IT. THE DAMAGE TO THE FRONT OF THE CAR WAS JUST OVER $4000. I THOUGHT I HAD MISSED THE PEDAL. ON JUNE 12TH AND 15TH, I HAD TWO MORE INCIDENTS OF THE BRAKE PEDAL GOING ALL THE WAY TO THE FLOOR WHILE EITHER AT SLOW SPEED OR STOPPED. MY DEALER SAYS IT WAS A PROBLEM ON THE 2010, BUT HE HAS NOT SEEN IT ON A 2011. MY WIFE NOW REFUSES TO DRIVE THE CAR. *TR

**1 Affected Product**

### e.     Vehicle

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2011 |

November 26, 2013 **NHTSA ID NUMBER: 10553888**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 10553888

**Incident Date** January 24, 2013

**Consumer Location** DAVIDSONVILLE, MD

**Vehicle Identification Number** N/A

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**0

**DEATHS**0

CAR LURCHES FORWARD WHEN BRAKES ARE APPLIED ON BUMPY OR UNEVEN SURFACES, AS WELL AS SLIPPERY SURFACES SUCH AS METAL PLATES THAT YOU SOMETIMES FIND COVERING CITY STREETS UNDER CONSTRUCTION. ON ICE, WHEN APPLIED FORCEFULLY, NO BRAKING ACTION OCCURS WHATSOEVER, EVEN WHEN PUMPED OR RELEASE AND REAPPLIED. IN JAN 2013, CAR SLID MORE THAN 150' ON A LIGHTLY SNOWY ROAD INTO A DITCH.

MY SENSE IS ANTI-LOCK BRAKES ARE DEFECTIVE, BUT IT COULD BE SOME OTHER COMPUTER OVERRIDE THAT KICKS IN. WHEN STOPPING FOR A TRAFFIC LIGHT ON A BUMPY ROAD, OR OVER ONE OF THOSE CONSTRUCTION PLATES, IT'S SCARY, AND I FEEL LUCKY I HAVEN'T HIT ANYONE. *TR

**1 Affected Product**

### f.    Vehicle

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2011 |

October 12, 2013 **NHTSA ID NUMBER: 10547701**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 10547701

**Incident Date** October 10, 2013

**Consumer Location** KETTERING, OH

**Vehicle Identification Number** JTDKN3DUXB0****

**Summary of Complaint**

**CRASHYes**

**FIRENo**

**INJURIES0**

**DEATHS0**

LOVE MY PRIUS UNTIL I STARTED TO BECOME SCARED DAILY BY THE UNSAFE DRIVING CONDITIONS DUE TO THE CAR'S TENDENCY TO LURCH FORWARD WHILE BRAKING OVER BUMPY GROUND OR POTHOLES WHEN COMING TO A STOP OR SLOWING DOWN TO TURN. IT'S RATHER STARTLING AND FORTUNATELY HAS NOT CAUSED AN ACCIDENT YET FOR NO OTHER CAR HAS BEEN AROUND WHEN THIS HAPPENS. A DIFFERENT STORY WITH THE OTHER MORE SERIOUS ISSUE WITH THE BRAKING SYSTEM WHEN NEEDING TO COME TO AN IMMEDIATE STOP DUE TO SUDDEN STOPPING OF THE CAR IN FRONT. ABOUT A MONTH AGO, I EXPERIENCED THE "NO BRAKE" ISSUE WHEN SUDDENLY NEEDING TO PRESS HARD ON THE BRAKE FOR A STOPPED CAR IN FRONT OF ME. I HAD PLENTY OF DISTANCE FOR STOPPING BUT BECAUSE OF THE "NO BRAKE" ISSUE HAD TO STEER OFF TO THE SIDE TO MISS THE CAR. SHOCKED AND CONFUSED AT WHAT HAPPENED, THOUGHT MAYBE I DID SOMETHING WRONG BY NOT PUMPING THE BRAKE. THEN TWO DAYS AGO, I

WAS SITTING AT A RED LIGHT WHEN IT TURNED GREEN, TRAFFIC STARTED MOVING BUT THEN SUDDENLY STOPPED FOR AN EMERGENCY VEHICLE TO GO THROUGH THE INTERCEPTION. I PRESSED ON THE BRAKE HARD AND JUST KEPT MOVING RIGHT INTO THE REAR OF THE TRUCK IN FRONT. I NOW HAVE ABOUT $1,800 OF DAMAGES FOR THE TRUCK (NO DAMAGE CAUSED TO IT) HAD AN HITCH WHICH PUNCTURED MY BUMPER AND BENT THE AIR CONDENSER. I HAVE DECIDED NOT TO FIX IT FOR IT COULD HAPPEN AGAIN. WHEN I DECIDE WHAT'S MY NEXT SAFE CAR TO PURCHASE, I WILL HAVE IT FIXED AND TRADE IT IN FOR IT AS SOON AS POSSIBLE FOR I'M NOW SCARED TO DRIVE IT. THE DEALERSHIP REPLY TO MY CONCERN IS THE SAME AS WITH EVERYONE ELSE'S COMPLAINT AND REVIEW I HAVE READ, THIS IS HOW THE BRAKE SYSTEM WORKS AND NO ERROR. THEY DO NOT WANT TO TAKE RESPONSIBILITY OF THIS FAULTY BRAKE SYSTEM WHICH CREATES UNSAFE DRIVING CONDITIONS. FORTUNATELY IT WAS A TRUCK IN FRONT OF ME THIS TIME. BUT WHAT IF IT'S A PERSON WALKING ACROSS THE ROAD IN FRONT OF ME NEXT TIME?? *TR

**1 Affected Product**

### g.    Vehicle

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2011 |

**February 14, 2013 NHTSA ID NUMBER: 10498096**

**Components: SERVICE BRAKES, SEATS, AIR BAGS**

**NHTSA ID Number:** 10498096

**Incident Date** February 10, 2013

**Consumer Location** KIRKLAND, WA

**Vehicle Identification Number** JTDKN3DU2B0****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES2**

**DEATHS0**

I AM AN EXCELLENT DRIVER. I PURCHASED THIS PRIUS IN THE SUMMER OF 2011. WE (MY WIFE AND YOUNG DAUGHTER) WERE PROCEEDING ON JUANITA DRIVE N.E. IN KIRKLAND, WA. MY WIFE AND I AGREE THAT OUR SPEED WAS APPROXIMATELY 30-33 MPH AND THAT THERE WERE APPROXIMATELY 3+ CAR LENGTHS BETWEEN US AND THE VEHICLE IN FRONT OF US. THE WEATHER WAS DRY AND SUNNY. SUDDENLY, A VEHICLE THREE VEHICLES AHEAD OF US STOPPED TO MAKE A LEFT TURN, AND THE TWO VEHICLES BEHIND IT WERE ABLE TO STOP. I IMMEDIATELY APPLIED MY BRAKES TO THE FLOOR AS SOON AS I OBSERVED THE STOPPED VEHICLE AHEAD. I FELT NO RESPONSE - NO GRIPPING OF THE BRAKES OR GRIPPING OF THE WHEELS TO THE ROAD, NO SQUEALING, NO SKIDDING, NO SENSE OF THE BRAKES SLOWING THE VEHICLE IN THE THREE SECONDS I APPLIED THEM. DUE TO VEHICLES IN THE OPPOSING LANE, A NARROW ROAD AND NO SHOULDER (A DITCH WITH TELEPHONE POLES ON THE RIGHT), I WAS FORCED TO DESIGN THE LEAST HARMFUL IMPACT - MY FRONT RIGHT CORNER TO THE REAR LEFT CORNER OF THE VEHICLE IN FRONT. THE IMPACT TORE OPEN THE RIGHT FRONT OF THE VEHICLE, SHATTERING THE WINDSHIELD NEXT TO MY WIFE AND CAUSING HER LEGS TO FLY UP AND STRIKE THE DASHBOARD, INJURING HER LEGS IN SEVERAL PLACES. HER AIRBAG DID NOT DEPLOY. MY 7-YEAR-OLD WAS IN HER CAR SEAT IN THE BACK SEAT. THE LARGER SPLIT BACK WAS BEHIND HER. THE BACK BECAME UNHINGED AT IMPACT AND FLIPPED FORWARD, FORCING MY DAUGHTER'S UPPER BODY FORWARD. SHE SUSTAINED MINOR FACIAL INJURIES. WHILE IT IS POSSIBLE THAT THE AIRBAG NON-DEPLOYMENT WAS APPROPRIATE (I AM NOT CERTAIN OF THIS), THERE IS NO QUESTION THAT THE BRAKING WAS SOFT, SQUISHY, NON-EXISTENT, AND THE BACK SEAT SHOULD NOT HAVE BECOME UNHINGED. *TR

**1 Affected Product**

        **h.**    **Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2011 |

October 28, 2012 **NHTSA ID NUMBER: 10482485**

**Components: STRUCTURE, SERVICE BRAKES**

**NHTSA ID Number:** 10482485

**Incident Date** October 5, 2012

**Consumer Location** MARLBORO, MA

**Vehicle Identification Number** JTDKN3DU0B0****

**Summary of Complaint**

**CRASHYes**

**FIRENo**

**INJURIES0**

**DEATHS0**
WE PURCHASED A 10 MONTH OLD TOYOTA PRIUS ON MARCH 16ND 2012 WITH ONLY 1367 MILES.

THE PRIOR OWNER WHO WAS LEASING THIS CAR RETURNED THE CAR DUE TO MILEAGE INCONSISTENCY.....

ON OCT 5TH 2012, I WAS DRIVING ON SUNNY DRY DAY AT 22MPH THE VEHICLE IN FRONT OF ME SLOWED DOWN. I STEPPED ON THE BRAKE TO SLOWDOWN BUT THE CAR DID NOT STOP. WHEN I STEPPED ON THE BRAKE IT DID NOT RESPOND IMMEDIATELY, I APPLIED COMPLETE PRESSURE TO THE BRAKE HOWEVER THE CAR STILL DID NOT SLOW DOWN ENOUGH AND I HIT THE CAR IN FRONT OF ME. PER THE REPORT FROM TOYOTA THE SPEED WENT DOWN FROM 22MPH TO 5MPH AT THE TIME OF THE IMPACT. I DO NOT AGREE WITH THE TOYOTA REPORT THAT I ONLY STEPPED ON THE BRAKE FOR 2 SECONDS AS IT WAS MUCH MORE...

BEFORE THE ACCIDENT THE BRAKE WAS MUCH HARDER AND LESS FORCEFUL PRESSURE MADE THE CAR STOP AFTER THE ACCIDENT THE BRAKE FEELS SOFTER AND MORE PRESSURE IS NEEDED TO MAKE THE BRAKE WORK.

THIS IS AN ALMOST BRAND NEW CAR WITH 7K MILES ON IT HOWEVER I DO FEEL SAFE IN THIS CAR ANYMORE AFTER THIS ACCIDENT AND I FEAR FOR MY LIFE AND PUBLIC SAFETY. WHAT WILL HAPPEN I DRIVE ON A HIGHWAY AT 60MPH AND THE BRAKE WILL NOT WORK??

TOYOTA DENIES ANY TECHNICAL ERROR WITH THE CAR AND BLAMES THE

ACCIDENT ON ME. THERE ARE PLENTY OF REPORTS OF SIMILAR ACCIDENTS
REPORTED BY CONSUMERS ON THIS SAME ISSUE HERE:

HTTP://TOWNHALL-TALK.EDMUNDS.COM/DIRECT/VIEW/.F0DB60B. *TR

**1 Affected Product**

### i.    Vehicle

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2011 |

October 30, 2013 **NHTSA ID NUMBER: 10550179**

**Components: SERVICE BRAKES, HYDRAULIC**

**NHTSA ID Number:** 10550179

**Incident Date** October 30, 2013

**Consumer Location** MINNETONKA, MN

**Vehicle Identification Number** N/A

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**0

**DEATHS**0

THE BRAKE DOEN'T WORK WHEN I WAS DRIVING OUT OF THE HIGHWAY. I
PRESSED HARD OF THE BRAKE AND CANNOT STOP THE CAR. AND I CRUSHED
INTO A BIG TRUCK. THE CAR CRUSHED ONCE WITH THE TRUCK AND THE
MOMENTUM MADE THE CAR TO HIT THE TRAFFIC LIGHT POLE AGAIN.
TERRIBLE. *TR

**1 Affected Product**

| Vehicle | | |
| --- | --- | --- |
| MAKE | MODEL | YEAR |
| TOYOTA | PRIUS | 2012 |

**February 18, 2019 NHTSA ID NUMBER: 11180711**

**Components: STRUCTURE, SERVICE BRAKES, VEHICLE SPEED CONTROL**

**NHTSA ID Number:** 11180711

**Incident Date** January 24, 2019

**Consumer Location** LOS ANGELES, CA

**Vehicle Identification Number** JTDKN3DU4C1****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**5

**DEATHS**0

I WAS COMING UP THE FREEWAY OFF RAMP AND MY CAR JUST TURNED OFF I HAD NO BRAKING I HIT SIX OTHER CARS ROLLED OVER AND WAS SEVERLY IMJURED IN THE HOSPITAL FORR THREE DAYS

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2012 |

November 1, 2018 **NHTSA ID NUMBER: 11144698**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 11144698

**Incident Date** October 28, 2018

**Consumer Location** SULLIVAN, IN

**Vehicle Identification Number** JTDKN3DU4C1****

**Summary of Complaint**

**CRASHYes**

**FIRENo**

**INJURIES0**

**DEATHS0**

I WAS TRAVELING NORTH ON THE HIGHWAY. I WAS GOING BETWEEN 50 AND 55 MPH WHEN THE TRAFFIC LIGHT TURNED TO YELLOW AND THEN TO RED. WHEN I APPLIED THE BREAKS NOTHING HAPPENED. MY VEHICLE ACTUALLY APPEARED TO SPEED UP. I RELEASED THE BRAKE THEN PUMPED THE BREAK TWICE THEN AGAIN APPLIED THE BREAK, THIS TIME STOMPING HARDER AND WITH BOTH FEET. MY VEHICLE DID NOT STOP OR EVEN SLOW. I WENT THROUGH THE LIGHT, RESULTING IN A CAR ACCIDENT. I T BONED ANOTHER CAR.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2012 |

June 18, 2018 **NHTSA ID NUMBER: 11102264**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 11102264

**Incident Date** June 16, 2018

**Consumer Location** WILMINGTON, NC

**Vehicle Identification Number** JTDZN3EU2C3****

**Summary of Complaint**

**CRASH** Yes

**FIRE** No

**INJURIES** 0

**DEATHS** 0

WHILE PULLING INTO A PARKING SPACE (SPEED LESS THAN 5 MPH) AND APPLYING THE BRAKES THE PEDAL WENT TO THE FLOOR AND THE CAR SEEMED TO SPEED UP. THE CAR JUMPED THE CURB AND STRUCK A TREE. A GOOD SAMARITAN ASSISTED AND ACTUALLY GOT IN THE CAR AND FOUND THE BRAKE PEDAL WENT TO THE FLOOR. SHORTLY AFTER THE ACCIDENT THE BRAKES RETURNED TO NORMAL OPERATION. THIS IS THE SECOND TIME THAT THE CAR HAS EXPERIENCED SIMILAR PROBLEMS. IN 2014 WHILE PULLING INTO THE DRIVEWAY THE BRAKE PEDAL WENT TO THE FLOOR AND STRUCK THE HOUSE. SHORTLY AFTER THE BRAKES RETURNED TO NORMAL OPERATIONS. TOYOTA WAS NOTIFIED AND INSPECTED THE CAR'S COMPUTER AND BRAKING SYSTEM PER CASE NUMBER 1410012557. AFTER THE INSPECTION TOYOTA SAID THAT THERE WERE NO BRAKE ISSUES FOUND WITH THE CAR AND STATED THAT IT WAS SAFE TO DRIVE. OBVIOUSLY THERE IS AN ISSUE WITH THE BRAKING SYSTEM IN THESE CARS.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS V | 2012 |

November 7, 2017 **NHTSA ID NUMBER: 11044156**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 11044156

**Incident Date** November 4, 2017

**Consumer Location** BENSALEM, PA

**Vehicle Identification Number** JTDZN3EU2C3****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**0

**DEATHS**0

NOVEMBER 4, 2017 - CAR WAS PARKED IN OUR DRIVEWAY. PUT THE CAR IN REVERSE TO BACK OUT OF OUR DRIVEWAY. THE BRAKES FAILED. NO MATTER HOW MANY TIMES THE BRAKE PEDAL WAS REPEATEDLY PUSHED DOWN, THE CAR JUST WOULD NOT STOP. IT ACTUALLY FELT LIKE THE CAR WAS ACCELERATING!

THE CAR RAN OVER OUR MAILBOX AT THE END OF OUR DRIVEWAY. THE MAILBOX GOT DRAGGED UNDER THE CAR AND THE CAR ROLLED OUT ONTO THE STREET. FINALLY, WE PUSHED IN THE POWER BUTTON AND THAT WAS HOW WE WERE ABLE TO GET THE CAR TO STOP.

OUR MAILBOX GOT TOTALED AND DAMAGE WAS DONE TO THE UNDERCARRIAGE OF OUR CAR, AS THERE IS TWISTED METAL HANGING DOWN SCRAPING THE GROUND. THE BRAKES STARTED TO WORK AGAIN A FEW

MINUTES LATER, AS I WAS ABLE TO PULL IT BACK INTO THE DRIVEWAY OFF OF THE STREET.

ON SEPTEMBER 19, 2017 – CAR WAS PARKED IN A PARKING LOT. WHEN REVERSING OUT OF THE PARKING SPACE, THE BRAKES DID NOT WORK. AFTER REPEATEDLY PUMPING THE BRAKES, THEY FINALLY ENGAGED JUST BEFORE IT HIT A CAR PARKED BEHIND US. WE THOUGHT THIS WAS A FREAK ONE-TYPE EVENT, SO WE DIDN'T REPORT IT.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS V | 2012 |

August 12, 2017 **NHTSA ID NUMBER: 11014797**

**Components: STRUCTURE, SERVICE BRAKES, ELECTRONIC STABILITY CONTROL**

**NHTSA ID Number:** 11014797

**Incident Date** July 28, 2017

**Consumer Location** FREDERICA, DE

**Vehicle Identification Number** JTDKN3DU7C5****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**0

**DEATHS**0

ON JULY 28, 2017, I WAS DRIVING ALONG WITH MY THREE CHILDREN. I PULLED INTO A DRIVEWAY TO PARK MY VEHICLE BEHIND A PARKED VEHICLE. THERE WAS APPROXIMATELY A 2 FOOT SPAN BETWEEN THE BACK OF THE VEHICLE

AND THE FRONT OF MY 2012 TOYOTA PRIUS. TO THE RIGHT OF THE PARKED VEHICLE WAS A PARKED TRUCK. BEING THAT I WAS PULLING INTO A SPACE TO PARK MY VEHICLE, I WAS TRAVELING EXTREMELY SLOWLY. I BEGAN TO PRESS ON MY BRAKE TO PARK THE VEHICLE AND INSTANTLY KNEW THERE WAS A PROBLEM. UPON DEPRESSING THE BRAKE, SEVERAL LIGHTS BEGAN TO FLASH WITHIN THE DASH TO INCLUDE BUT NOT LIMITED TO THE ABS, WARNING LIGHT, AND THE LIGHT WITH VEHICLE SWERVE LINES. OTHER LIGHTS WERE ALSO FLASHING, BUT I DO NOT RECALL EACH ONE. THE BRAKE PAD INSTANTLY WENT STRAIGHT TO THE FLOOR WITH NO PRESSURE. THE VEHICLE WOULD NOT STOP AND CONTINUED TO TRAVEL FORWARD WITH ACCELERATION. TO AVOID HITTING THE VEHICLE IN FRONT OF ME I BEGAN TO TURN MY WHEEL TO THE RIGHT. THE VEHICLE CONTINUED TO ACCELERATE AND CAME INTO CONTACT WITH THE TRUCK THAT WAS TO MY FRONT-RIGHT. MY PRIUS FAILED TO SLOW OR STOP. IT CONTINUED TO ACCELERATE AND BEGAN PUSHING THE TRUCK UP THE DRIVEWAY AND INTO THE METAL GARAGE DOOR WITH THE BRAKE PEDAL BEING DEPRESSED THE ENTIRE TIME. EVENTUALLY, THE CAR CAME TO A STOP AND THE LIGHTS CONTINUED TO FLASH PRIOR, DURING, AND AFTER THE INCIDENT. AFTER THE CAR WAS TOWED TREAD WHEEL MARKS WERE FOUND ON THE DRIVEWAY WHERE THE WHEELS SPUN AND LEFT AN IMPRINT IN THE ASPHALT. I AND MY CHILDREN WERE UNINJURED HOWEVER, THE INCIDENT WAS INCREDIBLY TRAUMATIC. THE VEHICLE WAS DEEMED A TOTAL LOSS BY MY INSURANCE COMPANY AND AS OF YET TO BE PROCESSED FOR DIAGNOSTIC TESTING BY TOYOTA. THE TOYOTA CARE SERVICE WAS INFORMED OF THE ACCIDENT. TOYOTA BELIEVES IT TO BE ASSOCIATED WITH THE INTELLIGENCE COMPONENT OF THE VEHICLE, HOWEVER DETERMINATION IS CURRENTLY UNKNOWN UNTIL DIAGNOSTIC IS PERFORMED.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2012 |

June 21, 2016 **NHTSA ID NUMBER: 10875625**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 10875625

**Incident Date** May 24, 2016

**Consumer Location** SMITHTOWN, NY

**Vehicle Identification Number** JTDKN3DU8A0****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**0

**DEATHS**0

TL* THE CONTACT OWNS A 2012 TOYOTA PRIUS. WHILE DRIVING 20 MPH, THE BRAKE PEDAL WAS DEPRESSED, BUT FAILED TO ENGAGE. AS A RESULT, THE CONTACT'S VEHICLE CRASHED INTO THE REAR OF ANOTHER VEHICLE. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS NOT FILED AND THERE WERE NO INJURIES. THE CONTACT WAS ABLE TO DRIVE THE VEHICLE AWAY FROM THE CRASH SCENE. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE CONTACT STATED THAT THE FAILURE RECURRED INTERMITTENTLY. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 135,000.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2012 |

August 18, 2015 **NHTSA ID NUMBER: 10749388**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 10749388

**Incident Date** August 14, 2015

**Consumer Location** BETHLEHEM, PA

**Vehicle Identification Number** JTDKN3DU2C1****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**0

**DEATHS**0

VEHICLE HAD LITTLE OR NO BRAKING POWER IN A PANIC STOP SITUATION.
THIS WAS LIKELY CAUSE BY A DELAY SWITCHING FROM REGENERATIVE
BRAKING TO MECHANICAL BRAKES.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2012 |

July 24, 2014 **NHTSA ID NUMBER: 10616134**

**Components: STRUCTURE, STEERING, SERVICE BRAKES**

**NHTSA ID Number:** 10616134

**Incident Date** June 17, 2014

**Consumer Location** NEWPORT BEACH, CA

**Vehicle Identification Number** JTDKN3DU3C5****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES0**

**DEATHS0**

I WAS DRIVING ON MY RESIDENTIAL STREET AND STEPPED ON THE BRAKE TO SLOW DOWN TO MAKE A LEFT TURN INTO MY DRIVEWAY. THE CAR FAILED TO SLOW DOWN OR STOP, AND INSTEAD WENT OVER THE CURB, VEERING TO THE RIGHT AND SIDE SWIPED THE LEFT SIDE OF MY NEIGHBOR'S CAR, NARROWLY MISSING HIS GARAGE.THE CAR THEN SIDE SWIPED A TREE ON MY LEFT (ON PROPERTY BETWEEN MY AND NEIGHBOR'S PROPERTY.) THE FRONT END OF THE CAR CRASHED INTO A TREE, SAVING ME FROM ROLLING ABOUT 900 FEET TO THE STREET BELOW. THE ENTIRE TIME OF THIS INCIDENT THE BRAKES NEVER ENGAGED (PEDAL WAS DOWN TO FLOOR) AND I FRANTICALLY TRIED TO STEER TO AVOID HITTING ANYTHING. A WITNESS, STANDING ON THE STREET, CONFIRMED MY BRAKE LIGHTS WERE ON. CAR WAS SERVICED BY TOYOTA (WORLD CLASS INSPECTION) 15 DAYS BEFORE THE INCIDENT. INSPECTION REPORT INDICATED BRAKE FLUID LEVEL AND BRAKE LINING WERE "CHECKED AND OK." AFTER THE INCIDENT THE CAR WAS TOWED TO A REPAIR SITE WHERE THE OPERATOR DEMONSTRATED TO ME THAT THE BRAKES WERE NONEXISTENT AND THE BRAKE FLUID LEVEL WAS STILL APPROPRIATE. CAR WAS DEEMED TOTALED. *TR

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2012 |

April 24, 2014 **NHTSA ID NUMBER: 10584723**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 10584723

**Incident Date** April 21, 2014

**Consumer Location** CAMPBELL, CA

**Vehicle Identification Number** JTDKN3DUXC0****

**Summary of Complaint**

**CRASHYes**

**FIRENo**

**INJURIES0**

**DEATHS0**

I WAS TRAVELING ABOUT 20 MILES AN HOUR DURING TRAFFIC HOUR WHEN I SAW THE CAR STOPPED IN FRONT OF ME. I HAD AT LEAST 4 CAR DISTANCE WHEN I APPLIED BRAKES. NORMALLY, I CAN FEEL THE SEAT BELT TIGHTEN, CARS JERKING OR SHAKE DUE TO ANTI-LOCK BRAKE WHEN YOU STEP ON THE BRAKE HARD. BUT THIS TIME, I DID NOT FEEL THE CAR SLOW DOWN WHEN I STEPPED ON BRAKE ALL THE WAY DOWN, IT CONTINUE TO CRUISE A LITTLE BEFORE IT SLOW DOWN, BUT BY THEN, I HAVE ALREADY HIT THE CAR IN FRONT OF ME.

THIS CAR WAS SERVICED REGULARLY, DURING MY LAST VISIT 3 WEEKS AGO, I WAS NOTIFIED THAT MY CAR IS ON THE RECALL LIST FOR SOFTWARE UPDATE. *TR

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2012 |

April 11, 2014 **NHTSA ID NUMBER: 10579128**

**Components: SERVICE BRAKES, AIR BAGS**

**NHTSA ID Number:** 10579128

**Incident Date** March 29, 2014

**Consumer Location** PHOENIX, AZ

**Vehicle Identification Number** N/A

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**0

**DEATHS**0

CAR IN FRONT SLOWED THEN STOPPED QUICKLY AS THE CAR AHEAD OF IT ATTEMPTED TO USE THE MIDDLE LANE IMPROPERLY (NOT A TURN LANE AT THAT TIME), NOT MOVING FULLY NOR QUICKLY INTO THE LANE. CAR IN FRONT STOPPED. APPLIED BRAKES IMMEDIATELY TO THE PRIUS C TO SLOW, THEN ADDED ONE RAPID PUMP, AND ULTIMATELY PUSHED THE PEDAL TO THE FLOOR. THE PRIUS DID LITTLE MORE THAN SLOW (WITHOUT EVEN A JOLT FROM THE FIRM APPLICATION OF THE BRAKES), CAUSING A CRASH INTO THE REAR OF THE CAR IN FRONT AND SIGNIFICANT DAMAGE TO THE ENTIRE FRONT END. NO AIRBAG DEPLOYMENT. *JS

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS C | 2012 |

April 10, 2014 **NHTSA ID NUMBER: 10578888**

**Components: SERVICE BRAKES, AIR BAGS**

**NHTSA ID Number:** 10578888

**Incident Date** April 4, 2014

**Consumer Location** ARMONK, NY

**Vehicle Identification Number** N/A

**Summary of Complaint**

**CRASH**Yes

**FIRENo**

**INJURIES0**

**DEATHS0**

TL* THE CONTACT OWNS A 2012 TOYOTA PRIUS. THE CONTACT STATED THAT WHILE DRIVING 25 MPH, THE VEHICLE WAS CRASHED INTO FROM THE REAR. THE DRIVER ATTEMPTED TO ENGAGE THE BRAKES HOWEVER, THE BRAKES BECAME UNRESPONSIVE. AS A RESULT, THE DRIVER CRASHED INTO ANOTHER VEHICLE AND THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED AND NO INJURIES WERE REPORTED. THE VEHICLE WAS TOWED TO THE DEALER AND THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE VIN WAS NOT AVAILABLE. THE FAILURE AND CURRENT MILEAGE WAS 60,000.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2012 |

January 18, 2014 **NHTSA ID NUMBER: 10560460**

**Components: VEHICLE SPEED CONTROL, SERVICE BRAKES**

**NHTSA ID Number:** 10560460

**Incident Date** December 19, 2013

**Consumer Location** SANTA MONICA, CA

**Vehicle Identification Number** JTDZN3EU3C3****

**Summary of Complaint**

**CRASHYes**

**FIRENo**

**INJURIES0**

**DEATHS0**

I BOUGHT PRIUS V IN FEBRUARY 2012. I'VE NOTICED FEW TIMES ISSUES WITH BRAKES. WHILE DECELERATING WITH MY FOOT ON THE BRAKE PEDAL TO SLOW THE CAR TO A STOP AND IF THE CAR GOES OVER A POTHOLE OR SLIGHT BUMP ON THE ROAD THEN CAR ACCELERATES FORWARD BEFORE COMING TO A STOP. THIS IS SAFETY HAZARD SINCE IT ALMOST LED TO HITTING THE OTHER CAR'S REAR BUMPER.

ALSO, I'VE GOTTEN INTO AN ACCIDENT IN DECEMBER 2013 WHERE THERE WAS ANOTHER BRAKE ISSUE. I STOPPED MY CAR IN THE INCLINE ROAD BY PUTTING MY FOOT ON THE BRAKE PEDAL. THEN, I CHANGED THE GEAR SHIFT TO REAR AND SLOWLY TOOK MY FOOT OFF THE BRAKE PEDAL SO THAT I CAN BACK INTO THE STREET PARKING WHICH WAS ONLY ABOUT 4 TO 5 FEET AWAY. SUDDENLY, CAR SPED DOWN THE ROAD GOING REAR DIRECTION TO THE DIRECTLY OPPOSITE STREET AND HIT TWO PARKED CARS. I HAD PUT THE FOOT DOWN ON THE BRAKE PEDAL WHEN I NOTICED THE CAR GOING REAR FAST BUT IT WOULD NOT STOP THE CAR FROM GOING DOWN THE ROAD. I HAD NO CONTROL OVER THE CAR OR THE SPEED. THIS IS MAJOR SAFETY HAZARD SINCE SOMEONE COULD HAVE BEEN SERIOUSLY INJURED WITH LOSING CONTROL OF THE BRAKE AND ACCELERATION. I'VE OWNED OTHER TOYOTA CAR (CAMRY) BEFORE BUT NEVER HAD THIS ISSUE UNTIL THIS PRIUS V. MY CAR HAS BEEN IN BODY SHOP FOR OVER A MONTH WITH REPAIRS. I PLAN TO TAKE THE CAR TO THE TOYOTA DEALER TO CHECK OUT THIS BRAKE ISSUE. *TR

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS V | 2012 |

September 6, 2013 **NHTSA ID NUMBER: 10542291**

**Components: SERVICE BRAKES, VEHICLE SPEED CONTROL, AIR BAGS**

**NHTSA ID Number:** 10542291

**Incident Date** September 5, 2013

**Consumer Location** Unknown

**Vehicle Identification Number** JTDKN3DU965****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**0

**DEATHS**0

WHILE TRAVELING IN A RAIN STORM AT 17MPH, I TRIED TO ENGAGE THE BRAKES TO PREVENT FROM CRASHING INTO AN 18 WHEELER AND THE BRAKES DID NOT WORK. I REPEATEDLY TRIED TO STOP THE CAR AND THE CAR WAS ACCELERATING EVEN THOUGHT I WAS APPLYING THE BRAKES NOT THE GAS. THE CAR WOULD NOT SHUT DOWN, GO INTO PARK OR NEUTRAL. I DID CRASH INTO THE 18 WHEELER BECAUSE THE ENGINE WAS ACCELERATING AND I WANTED TO STOP.WHEN I CRASHED THE AIRBAGS DID NOT DEPLOY. EVEN AFTER IMPACT THE CAR WAS STILL ACCELERATING LIKE IT WAS TRYING TO PUSH THE 18 WHEELER. EVENTUALLY THE CAR POWERED DOWN AFTER REPEATEDLY PUSHING EVERY BUTTON POSSIBLE. I HAD THE CAR TOWED TO A TOYOTA DEALERSHIP. I PHONED YOUR HOTLINE BUT THE VIN NUMBER I GAVE HAD A NUMBER THAT WAS WRONG MY PRIOR CONFIRMATION NUMBER IS 10542285. TOYOTA IS AWARE AND I AM WAITING FOR THEM TO CALL ME BACK.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2012 |

April 2, 2013 **NHTSA ID NUMBER: 10505322**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 10505322

**Incident Date** March 30, 2013

**Consumer Location** HUDSON, FL

**Vehicle Identification Number** JTDZN3EU6C3****

**Summary of Complaint**

**CRASH** Yes

**FIRE** No

**INJURIES** 0

**DEATHS** 0

SLOWED FOR RED LIGHT THAT WAS VISIBLE FOR A GREAT DISTANCE SO COASTING AND APPLIED BRAKES AND THEY WEREN'T THERE....I HIT THE CAR IN FRONT OF ME, HE HIT THE CAR IN FRONT OF HIM....MOSTLY DINGS IN FENDERS....MY HOOD WAS UP ON ONE SIDE, AND FRONT PANEL MOVED....NOBODY WAS HURT

POLICE CAME AND SAT IN THE CAR AND APPLIED BRAKE AND IT WENT TO THE FLOOR. HE SAID "YOU HAVE NO BRAKES; DO NOT DRIVE THE CAR, HAVE IT TOWED". *TR

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS V | 2012 |

May 15, 2012 **NHTSA ID NUMBER: 10458505**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 10458505

**Incident Date** May 14, 2012

**Consumer Location** PORTLAND, OR

**Vehicle Identification Number** JTDKDTB36C1****

- 57 -

**Summary of Complaint**

**CRASHYes**

**FIRENo**

**INJURIES0**

**DEATHS0**

AS I WAS APPROACHING A TURN I BEGAN TO BRAKE AND THE BRAKES FAILED. I TRIED PRESSING THE BRAKE PEDAL HARDER AND MAKING SURE THAT I HAD PROPER FOOT PLACEMENT AND IT FELT LIKE THE CAR ACCELERATED AT THAT POINT. SINCE THE CAR WAS NOT SLOWING DOWN I WAS UNABLE TO MAKE THE TURN AND ENDED UP CROSSING THE ROAD DIAGONALLY AND GOING UP ONTO THE CURB. ONCE THE CAR WAS OVER THE CURB AND IN THE GRASS THE BRAKES FINALLY ENGAGED AND THE VEHICLE CAME TO A STOP. *JS

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2012 |

August 12, 2019 **NHTSA ID NUMBER: 11243249**

**Components: SERVICE BRAKES, VEHICLE SPEED CONTROL**

**NHTSA ID Number:** 11243249

**Incident Date** August 7, 2019

**Consumer Location** ENNIS, TX

**Vehicle Identification Number** N/A

**Summary of Complaint**

**CRASHYes**

**FIRENo**

**INJURIES1**

**DEATHS0**

TL* THE CONTACT OWNED A 2013 TOYOTA PRIUS. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 10 MPH, THE DRIVER PRESSED THE BRAKE PEDAL TO STOP THE VEHICLE BUT THE VEHICLE ACCELERATED FORWARD AND CRASHED INTO A SECOND VEHICLE. DURING THE CRASH THE DRIVER SUSTAINED MULTIPLE CONTUSIONS TO THE BODY INCLUDING THE CHEST AREA WHICH REQUIRED MEDICAL TREATMENT. THE VEHICLE WAS DESTROYED AND TOWED AWAY. A POLICE REPORT #159681-2019 WAS TAKEN AT THE SCENE. THE LOCAL DEALER TOYOTA OF RICHARDSON (1221 N. CENTRAL EXPY. RICHARDSON TX.) THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE VIN WAS NOT AVAILABLE. THE FAILURE MILEAGE WAS 120,000.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2013 |

March 14, 2019 **NHTSA ID NUMBER: 11186947**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 11186947

**Incident Date** March 6, 2019

**Consumer Location** SARASOTA, FL

**Vehicle Identification Number** JTDKN3DU6D5****

**Summary of Complaint**

**CRASHYes**

**FIRENo**

**INJURIES0**

**DEATHS0**

SOMETHING STARTED BUZZING EVERY FEW SECONDS IN ENGINE
COMPARTMENT TOWARD DRIVERS SIDE FIREWALL. AT SLOW SPEEDS, BRAKES
PULSATED WITH UNEVEN BRAKING. AS TIME WENT ON, BUZZING WAS MORE
FREQUENT. WARNING LIGHTS FLASHED ONCE BUT WENT OUT. AFTER THAT,
WHEN PARKING CAR, THE BRAKES WENT ALL THE WAY TO THE FLOOR AND I
HIT ANOTHER CAR AT PARKING SPEEDS. DEALER SAYS 'BRAKE ACTUATOR
PUMP' AND WILL COST NEARLY $3000 TO FIX. THIS PUMP ALSO WENT OUT ON
MY 2005 PRIUS! BUT THAT WAS COVERED BY A 'HIDDEN' WARRANTY THAT I
FOUND WHILE GOOGLING THE ISSUE. WOULD HAVE PAID FULL PRICE FOR
THAT REPAIR IF I HAD NOT RUN ACROSS THAT TSB. THIS IS OBVIOUSLY A BIG
MONEY MAKER FOR TOYOTA FIXING THESE BUT IS A HUGE DANGER TO THE
MANY DRIVERS THIS HAS HAPPENED TO OVER THE YEARS. PLEASE DO
SOMETHING ABOUT IT BEFORE SOMEONE GETS HURT. IT IS A RECURRING AND
SUBSTANTIAL THREAT TO DRIVER SAFETY THAT MANY DRIVERS WILL
OVERLOOK BECAUSE OF THE INFLATED COST OF THE PARTS. THANK YOU.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2013 |

November 2, 2016 **NHTSA ID NUMBER: 10923921**

**Components: AIR BAGS, SERVICE BRAKES, SEAT BELTS**

**NHTSA ID Number:** 10923921

**Incident Date** October 17, 2016

**Consumer Location** TUCSON, AZ

**Vehicle Identification Number** JTDKN3DP4D3****

**Summary of Complaint**

**CRASHYes**

**FIRENo**

**INJURIES1**

**DEATHS0**

I WAS DRIVING STRAIGHT ON A CITY ROAD WITH THE FLOW OF HEAVY TRAFFIC AT ABOUT 40 MILES PER HOUR WHEN THE CAR IN FRONT OF ME CAME TO A SUDDEN STOP. I IMMEDIATELY SLAMMED ON MY BRAKES VERY HARD. AT THE TIME I DID THIS I HAD PLENTY OF SAFE DISTANCE BETWEEN US. BUT, THE BRAKES NEVER CAME ON AND I ENDED UP RUNNING INTO THE REAR END OF AN SUV AT APPARENTLY FULL SPEED WITHOUT ANY NOTICEABLE SLOWDOWN. THE BRAKES DID NOT COME ON. THEY DIDN'T GRAB, AND THEY DIDN'T MAKE ANY SCREECHING NOISE AND THERE WERE NO TIRE MARKS ON THE ROAD. ALSO ALL OF THE AIRBAGS DEPLOYED AND THIS WAS A FRONTAL IMPACT, WHICH WAS VERY SURPRISING AND SUFFOCATING. A CLOUD OF DUST FILLED THE CABIN OF THE CAR AND I COULD NOT BREATHE. I WAS LITERALLY SUFFOCATING UNTIL I WAS ABLE TO OPEN THE DOOR AND GET OUT OF THE VEHICLE. I DIDN'T EVEN FEEL THE SEAT BELT TIGHTEN UP BEFORE THE CRASH. THE BRAKES NEVER FELT LIKE THEY CAME ON AT ALL. *TR *JS

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2013 |

October 29, 2016 **NHTSA ID NUMBER: 10919990**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 10919990

**Incident Date** October 5, 2016

**Consumer Location** LINCOLN, CA

**Vehicle Identification Number** JTDKN3DU0D0****

**Summary of Complaint**

**CRASHYes**

**FIRENo**

**INJURIES0**

**DEATHS0**

I WAS TRAVELING LESS THAN 25 MPH ON A CITY STREET WHEN THE CAR IN FRONT SUDDENLY STOPPED. I PANIC STOPPED - MOVING MY FOOT OFF THE GAS PEDAL AND I BELIEVE THAT I HIT THE BRAKE PEDAL. THE BRAKES DID NOT APPLY, AND I REAR-ENDED THE CAR IN FRONT. I LEFT NO SKID MARKS. OBVIOUSLY I COULD HAVE NOT ACTUALLY PUSHED THE BRAKE PEDAL, BUT I SINCERELY BELIEVE THAT I DID. THE CAR BRAKES SEEM TO BE FINE, SO IF THE CAR FAILED TO STOP THE PROBLEM HAD TO BE IN THE COMPUTER. *TR

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
| --- | --- | --- |
| TOYOTA | PRIUS | 2013 |

April 14, 2016 **NHTSA ID NUMBER: 10855586**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 10855586

**Incident Date** April 14, 2016

**Consumer Location** AUSTIN, TX

**Vehicle Identification Number** N/A

**Summary of Complaint**

**CRASHYes**

**FIRENo**

**INJURIES0**

**DEATHS0**

WHEN THE DRIVER HAS TO SLAM ON THE BRAKES REALLY QUICKLY THE CAR
DOES NOT SLOWDOWN AT ALL. THE SKID LIGHT COMES ON THE DASH BOARD,
BUT OTHERWISE THE CAR DOES NOT STOP. THIS HAPPENS EVEN ON A DRY
SURFACE, WITH NO MOISTURE ON THE SURFACE, AT SPEEDS AS LOW AS 20-30
MILES PER HOUR. IT ALMOST ALWAYS DOES IT. IF THE DRIVER LIGHTLY TAP
THE BREAKS, THEN THE CAR WILL DECELERATE, BUT NOT IF THE DRIVER HAS
TO ABRUPTLY STOPPED. THIS IS QUILT A PROBLEM GIVEN THAT SOMETIMES
YOU NEED THE CAR TO STOP SUDDENLY IT IT SIMPLY WON'T AT SPEEDS OF 20
MORE. THE CAR JUST STARTS TO SKID. IT WILL NOT STOP OR GAIN TRACTION
WITH THE SURFACE THAT IT IS ON. THIS MEANS THAT IN A SITUATION WHERE
THE DRIVER NEEDS TO HIT THE BREAKS ALL THE WAY DOWN, THE CAR STILL
WON'T STOP. THIS PROBLEM IS MUCH WORSE IF ON WET OR NEGATIVE
SLOPING ROADS. HOWEVER, IT CAN HAPPEN EVEN ON COMPLETE DRY
SURFACE.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2013 |

March 28, 2016 **NHTSA ID NUMBER: 10851950**

**Components: AIR BAGS, SERVICE BRAKES**

**NHTSA ID Number:** 10851950

**Incident Date** March 24, 2016

**Consumer Location** AUSTIN, TX

**Vehicle Identification Number** JTDKN3DU1D5****

**Summary of Complaint**

**CRASHYes**

**FIRENo**

**INJURIES1**

**DEATHS0**

TL* THE CONTACT OWNS A 2013 TOYOTA PRIUS. WHILE DRIVING APPROXIMATELY 25 MPH ON A ROADWAY, THE BRAKE PEDAL WAS APPLIED AND MADE AN ABNORMAL NOISE. ANOTHER VEHICLE CRASHED INTO THE FRONT PASSENGER SIDE OF THE CONTACT'S VEHICLE WHILE THE CONTACT WAS MAKING A TURN. WHEN THE BRAKE PEDAL WAS APPLIED, THE VEHICLE SURGED FORWARD AT A HIGH RATE OF SPEED. THE FRONT AND REAR DRIVER SIDE AND THE REAR PASSENGER SIDE CURTAIN AIR BAGS DID NOT DEPLOY. THE FRONT AND REAR PASSENGER SIDE AIR BAGS DEPLOYED. THE VEHICLE WAS TOWED TO A YARD AND THEN TOWED TO A REPAIR SHOP FOR FURTHER INSPECTION BY THE INSURANCE COMPANY. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE CONTACT WAS WAITING TO DETERMINE IF AN INVESTIGATOR WOULD BE SENT. A POLICE REPORT WAS FILED. THE DRIVER SUSTAINED A HEAD INJURY THAT REQUIRED MEDICAL TREATMENT AND WAS HAVING DIFFICULTY WITH VISIBILITY DUE TO THE IMPACT OF THE CRASH AND NO AIR BAG DEPLOYMENT. THE APPROXIMATE FAILURE MILEAGE WAS 64,000.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
| --- | --- | --- |
| TOYOTA | PRIUS | 2013 |

January 11, 2016 **NHTSA ID NUMBER: 10819439**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 10819439

**Incident Date** December 29, 2015

**Consumer Location** SHERMAN OAKS, CA

**Vehicle Identification Number** JTDKN3DU6D1****

**Summary of Complaint**

**CRASHYes**

**FIRENo**

**INJURIES1**

**DEATHS0**

I WAS DRIVING HOME IN MY 2013 TOYOTA PRIUS ON TUESDAY, DECEMBER 29, 2015, AT APPROXIMATELY 4:30P.M. WHILE TURNING RIGHT FROM THE STREET ON WHICH I LIVE INTO MY DRIVEWAY, THE CAR, AFTER I APPLIED THE BRAKES, SUDDENLY SURGED FORWARD. IN SPITE OF CONTINUOUSLY PUSHING DOWN ON THE BRAKES, THE CAR WOULD NOT STOP. THE DRIVEWAY SHOWS SKID MARKS FROM MY ATTEMPTS TO STOP THE CAR. THE CAR DID NOT STOP. THE BRAKES FAILED.

THE CAR SHOT FORWARD, CRASHING INTO THE CLOSED WOODEN GARAGE DOOR AND THE WALL TO THE LEFT OF THE GARAGE DOOR. THE GARAGE DOOR BROKE AND ONE HALF OF THE GARAGE DOOR SPLIT AND WAS PUSHED INTO THE GARAGE. THE GARAGE DOOR COLLAPSED ON MY CAR AS WELL AS ITEMS STORED IN THE GARAGE INCLUDING PARTS OF THE GARAGE STRUCTURE AND LARGE SECTIONS OF A STORAGE UNIT, WHICH WAS BOLTED TO THE WALL. APPROXIMATELY 90% OF MY CAR WAS INSIDE THE GARAGE. I TRIED TO EXIT THE CAR THROUGH THE DRIVER'S SIDE BUT THE DOOR WOULD NOT OPEN. I CRAWLED TO THE TRUNK AREA AND COULD NOT FIND A MECHANICAL RELEASE FOR THAT DOOR. FINALLY I FORCED OPENED THE DRIVER'S SIDE REAR DOOR AND EXITED THE CAR THROUGH THE BROKEN WALL.

IF THE BRAKES HAD NOT FAILED THIS WOULD HAVE NOT HAVE HAPPENED. AS A RESULT OF THE BRAKE FAILURE, I HAVE INCURRED SUBSTANTIAL LOSS, INCLUDING THE GARAGE DOOR (A TOTAL LOSS), DAMAGE TO STRUCTURAL SUPPORT TO THE GARAGE WALL, A BUILT-IN GARAGE STORAGE UNIT, CONTENTS STORED IN THE GARAGE AND SUBSTANTIAL DAMAGE TO THE CAR. FORTUNATELY, I DID NOT SUFFER ANY MAJOR PHYSICAL INJURIES, ALTHOUGH FOLLOWING THE COLLISION I EXPERIENCED AND CONTINUE TO EXPERIENCE MUSCLE, JOINT, HIP, NECK AND BACK PAIN AND DISCOMFORT. IN ADDITION, I CONTINUE TO EXPERIENCE EMOTIONAL DISTRESS FROM THIS INCIDENT.

I WANT TOYOTA TO PERFORM A COMPLETE DIAGNOSTIC SAFETY CHECK OF ALL SYSTEMS INCLUDING THE BRAKES AND ANY SOFTWARE THAT CONTROLS THE BRAKING SYSTEM.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2013 |

August 28, 2014 **NHTSA ID NUMBER: 10629088**

**Components: ENGINE, FUEL/PROPULSION SYSTEM, SERVICE BRAKES**

**NHTSA ID Number:** 10629088

**Incident Date** July 27, 2014

**Consumer Location** EDGEWATER, FL

**Vehicle Identification Number** JTDKN3DU8D5****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**0

**DEATHS**0

THE RENTED 2013 TOYOTA PRIUS WITH ONE PASSENGER AND THE DRIVER, PULLED INTO A DIAGONAL PARKING SPACE IN FRONT OF A STRIP MALL STORE. TRAVELING AT MAYBE 5 MPH TO PARK, THE CAR'S BRAKE PEDAL GAVE WAY AND HIT THE FLOOR FLAT, PROVIDING NO BRAKING AT ALL. THE CAR KEPT ROLLING TOWARD THE CORNER OF THE BRICK BUILDING. THE CAR THEN SUDDENLY SURGED AHEAD, SMASHING INTO THE CORNER OF THE ENTRY TO THE BRICK BUILDING AT SUCH A SUDDEN FORCE THAT THE DOORS TO THE BUILDING WERE WEDGED SHUT. AFTER EMERGENCY VEHICLE TOOK THE DRIVER AND PASSENGER TO THE HOSPITAL, THE POLICEMAN ON THE JOB, AS WELL AS THE WRECKER SERVICE THAT CAME TO EXTRACT THE VEHICLE, COULD NOT MOVE THE CAR BECAUSE THERE WERE NO BRAKES, AS STATED IN THE POLICE REPORT. THE WRECKER DRIVER COULD NOT LOAD THE VEHICLE TO TOW USING THE CAR'S POWER BECAUSE THERE WERE NO BRAKES. NO AIRBAGS DEPLOYED, BUT THE CONDITION OF THE CORNER SHOWS DAMAGE THAT A VEHICLE MOVING FASTER THAN 5 MPH WOULD INCUR. THE POLICEMAN CAME TO THE HOSPITAL TO INFORM THE DRIVER THAT THERE

- 66 -

INDEED WERE NO BRAKES ON THE CAR AND THE DRIVER WAS NOT AT FAULT - THE VEHICLE'S BRAKING AND ACCELERATION SYSTEMS HAD FAILED.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
| --- | --- | --- |
| TOYOTA | PRIUS | 2013 |

May 19, 2014 **NHTSA ID NUMBER: 10592400**

**Components: SERVICE BRAKES, VEHICLE SPEED CONTROL**

**NHTSA ID Number:** 10592400

**Incident Date** October 25, 2011

**Consumer Location** Unknown

**Vehicle Identification Number** JTDKN3DU6C1****

**Summary of Complaint**

**CRASH** Yes

**FIRE** No

**INJURIES** 0

**DEATHS** 0

TL * THE CONTACT OWNS A 2013 TOYOTA PRIUS. WHILE DRIVING 40 MPH, THE CONTACT DEPRESSED THE BRAKE PEDAL AND THE VEHICLE ACCELERATED. THE VEHICLE RESUMED TO 40 MPH ONCE THE BRAKE PEDAL WAS DEPRESSED AGAIN. THE CONTACT DEPRESSED THE BRAKE PEDAL AGAIN AND THE VEHICLE ACCELERATED. A CRASH OCCURRED. THERE WERE NO INJURIES AND A POLICE REPORT WAS FILED. THE FAILURE RECURRED ON THREE SEPARATE OCCASIONS. THE MANUFACTURER WAS NOTIFIED. THE VEHICLE WAS TAKEN TO A MECHANIC WHO STATED THAT THERE WAS A DELAY IN THE BRAKING SYSTEM. THE FAILURE MILEAGE WAS 12,000.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2013 |

March 19, 2014 **NHTSA ID NUMBER: 10573591**

**Components: STRUCTURE, SERVICE BRAKES, WHEELS**

**NHTSA ID Number:** 10573591

**Incident Date** March 6, 2014

**Consumer Location** HOUSTON, TX

**Vehicle Identification Number** JTDKN3DU8D5****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**0

**DEATHS**0

WHILE THE CAR WAS GOING DOWN THE RAMP TO THE PARKING BASEMENT, THE BRAKE IN OUR PRIUS DIDN'T FUNCTION EVEN THOUGH THE DRIVER SLAMMED ON IT AND THE CAR CONTINUED TO PICKED UP ACCELERATION. NONE OF THE AIRBAGS DEPLOYED EITHER, AMAZINGLY. THE DRIVER WAS ABLE TO MAKE A RIGHT TURN AND MISSED THE WALL/CONCRETE PILLAR, BUT THE DRIVER HIT A PARKED CAR AND THAT'S WHAT STOPPED THE PRIUS FROM MOVING FURTHER. *TR

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2013 |

December 19, 2013 **NHTSA ID NUMBER: 10556587**

**Components: SERVICE BRAKES, VEHICLE SPEED CONTROL**

**NHTSA ID Number:** 10556587

**Incident Date** December 16, 2013

**Consumer Location** CLEVELAND, TN

**Vehicle Identification Number** JTDKDTB38D1****

**Summary of Complaint**

**CRASH** Yes

**FIRE** No

**INJURIES** 0

**DEATHS** 0

2013 PRIUS C TWO, BOUGHT BRAND NEW WITH 15 MILES ON IT 5 WEEKS AGO. A FEW TIMES WHEN DRIVING, I NOTICED THE BRAKES SEEMED WEAK, LIKE THEY WEREN'T STOPPING THE CAR VERY WELL EVEN AT LOW SPEEDS. MY DRIVING IS MOSTLY IN TOWN ON RESIDENTIAL STREETS, SO I'M RARELY GOING OVER 35 MPH. EVEN SO, I'D HAVE TO REALLY MASH THE PEDAL ALL THE WAY TO THE FLOOR TO GET THE CAR TO COME TO A COMPLETE STOP, OTHERWISE IT WOULD KEEP MOVING FORWARD. SEVERAL TIMES I ENDED UP ABOUT 5-10 FEET PAST THE LINE, STICKING THE FRONT BUMPER INTO CROSS TRAFFIC. LUCKILY NO ONE HIT ME. I CHALKED IT UP TO THE QUIRKS OF A DIFFERENT CAR THAN THE ONE I WAS USED TO, AND FIGURED IF IT KEPT HAPPENING I'D TAKE IT TO THE DEALERSHIP.

ON MONDAY, MY WIFE WAS STOPPED AT A RED LIGHT. THE LIGHT TURNED GREEN AND THE CAR IN FRONT OF HER STARTED TO MOVE FORWARD. AFTER A FEW HUNDRED FEET, HE SUDDENLY SLAMMED ON HIS BRAKES. SHE SAID HER BRAKE PEDAL WENT ALL THE WAY TO THE FLOOR, AND THE PRIUS DIDN'T

SLOW DOWN AT ALL. SHE HIT HIM GOING ABOUT 25 MPH AND TOTALED THE PRIUS. SHE'S AN EXCELLENT DRIVER AND I'VE BEEN WITH HER BEFORE WHEN SHE'S HAD TO PANIC-STOP. SHE'S NEVER DRIVEN A CAR WITHOUT ABS, SO SHE IS USED TO PUSHING THE PEDAL HARD AND KEEPING HER FOOT ON IT. SHE WOULDN'T EVEN KNOW HOW TO "PUMP" THE PEDAL. SHE SWEARS THE PEDAL JUST WENT ALL THE WAY TO THE FLOOR AND THE CAR DIDN'T SLOW DOWN AT ALL. THANKFULLY, SHE'S OKAY AND NO ONE WAS INJURED. *TR

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2013 |

November 29, 2018 **NHTSA ID NUMBER: 11154835**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 11154835

**Incident Date** November 21, 2018

**Consumer Location** SANTA CLARITA, CA

**Vehicle Identification Number** JTDKN3DU4E0****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**3

**DEATHS**0

BRAKES COMPLETELY FAILED AND I REAR ENDED A CAR. I WAS STOPPING NORMALLY ON A CITY STREET. ACCORDING TO DASHCAM I WAS TRAVELING AT ABOUT 25MPH. THE CAR SLOWED TO ABOUT 12MPH WHEN THE BRAKES WENT DOWN TO THE FLOOR AND THE CAR ACCELERATED.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2014 |

November 13, 2018 **NHTSA ID NUMBER: 11151142**

**Components: SERVICE BRAKES, ELECTRONIC STABILITY CONTROL, ELECTRICAL SYSTEM**

**NHTSA ID Number:** 11151142

**Incident Date** November 12, 2018

**Consumer Location** NORTH CHARLESTON, SC

**Vehicle Identification Number** JTDKN3DU0E1****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**0

**DEATHS**0

THE CAR BRAKES FAILED AT LOW SPEEDS (10-15 MPH) AND BUMPED INTO THE CAR IN FRONT IN A STOP-AND-GO TRAFFIC ON THE WET FREEWAY AFTER A RECENT RAIN. THE BRAKE PEDAL WENT ALL THE WAY DOWN TO TOUCH THE FLOOR, AS IF THE BRAKE PEDAL WAS DISENGAGED FROM THE BRAKING SYSTEM AND THE ABS LIGHT DID NOT TURN ON AT THE TIME OF BRAKING. THE CAR WAS DRIVING IN THE STRAIGHT LINE AND IMMEDIATELY BEFORE THIS I WAS ABLE TO SUCCESSFULLY BRAKE THE CAR ON THE VERY SAME TRIP. SO THE PROBLEM IS INTERMITTENT. THIS IS THE SECOND TIME WITH THIS CAR, AS MY SPOUSE ALSO EXPERIENCED THE SIMILAR BRAKE FAILURE AT EVEN LOWER SPEEDS (<10 MPH) RESULTING IN TOUCHING THE CAR IN FRONT AND MINOR SCRATCH ON THE BUMPER. IT WAS A DRY DAY THEN AND ALMOST SIMILAR CIRCUMSTANCES. ASSOCIATED GEICO CLAIM NUMBER IS

0423477190101054. WE OPENED A CASE WITH TOYOTA TO CHECK THE DATA RECORDER. ASSOCIATED TOYOTA CASE NUMBER IS 181112370.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2014 |

January 23, 2018 **NHTSA ID NUMBER: 11064519**

**Components: STRUCTURE, SERVICE BRAKES, VEHICLE SPEED CONTROL**

**NHTSA ID Number:** 11064519

**Incident Date** January 22, 2018

**Consumer Location** CALEDONIA, MI

**Vehicle Identification Number** JTDKN3DU0E0****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**0

**DEATHS**0

ON A WINTER DAY MY CAR SLID DOWN A STEEP ROAD AND WOULD NOT STOP WHILE BREAKING, BOTH FRONT FENDER FLARES BROKE OFF CAUSING THE CAR TO ACT LIKE IT WAS ON A SLED. THE CAR EVENTUALLY STOPPED AFTER I PLACED IT IN NEUTRAL AND THEN SLID AGAIN AND THEN IT FINALLY STOPPED. I ALMOST KILLED MYSELF.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2014 |

December 16, 2016 **NHTSA ID NUMBER: 10935859**

**Components: FUEL/PROPULSION SYSTEM, SERVICE BRAKES**

**NHTSA ID Number:** 10935859

**Incident Date** October 9, 2016

**Consumer Location** LAKE WORTH, FL

**Vehicle Identification Number** JTDKN3DU1E1****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**0

**DEATHS**0

WHILE I WAS DOING A SLOW TURN IN A DRIVEWAY, MY BRAKE FAILED AND THE CAR CONTINUED TO ACCELERATE IN A FORWARD MOTION. WHEN I SHIFTED INTO REVERSE, THE CAR REVVED AND ROARED ACCELERATING AT FULL TILT. IT RACED ACROSS A ROAD INTO ANOTHER DRIVEWAY ONLY STOPPING WHEN WEDGED BETWEEN A GARAGE DOOR AND A TREE. TOYOTA TOOK THE TOTALED CAR AND HAD IT INSPECTED BY ENGINEERING ASSOCIATES AND INSURANCE AUTO AUCTIONS. THEIR RESPONSE IS THAT "THERE WAS NO SERIOUS DEFECTS IDENTIFIED." OBVIOUSLY, THE MOMENTARY MECHANICAL OR ELECTRONIC FAILURE OF MY CAR COULD NEVER BE DETECTED, SO ACCORDING TO TOYOTA, THERE WAS NOTHING TO CAUSE THE FAILURE. I FEEL TOTALLY VICTIMIZED AND BELIEVE TOYOTA SHOULD TAKE RESPONSIBILITY AND COMPENSATE ME FOR THE LOSS OF MY CAR.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2014 |

July 15, 2015 **NHTSA ID NUMBER: 10734278**

**Components: SERVICE BRAKES, AIR BAGS**

**NHTSA ID Number:** 10734278

**Incident Date** July 15, 2015

**Consumer Location** ROMEOVILLE, IL

**Vehicle Identification Number** JTDKDTB31E1****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**0

**DEATHS**0

TL* THE CONTACT OWNS A 2014 TOYOTA PRIUS. WHILE DRIVING APPROXIMATELY 25 MPH, THE CONTACT ATTEMPTED TO DEPRESS THE BRAKE PEDAL, BUT THE VEHICLE DID NOT STOP. AS A RESULT, A CRASH OCCURRED AND THE AIR BAGS DID NOT DEPLOY. THERE WERE NO WARNING INDICATORS ILLUMINATED. THE CONTACT WAS NOT INJURED AND A POLICE REPORT WAS FILED. THE MANUFACTURER WAS MADE AWARE OF THE ISSUE. THE APPROXIMATE FAILURE MILEAGE WAS 3,200.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2014 |

April 8, 2015 **NHTSA ID NUMBER: 10704553**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 10704553

**Incident Date** August 28, 2014

**Consumer Location** PARADISE, CA

**Vehicle Identification Number** JTDKN3DU1E1****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**0

**DEATHS**0

I PULLED MY 2014 TOYOTA PRIUS SLOWLY OUT OF A PARKING SLOT IN A SMALL PARKING LOT TURNING IT THE DIRECTION I WANTED TO GO ON A VERY SLIGHT SLANT DOWNHILL. BEFORE I COULD PUT IT IN DRIVE FROM REVERSE IT STARTED ROLLING DOWNWARD ON ITS OWN. WHEN I WENT TO APPLY THE BRAKES, THEY WERE SQUISHY AND DID NOT ENGAGE. I TRIED SEVERAL TIMES TO GET THEM TO ENGAGE BUT THEY NEVER DID. I WENT TO PUT THE EMERGENCY BRAKE ON BUT IT IS LOCATED SO HIGH UP IT WAS DIFFICULT TO GET MY FOOT UP THERE QUICKLY. MEANWHILE THERE WAS A TRUCK PARKED ACROSS THE END OF THE PARKING LOT LANE SO MY CAR ROLLED INTO THE TRUCK CREATING DENTS IN THE FRONT DOOR PANEL AND REAR DOOR PANEL. THIS WAS OBVIOUS BRAKE FAILURE. I WENT TO THE LOCAL TOYOTA REPAIR AND DEALERSHIP AND SPOKE WITH A SHOP EMPLOYEE. HE TOLD ME THAT THIS CAN ACTUALLY HAPPEN WHERE YOU CAN BACK A CAR UP AND TURN IT AND IT WILL GO ON ITS OWN (BUT IT SEEMS HE IMPLIED THAT THE "READY" LIGHT MIGHT NOT HAVE ENGAGED) AND THAT HE "HAD SEEN IT HAPPEN HIMSELF". IF THE TRUCK HAD NOT BEEN THERE, MY CAR WOULD HAVE

ROLLED DIRECTLY OUT INTO ONCOMING TRAFFIC ON THE MAIN THOROUGHFARE THROUGH TOWN WHICH HAD THE HUGE POTENTIAL OF CAUSING A MAJOR ACCIDENT WITH INJURIES. I DID TRY TO RECREATE THE EVENT IN A NONPOPULATED AREA IN A VERY SAFE MANNER AND WAS UNABLE TO DO SO. THAT EVEN SCARES ME MORE!!! AS YOU HAVE NO IDEA IF IT CAN OR WILL HAPPEN AGAIN. I SPENT $20,000 PLUS FOR A NEW CAR THAT I AM ALWAYS HYPER-CAUTIOUS IN BECAUSE NO ONE WILL FESS UP TO PROBLEMS. IF I SELL THE CAR IT WILL BE AT A GREAT LOSS WHICH I CANNOT AFFORD! IN THE INTERNET I NOTE THAT THERE WERE SIMILAR PROBLEMS WITH THE BRAKES, ESPECIALLY AROUND 2007 - MANY WERE DOCUMENTED BUT TOYOTA WAS NEVER TAKEN TO TASK RE: THESE CONSUMER COMPLAINTS AS I SUPPOSE THE CONSUMERS JUST COULDN'T "PROVE" THEM. AS USUAL MONEY TRUMPS HUMAN LIVES AND SAFETY. TOYOTA SHOULD BE ASHAMED OF THEMSELVES. *TR

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2014 |

February 1, 2015 **NHTSA ID NUMBER: 10680404**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 10680404

**Incident Date** January 31, 2015

**Consumer Location** CUPERTINO, CA

**Vehicle Identification Number** JTDKN3DU5E0****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**0

**DEATHS0**

I WAS CROSSING THE TRAIN TRACKS IN PALO ALTO ON CHARLESTON ST NEAR ALMA AND TRIED TO STOP AT A STOP LIGHT RIGHT AFTER THE TRACKS. WHEN I STEPPED HARD ON THE BRAKES, THE BRAKES DID NOT WORK AT ALL. MY CAR DID NOT SLOW DOWN AT ALL AND I HIT THE CAR IN FRONT OF ME. *TR

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2014 |

June 21, 2016 **NHTSA ID NUMBER: 10875685**

**Components: SERVICE BRAKES, VEHICLE SPEED CONTROL**

**NHTSA ID Number:** 10875685

**Incident Date** June 17, 2016

**Consumer Location** GIG HARBOR, WA

**Vehicle Identification Number** JTDKN3DUXF1****

**Summary of Complaint**

**CRASHYes**

**FIRENo**

**INJURIES0**

**DEATHS0**

TL* THE CONTACT OWNS A 2015 TOYOTA PRIUS. WHILE DRIVING APPROXIMATELY 5 TO 10 MPH AND APPROACHING THE DRIVEWAY, THE BRAKES FAILED. THE VEHICLE ACCELERATED AND CRASHED INTO A GATE. THE BRAKE PEDAL WAS RE-APPLIED AND THE VEHICLE STOPPED. THE CONTACT STATED THAT THE VEHICLE TRAVELED 20 FEET BEFORE IT STOPPED. A POLICE REPORT WAS NOT FILED AND THERE WERE NO INJURIES. THE AIR

BAG FAILED TO DEPLOY. THE VEHICLE WAS TOWED TO THE DEALER FOR DIAGNOSTIC TESTING AND REPAIR. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS 17,000.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2015 |

November 19, 2015 **NHTSA ID NUMBER: 10794873**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 10794873

**Incident Date** October 16, 2015

**Consumer Location** COVINGTON, LA

**Vehicle Identification Number** JTDKN3DU1F0****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**0

**DEATHS**0

I HAVE NOTICED THAT THE BRAKES SOMETIMES DO NOT APPEAR TO WORK PROPERLY, AND ONCE I WAS INVOLVED IN AN ACCIDENT DUE TO THE POOR BRAKING PERFORMANCE. ONCE I QUICKLY TRANSITIONED FROM THROTTLE TO FULL BRAKING AND THE CAR DIDN'T SEEM LIKE IT WAS APPLYING FULL BRAKING. IT DIDN'T SEEM TO DECELERATE LIKE IT SHOULD HAVE. I REAR ENDED A VEHICLE BECAUSE OF THE BRAKING PERFORMANCE. ANOTHER TIME I HAD TO SLAM ON THE BRAKES COMING OFF AN INTERSTATE AND THE BRAKES ALSO DIDN'T SEEM POWERFUL ENOUGH. IT'S AS IF THE BRAKES DON'T

FULLY "CATCH" UNTIL THE LAST MINUTE. BOTH TIMES WEATHER CONDITIONS WERE DRY.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2015 |

August 13, 2016 **NHTSA ID NUMBER: 10895714**

**Components: SERVICE BRAKES, VEHICLE SPEED CONTROL**

**NHTSA ID Number:** 10895714

**Incident Date** July 28, 2016

**Consumer Location** LIVERMORE, CA

**Vehicle Identification Number** 4T1BD1FKXCU****

**Summary of Complaint**

**CRASHYes**

**FIRENo**

**INJURIES0**

**DEATHS0**

I WAS IN MY GYM'S PARKING LOT AND HAD JUST TURNED LEFT INTO A PARKING SPACE. I PLACED MY FOOT ON THE BRAKE TO SLOW THE CAR TO A STOP AS IT MOVED FORWARD INTO THE PARKING SPACE. HOWEVER, THE BRAKE PEDAL DID NOT RESPOND. INSTEAD, THE CAR CONTINUED DRIVING FORWARD ON ITS OWN, AND THEN I HEARD A SOUND OF ACCELERATION, AS IF THE CAR WAS REVVING ITSELF UP TO A HIGHER SPEED. THINKING THAT THE BRAKE HAD NOT ENGAGED, I TOOK MY FOOT OFF THE PEDAL AND PLACED IT BACK ON THE BRAKE PEDAL, STEPPING HARDER, BUT THERE WAS NO RESPONSE.

AT THIS POINT, WITH MY FOOT STILL ON THE BRAKE PEDAL, THE CAR JUMPED UP ONTO THE CURB WHILE STILL ACCELERATING ON ITS OWN, RAN OVER THE SIDEWALK. ROLLED UP AND OVER A TWO-FOOT HEDGE THAT RAN PARALLEL TO THE SIDEWALK, THEN CRASHED INTO THE BRICK ENFORCED CONCRETE COLUMN AT THE CORNER OF THE GYM BUILDING. THE BRICK COLUMN STOPPED THE FORWARD MOMENTUM OF THE CAR, BUT LEFT A LARGE DENT IN THE RIGHT SIDE OF THE CAR'S BUMPER THAT WAS EMBEDDED WITH CHUNKS OF CONCRETE. IT ALSO DENTED THE HOOD OF THE CAR, PUSHING IT OUT OF ALIGNMENT. THE AIRBAGS IN THE CAR DID NOT DEPLOY.

I HAD THE CAR TOWED TO THE LOCAL TOYOTA DEALER AND HAVE REPORTED MY ACCIDENT TO TOYOTA HEADQUARTERS. I AUTHORIZED THEIR REVIEW OF MY CAR'S EVENT DATA RECORDER AND AM AWAITING THEIR INVESTIGATION REPORT.

THIS FRIGHTENING ACCIDENT LEFT ME VERY SHAKEN. IT FELT AS IF I HAD NO CONTROL OVER THE CAR AT ALL. IT SEEMED AS IF SOMETHING HAD TAKEN CONTROL OF THE ACCELERATION OF THE CAR AND MY ATTEMPTS TO STOP THE CAR'S FORWARD MOMENTUM BY STEPPING ON THE BRAKE HAD ZERO IMPACT. THANK GOD NO ONE WAS ON THE SIDEWALK OR I WOULD HAVE KILLED THEM. THESE CARS NEED TO BE RECALLED TO FIND OUT WHAT IS CAUSING THIS POTENTIALLY DEADLY MALFUNCTION. THEY ARE LETHAL WEAPONS ON OUR CITY STREETS!

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | CAMRY HYBRID | 2012 |

April 27, 2018 **NHTSA ID NUMBER: 11090508**

**Components: SERVICE BRAKES, AIR BAGS**

**NHTSA ID Number:** 11090508

**Incident Date** April 26, 2018

**Consumer Location** Unknown

**Vehicle Identification Number** 4T1BD1FK5CU****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**1

**DEATHS**0

TL* THE CONTACT OWNS A 2012 TOYOTA CAMRY HYBRID. WHILE DRIVING 20 MPH, THE BRAKES MALFUNCTIONED. THE CONTACT ATTEMPTED TO MAKE A SUDDEN STOP BY DEPRESSING THE BRAKE PEDAL, BUT THE VEHICLE WOULD NOT STOP. AS A RESULT, THE CONTACT CRASHED INTO THE REAR OF ANOTHER VEHICLE. THE AIR BAGS DID NOT DEPLOY. A POLICE REPORT WAS NOT FILED. THE CONTACT SPRAINED HER RIGHT ANKLE FROM THE PRESSURE OF DEPRESSING THE BRAKE PEDAL CONTINUALLY. MEDICAL ATTENTION WAS REQUIRED. THE VEHICLE WAS TOWED TO NORTH HOLLYWOOD TOYOTA IN NORTH HOLLYWOOD, CALIFORNIA TO HAVE THE DAMAGES ASSESSED. IT HAD NOT BEEN DETERMINED YET WHETHER OR NOT THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOTIFIED AND PROVIDED THE CONTACT WITH CLAIM NUMBER: 180-427-0700. THE FAILURE MILEAGE WAS APPROXIMATELY 65,000.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | CAMRY HYBRID | 2012 |

April 10, 2017 **NHTSA ID NUMBER: 10971542**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 10971542

**Incident Date** April 6, 2017

**Consumer Location** KENT, WA

**Vehicle Identification Number** 4T1BD1FKXDU****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**0

**DEATHS**0

AROUND 11:30 AM, I WAS DRIVING SOUTH ON A TWO LANE ROAD, AT APPROX. 25 MPH. THE BLACK VEHICLE IN FRONT OF ME APPLIED THE BRAKES AND STOPPED. I WAS ABOUT 4 CAR LENGTHS BEHIND THE BLACK VEHICLE WHEN I QUICKLY APPLIED THE BRAKE PEDAL. THE BRAKE PEDAL WENT TO THE FLOOR AND MY CAR DID NOT STOP NOR EVEN SLOWED DOWN. I PUMPED THE BRAKE PEDAL TWO MORE TIMES, AGAIN, AND THE CAR DID NOT STOP NOR SLOWED DOWN UNTIL I HIT THE BLACK VEHICLE IN FRONT OF ME.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | CAMRY HYBRID | 2013 |

November 26, 2015 **NHTSA ID NUMBER: 10807100**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 10807100

**Incident Date** February 12, 2015

**Consumer Location** SHERWOOD, OR

**Vehicle Identification Number** 4T1BD1FK1DU****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**0

**DEATHS**0

I WAS ENTERING FREEWAY ON RAMP. HEAVY TRAFFIC. BEAUTIFUL DAY, DRY ROADS. VEHICLE IN FRONT OF ME MADE BRAKED SUDDENLY. I QUICKLY APPLIED MY BRAKES. MY BRAKES DID NOT ENGAGE. I WAS APPROXIMATELY 2-3 CAR LENGTHS BEHIND VEHICLE IN FRONT OF ME AND TRAVELING 25 MPH.

WHEN I APPLIED BRAKES, MY CAR DID NOT EVEN TRY TO STOP, IT BASICALLY SLID 2 1/2 CAR LENGTHS INTO REAR OF VEHICLE. MY VEHICLE ONLY STOPPED MOVING BECAUSE IT WAS STOPPED BY VEHICLE IN FRONT.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | CAMRY HYBRID | 2013 |

November 19, 2015 **NHTSA ID NUMBER: 10794987**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 10794987

**Incident Date** November 17, 2015

**Consumer Location** SHERWOOD, OR

**Vehicle Identification Number** 4T1BD1FK1DU****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**0

**DEATHS0**

I WAS DRIVING TO WORK IN MY 2013 TOYOTA CAMRY HYBRID LE. IT WAS EARLY MORNING RUSH HOUR TRAFFIC. ROADS WERE WET. TRAFFIC WAS STOP AND GO. I WAS PROBABLY GOING ABOUT 20 MPH WHEN VEHICLE IN FRONT OF ME STOPPED. I APPLIED MY BRAKES BUT MY VEHICLE DID NOT STOP. I HIT REAR OF VEHICLE IN FRONT OF ME. I DID NOT FEEL MY BRAKES ENGAGE. I WAS MORE THAN A SAFE STOPPING DISTANCE FROM VEHICLE IN FRONT OF ME.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | CAMRY HYBRID | 2013 |

July 11, 2016 **NHTSA ID NUMBER: 10883971**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 10883971

**Incident Date** May 21, 2016

**Consumer Location** ATLANTA, GA

**Vehicle Identification Number** N/A

**Summary of Complaint**

**CRASHYes**

**FIRENo**

**INJURIES1**

**DEATHS0**

TL* THE CONTACT OWNS A 2014 TOYOTA CAMRY HYBRID. WHILE DRIVING VARIOUS SPEEDS AND DEPRESSING THE BRAKE PEDAL ATTEMPTING TO STOP, THE CONTACT'S VEHICLE WOULD NOT STOP AND REAR ENDED ANOTHER

DRIVER. THE CONTACT SUFFERED MINOR INJURIES TO THE NECK THAT
REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE AIR BAGS
FAILED TO DEPLOY. THE VEHICLE WAS TOWED TO A COLLISION SHOP WHERE
THE CONTACT WAS INFORMED THAT THE BRAKES WERE NOT FUNCTIONING.
THE VEHICLE WAS THEN TAKEN TO A DEALER WHERE IT WAS CONFIRMED
THAT THE HYDRAULIC BRAKING SYSTEM FAILED AND WOULD NEED TO BE
REPAIRED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS
NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 20,000.
THE VIN WAS NOT AVAILABLE.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | CAMRY HYBRID | 2014 |

May 13, 2015 **NHTSA ID NUMBER: 10716169**

**Components: UNKNOWN OR OTHER, SERVICE BRAKES**

**NHTSA ID Number:** 10716169

**Incident Date** May 15, 2014

**Consumer Location** BROOKLYN, NY

**Vehicle Identification Number** 4T1BD1FK5EU****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**0

**DEATHS**0

AFTER ONE YEAR DRIVING THIS CAR AS YELLOW TAXI NYC CAB ITS NOT GOOD
FOR THIS TYPE OF HEAVY DUTY WITH MILESI PUT ON MOST OF DASH PORT
LIGHT ARE ON BREAK BECOME SO LOOSE CAUSING ATWICE CAR ACCIDENT

AND ONE OF THEM WAS SO SERIOUS PLEASR YOU SHOULD RECALL THIS CAR TO FIX THIS COMMAN PRABLEM AS SOON AS PASSIBLE

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | CAMRY HYBRID | 2014 |

---

February 4, 2015 **NHTSA ID NUMBER: 10681105**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 10681105

**Incident Date** December 19, 2014

**Consumer Location** STRATFORD, CT

**Vehicle Identification Number** 4T1BD1FK3EU****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**0

**DEATHS**0

TL* THE CONTACT OWNS A 2014 TOYOTA CAMRY HYBRID. THE CONTACT STATED THAT WHILE PULLING INTO A PARKING SPACE AT APPROXIMATELY 2 MPH, THE BRAKES SUDDENLY MALFUNCTIONED. THE CONTACT INDICATED THAT WHEN ENGAGING THE BRAKES, THE PEDAL FAILED TO DEPRESS AND THE VEHICLE CRASHED INTO A POLE. THE CONTACT DID NOT SUSTAIN ANY INJURIES AND A POLICE REPORT WAS NOT FILED. THE VEHICLE WAS TAKEN TO THE DEALER WHO WAS UNABLE TO DUPLICATE THE FAILURE. THE VEHICLE

WAS NOT REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 7,400.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | CAMRY HYBRID | 2014 |

July 30, 2019 **NHTSA ID NUMBER: 11240671**

**Components: AIR BAGS, STRUCTURE, SERVICE BRAKES**

**NHTSA ID Number:** 11240671

**Incident Date** July 14, 2019

**Consumer Location** GLEN HEAD, NY

**Vehicle Identification Number** 4T1BD1FK1FU****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**0

**DEATHS**0

WHILE PULLING INTO MY DRIVEWAY AT APPROXIMATELY 0-5 MPH I PUT MY FOOT ON THE BRAKE PEDAL TO PARK IN FRONT OF MY GARAGE DOOR/BRICK WALL AND I WAS UNABLE TO STOP. THE PEDAL WENT DIRECTLY TO THE FLOOR AND THE CAR ACCELERATED FORWARD INTO THE BRICK WALL. AFTER HITTING THE BRICK WALL, THE CAR BOUNCED BACK OFF THE WALL A FEW INCHES. ALL AIRBAGS DEPLOYED AND I BECAME HYSTERICAL. THE FUMES FROM THE AIR BAGS WERE THROUGHOUT THE CAR. I WAS SCREAMING AND CRYING AT THE SAME TIME. I WAS ABLE TO PUT THE CAR INTO PARK AND FOUND MY CELL PHONE ON THE FLOOR WHICH FELL FROM MY PURSE AND CALLED 911. I WAS UNABLE TO REACH THE DOOR HANDLE TO GET OUT OF THE

CAR. I WAS ABLE TO OPEN THE SUN ROOF AND STARTED SCREAMING FOR HELP. AFTER A FEW MINUTES MY NEIGHBOR CAME RUNNING AND OPENED THE DRIVER'S DOOR FROM THE OUTSIDE AND I SLID OUT UNDER THE AIRBAG AND DROPPED TO THE CEMENT ON MY BEHIND. *DT *TR

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | CAMRY | 2015 |

October 12, 2017 **NHTSA ID NUMBER: 11033161**

**Components: SERVICE BRAKES, SUSPENSION**

**NHTSA ID Number:** 11033161

**Incident Date** October 30, 2015

**Consumer Location** NEWPORT BEACH, CA

**Vehicle Identification Number** 4T1BF1FK4FU****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**1

**DEATHS**0

BRAKE DID NOT HOLD WHILE AT STOP LIGHT - VEHICLE WAS IN MOTION AT LIGHT

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | CAMRY | 2015 |

September 6, 2017 **NHTSA ID NUMBER: 11021710**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 11021710

**Incident Date** September 3, 2017

**Consumer Location** SACRAMENTO, CA

**Vehicle Identification Number** N/A

**Summary of Complaint**

**CRASH** Yes

**FIRE** No

**INJURIES** 0

**DEATHS** 0

OTHER DAY WHEN I CAME TO A STOP ON THE STOPLIGHT AFTER 2 SECONDS MY CAR START ROLLING SO I PRESS A LITTLE HARDER AND AFTER 2 SECONDS IT START ROLLING AGAIN SO I PRESS HARDER AND AFTER 2 SECONDS IT STARTED ROLLING SO I HAVE TO BE PRESSED FULLY TO THE BOTTOM FOR THE CAR TO STAY IN ONE SPOT

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | CAMRY | 2015 |

August 2, 2017 **NHTSA ID NUMBER: 11012247**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 11012247

**Incident Date** August 1, 2017

**Consumer Location** WASHINGTON, DC

**Vehicle Identification Number** 4T1BF1FK8FU****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**0

**DEATHS**0

TL* THE CONTACT OWNS A 2015 TOYOTA CAMRY. WHILE THE VEHICLE WAS APPROACHING A STOP AT AN INTERSECTION, THE BRAKES FAILED. THE CONTACT DEPRESSED THE BRAKE PEDAL EXCESSIVELY, BUT THE VEHICLE WOULD NOT STOP. AS A RESULT, THE CONTACT WAS INVOLVED IN A SIDE IMPACT COLLISION. A POLICE REPORT WAS NOT FILED AND THERE WERE NO INJURIES. THE DEALER AND MANUFACTURER WERE NOT CONTACTED. THE VEHICLE WAS OPERABLE AFTER THE VEHICLE WAS DEPOWERED AND RESTARTED. THE APPROXIMATE FAILURE MILEAGE WAS 42,999.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | CAMRY | 2015 |

**November 7, 2016 NHTSA ID NUMBER: 10924785**

**Components: STRUCTURE, SERVICE BRAKES**

**NHTSA ID Number:** 10924785

**Incident Date** October 15, 2016

**Consumer Location** PALM CITY, FL

**Vehicle Identification Number** 4T1BF1FKXFU****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**0

**DEATHS**0

MY SON HAD DIFFICULTY BRAKING WHEN A CAR IN FRONT OF HIM STEPPED ON HIS BRAKES TO AVOID HITTING A CAR IN FRONT OF HIM. CONSEQUENTLY, MY SON HIT THE CAR IN FRONT OF HIM CAUSING BUMPER DAMAGE TO THAT CAR, A TOYOTA. MY SON'S CAR WAS TOTALED DUE TO THE IMPACT. ALSO, THE DRIVER AND PASSENGER AIRBAGS DID NOT DEPLOY. HE WAS DRIVING ON INTERSTATE 85 AT LESS THAN THE POSTED SPEED LIMIT.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | CAMRY | 2015 |

March 28, 2016 **NHTSA ID NUMBER: 10851918**

**Components: ELECTRICAL SYSTEM, SERVICE BRAKES, AIR BAGS**

**NHTSA ID Number:** 10851918

**Incident Date** March 21, 2016

**Consumer Location** BOYNTON BEACH, FL

**Vehicle Identification Number** 4T1BF1FK0FU****

**Summary of Complaint**

**CRASHYes**

**FIRENo**

**INJURIES2**

**DEATHS0**

TL* THE CONTACT OWNS A 2015 TOYOTA CAMRY. THE CONTACT STATED THAT WHILE DRIVING OVER A CURB AT 5 MPH, THE VEHICLE SPUN OUT OF CONTROL AS THE BRAKES NOT WORKING WARNING MESSAGE DISPLAYED. IN ADDITION, CONTACT STATED THAT THE VEHICLE ATTEMPTED TO PARK ITSELF INDEPENDENTLY AND CRASHED INTO A TREE. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED A FRACTURED THUMB AND BRUISES AND THE FRONT SEAT PASSENGER SUSTAINED BODY BRUISING THAT REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS TOWED TO AN INDEPENDENT MECHANIC BUT WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 12,000.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | CAMRY | 2015 |

November 3, 2015 **NHTSA ID NUMBER: 10788090**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 10788090

**Incident Date** October 31, 2015

**Consumer Location** CARROLLTON, GA

**Vehicle Identification Number** 4T1BF1FK4FU****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**0

**DEATHS**0

I PULLED UP TO A FAST FOOD DRIVE THRU AND APPLIED MY BRAKES. THE BRAKE PEDAL WENT TO THE FLOOR AND IN DESPERATION I PUT THE VEHICLE IN PARK ONLY TO HEAR 5-6 LOUD CLICKS AS I BUMPED THE CAR IN FRONT OF ME. THIS WAS A 1 OR 2 MPH COLLISION RESULTING IN VERY LITTLE DAMAGE TO BOTH VEHICLES. HOWEVER, THIS IS THE THIRD TIME THIS HAS HAPPENED TO ME IN THIS NEW CAMRY WITH 7200 MILES ON IT. THE FIRST TIME WAS WHEN I WAS BACKING OUT OF MY DRIVEWAY TWO MONTHS AGO. THIS TIME THE BRAKE PEDAL WENT TO THE FLOOR AND I BACKED OVER A CEMENT RETAINING WALL IN MY NEIGHBOR'S YARD. I CALLED A TOW TRUCK TO PULL ME OUT BECAUSE THE REAR WHEELS WERE HANGING IN MID AIR AND IT WAS IMPOSSIBLE TO GET ENOUGH TRACTION TO GET MY CAR RIGHTED UP. THE OTHER TIME WAS ANOTHER LOW SPEED EVENT AT ANOTHER DRIVE THROUGH. NO ONE WAS IN FRONT OF ME AND ALL WAS OKAY . I FILED A CASE WITH TOYOTA CORPORATE WILL NOT PAY FOR TOWING OR RENTAL AND THE DEALERSHIP HAS NOT RETURNED ANY OF MY PHONE CALLS

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | CAMRY | 2015 |

December 23, 2019 **NHTSA ID NUMBER: 11290892**

**Components: AIR BAGS, SERVICE BRAKES, UNKNOWN OR OTHER**

**NHTSA ID Number:** 11290892

**Incident Date** November 29, 2019

**Consumer Location** PENSACOLA, FL

**Vehicle Identification Number** 4T1BK13BXFU****

**Summary of Complaint**

**CRASHYes**

**FIRENo**

**INJURIES1**

**DEATHS0**

I WAS HEADING DOWN SNOW GEESE SOUTH IN DUCK N.C. TO TURN LEFT ONTO WOOD DUCK DRIVE. AS I APPROACHED THE TURN, MY BRAKES FAILED AND I WENT INTO THE PARKING AREA OF 1324 DUCK ROAD. I COULD HIT A PARKED TRUCK OR HOUSE. I HIT THE TRUCK. THE AIRBAGS DIDNT DEPLOY. NONE OF THEM. IT WAS A HEAD ON COLLISION. MY CAR WAS TOTALED. THE POLICE SHOWED UP AND WERE SUPRISED THAT THERE WERE NO AIRBAGS. THIS CONCERNS ME GREATLY. THE BRAKES FAILING WAS SCARY ENOUGH, BUT ABSOLUTELY NO AIRBAGS! *DSY

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | AVALON | 2015 |

September 17, 2019 **NHTSA ID NUMBER: 11256270**

**Components: SERVICE BRAKES, VEHICLE SPEED CONTROL**

**NHTSA ID Number:** 11256270

**Incident Date** July 26, 2019

**Consumer Location** SAN BERNARDINO, CA

**Vehicle Identification Number** 4T1BK1EB8DU****

**Summary of Complaint**

**CRASH** Yes

**FIRE** No

**INJURIES** 0

**DEATHS** 0

MY VEHICLE WHILE HOLDING THE BRAKE (STATIONARY) AT A STOP SIGH, THE
VEHICLE ACCELERATED AND HIT THE BACK OF THE CAR IN FRONT.. FOR 5
DAYS IT WORKED AND THE FOLLOWING WEDNESDAY IT ACCELERATED AGAIN
( IN MOTION) WHILE PARKING IN THE HANDICAP SPACE AT IDLE SPEED AND
BRAKES. TOYOTA MOTOR NORTH AMERICA, INC. SENT ME A LETTER THAT
STATED THAT THEY COULD NOT FIND ANY PROBLEM WITH THE VEHICLE.
THEIR INSPECTOR CALLED ME AND TOLD ME THE CAR WORKED GREAT AND
THE MASTER WARNING SIGNAL WAS NOT FLASHING NOR BUZZING AND HE
WOULD SEND ME A COPY OF THE COMPUTER PRINT OUT BUT IT WAS NEVER
SENT. I DID GET SOME KIND OF A RECORD BUT IT COULD NOT BE COPIED, I
TOOK A PICTURE OF IT BUT IT IS IN SOME TYPE CODE( A COMPUTER FILE) THE
TEST CONSISTED OF A ACCELERATION AND STOPPING TEST 22 DAYS AFTER
THE 1ST INCIDENT, THE CAR WORKED WELL FOR THE DAYS BETWEEN THE
INCIDENTS. THE MASTER WARNING SIGNAL WAS FLASHING AND BUZZING,
INSTRUCTIONS WAS TO STOP THE CAR AND HAVE IT TOWED TO A DEALER
THEY DESCRIBED ONE INCIDENT , I DON'T KNOW WHICH INCIDENT THEY

CHECKED FOR THERE WERE TWO INCIDENTS 5 DAYS APART. THE REPORT IS A SHAM I CAN SEND YOU A COPY OF THEIR LETTER. TEXT A COPY OF THIS COMPUTER INFO OR FORWARD THE E-MAIL WITH THE COMPUTER INFO THAT I COULD NOT COPY WITH MY COPIER. I DON'T UNDERSTAND ANY OF THE COMPUTER INFO..

*JS

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | AVALON | 2013 |

### 2.      NHTSA Consumer Complaints of Brake Defect in the Prius V

208.     Based on information and belief, Plaintiffs allege, in addition to Toyota's Customer Support Program being inadequate based on Toyota's refusal to replace defective brake parts unless and until the Vehicle's braking system registers a malfunction, it is insufficient because it does not extend to Prius V vehicles.

209.     It is evident from the complaints submitted to the NHTSA by Prius owners, that the Toyota Brake Defect extends to Prius V vehicles. Of the 238 NHTSA brake system complaints submitted by Prius owners, 28 of the complaints—12% of all Prius complaints—related to Prius V vehicles. Based on information and belief, Plaintiffs allege that this complaint rate is roughly consistent with the percentage of overall Prius U.S. sales comprised of Prius V sales during that same time period.

210.   The following are the consumer complaints submitted to NHTSA regarding the Toyota Brake Defect in Prius V vehicles: [2]

December 4, 2019 **NHTSA ID NUMBER: 11286843**

**Components: SERVICE BRAKES, UNKNOWN OR OTHER**

**NHTSA ID Number:** 11286843

**Incident Date** November 15, 2019

**Consumer Location** HONOLULU, HI

**Vehicle Identification Number** JTDZN3EU8C3****

**Summary of Complaint**

**CRASHNo**

**FIRENo**

**INJURIES0**

**DEATHS0**

11/15/19 ORIGINALLY THE CAR SHOWED BRAKE, ABS, ANTISKID AND ENGINE IDIOT LIGHTS WENT TO THE DEALER WITH A CODE C1391. THEY SAID I NEED TO REPLACE THE MASTER CYLINDER AND THE POWER BOOSTER FOR $2600. THEN THEY SAID IT WAS POLICY TO ALSO REPLACE THE BRAKE BOOSTER PUMP ASSEMBLY FOR AN ADDITIONAL $2,000 OR A TOTAL OF $4600. AFTER I COMPLAINED THAT THEY HAD RECALLED 972,000 OTHER PRIUS BUT DIDN'T INCLUDE THE PRIUS V THEY SAID I ONLY NEEDED TO REPLACE THE MASTER CYLINDER AND POWER BOOSTER AND SAID THEY WOULD DO IT FOR $1,516.89. SO THEN I GO TO TAKE THE CAR TO THE SERVICE DEPARTMENT TODAY 12/4/19 AND WHILE SITTING THERE THE IDIOT LIGHTS ALL TURN OFF AND THE BRAKE START TO FUNCTION NORMALLY OWN ITS OWN... I ASK THE SERVICE REPRESENTATIVE WHAT HIS THOUGHTS WERE AND HE SAID I SHOULD STILL MAKE THE REPAIRS, BUT HE COULDN'T SAY WHAT THEY WOULD DO IT CAME BACK. SO I'M GOING TO DRIVE THE CAR FOR A WEEK TO SEE. WHILE I'M WAITING CAN YOU PLEASE DO A RECALL ON THE BRAKE PUMP ASSEMEBLY SINCE THESE FOLKS DONT EVEN KNOW WHAT THE HECK IS GOING ON WITH THIS CAR. IT APPEARS ITS NOT EITHER DEVICE AND ITS A COMPUTER GLITCH THAT THEY HAVEN'T RESOLVED...HELP US PRIUS OWNERS PLEASE!!!

---

[2] The following complaints are reproduced as they appear on the NHTSA website. Any typographical errors are attributable to the original author of the complaint. Emphasis added to original text is denoted by bold and underlining.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS V | 2012 |

December 4, 2019 **NHTSA ID NUMBER: 11286822**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 11286822

**Incident Date** December 1, 2019

**Consumer Location** WILMINGTON, NC

**Vehicle Identification Number** JTDZN3EU1C3****

**Summary of Complaint**

**CRASHNo**

**FIRENo**

**INJURIES0**

**DEATHS0**

MY ENTIRE BREAKING SYSTEM WENT OUT WHILE DRIVING TO WORK ON A
BUSY ROAD, WHERE I HAD TO PULL OVER TO THE SIDE TO SEE WHAT WAS
WRONG, AS I HAD NEVER SEEN THOSE FIVE LIGHTS LIGHT UP EVER, AS THIS IS
NOT A TYPICAL ISSUE THAT WOULD EVER BREAK WITHOUT A
MANUFACTURING ISSUE. I WAS NEVER NOTIFIED OF A SPECIFIC ISSUE WITH
CERTAIN 2011-2015 PRIUS VEHICLES THAT ARE INVOLVED IN A CUSTOMER
SUPPORT PROGRAM ZJB. I HAVE NOW PAID $100 TO TOYOTA TO DIAGNOSE THIS
PROBLEM, WHICH WAS NOT NECESSARY, AS IT IS OBVIOUSLY THE EXACT
ISSUE (5 LIGHTS LUMINATED) FROM THE CUSTOMER SUPPORT PROGRAM, AND
THEY HAVE TOLD ME THAT I WAS NOT NOTIFIED OF THE ISSUE BECAUSE MY
VIN IS NOT INCLUDED IN THE PROGRAM. IT HAS BEEN DIAGNOSED WITH THE
EXACT BREAK BOOSTER ISSUE LISTED IN THE LETTER SENT TO OTHER VIN
NUMBERS. I DRIVE CHILDREN AROUND IN THIS CAR, AND THIS ISSUE IS SEVERE

- 98 -

AND SHOULD CLEARLY BE FOR A LARGER NUMBER OF CARS THAN THEY ARE ADMITTING. I HAVE NOW BEEN TOLD THAT THEY WILL NOT PAY FOR THE $3,000 IN REPAIRS BECAUSE IT IS NOT INCLUDED. THIS IS UNACCEPTABLE. THIS IS A SAFETY HAZARD ON THE ROAD AND UNBELIEVABLE THAT I WOULD PAY EXTRA MONEY FOR A TOYOTA BECAUSE IT IS SUPPOSED TO BE A SAFE AND RELIABLE CAR, ONLY TO FIND OUT THEY WILL NOT ADMIT WHEN THEY HAVE A WIDESPREAD BREAK MANUFACTURING ISSUE WITH THEIR VEHICLES. MY ONLY RECOURSE THOUGH TOYOTA I AM TOLD IS TO MAKE A CASE NUMBER AND IF MY VIN HAPPENS TO BE ADDED TO THE LIST, THEY MAY REIMBURSE ME. THIS IS UNACCEPTABLE. TOYOTA NEEDS TO RECALL ALL VINS FOR THIS ISSUE, SO CONSUMERS ARE AWARE THAT THEIR BREAKS MAY FAIL AT ANY MOMENT.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS V | 2012 |

November 18, 2019 **NHTSA ID NUMBER: 11280705**

**Components: SERVICE BRAKES, ELECTRICAL SYSTEM, UNKNOWN OR OTHER**

**NHTSA ID Number:** 11280705

**Incident Date** November 15, 2019

**Consumer Location** HONOLULU, HI

**Vehicle Identification Number** JTDZN3EU8C3****

**Summary of Complaint**

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0

MY 2012 PRIUS V STARTED SHOWING THE WARNING LIGHTS FOR BRAKES, ABS, ANTI-SKID AND ENGINE LIGHTS. THIS HAPPENED WHILE DRIVING ON A REGULAR ROAD. BRAKES STILL WORK BUT FEEL SPONGY. SCANNED FOR CODES AND IT SAYS C1391 WHICH REQUIRES REPLACING ALL THE MAIN BRAKE COMPONENTS. THE COST IS OVER $3000 BECAUSE SO MANY PARTS INVOLVED. THERE?S SEEMS TO HAVE BEEN A RECALL FOR OTHER MODELS OF PRIUS BUT THE ?V? NOT INCLUDED. MANY V OWNERS HAVE EXPERIENCED THIS PROBLEM. ALL THE PARTS SHOWN IN THE ATTACHED PICTURE NEED TO BE REPLACE CAUSE TOYOTA DOESN?T KNOW OR CAN?T FIGURE OUT WHERE THE PROBLEM IS. CAR ONLY HAS 68,000 MILES ON IT

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS V | 2012 |

November 16, 2019 **NHTSA ID NUMBER: 11280476**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 11280476

**Incident Date** November 6, 2019

**Consumer Location** FALLS CHURCH, VA

**Vehicle Identification Number** JTDZN3EU6C3****

**Summary of Complaint**

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0

THE BRAKE LOSES ITS GRIP OVER A ROUGH ROAD BUMP WHILE PULLING IN FOR A STOP. VERY VERY NOT SAFE, I ALMOST REAR ENDED A CAR IN FRONT OF

ME A COUPLE OF TIMES. CREATES EXTREMELY UNSAFE FEELING. BRAKE LOSS HAPPENS ALL THE TIME OVER BUMPY ROAD ONLY.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS V | 2012 |

November 9, 2019 **NHTSA ID NUMBER: 11279162**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 11279162

**Incident Date** October 29, 2019

**Consumer Location** ISABELA, PR

**Vehicle Identification Number** JTDZN3EU6C3****

**Summary of Complaint**

**CRASHNo**

**FIRENo**

**INJURIES0**

**DEATHS0**

THE BRAKES FAILED WHILE DRIVING. ALL THE ABS, BRAKE LIGHTS AND A CONTINUOUS BEEP SOUND TURNED ON. I ALMOST HAD A CRASH. IT WAS THE BRAKE ACTUATOR PUMP AND I READ ABOUT MULTIPLE OWNERS HAD COMPLAINS WITH IT.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| TOYOTA | PRIUS V | 2012 |

October 26, 2019 **NHTSA ID NUMBER: 11271144**

**Components: SERVICE BRAKES, ELECTRONIC STABILITY CONTROL**

**NHTSA ID Number:** 11271144

**Incident Date** October 10, 2019

**Consumer Location** TALLAHASSEE, FL

**Vehicle Identification Number** JTDZN3EU6C3****

**Summary of Complaint**

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0

MY 2012 PRIUS V IS ONLY 90K MILES. STARTING FROM ABOUT 2 WEEKS AGO, THE WARNING LIGHTS INCLUDING BRAKE SYSTEM WARNING LIGHT, ABS WARNING LIGHT AND SLIP INDICATOR LIGHT WERE SUDDENLY LIT ON WHEN I WAS DRIVING, THEN I FOUND THE REGENERATE BRAKE BECOME VERY HARD AND DIFFICULT TO STOP WHICH WAS MALFUNCTIONING. THESE WARNING LIGHTS WERE KEPT ON ALL THE TIME WHEN I DRIVE THE CAR. THE CAR THREW OUT CODE C1391 WHEN GIVEN A DIAGNOSIS. AFTER SOME ONLINE WORK, I FOUND THIS IS A VERY COMMON PROBLEM FOR PRIUS V. I WENT TO THE DEALERSHIP HOWEVER THE DEALERSHIP STATES THAT MY CAR, BASED ON ITS VIN, IS NOT IN ONE OF THE CERTAIN CARS COVERED BY ZJB PHASE 2 WHICH COVERS BRAKE BOOSTER AND BRAKE BOOSTER PUMP ASSEMBLIES FOR CERTAIN 2011-2015 MODEL YEAR PRIUS VEHICLES.

THE FAILURE OF THE BRAKE COULD BE A DEADLY DEFICIENCY TO ALL THE PEOPLE IN THE CAR WHEN DRIVING. NOW I HAVE TO THINK TO STOP USING THIS CAR BECAUSE OF THE SEVERE SECURITY RISK. TOYOTA SHOULD TAKE

ACTION TO SOLVE ALL THIS PROBLEM FOR ALL INVOLVED CARS, NOT CERTAIN CARS. MY CAR IS MADE IN 2012, THE DIAGNOSIS CODE C1391 GIVEN BY MY CAR ARE FALLING INTO ONE OF THE FOUR CODES ASSOCIATED WITH THE BRAKE PROBLEM COVERED BY ZJB PHASE 2. IT IS RIDICULOUS THAT MY CAR WAS NOT ISSUED THIS EXTENDED WARRANTY.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS V | 2012 |

October 16, 2019 **NHTSA ID NUMBER: 11268982**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 11268982

**Incident Date** October 5, 2019

**Consumer Location** KAHULUI, HI

**Vehicle Identification Number** JTDZN3EU1C3****

**Summary of Complaint**

**CRASH** No

**FIRE** No

**INJURIES** 0

**DEATHS** 0

MY 2012 PRIUS V WITH ONLY 55,000 MILES. ABS LIGHTS CAME ON AND BUZZING SOUND EVERY 3 SECONDS FROM JUST IN FRONT OF STEERING COLUMN. TOYOTA DEALER CHARGED $270 FOR COMPUTER DIAGNOSTIC THEN GAVE ME A PARTS AND LABOR ESTIMATE FOR REPLACING BRAKE BOOSTER AND MASTER CYLINDER OF $4400!!! INDEPENDENT MECHANIC CAN ORDER PARTS FROM ANOTHER TOYOTA DEALER IN MAINLAND US FOR $1400 LESS THAN THE $3200 THAT DEALER IN HAWAII QUOTED AND LABOR FOR MUCH LESS. BUT

STILL WILL BE COSTING ME ABOUT $2500.

SEARCHED RECALL SITES AND REGULAR 2012 PRIUS MODELS HAD RECALLS FOR EXACTLY THE SAME ISSUE BUT NO RECALL ON 2012 PRIUS V BRAKES?

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS V | 2012 |

July 26, 2019 **NHTSA ID NUMBER: 11235210**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 11235210

**Incident Date** July 26, 2019

**Consumer Location** CLEARWATER, FL

**Vehicle Identification Number** JTDZN3UXC31****

**Summary of Complaint**

**CRASHNo**

**FIRENo**

**INJURIES0**

**DEATHS0**

COMPLETE BRAKE FAILURE ON THE FREEWAY!!! ABS, BRAKE AND TRACTION CONTROL LIGHTS LIT UP. ALMOST CRASHED! CODE C1391-ABNORMAL LEAK IN BRAKE ACTUATOR PUMP.

HOW LONG WILL IT TAKE THIS AGENCY TO MAKE TOYOTA FIX THIS?? ITS A SAFETY ISSUE!!! STOP PICKING YOUR ASSES AND DO SOMETHING ABOUT IT!!!!

**1 Affected Product**

## Vehicle

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS V | 2012 |

April 24, 2019 **NHTSA ID NUMBER: 11203591**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 11203591

**Incident Date** April 24, 2019

**Consumer Location** APOLLO BEACH, FL

**Vehicle Identification Number** JTDZN3EU2C3****

**Summary of Complaint**

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0

CAR EXPERIENCED GREATLY DIMINISHED BRAKING POWER ON INTERSTATE 75 PRIOR TO APPROACHING HEAVY TRAFFIC BACKED UP TO EXIT. MANY WARNING LIGHTS ILLUMINATED ON THE DASH: BRAKE, ABS, ETC. TOYOTA HAS ALREADY ISSUED A WARRANTY EXTENSION FOR THIS ISSUE FOR THE STANDARD MODEL PRIUS, AND I BELIEVE THIS IS A SAFETY HAZARD ON THE PRIUS V WAGON AS WELL.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS V | 2012 |

September 22, 2018 **NHTSA ID NUMBER: 11130742**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 11130742

**Incident Date** September 18, 2018

**Consumer Location** SILVER SPRING, MD

**Vehicle Identification Number** N/A

**Summary of Complaint**

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0

ABS BRAKE IS NOT WORKING. WHILE I WAS DRIVING ON A CITY TRAFFIC AND COME TO A COMPLETE STOP AT THE TRAFFIC LIGHT, THE BRAKE PEDAL WENT DEEP WHEN I STEP ON IT AND IT TOOK ME MORE TIME TO STOP THAN I EXPECTED IT. I WENT AND GOT IT RED THE CODE C1391 ABNORMAL LEAK IN ACCUMULATOR.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS V | 2012 |

June 18, 2018 **NHTSA ID NUMBER: 11102264**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 11102264

**Incident Date** June 16, 2018

**Consumer Location** WILMINGTON, NC

**Vehicle Identification Number** JTDZN3EU2C3****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**0

**DEATHS**0

WHILE PULLING INTO A PARKING SPACE (SPEED LESS THAN 5 MPH) AND APPLYING THE BRAKES THE PEDAL WENT TO THE FLOOR AND THE CAR SEEMED TO SPEED UP. THE CAR JUMPED THE CURB AND STRUCK A TREE. A GOOD SAMARITAN ASSISTED AND ACTUALLY GOT IN THE CAR AND FOUND THE BRAKE PEDAL WENT TO THE FLOOR. SHORTLY AFTER THE ACCIDENT THE BRAKES RETURNED TO NORMAL OPERATION. THIS IS THE SECOND TIME THAT THE CAR HAS EXPERIENCED SIMILAR PROBLEMS. IN 2014 WHILE PULLING INTO THE DRIVEWAY THE BRAKE PEDAL WENT TO THE FLOOR AND STRUCK THE HOUSE. SHORTLY AFTER THE BRAKES RETURNED TO NORMAL OPERATIONS. TOYOTA WAS NOTIFIED AND INSPECTED THE CAR'S COMPUTER AND BRAKING SYSTEM PER CASE NUMBER 1410012557. AFTER THE INSPECTION TOYOTA SAID THAT THERE WERE NO BRAKE ISSUES FOUND WITH THE CAR AND STATED THAT IT WAS SAFE TO DRIVE. OBVIOUSLY THERE IS AN ISSUE WITH THE BRAKING SYSTEM IN THESE CARS.

**1 Affected Product**

## Vehicle

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS V | 2012 |

April 25, 2018 **NHTSA ID NUMBER: 11090155**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 11090155

**Incident Date** April 25, 2018

**Consumer Location** SAN JUAN, PR

**Vehicle Identification Number** JTDZN3EU0C3****

**Summary of Complaint**

**CRASHNo**

**FIRENo**

**INJURIES0**

**DEATHS0**

BRAKE ACTIVATOR UNIT FAILED AFTER 4 MONTHS OF REPORTING THE ISSUE TO TOYOTA. IT FOLLOWS THE CONDITIONS INDICATED ON TOYOTA WEN ZG1. VEHICLE WAS IN MOTION AT HIGHWAY SPEED WHEN BRAKING MALFUNCTION OCCURRED. VEHICLE WAS CONTROLLABLE AND ALLOW FOR SECURE STOP. BRAKE RESPONSE WAS SLUGGISH AND HARD ON THE FOOT.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS V | 2012 |

February 6, 2018 **NHTSA ID NUMBER: 11067249**

**Components: SERVICE BRAKES, ELECTRONIC STABILITY CONTROL**

**NHTSA ID Number:** 11067249

**Incident Date** January 3, 2018

**Consumer Location** MAURICE, LA

**Vehicle Identification Number** JTDZN3EU3C3****

**Summary of Complaint**

**CRASHNo**

**FIRENo**

**INJURIES0**

**DEATHS0**

ON JAN. 3, 2018 WHILE MOVING AT A MINIMUM SPEED (LESS THAN 15 MPH) I APPLIED THE BRAKES AND SEVERAL WARNING LIGHTS ILLUMINATED (BRAKES, ABS, TRACTION CONTROL) ALONG WITH A WARNING SOUND. THIS WAS ON A CITY STREET, DRIVING IN A STRAIGHT LINE. I WAS ABLE TO BRAKE TO A STOP. I THEN ATTEMPTED TO CONTINUE TO DRIVE AT A VERY LOW SPEED BUT SOON LOST ALL ABILITY TO BRAKE THE VEHICLE AND I COASTED TO A STOP. I HAD THE VEHICLE TOWED TO A LOCAL TOYOTA DEALER. I WAS TOLD THE BRAKE ACTUATOR HAD FAILED AND WAS CHARGED $3288 PLUS TAX FOR THE REPAIR. I RECEIVED THE CAR ON JAN. 9, 2018 FROM THE DEALER. ON JAN. 12, 2018 THE CAR FAILED ONCE AGAIN IN THE EXACT SAME MANNER. THE DEALER KEPT THE CAR UNTIL FEB. 1, 2018 AT WHICH TIME THEY RETURNED THE CAR TO ME AT NO CHARGE, STATING THEY HAD CHANGED THE SAME EXACT PART AS BEFORE. THE CAR HAS 84,000 MILES AND I PURCHASED IT NEW. I UNDERSTAND TOYOTA HAS ISSUED RECALLS FOR THIS ISSUE ON OTHER MODELS BUT NOT ON MY VEHICLE. I HAVE RETAINED MY REPAIR INVOICES BUT AM UNABLE TO UPLOAD THEM AT THIS TIME.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS V | 2012 |

January 27, 2018 **NHTSA ID NUMBER: 11065376**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 11065376

**Incident Date** December 17, 2017

**Consumer Location** HOMESTEAD, FL

**Vehicle Identification Number** JTDZN3EU3C3****

**Summary of Complaint**

**CRASHNo**

**FIRENo**

**INJURIES0**

**DEATHS0**

ON SUNDAY DECEMBER 17, 2017 AT ABOUT 3:00 PM I WAS DRIVING WITH MY FAMILY (WIFE AND TWO KIDS) IN SOUTH FLORIDA ON US HIGHWAY 1. THE WEATHER WAS CLEAR AND I WAS TRAVELING ABOUT 55 MPH. THEN WITHOUT ANY WARNING A NUMBER OF TROUBLE INDICATOR LIGHT ILLUMINATED ON THE DASH. WHEN THE LIGHTS CAME ON I WAS DRIVING IN A STRAIGHT LINE WITH JUST ENOUGH GAS PEDAL INPUT TO MAINTAIN MY 55 MPH SPEED. STARTLED BY THE LIGHTS I LIFTED MY FOOT OFF THE THROTTLE AND ATTEMPTED TO APPLY THE BRAKES. WHEN I ATTEMPTED TO APPLY THE BRAKE PEDAL I HAD LITTLE TO NO BRAKES AND I HAD TO "STAND ON THE BRAKE PEDAL" (PRESS IT AS HARD AS I COULD) TO GET THE CAR TO SLOW AND EVENTUALLY STOP WHILE PULLING ONTO THE SHOULDER OF THE ROAD. I WAS SCARED AND SHOCKED AT THE SAME TIME. I TURNED THE CAR OFF AND BACK ON THINKING IT MIGHT FIX THE PROBLEM. IT DID NOT. I WAS ABLE TO

GET THE CAR HOME AND THE VERY NEXT MORNING TOOK IT TO SOUTH DADE TOYOTA. I WAS ABLE TO GET IT HOME AND TO THE DEALER BY DRIVING VERY SLOW KEEPING A VERY LARGE SPACE CUSHION AND STANDING ON THE BRAKE PEDAL WHEN I NEEDED TO STOP. WHILE I DID NOT CRASH UNDERSTANDABLY I WAS SCARED BECAUSE YOU SHOULD NOT JUST LOSE BRAKES OUT OF THE BLUE. AT THE DEALER THEY INFORMED ME THAT THE BRAKE ACTUATOR FAILED AND NEEDED REPLACEMENT COSTING $5734.94. I DID RESEARCH AND FOUND THAT TOYOTA ISSUED A WARRANTY EXTENSION ZG1 FOR THIS EXACT PROBLEM BUT WAS TOLD BY THE DEALER THAT MY VIN WAS NOT PART OF THE PROGRAM EVEN THOUGH MY VEHICLE EXPERIENCED THE EXACT PROBLEM. I REACHED OUT TO TOYOTA COOPERATE AND WHILE THEY AGREED THAT YES I HAD THE SAME PROBLEM MY VIN WAS NOT PART OF THE PROGRAM (THEY GAVE ME A CASE # 1712180647). HOWEVER THEY DID OFFER $2207.57 AS A GOOD WILL GESTURE TOWARDS THE REPAIR. I PAID $3527.37. TOYOTA KNOWS OF A LIFE SAFETY PROBLEM AND HAS CHOSEN TO LIMIT THE PROGRAM. MY MILEAGE WAS 106,451 AND UNDER THE PROGRAM WOULD HAVE BEEN COVERED.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS V | 2012 |

November 7, 2017 **NHTSA ID NUMBER: 11044181**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 11044181

**Incident Date** August 1, 2017

**Consumer Location** BENSALEM, PA

**Vehicle Identification Number** JTDZN3EU2C3****

**Summary of Complaint**

**CRASH**No

**FIRENo**

**INJURIES0**

**DEATHS0**

SINCE I FIRST BOUGHT THE CAR IN 2012 I NOTICED THAT EVERY NOW AND
THEN WHEN I PUSHED DOWN THE BRAKE PEDAL TO SLOW DOWN FOR A STOP,
IF THE CAR HIT A SLIGHT BUMP IN THE ROAD, THE CAR WOULD MOMENTARILY
ACCELERATE INSTEAD OF BRAKING. IT FELT LIKE I WAS LOSING CONTROL OF
THE CAR. (NOTE: SINCE I DID NOT RECORD THE DATES, PLEASE NOTE THAT I
HAVE CHOSEN AUGUST 1, 2017 AS A RANDOM DATE JUST SO I COULD
CONTINUE ON TO THE NEXT STEP BUT THIS HAS HAPPENED FROM TIME TO
TIME SINCE 2012.)

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS V | 2012 |

November 7, 2017 **NHTSA ID NUMBER: 11044156**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 11044156

**Incident Date** November 4, 2017

**Consumer Location** BENSALEM, PA

**Vehicle Identification Number** JTDZN3EU2C3****

**Summary of Complaint**

**CRASHYes**

**FIRENo**

**INJURIES0**

**DEATHS0**

NOVEMBER 4, 2017 - CAR WAS PARKED IN OUR DRIVEWAY. PUT THE CAR IN REVERSE TO BACK OUT OF OUR DRIVEWAY. THE BRAKES FAILED. NO MATTER HOW MANY TIMES THE BRAKE PEDAL WAS REPEATEDLY PUSHED DOWN, THE CAR JUST WOULD NOT STOP. IT ACTUALLY FELT LIKE THE CAR WAS ACCELERATING!

THE CAR RAN OVER OUR MAILBOX AT THE END OF OUR DRIVEWAY. THE MAILBOX GOT DRAGGED UNDER THE CAR AND THE CAR ROLLED OUT ONTO THE STREET. FINALLY, WE PUSHED IN THE POWER BUTTON AND THAT WAS HOW WE WERE ABLE TO GET THE CAR TO STOP.

OUR MAILBOX GOT TOTALED AND DAMAGE WAS DONE TO THE UNDERCARRIAGE OF OUR CAR, AS THERE IS TWISTED METAL HANGING DOWN SCRAPING THE GROUND. THE BRAKES STARTED TO WORK AGAIN A FEW MINUTES LATER, AS I WAS ABLE TO PULL IT BACK INTO THE DRIVEWAY OFF OF THE STREET.

ON SEPTEMBER 19, 2017 – CAR WAS PARKED IN A PARKING LOT. WHEN REVERSING OUT OF THE PARKING SPACE, THE BRAKES DID NOT WORK. AFTER REPEATEDLY PUMPING THE BRAKES, THEY FINALLY ENGAGED JUST BEFORE IT HIT A CAR PARKED BEHIND US. WE THOUGHT THIS WAS A FREAK ONE-TYPE EVENT, SO WE DIDN'T REPORT IT.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS V | 2012 |

May 2, 2017 **NHTSA ID NUMBER: 10983184**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 10983184

**Incident Date** May 1, 2017

**Consumer Location** ATLANTA, GA

- 113 -

**Vehicle Identification Number** JTDZN3EU2C3****

**Summary of Complaint**

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0

WHEN DRIVING ON UNEVEN GROUND, LIKE POT HOLES, THE BRAKES FAIL. LITERALLY IF YOU HAVE YOUR FOOT ON BRAKE WHEN DRIVING OVER A POT HOLE, YOU CAN FEEL THE BRAKES RELEASE AND THE CAR WON'T STOP. I'VE HAD SIMILAR ISSUES ON BUMPY GROUND. THE CAR HAS ALWAYS HAD THE PROBLEM SINCE I PURCHASED IT, PROBABLY ON A WEEKLY BASIS, AND I'VE WONDERED ABOUT THE SAFETY AND WHETHER IT'S JUST RELATED TO ABS. I'VE ALSO INQUIRED AT THE DEALERSHIP. LUCKILY, I'VE NEVER BEEN IN AN ACCIDENT BECAUSE OF THE PROBLEM. BUT, THIS WEEKEND MY FRIEND WITH A PRIUS HAD AN ACCIDENT BECAUSE OF THE PROBLEM, SO I DECIDED TO REPORT MY COMPLAINT.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS V | 2012 |

April 22, 2015 **NHTSA ID NUMBER: 10712312**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 10712312

**Incident Date** October 12, 2013

**Consumer Location** Unknown

**Vehicle Identification Number** N/A

**Summary of Complaint**

**CRASH** No

**FIRE** No

**INJURIES** 0

**DEATHS** 0

BRAKES RELEASE AND CAR ACCELERATES WHEN BRAKING OVER POTHOLES OR UNEVEN PAVEMENT AT LOW SPEEDS. *TR

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS V | 2012 |

December 9, 2014 **NHTSA ID NUMBER: 10663065**

**Components: SERVICE BRAKES, POWER TRAIN**

**NHTSA ID Number:** 10663065

**Incident Date** December 5, 2014

**Consumer Location** QUINCY, MA

**Vehicle Identification Number** JTDZN3EU4C3****

**Summary of Complaint**

**CRASH** No

**FIRE** No

**INJURIES** 0

**DEATHS** 0

I OWNED THIS VEHICLE SINCE BRAND NEW. IT HAD HAPPENED MORE THAN A DOZEN TIMES. WHEN GOING OVER BUMPS OR UNEVEN SURFACES, WITH THE

SAME PRESSURE APPLIED TO THE BREAK, THE 2012 PRIVUS FAILED TO STOP AND LURCHED SEVERAL FEET BEFORE STOPPING.

WE HAD AN INCIDENT THAT WE ALMOST RAN INTO PEDESTRIAN YESTERDAY WHEN THIS ISSUE OCCURS. THIS IS VERY CONCERNED TO MY FAMILY. WE BOUGHT THIS VEHICAL BACK TO THE DEALER SHIP WHERE WE PURCHSED IT.(EXPRESSWAY DORCHESTER TOYOTA IN MASSCHUSETTES) THEY SAID THEY COULD NOT FIX IT BECAUSE THEY COULD NOT REPRODUCED AT THE DEALSHIP. THE SERVICE OF MANAGER CLAIMED THIS IS WORKING AS DESIGNED FROM THE (TRACKING CONTROL). I FEEL THIS IS A FALSE STATEMENT, THIS DOES NOT HAPPENED TO MY OTHER CARS THAT HAS TRACTION CONTROL. TOYOTA SHOULD REALLY STARTING FIXING IT BEFORE SOMEONE GETS KILLED! *TR

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
| --- | --- | --- |
| TOYOTA | PRIUS V | 2012 |

November 20, 2014 **NHTSA ID NUMBER: 10659869**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 10659869

**Incident Date** July 9, 2013

**Consumer Location** SANTA ROSA, CA

**Vehicle Identification Number** JTDZN3EU5C3****

**Summary of Complaint**

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0

THERE ARE TWO THINGS THAT OCCUR WITH MY BRAKES. ONE IS A
CONSISTENT AND VERY LOUD GROAN WITH BRAKING AFTER ANY LENGTH OF
TIME SITTING IDLE. THE OTHER IS WHEN THE BRAKES ARE APPLIED AND I MAY
BE OVER A BUMP IN THE ROAD OR A POT HOLE OR ROCKS THE CAR LURCHES
FORWARD QUICKLY AS IF I HAVE LOST CONTROL OF BREAKING. ALMOST LIKE
HYDROPLANING WITHOUT WATER PRESENT. I HAVE TAKING THE CAR TO THE
DEAL CONSISTENTLY SINCE THE NOISE BEGAN AND YET TO HAVE A FIX FOR
IT. THEY SAY THERE IS NOTHING WRONG WITH THE BRAKES. HOWEVER I
SPECIFICALLY HAD SOMEONE SIT IN MY CAR TO HEAR THE GROAN BECAUSE
THEY SAID THEY WERE UNABLE TO DUPLICATE IT. THEY HEARD THE NOISE
AND AGAIN COULD DO NOTHING TO MAKE IT STOP. *TR

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS V | 2012 |

October 2, 2014 **NHTSA ID NUMBER: 10640938**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 10640938

**Incident Date** October 1, 2012

**Consumer Location** REVERE, MA

**Vehicle Identification Number** JTDZN3EU7C3****

**Summary of Complaint**

**CRASH** No

**FIRE** No

**INJURIES** 0

**DEATHS** 0

ON MULTIPLE OCCASIONS WHEN BRAKING IF I HIT A BUMP IN THE ROAD OR POTHOLE THE CARS SPEEDS FORWARD FOR A FEW FEET. IT FEELS LIKE THE BRAKES RELEASE CAUSING THE CAR TO STOP SLOWING DOWN. THIS IS VERY DISCOMFORTING. SO FAR I HAVE NOT BEEN IN ANY ACCIDENT THOUGH I FEAR THAT THIS COULD CONTRIBUTE TO AN ACCIDENT IF I HAD TO STOP SUDDENLY. *TR

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS V | 2012 |

June 19, 2014 **NHTSA ID NUMBER: 10604558**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 10604558

**Incident Date** June 22, 2013

**Consumer Location** STATEN ISLAND, NY

**Vehicle Identification Number** JTDZN3EU1C3****

**Summary of Complaint**

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0

I STATED TO THE DEALERSHIP ON JUNE24,2013 THAT THE CAR FEELS LIKE IT RUNAWAY WHEN I BRAKE AND HIT A POTHOLE IN THE ROAD. THEY ROAD TESTED MY CAR AND COULDN'T DUPLICATE ANY ABNORMAL ISSUES WITH THE BRAKING. THEY VISUALLY INSPECTED THE BRAKES AND THEY FOUND NOTHING. THERE HAVE BEEN INCIDENTS WHERE I BRAKE AND HIT A POTHOLE AND JUT FORWARD EITHER ALMOST PASSING A RED LIGHT OR ALMOST

HITTING A CAR IN FRONT OF ME. IT IS A VERY SCARY SITUATION. I WOULD HAVE DONE THIS COMPLAINT SOONER,BUT I WAS NOT AWARE OF THIS WEBSITE. I JUST HAPPEN TO SEARCH TO SEE IF ANYONE ELSE HAS THE SAME ISSUE WITH THEIR 2012 PRIUS V. THIS SCARY DANGEROUS SITUATION STILL CONTINUES TILL THIS DAY. *TR

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS V | 2012 |

**February 24, 2014 NHTSA ID NUMBER: 10565603**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 10565603

**Incident Date** February 1, 2013

**Consumer Location** BROOKLYN, NY

**Vehicle Identification Number** JTDZN3EU5C3****

**Summary of Complaint**

**CRASHNo**

**FIRENo**

**INJURIES0**

**DEATHS0**

I BEGAN EXPERIENCING WHAT I DESCRIBED TO THE DEALER AS A "HICCUP" IN MY BRAKES. I COMPLAINED OF THIS PROBLEM THE TWO TIMES I TOOK THE CAR IN FOR ROUTINE MAINTENANCE (FIRST AND NEXT SIX MONTHS), AND EACH TIME THEY FOUND "NO PROBLEM" WITH THE BRAKES. IT WAS NOT UNTIL THIS SNOWY ROUGH WINTER WITH ALL THE ATTENDANT POT HOLES IN THE STREET THAT I CORRELATED THIS BRAKING PROBLEM WITH UNEVEN PAVEMENT. I KNOW THIS HAPPENS WHEN MY RIGHT FRONT TIRE HITS A POT

HOLE, AND IT MAY HAPPEN WHEN ANY TIRE DOES, BUT IF I'M APPLY THE BRAKES - ESPECIALLY HITTING THE BRAKES AT THE MOMENT ONE TIRE DIPS INTO THE HOLE -THEY DO NOT ENGAGE AND IN FACT THERE'S A SLIGHT LURCH FORWARD, ALMOST AN ACCELERATION. THE CAR IS GOING TO THE SERVICE DEPARTMENT TOMORROW WITH THE HOPES THAT THE PROBLEM CAN BE LOCATED. THIS TRULY FEELS DANGEROUS TO DRIVE. *TR

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS V | 2012 |

January 18, 2014 **NHTSA ID NUMBER: 10560460**

**Components: VEHICLE SPEED CONTROL, SERVICE BRAKES**

**NHTSA ID Number:** 10560460

**Incident Date** December 19, 2013

**Consumer Location** SANTA MONICA, CA

**Vehicle Identification Number** JTDZN3EU3C3****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**0

**DEATHS**0

I BOUGHT PRIUS V IN FEBRUARY 2012. I'VE NOTICED FEW TIMES ISSUES WITH BRAKES. WHILE DECELERATING WITH MY FOOT ON THE BRAKE PEDAL TO SLOW THE CAR TO A STOP AND IF THE CAR GOES OVER A POTHOLE OR SLIGHT BUMP ON THE ROAD THEN CAR ACCELERATES FORWARD BEFORE COMING TO A STOP. THIS IS SAFETY HAZARD SINCE IT ALMOST LED TO HITTING THE OTHER CAR'S REAR BUMPER.

ALSO, I'VE GOTTEN INTO AN ACCIDENT IN DECEMBER 2013 WHERE THERE WAS ANOTHER BRAKE ISSUE. I STOPPED MY CAR IN THE INCLINE ROAD BY PUTTING MY FOOT ON THE BRAKE PEDAL. THEN, I CHANGED THE GEAR SHIFT TO REAR AND SLOWLY TOOK MY FOOT OFF THE BRAKE PEDAL SO THAT I CAN BACK INTO THE STREET PARKING WHICH WAS ONLY ABOUT 4 TO 5 FEET AWAY. SUDDENLY, CAR SPED DOWN THE ROAD GOING REAR DIRECTION TO THE DIRECTLY OPPOSITE STREET AND HIT TWO PARKED CARS. I HAD PUT THE FOOT DOWN ON THE BRAKE PEDAL WHEN I NOTICED THE CAR GOING REAR FAST BUT IT WOULD NOT STOP THE CAR FROM GOING DOWN THE ROAD. I HAD NO CONTROL OVER THE CAR OR THE SPEED. THIS IS MAJOR SAFETY HAZARD SINCE SOMEONE COULD HAVE BEEN SERIOUSLY INJURED WITH LOSING CONTROL OF THE BRAKE AND ACCELERATION. I'VE OWNED OTHER TOYOTA CAR (CAMRY) BEFORE BUT NEVER HAD THIS ISSUE UNTIL THIS PRIUS V. MY CAR HAS BEEN IN BODY SHOP FOR OVER A MONTH WITH REPAIRS. I PLAN TO TAKE THE CAR TO THE TOYOTA DEALER TO CHECK OUT THIS BRAKE ISSUE. *TR

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS V | 2012 |

October 13, 2013 **NHTSA ID NUMBER: 10547779**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 10547779

**Incident Date** October 13, 2013

**Consumer Location** DYER, IN

**Vehicle Identification Number**  JTDZN3EU9C****

**Summary of Complaint**

**CRASH**No

**FIRENo**

**INJURIES0**

**DEATHS0**

I WAS IN STOP-AND-GO TRAFFIC. I HAD ACCELERATED TO ABOUT 25 MPH WHEN I NEEDED TO SLOW DOWN, I STEPPED ON THE BRAKE AND AT ABOUT THE SAME TIME HIT A BUMP IN THE ROAD. THE CAR NOT ONLY WAS NOT BRAKING (I WAS STEPPING ON THE BRAKE AT THE TIME) BUT INDEED SEEMED TO ACCELERATE BRIEFLY BEFORE THE BRAKES RE-ENGAGED (I HAD MY FOOT ON THE BRAKE--DEPRESSING IT--THE ENTIRE TIME). THIS HAS HAPPENED FROM TIME TO TIME WITH MY VEHICLE--IT HAS HAPPENED WHEN BACKING OUT OF MY GARAGE, AND ALSO WHEN BREAKING WHILE DRIVING OVER ROAD BUMPS OR POTHOLES. THIS IS A SAFETY HAZARD THAT NEEDS TO BE ADDRESSED. *TR

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS V | 2012 |

June 19, 2013 **NHTSA ID NUMBER: 10520707**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 10520707

**Incident Date** August 29, 2012

**Consumer Location** SAN DIEGO, CA

**Vehicle Identification Number** JTDZN3EU3C3****

**Summary of Complaint**

**CRASHNo**

**FIRENo**

**INJURIES0**

**DEATHS0**

BRAKE NOISE WHEN PULLING FORWARD IN AM . DEALER SAID FIX IS COMING FOR MONTHS, SERVICE BULLETIN NEVER CAME OUT. WORRIED THAT MAY LEAD TO BRAKE FAILURE. *TR

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS V | 2012 |

April 24, 2013 **NHTSA ID NUMBER: 10509497**

**Components: ENGINE, SERVICE BRAKES, VEHICLE SPEED CONTROL**

**NHTSA ID Number:** 10509497

**Incident Date** December 2, 2011

**Consumer Location** CHICAGO, IL

**Vehicle Identification Number** JTDZN3EU4C3****

**Summary of Complaint**

**CRASHNo**

**FIRENo**

**INJURIES0**

**DEATHS0**

MY CAR HAS AN ISSUE I FIRST NOTICED SOON AFTER I BOUGHT IT, AND THAT NOW HAPPENS AT LEAST TWICE A WEEK. THE DATE I'VE ENTERED IS THE APPROXIMATE FIRST DATE I NOTICED THE PROBLEM OCCUR. I DESCRIBE BELOW A MORE RECENT INSTANCE OF THE SAME BEHAVIOR, THE TIME WHEN IT FELT THE LEAST SAFE. /// THE RECURRING BEHAVIOR IS THAT WHILE DECELERATING WITH MY FOOT ON THE BRAKE PEDAL, IF THE CAR GOES OVER AN OBSTRUCTION LIKE A ROCK, A ROUGH PATCH OF ROAD, OR A POTHOLE, IT

SOMETIMES LURCHES FORWARD BEFORE RESUMING DECELERATION. THE SENSATION IS OF ACCELERATING, BUT EVEN IF IT'S ONLY THAT THE CAR MOMENTARILY STOPS DECELERATING IT'S DISCONCERTING AND IN A FEW INSTANCES HAS GOTTEN ME CLOSE TO AN ACCIDENT. /// THE TIME IT CAME CLOSEST TO CAUSING AN ACCIDENT WAS ON 3/21/13, WHEN I FEARED THE CAR WAS GOING TO ROLL INTO A CROSSWALK AS PEOPLE CROSSED. WITH MY FOOT ON THE BRAKE, COMING TO A STOP AT A STOP SIGN, WE WENT OVER UNEVEN PAVEMENT AND THE CAR LURCHED FORWARD WHILE ONLY A FEW FEET FROM THE CROSSWALK. SEVERAL PEOPLE WAITED CLOSE TO THE EDGE OF THE SIDEWALK AT A BUS STOP. ONE OF THEM SEEMED READY TO STEP OUT TO CROSS THE STREET, AND I BRACED FOR THE WORST. /// ULTIMATELY I STOPPED A FEW FEET BEFORE THE CROSSWALK, BUT THE SITUATION FELT COMPLETELY UNSAFE SINCE IT INVOLVED LOSING STOPPING POWER WHILE COMING TO A STOP SIGN WITH PEDESTRIANS PRESENT. *TR

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS V | 2012 |

April 2, 2013 **NHTSA ID NUMBER: 10505322**

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 10505322

**Incident Date** March 30, 2013

**Consumer Location** HUDSON, FL

**Vehicle Identification Number** JTDZN3EU6C3****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**0

**DEATHS0**

SLOWED FOR RED LIGHT THAT WAS VISIBLE FOR A GREAT DISTANCE SO
COASTING AND APPLIED BRAKES AND THEY WEREN'T THERE....I HIT THE CAR
IN FRONT OF ME, HE HIT THE CAR IN FRONT OF HIM....MOSTLY DINGS IN
FENDERS....MY HOOD WAS UP ON ONE SIDE, AND FRONT PANEL
MOVED....NOBODY WAS HURT

POLICE CAME AND SAT IN THE CAR AND APPLIED BRAKE AND IT WENT TO THE
FLOOR. HE SAID "YOU HAVE NO BRAKES; DO NOT DRIVE THE CAR, HAVE IT
TOWED". *TR

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
| --- | --- | --- |
| TOYOTA | PRIUS V | 2012 |

211.    Toyota has long-standing and material knowledge of the Toyota Brake Defect.

Upon information and belief, Toyota through (1) its own records of customers' complaints,

(2) dealership repair records, (3) access to monitoring and review of records from the National

Highway Traffic Safety Administration and its aforesaid database, (4) warranty and post-

warranty claims, (5) pre-sale durability testing and part sales, and (6) its earlier investigation of

Prius automobile braking problems, was aware of the Toyota Brake Defect. In his NHTSA

Petition, Mr. Hogan also reports having notified Toyota of the Toyota Brake Defect.

212.    Toyota routinely monitors the internet for complaints similar in substance to those

quoted below. Its customer relations department routinely monitors the internet for customer

complaints, and it retains the services of third parties to do the same. Further, Toyota's customer

relations division regularly receives and responds to customer calls concerning, *inter alia*,

product defects. Through these sources, Toyota knew about the defect. The NHTSA complaints

also indicate Toyota's knowledge of the defect and the potential danger it poses to passengers and the general public.

213.    Moreover, Toyota should have known about the Toyota Brake Defect because its customer relations department, which interacts with Toyota-authorized service technicians in order to identify potentially widespread vehicle problems and assist in diagnosing vehicle issues, has received numerous reports that the Toyota Brake Defect causes a sudden loss of braking power. Toyota's customer relations department also collects and analyzes field data including, but not limited to, repair requests made at dealerships and service centers, technical reports prepared by engineers that have reviewed vehicles for which warranty coverage is requested, parts sales reports, and warranty claims data.

214.    Toyota's warranty department similarly reviews and analyzes warranty data submitted by its dealerships and authorized technicians in order to identify defect trends in its vehicles. Toyota dictates that when a repair is made under warranty (or warranty coverage is requested), service centers must provide Toyota with detailed documentation. Toyota also requires service centers to save the broken parts in case Toyota audits the dealership, or otherwise acts to verify the warranty repair. For their part, service centers are meticulous about providing this detailed information about in-warranty repairs because Toyota withholds payment for the repair if the complaint, cause, and correction are not sufficiently described.

215.    Mr. Hogan further explains that "Toyota gets real-time transmissions of DTCs and freeze frame data from hybrids with failed brakes through the Techstream tool at its franchise dealerships." Toyota knows the scope of the problem, which is why it has refused to commence the necessary safety recall as it did in other, similar circumstances.

216.    Toyota's knowledge can also be inferred because several NHTSA complaints reference that the manufacturer—Toyota—has been notified of consumers' concerns regarding the brake systems in the Class Vehicles.

217.     Toyota's acts and omissions have unnecessarily put the safety of Class members and the public in jeopardy. An operative brake system is necessary for safely operating the Class Vehicles.

218.     Further, because of Toyota's unfair, deceptive, and/or fraudulent business practices, owners, and/or lessees of the Class Vehicles, including Plaintiffs, have suffered an ascertainable loss of money and/or property and/or loss in value. Toyota undertook these unfair and deceptive trade practices in a manner giving rise to substantial aggravating circumstances.

219.     Had Plaintiffs known of the Toyota Brake Defect at the time of purchase or lease, they would not have bought the Vehicles, or they would have paid substantially less for the Vehicles.

220.     As a result of the Toyota Brake Defect and the monetary costs associated with attempting to repair it, Plaintiffs and the other Class members have suffered injury in fact, incurred damages, and have otherwise been harmed by Toyota's conduct. Accordingly, Plaintiffs bring this action to redress Toyota's violations of the consumer protection statutes of Plaintiffs' states of residence, and also seek recovery for Toyota's breaches of express and implied warranty, breaches of the duty of good faith and fair dealing, and fraudulent concealment of material information about the Class Vehicles.

### 3.     Toyota's Warranty-Related Practices

221.     Toyota issued a Limited New Vehicle Warranty with each Class Vehicle.

222.     Under the Limited New Vehicle Warranty, Toyota agreed to repair reported defects within the earlier of 3 years or 36,000 miles. The warranty manual provides that:

> This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota, subject to the exceptions indicated under "What Is Not Covered" on pages 14-15.
>
> Coverage is for 36 months or 36,000 miles, whichever occurs first, with the exception of wheel alignment and wheel balancing, which are covered for 12 months or 20,000 miles, whichever occurs first.

223.    Toyota instructs vehicle owners and lessees to bring their vehicles to a certified dealership for warranty repairs. Many owners and lessees have presented Class Vehicles to Toyota-certified dealerships with complaints related to the Toyota Brake Defect.

224.    Toyota has evaded its warranty obligations by (1) failing to tell consumers that the Class Vehicles are defective and (2) refusing to perform repairs to correct the Toyota Brake Defect unless and until the Class Vehicle has actually registered a DTC indicating a failure caused by the Toyota Brake Defect.

225.    Indeed, Toyota acknowledged the Toyota Brake Defect when, on August 9, 2018, Toyota initiated Customer Support Program ZJB, covering 2010-2015 Toyota Prius and Prius HPV vehicles. Under this program, Toyota instructed its dealers to replace the brake booster and brake booster pump assemblies at no charge to the customer, regardless of age or mileage through November 30, 2019 (for 2010 Prius and Prius HPV vehicles) and through August 31, 2021 (for 2011-2015 Prius and 2012-2015 Prius HPV vehicles), and thereafter until 10 years from the date of first use or 150,000 miles, whichever occurs first, **BUT ONLY IF** one of four specific DTCs was stored in a vehicle's memory, i.e., the brake system had experienced a malfunction during operation.

226.    Remarkably, even though the Customer Support Program and the associated Technical Service Bulletin instructed dealers to replace the brake booster assembly with master cylinder and the brake booster pump assembly with new parts designated with new and different part numbers than the parts being replaced, Toyota explicitly instructed its dealers that if Toyota Prius owners had not experienced a brake system malfunction resulting from the Toyota Brake Defect, they were not to replace these parts. Instead, they were to instruct the customer to return for the necessary repairs *after* they experienced a malfunction.

227.    Toyota even provided its dealers with a list of "Frequently Asked Questions" together with suggested answers, such as the following:

Q6: What if an owner HAS NOT experienced this condition but would like to have the repair completed?

A7: This Customer Support Program only applies to vehicles that have exhibited the condition described above. If an owner has not experienced the condition, he/she is asked to place the notification tear off slip in the Owners Manual for future reference.

228.   More than a year later, Toyota initiated a second similar Customer Support Program ZKK, which expanded the brake booster and brake booster pump assembly repairs to 2012-2014 Toyota Camry Hybrid and 2013-2015 Toyota Avalon Hybrid vehicles. Just as with Customer Support Program ZJB, Toyota instructed its dealers to only replace the brake system parts if the vehicle had already experienced a malfunction of the brake system as indicated by the presence of one of the four DTCs stored in the vehicle's memory.

229.   Even more troubling, Toyota instructed dealers to inform owners they must contact a local authorized Toyota dealer for appropriate diagnosis and repair, but also make owners aware that "if the condition is not covered by this Customer Support Program, the customer may be responsible for the initial diagnostic fees." Toyota included this warning in the Customer Support Program Notification it sent to all owners, stating, "Please be aware that, if the condition is not covered by this Customer Support Program, you may be responsible for the initial diagnostic fees and any other repairs you may decide to have performed. Any authorized Toyota Dealership can determine if a condition is covered by this Customer Support Program."

230.   Finally, Toyota expressly warned its authorized dealers not to directly market these customer support programs, stating in its notice to dealers that "Direct marketing of this Customer Support Program is strictly prohibited pursuant to the Toyota Warranty Policy 5.21, 'Warranty Solicitation.' Non-compliance of this policy may result in a claim debit."

231.   According to Toyota's own documents, there are 1,120,400 vehicles with brake boosters and brake booster assemblies covered by these two Customer Support Programs. That number represents 1,120,400 vehicle owners and lessees whom Toyota is requiring to wait to experience an ***on-road brake malfunction*** before Toyota will agree to replace the defective parts. And that number does not include owners and lessees of Prius vehicles, such as the Prius

V, that are excluded from the Customer Support Program even today, despite the presence of a similar defect in their vehicles.

## V   TOLLING OF STATUTES OF LIMITATIONS

### Discovery Rule

232.    Toyota's knowing and active concealment and denial of the facts alleged herein act to toll any applicable statute(s) of limitations. Plaintiffs and other Class members could not have reasonably discovered the true, latent nature of the Toyota Brake Defect until shortly before commencing this class-action litigation.

233.    Plaintiffs and Class members had no realistic ability to discover the presence of the Toyota Brake Defect in the Class Vehicles within the applicable statute of limitations, and could not have discovered through the exercise of reasonable diligence that Toyota was concealing the Toyota Brake Defect in the Class Vehicles and misrepresenting the safety, quality and reliability of the Class Vehicles.

234.    Any statutes of limitation otherwise applicable to any claims asserted herein have thus been tolled by the discovery rule.

### Fraudulent Concealment

235.    All applicable statutes of limitation have also been tolled by Toyota's knowing, active and ongoing fraudulent concealment of the facts alleged herein.  Even after Plaintiffs and other Class members contacted Toyota and/or its authorized dealers to repair the Toyota Brake Defect, Toyota and/or its dealers repeatedly and consistently told them the Class Vehicles were not defective.

236.    As a result of Toyota's active concealment, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

### Estoppel

237.    Toyota has had, and continues to have, a duty to disclose to Plaintiffs and the other Class members the true character, quality, and nature of the Class Vehicles, including the

facts that the Class Vehicles require costly repairs, pose safety concerns, and have a diminished resale value.

238.    Instead, Toyota actively concealed the true character, quality, and nature of the Class Vehicles and knowingly made misrepresentations about the quality, reliability, characteristics, and performance of the Class Vehicles.

239.    Plaintiffs and Class members reasonably relied upon Toyota's knowing and affirmative misrepresentations and/or active concealment of these facts.

240.    Based on the foregoing, Defendants are estopped from relying on any statutes of limitation in defense of this action.

## VI    CLASS ALLEGATIONS

241.    Plaintiffs bring this action on their own behalf, and on behalf of a nationwide class pursuant to Federal Rules of Civil Procedure, Rules 23(a), 23(b)(2), and/or 23(b)(3).

**Nationwide Class:**

All persons or entities in the United States who are current or former owners and/or lessees of a Class Vehicle.

242.    In the alternative to the Nationwide Class, and pursuant to Federal Rules of Civil Procedure, Rule 23(c)(5), Plaintiffs seek to represent the following individual State Classes:

**Texas Class**

All persons or entities in the state of Texas who are current or former owners and/or lessees of a Class Vehicle.

**Arkansas Class**

All persons or entities in the state of Arkansas who are current or former owners and/or lessees of a Class Vehicle.

**California Class**

All persons or entities in the state of California who are current or former owners and/or lessees of a Class Vehicle.

**Colorado Class**

All persons or entities in the state of Colorado who purchased or leased a Class Vehicle.

### Florida Class

All persons or entities in the state of Florida who purchased or leased a Class Vehicle.

### Illinois Class

All persons or entities in the state of Illinois who purchased or leased a Class Vehicle.

### New Jersey Class:

All persons or entities in the state of New Jersey who purchased or leased a Class Vehicle.

### North Carolina Class:

All persons or entities in the state of North Carolina who purchased or leased a Class Vehicle.

### Washington Class

All persons or entities in the state of Washington who purchased or leased a Class Vehicle.

243.     Together, the Nationwide Class, and the State Classes shall be collectively referred to herein as the "Class." Excluded from the Class are Toyota, its affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change, or expand the Class definitions based on discovery and further investigation.

244.     **Numerosity:**  Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the Toyota's sole possession and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that hundreds of thousands of Class Vehicles have been sold and leased in states that are the subject of the Class.

245.     **Existence and Predominance of Common Questions of Fact and Law:** Common questions of law and fact exist as to all members of the Class. These questions

predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to, whether:

    a) The Class Vehicles were sold with the Toyota Brake Defect, and any and all related defects;

    b) Toyota knew about the Toyota Brake Defect but failed to disclose it and its consequences to its customers;

    c) A reasonable consumer would consider the Toyota Brake Defect or its consequences to be material;

    d) Toyota should be required to disclose the Toyota Brake Defect's existence and its consequences; and

    e) Toyota's conduct violates the statutory and common-law provisions set forth in this Complaint.

246. **Typicality:**  All of Plaintiffs' claims are typical of the claims of the Class because Plaintiffs purchased the Vehicles with the same brake system defect and defective vehicle design as other Class members. Furthermore, Plaintiffs and all Class members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Toyota's wrongful conduct. Plaintiffs advance the same claims and legal theories on behalf of themselves and all absent Class members.

247. **Adequacy:**  Plaintiffs adequately represent the Class because their interests do not conflict with the interests of the Class they seek to represent, they have retained counsel who are competent and highly experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs and their counsel are well-suited to fairly and adequately protect the interests of the Class.

248. **Superiority:**  A class action is superior to all other available means of fairly and efficiently adjudicating the claims brought by Plaintiffs and the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Toyota's conduct. It would be virtually impossible for Class members on an individual basis to effectively redress the wrongs done to them. Even if Class members could afford such individual litigation, the

courts cannot. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation also increases the delay and expense to all parties and to the court system, particularly where the subject matter of the case may be technically complex. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, individual Class members can be readily identified and notified based on, *inter alia*, Toyota's vehicle identification numbers, warranty claims, registration records, and database of complaints.

249.    Toyota has acted, and/or refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## VII    CAUSES OF ACTION

**A.    <u>Claims Brought on Behalf of the Nationwide Class, or alternatively, the State Classes</u>**

### COUNT I

### VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT

### (15 U.S.C. § 2301, *et seq.*)

**(By All Plaintiffs on behalf of the Nationwide Class or, alternatively, the State Classes)**

250.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

251.    Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide Class or, alternatively, on behalf of the State Classes.

252.    Plaintiffs and the Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

253.    Toyota is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5).

- 134 -

254.    The Class Vehicles, including Plaintiffs' vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

255.    Toyota's 3 year/36,000 mile limited warranty is a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

256.    Toyota breached its express warranties by:

a)  Selling and leasing Class Vehicles with braking systems that are defective in materials and/or workmanship, requiring repair or replacement within the warranty period; and

b)  Refusing and/or failing to honor Plaintiffs' express warranties by repairing or replacing, free of charge, the brake booster pump assembly and/or other parts causing failure of the brake system in the Class Vehicles.

257.    Plaintiffs and the other Class members relied on the existence and length of the express warranties in deciding whether to purchase or lease the Class Vehicles.

258.    Toyota's breach of the express warranties has deprived Plaintiffs and the other Class members of the benefit of their bargain.

259.    The amount in controversy of each Plaintiff's individual claim meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

260.    Toyota has been given reasonable opportunity to cure its breach of the written warranties. Alternatively, Plaintiffs and the other Class members are not required to do so because affording Toyota a reasonable opportunity to cure its breach of written warranties was, and is, futile. Toyota has long been on notice of the alleged defect from complaints and service requests it has received from Class members, as well as from their own warranty claims, customer complaint data, and/or parts sales data, and has made clear from its actions it has no intention of resolving the defect.

261.    As a direct and proximate cause of Toyota's breach of its written warranties, Plaintiffs and Class members sustained damages and other losses in an amount to be determined at trial. Toyota's conduct damaged Plaintiffs and Class members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, including statutory attorney fees and/or other relief as deemed appropriate.

**B.      Claims Brought on Behalf of the Texas Class**

**COUNT II**

**VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT – CONSUMER PROTECTION ACT**

**(Tex. Bus. & Com. Code §§ 17.41, *et seq.*)**

**(Brought by Plaintiffs Rose and Rasco on behalf of the Texas Class)**

262.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

263.    Plaintiffs Willie Rose and Jeffrey Warner Rasco (for the purpose of this section, "Plaintiffs") bring this cause of action on behalf of themselves and the Texas Class.

264.    Plaintiffs and the Texas Class are individuals, partnerships, or corporations with assets of less than $25 million (or are controlled by corporations or entities with less than $25 million in assets), *see* Tex. Bus. & Com. Code § 17.41, and are therefore "consumers," pursuant to Texas Business and Commercial Code § 17.45(4). Toyota is a "person" within the meaning of Texas Business and Commercial Code § 17.45(3).

265.    Toyota is engaged in "trade" or "commerce" or "consumer transactions" within the meaning of Texas Business and Commercial Code § 17.46(a).

266.    The Texas Deceptive Trade Practices – Consumer Protection Act ("Texas DTPA") prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code § 17.46(a), and an "unconscionable action or course of action," which means an act or practice which, to a consumers detriment, takes advantage of the

lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree."
Tex. Bus. & Com. Code §§ 17.45(5) and 17.50(a)(3).

267.     In the course of their business, Toyota knew that the Class Vehicles' brake
systems were defectively designed or manufactured, would fail prematurely, and were not
suitable for their intended use. Yet, Toyota concealed and suppressed material facts concerning
the Class Vehicles, the Brake Defect, and its propensity to cause brake failure. Toyota
accomplished this by denying the existence of the Brake Defect and misrepresenting that brake
failure would not occur until after diagnostic trouble codes are registered by the vehicle's engine
control module and brake warning lights illuminated in the vehicles' instrument panel.

268.     Toyota thus violated the Texas DTPA by, at minimum, representing that the Class
Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing
that the Class Vehicles are of a particular standard and quality when they are not; advertising the
Class Vehicles with the intent not to sell them as advertised; and omitting material facts in
describing the Class Vehicles.

269.     Toyota engaged in misleading, false, unfair, and deceptive acts or practices that
violated the Texas DTPA by failing to disclose and actively concealing the nature of the Brake
Defect.

270.     Toyota owed Plaintiffs and the Texas Class members a duty to disclose the
existence of the Brake Defect because:

        a)     Toyota was in a superior position to know the true state of facts about the
            Defect and associated repair costs in the Class Vehicles;

        b)     Plaintiffs and the Texas Class members could not reasonably have been
            expected to learn or discover that the Class Vehicles had dangerous
            defects until manifestation of the defects;

c)      Toyota knew that Plaintiffs and the Texas Class members could not reasonably have been expected to learn about or discover the Defect and its associated repair costs; and

d)      Toyota actively concealed the Defect , its causes, and resulting effects, by asserting to Plaintiffs and Texas Class members that their brake systems failed for reasons other than the Defect.

271.      Whether or not a vehicle's brake systems work properly is a fact a reasonable consumer would consider important in selecting a vehicle to purchase or lease. When Plaintiff and the Texas Class members bought a Class Vehicle for personal, family, or household purposes, they reasonably expected the vehicle would have non-defective brakes.

272.      Toyota's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs, about the safety and reliability of the Class Vehicles.

273.      Plaintiffs and the Texas Class suffered ascertainable loss and actual damages as a direct and proximate result of Toyota's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs and the Texas Class members who purchased or leased the Class Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated or would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

274.      The omissions and acts of concealment by Toyota pertained to information that was material to Plaintiffs and the Texas Class members, as it would have been to all reasonable consumers

275.      Toyota had an ongoing duty to all Toyota customers to refrain from unfair and deceptive practices under the Texas DTPA in the course of its business.

276.      Toyota's violations present a continuing risk to Plaintiffs as well as to the general public. Toyota's unlawful acts and practices complained of herein affect the public interest.

277.    Pursuant to Texas Business and Commercial Code § 17.50, Plaintiffs and the Texas Class seek an order enjoining Toyota's unfair and/or deceptive acts or practices, damages, multiple damages for knowing and intentional violations, pursuant to § 17.50(b)(1), punitive damages, and attorneys' fees, costs, and any other just and proper relief  available under the Texas DTPA.

278.    On February 28, 2020, Plaintiff Rose sent a letter complying with Texas Business and Commercial Code § 17.505(a).  On March 5, 2020, Plaintiff Rasco sent a letter complying with Texas Business and Commercial Code § 17.505(a).

**COUNT III**

**BREACH OF IMPLIED WARRANTY**

**(Tex. Bus. & Com. Code § 2.314)**

**(Brought by Plaintiffs Rose and Rasco on behalf of the Texas Class)**

279.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

280.    Plaintiffs Willie Rose and Jeffrey Warner Rasco (for the purpose of this section, "Plaintiffs") bring this cause of action on behalf of themselves and the Texas Class.

281.    Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under Texas Business and Commercial Code §§ 2.104(1) and 2A.103(a)(20), and a "seller" of motor vehicles under § 2.103(a)(4).

282.    With respect to leases, Toyota is and was at all relevant times a "lessor" of motor vehicles under Texas Business and Commercial Code § 2A.103(a)(16).

283.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Texas Business and Commercial Code §§ 2.105(a) and 2A.103(a)(8).

284.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law, pursuant to Texas Business and Commercial Code §§ 2.314 and 2A.212.

- 139 -

285.    Toyota impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, inter alia, the following: (i) a warranty that the Class Vehicles were manufactured, supplied, distributed, and/or sold by Toyota were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles would be fit for their intended use—providing safe and reliable transportation—while the Class Vehicles were being operated.

286.    Toyota breached the implied warranty of merchantability in that the defective Class Vehicles were not in merchantable condition when they were sold to Plaintiffs and Texas Class members and said vehicles were and are unfit for the ordinary purposes for which such vehicle is used because they pose a serious safety risk to the occupants and are an unreliable means of transportation.

287.    Plaintiffs notified Toyota of the defect in the subject vehicles within a reasonable time after Plaintiffs experienced a Brake Defect. Toyota has been provided notice of these issues by numerous complaints, as alleged herein.

288.    As a direct and proximate result of breaches of the implied warranty of merchantability, Plaintiffs and the Texas Class members have suffered damages, including but not limited to incidental and consequential damages.

## COUNT IV

## BREACH OF EXPRESS WARRANTIES

### (Tex. Bus. & Com. Code § 2.313)

### (Brought by Plaintiffs Rose and Rasco on behalf of the Texas Class)

289.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

290.    Plaintiffs Willie Rose and Jeffrey Warner Rasco (for the purpose of this section, "Plaintiffs") bring this cause of action on behalf of themselves and the Texas Class.

291.     Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under Texas Business and Commercial Code §§ 2.104(1) and 2A.103(a)(20), and a "seller" of motor vehicles under § 2.103(a)(4).

292.     With respect to leases, Toyota is and was at all relevant times a "lessor" of motor vehicles under Texas Business and Commercial Code § 2A.103(a)(16).

293.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Texas Business and Commercial Code §§ 2.105(a) and 2A.103(a)(8).

294.     In connection with the sale of the defective Class Vehicles to the Plaintiffs and the Texas Class, Toyota provided a new vehicle warranty, under which it agreed to repair original components found to be defective in material or workmanship under normal use and maintenance, including the engine and its components.

295.     Toyota's express warranties were part of the basis of the bargain respecting the purchase and/or lease of the defective Class Vehicles. In addition to written warranties, Toyota warranted several attributes, characteristics, and qualities of the subject vehicles, as alleged above.

296.     Toyota distributed the defective parts causing the Toyota Brake Defect in the Class Vehicles, and said parts are covered by Toyota's warranties granted to all purchasers and lessees of the Class Vehicles.

297.     180. Toyota breached these warranties by selling and leasing Class Vehicles with the Toyota Brake Defect, requiring repair or replacement within the applicable warranty periods, and refusing to honor the warranties by providing free repairs or replacements during the applicable warranty periods.

298.     Plaintiffs notified Toyota of its breach within a reasonable time, and/or they were not required to do so because affording Toyota a reasonable opportunity to cure its breaches would have been futile. Toyota also knew about the Toyota Brake Defect but chose to conceal it as a means of avoiding compliance with its warranty obligations.

299.    Plaintiffs submitted their vehicles for warranty repairs as referenced herein. Toyota failed to comply with the terms of the express written warranty provided to Plaintiff, by failing and/or refusing to repair the Toyota Brake Defect under the vehicle's warranty as described herein.

300.    Plaintiffs have given Toyota a reasonable opportunity to cure the Toyota Brake Defect, but Toyota has been unable and/or has refused to do so within a reasonable time.

301.    As a result of said nonconformities, Plaintiffs cannot reasonably rely on the subject vehicle for the ordinary purpose of safe, comfortable, and efficient transportation.

302.    Plaintiffs could not reasonably have discovered said nonconformities with the subject vehicles prior to Plaintiff's acceptance of the subject vehicle.

303.    Plaintiffs would not have purchased the subject vehicle, or would have paid less for the subject vehicle, had they known, prior to their respective time of purchase or lease, that the subject vehicle contained the Toyota Brake Defect.

304.    As a direct and proximate result of the willful failure of Toyota to comply with its obligations under the express warranties, Plaintiffs and the Texas Class members have suffered actual and consequential damages. Such damages include, but are not limited to, a diminution in the value of the subject vehicles containing the defects identified herein.

305.    As a direct and proximate cause of Toyota's breach, Plaintiffs and the Texas Class members bought or leased Class Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class Vehicles.

306.    Any attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Toyota's warranty limitations are unenforceable because it knowingly sold a defective product without giving notice to Plaintiffs or the Texas Class members.

307.    The time limits contained in Toyota's warranty period were also unconscionable and inadequate to protect Plaintiffs and the Texas Class members. Among other things, Plaintiffs

- 142 -

and the Texas Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Toyota. A gross disparity in bargaining power existed between Toyota and Plaintiffs and the Texas Class members because Toyota knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

308.    Plaintiffs and the Texas Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Toyota's conduct.

309.    Also, as alleged in more detail herein, at the time that Toyota warranted and sold the vehicles, it knew that the vehicles did not conform to the warranties and were inherently defective, and Toyota wrongfully and fraudulently misrepresented and/or concealed material facts regarding their vehicles. Plaintiffs and the Texas Class members were therefore induced to purchase the defective Class Vehicles under false and/or fraudulent pretenses.

310.    Toyota has been provided notice of these issues by numerous complaints as described herein.

311.    As a direct and proximate result of Toyota's breach of express warranties, Plaintiffs and the Texas Class members have been damaged in an amount to be determined at trial.

**COUNT V**

**FRAUD BY CONCEALMENT**

**(Based on Texas Law)**

**(Brought by Plaintiffs Rose and Rasco on behalf of the Texas Class)**

312.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

313.    Plaintiffs Willie Rose and Jeffrey Warner Rasco (for the purpose of this section, "Plaintiffs") bring this cause of action on behalf of themselves and the Texas Class.

- 143 -

314.    Toyota made material omissions concerning a presently existing or past fact in that, for example, Toyota did not fully and truthfully disclose to its customers the true nature of the Toyota Brake Defect which was not readily discoverable by them until many years after purchase or lease of the Class Vehicles. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

315.    Toyota was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

316.    In addition, Toyota had a duty to disclose these omitted material facts because they were known and/or accessible only to Toyota who had superior knowledge and access to the facts, and Toyota knew they were not known to or reasonably discoverable by Plaintiffs and the Texas Class members. These omitted facts were material because they directly impact the safety of the Class Vehicles.

317.    Toyota was in exclusive control of the material facts and such facts were not known to the public or the Texas Class members. Toyota also possessed exclusive knowledge of the defects rendering the Class Vehicles inherently more dangerous and unreliable than similar vehicles.

318.    Toyota actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs and the Texas Class members to purchase the Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

319.    Plaintiffs and the Texas Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs and the Texas Class members were justified.

320.    Plaintiffs and the Texas Class members reasonably relied on these omissions and suffered damages as a result.

321.    As a result of the concealment and/or suppression of the facts, Plaintiffs and the Texas Class members sustained damage. For those Texas Class members who elect to affirm the sale, these damages include the difference between the actual value of that which Plaintiffs and the Texas Class members paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits. For those who want to rescind the purchase, they are entitled to restitution and consequential damages. Toyota's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights and well-being of Plaintiffs and the Texas Class members in order to enrich Toyota. Toyota's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT VI**

**UNJUST ENRICHMENT**

**(Based on Texas Law)**

**(Brought by Plaintiffs Rose and Rasco on behalf of the Texas Class)**

322.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

323.    Plaintiffs Willie Rose and Jeffrey Warner Rasco (for the purpose of this section, "Plaintiffs") bring this cause of action on behalf of themselves and the Texas Class.

324.    As a result of their wrongful and fraudulent acts and omissions, as set forth above, pertaining to the design and/or manufacturing defect of their vehicles and the concealment of the defect, Toyota charged a higher price for their vehicles than the vehicles' true value and Toyota obtained monies which rightfully belong to Plaintiffs and the Texas Class members.

325.    Toyota enjoyed the benefit of increased financial gains, to the detriment of Plaintiff and the Texas Class members, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Toyota to retain these wrongfully obtained profits.

326.    Plaintiffs, therefore, seek an order establishing Toyota as a constructive trustee of the profits unjustly obtained, plus interest.

**C.    Claims Brought on Behalf of the Arkansas Class**

## COUNT VII

## VIOLATIONS OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT

### (Ark. Code Ann. §§ 4-88-01, *et seq.*)

### (Brought by Plaintiff Khan on behalf of the Arkansas Class)

327.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

328.    Plaintiff Kamran Khan (for the purpose of this section, "Plaintiff") brings this cause of action on behalf of himself and the Arkansas Class.

329.    The Arkansas Deceptive Trade Practices Act ("ADTPA"), Ark. Code Ann. §§ 4-88-101, *et seq.*, prohibits deceptive and unconscionable trade practices in business, commerce, or trade. Ark. Code Ann. § 4-88-107(a).

330.    Plaintiff and the Arkansas Class members are "persons" within the meaning of Arkansas Code Annotated § 4-88-102(5).

331.    Toyota's products and services are "goods" and "services" as defined by Arkansas Code Annotated §§4-88-102(4) and (7).

332.    Toyota does business in Arkansas, sells and distributes vehicles in Arkansas, and engaged in deceptive acts and practices in connection with the sale and/or lease of the Class Vehicles in Arkansas and elsewhere in the United States.

333.   Toyota knowingly failed to disclose, concealed, suppressed, and/or omitted material facts regarding the Toyota Brake Defect and associated safety hazard and misrepresented the standard, quality or grade of the Class Vehicles, which directly caused harm to the Plaintiff and the Arkansas Class members. Toyota actively suppressed the fact that the brake systems in Class Vehicles are defective and present a safety hazard because of materials, workmanship and/or manufacturing defects.

334.   Toyota's unfair or deceptive acts or practices occurred repeatedly in its trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

335.   Toyota knew that the Class Vehicles' brake systems were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

336.   Toyota had the duty to Plaintiff and the Arkansas Class members to disclose the Toyota Brake Defect and the defective nature of the Class Vehicles because:

a)   Toyota was in a superior position to know the true state of facts about the Toyota Brake Defect and associated repair costs in the Class Vehicles;

b)   Plaintiff and the Arkansas Class members could not reasonably have been expected to learn or discover that the Class Vehicles had dangerous defects until manifestation of the Defect;

c)   Toyota knew that Plaintiff and the Arkansas Class members could not reasonably have been expected to learn about or discover the Defect and its associated repair costs; and

d)   Toyota actively concealed the Defect, its causes, and resulting effects, by asserting to Plaintiff and Arkansas Class members that their brake systems failed for reasons other than the Toyota Brake Defect.

337.   Whether or not a vehicle's brake systems work properly is a fact a reasonable consumer would consider important in selecting a vehicle to purchase or lease. When Plaintiff

- 147 -

and the Arkansas Class members bought a Class Vehicle for personal, family, or household purposes, they reasonably expected the vehicle would have non-defective brakes.

338.    In failing to disclose the Toyota Brake Defect and the associated safety risks and repair costs resulting from it, Toyota has knowingly and intentionally concealed material facts and breached its duty to disclose.

339.    Toyota's unfair and deceptive trade practices were likely to deceive a reasonable consumer. Plaintiff and members of the Arkansas Class had no reasonable way to know that Class Vehicles contained braking systems that were defective in materials, workmanship, and/or manufacture and posed a safety risk. Toyota possessed superior knowledge as to the quality and characteristics of the Class Vehicles, including the Toyota Brake Defect and associated safety risks, and any reasonable consumer would have relied on Toyota's misrepresentations and omissions, as Plaintiff and members of the Arkansas Class did.

340.    Toyota's unfair and deceptive acts or practices, affirmative misrepresentations, and/or material omissions regarding the Toyota Brake Defect were intended to mislead consumers and misled Plaintiff and Arkansas Class members.

341.    Toyota's violations present a continuing risk to Plaintiff and Arkansas Class members, as well as to the general public. Toyota's unlawful acts and practices complained of herein affect the public interest.

342.    As a direct and proximate result of Toyota's violations, Plaintiff and members of the Arkansas Class have suffered actual damages and/or injury in fact, including, inter alia: (1) out-of-pocket monies for diagnosis, repair and/or replacement of the defective braking systems; and (2) the difference in value between the Class Vehicles promised and warranted, and the Class Vehicles containing the Defect.

343.    Toyota's conduct is not only deceptive, but also unconscionable within the meaning of ADTPA because it constitutes immoral, unethical, oppressive, and unscrupulous

activity, caused substantial injury to consumers and businesses, and provided no benefit to consumers or competition.

344.    Toyota intended to mislead Plaintiff and Arkansas Class members and induce them to rely on its misrepresentations.

345.    Plaintiff and the Arkansas Class suffered, and will continue to suffer, actual financial loss as a result of Toyota's unconscionable and deceptive acts and practices. Plaintiff also seeks an order enjoining Toyota's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

## COUNT VIII

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (Ark. Code §§ 4-2-314 and 4-2A-212)

### (Brought by Plaintiff Khan on behalf of the Arkansas Class)

346.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

347.    Plaintiff Kamran Khan (for the purpose of this section, "Plaintiff") brings this cause of action on behalf of himself and the Arkansas Class.

348.    Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under Arkansas Code §§ 4-2-104(1) and 4-2A-103(3), and a "seller" of motor vehicles under § 4-2-103(1)(d).

349.    With respect to leases, Toyota is and was at all relevant times a "lessor" of motor vehicles under Arkansas Code § 4-2A-103(1)(p).

350.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Arkansas Code §§ 4-2-105(1) and 4-2A-103(1)(h).

351.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Arkansas Code §§ 4-2-314 and 4-2A-212.

352.    Toyota impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, inter alia, the following: (i) a warranty that the Class Vehicles were manufactured, supplied, distributed, and/or sold by Toyota were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles would be fit for their intended use—providing safe and reliable transportation—while the Class Vehicles were being operated.

353.    Toyota breached the implied warranty of merchantability in that the Class Vehicles were not in merchantable condition when they were sold to Plaintiffs and Arkansas Class members and said vehicles were and are unfit for the ordinary purposes for which such vehicles are used because they pose a serious safety risk to the occupants and are an unreliable means of transportation.

354.    Plaintiff notified Toyota of the Defect in the subject vehicles within a reasonable time after Plaintiff experienced the Toyota Brake Defect. Toyota has been provided notice of these issues by numerous complaints, as alleged herein.

355.    As a direct and proximate result of breaches of the implied warranty of merchantability, Plaintiff and the Arkansas Class members have suffered damages, including but not limited to incidental and consequential damages.

## COUNT IX

## BREACH OF EXPRESS WARRANTY

## (Ark. Code §§ 4-2-313 and 4-2A-210)

### (Brought by Plaintiff Khan on behalf of the Arkansas Class)

356.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

357.    Plaintiff Kamran Khan (for the purpose of this section, "Plaintiff") brings this cause of action on behalf of himself and the Arkansas Class.

358.    Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under Arkansas Code §§ 4-2-104(1) and 4-2A-103(3), and a "seller" of motor vehicles under § 4-2-103(1)(d).

359.    With respect to leases, Toyota is and was at all relevant times a "lessor" of motor vehicles under Arkansas Code § 4-2A-103(1)(p).

360.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Arkansas Code §§ 4-2-105(1) and 4-2A-103(1)(h).

361.    In connection with the sale of the Class Vehicles to the Plaintiff and the Arkansas Class, Toyota provided a new vehicle warranty, under which it agreed to repair original components found to be defective in material or workmanship under normal use and maintenance, including the engine and its components.

362.    Toyota's express warranties were part of the basis of the bargain respecting the purchase and/or lease of the Class Vehicles. In addition to written warranties, Toyota warranted several attributes, characteristics, and qualities of the subject vehicles, as alleged above.

363.    Toyota distributed the defective parts causing the Toyota Brake Defect in the Class Vehicles, and said parts are covered by Toyota's warranties granted to all purchasers and lessees of the Class Vehicles.

364.    Toyota breached these warranties by selling and leasing Class Vehicles with the Toyota Brake Defect, requiring repair or replacement within the applicable warranty periods, and refusing to honor the warranties by providing free repairs or replacements during the applicable warranty periods.

365.    Plaintiffs notified Toyota of its breach within a reasonable time, and/or they were not required to do so because affording Toyota a reasonable opportunity to cure its breaches would have been futile. Toyota also knew about the Toyota Brake Defect but chose to conceal it as a means of avoiding compliance with its warranty obligations.

366.    Plaintiff submitted his vehicle for warranty repairs as referenced herein. Toyota failed to comply with the terms of the express written warranty provided to Plaintiff, by failing and/or refusing to repair the Toyota Brake Defect under the vehicle's warranty as described herein.

367.    Plaintiff has given Toyota a reasonable opportunity to cure the Toyota Brake Defect, but Toyota has been unable and/or has refused to do so within a reasonable time.

368.    As a result of said nonconformities, Plaintiff cannot reasonably rely on the subject vehicle for the ordinary purpose of safe, comfortable, and efficient transportation.

369.    Plaintiff could not reasonably have discovered said nonconformities with the subject vehicles prior to Plaintiff's acceptance of the subject vehicle.

370.    Plaintiff would not have purchased the subject vehicle, or would have paid less for the subject vehicle, had he known, prior to their respective time of purchase or lease, that the subject vehicle contained the Toyota Brake Defect.

371.    As a direct and proximate result of the willful failure of Toyota to comply with its obligations under the express warranties, Plaintiff and the Arkansas Class members have suffered actual and consequential damages. Such damages include, but are not limited to, a diminution in the value of the subject vehicles containing the defects identified herein.

372.    As a direct and proximate cause of Toyota's breach, Plaintiff and the Arkansas Class members bought or leased Class Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class Vehicles.

373.    Any attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Toyota's warranty limitations are unenforceable because it knowingly sold a defective product without giving notice to Plaintiff or the Arkansas Class members.

374.    The time limits contained in Toyota's warranty period were also unconscionable and inadequate to protect Plaintiff and the Arkansas Class members. Among other things,

Plaintiff and the Arkansas Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Toyota. A gross disparity in bargaining power existed between Toyota and Plaintiff and the Arkansas Class members because Toyota knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

375.    Plaintiff and the Arkansas Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Toyota's conduct.

376.    Also, as alleged in more detail herein, at the time that Toyota warranted and sold the vehicles, it knew that the vehicles did not conform to the warranties and were inherently defective, and Toyota wrongfully and fraudulently misrepresented and/or concealed material facts regarding their vehicles. Plaintiff and the Arkansas Class members were therefore induced to purchase the Class Vehicles under false and/or fraudulent pretenses.

377.    Toyota has been provided notice of these issues by numerous complaints as described herein.

378.    As a direct and proximate result of Toyota's breach of express warranties, Plaintiff and the other Arkansas Class members have been damaged in an amount to be determined at trial.

D.    **Claims Brought on Behalf of the California Class**

**COUNT X**

**VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT ("CLRA")**

**(Cal. Civ. Code § 1750, *et seq.*)**

**(Brought by Plaintiffs Medeiros, Bennett-Hauser, Alcaraz, Eun, Kent, and Kwan on behalf of the California Class)**

379.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

- 153 -

380.     Plaintiffs Jason Medeiros, Nancy Bennett-Hauser, Glenn Alcaraz, Chong Eun, Andrea Kent, and Nancy Kwan (for the purpose of this section, "Plaintiffs") bring this cause of action on behalf of themselves and the California Class.

381.     Toyota is a "person" as that term is defined in California Civil Code § 1761(c).

382.     Plaintiffs and the California Class members are "consumers" as that term is defined in California Civil Code § 1761(d).

383.     Toyota engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, and by knowingly and intentionally concealing from Plaintiffs and California Class members that the Class Vehicles suffer from a defect(s) (and the costs, risks, and diminished value of the vehicles as a result of this problem). These acts and practices violate, at a minimum, the following sections of the CLRA:

- (a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

- (a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

- (a)(9) Advertising goods and services with the intent not to sell them as advertised.

384.     Toyota's unfair or deceptive acts or practices occurred repeatedly in its trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

385.     Toyota knew that the Class Vehicles' brake systems were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

386.    Toyota had the duty to Plaintiffs and the California Class members to disclose the Toyota Brake Defect and the defective nature of the Class Vehicles because:

        a)    Toyota was in a superior position to know the true state of facts about the Toyota Brake Defect and associated repair costs in the Class Vehicles;

        b)    Plaintiffs and the California Class members could not reasonably have been expected to learn or discover that the Class Vehicles had dangerous defects until manifestation of the defects;

        c)    Toyota knew that Plaintiffs and the California Class members could not reasonably have been expected to learn about or discover the Defect and its associated repair costs; and

        d)    Toyota actively concealed the Defect, its causes, and resulting effects, by asserting to Plaintiffs and California Class members that their brake systems failed for reasons other than the Toyota Brake Defect.

387.    Whether or not a vehicle's brake systems work properly is a fact a reasonable consumer would consider important in selecting a vehicle to purchase or lease. When Plaintiff and the California Class members bought a Class Vehicle for personal, family, or household purposes, they reasonably expected the vehicle would have non-defective brakes.

388.    In failing to disclose the Toyota Brake Defect and the associated safety risks and repair costs resulting from it, Toyota has knowingly and intentionally concealed material facts and breached its duty to disclose.

389.    The facts Toyota concealed or did not disclose to Plaintiffs and the California Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Vehicles or pay a lesser price. Had Plaintiffs and the California Class members known the Class Vehicles were defective, they would not have purchased the Class Vehicles or would have paid less for them.

390.    Plaintiffs Medeiros and Bennett-Hauser provided Toyota with notice of its CLRA violations pursuant to California Civil Code § 1782(a) on January 22, 2020; Plaintiffs Alcaraz on February 18, 2020; and Plaintiff Eun on February 24, 2020. Plaintiffs Kent and Kwan provided such notice contemporaneously with the filing of the consolidated complaint.  Therefore, Plaintiffs Kent and Kwan seek only injunctive relief until such time as the 30-day notice period has expired, and they are afforded leave amend to this complaint to join in the request for monetary damages under the CLRA.

391.    Toyota's fraudulent and deceptive business practices proximately caused injuries to Plaintiffs and the other California Class members.

392.    Under California Civil Code § 1780(a), Plaintiffs and the California Class seek monetary relief against Toyota measured as the diminution of the value of their vehicles caused by Toyota's violations of the CLRA as alleged herein.

393.    Under California Civil Code § 1780(b), Plaintiffs seek an additional award against Toyota of up to $5,000 for each California Class member who qualifies as a "senior citizen" or "disabled person" under the CLRA. Toyota knew or should have known that its conduct was directed to one or more California Class members who are senior citizens or disabled persons. Toyota's conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person. One or more California Class members who are senior citizens or disabled persons are substantially more vulnerable to Toyota's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial physical, emotional, or economic damage resulting from Toyota's conduct.

394.    Plaintiffs further seek an order enjoining Toyota's unfair or deceptive acts or practices, restitution, punitive damages, costs of court, attorneys' fees under California Civil Code § 1780(e), and any other just and proper relief available under the CLRA.

**COUNT XI**

**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW**

**(Cal. Bus. & Prof. Code § 17200, *et seq.*)**

**(Brought by Plaintiffs Medeiros, Bennett-Hauser, Alcaraz, Eun, Kent, and Kwan on behalf of the California Class)**

395.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

396.    Plaintiffs Jason Medeiros, Nancy Bennett-Hauser, Glenn Alcaraz, Chong Eun, Andrea Kent, and Nancy Kwan (for the purpose of this section, "Plaintiffs") bring this cause of action on behalf of themselves and the California Class.

397.    The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.

398.    Toyota has engaged in unfair competition and unfair, unlawful, or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiffs and the California Class members that the Class Vehicles suffer from the Toyota Brake Defect (and the costs, safety risks, and diminished value of the vehicles as a result of these problems). Toyota should have disclosed this information because it was in a superior position to know the true facts related to the Toyota Brake Defect, and Plaintiffs and California Class members could not have been reasonably expected to learn or discover these true facts.

399.    The Toyota Brake Defect constitutes a safety issue triggering Toyota's duty to disclose.

400.    By its acts and practices, Toyota has deceived Plaintiffs and is likely to have deceived the California Class members and the general public. In failing to disclose the Toyota Brake Defect and suppressing other material facts from Plaintiffs and other California Class

- 157 -

members, Toyota breached its duty to disclose these facts, violated the UCL, and caused injuries to Plaintiffs and the California Class members. Toyota's omissions and acts of concealment pertained to information material to Plaintiffs and other California Class members, as it would have been to all reasonable consumers.

401.    The injuries Plaintiffs and the California Class members suffered greatly outweigh any potential countervailing benefit to consumers or to competition, and they are not injuries that Plaintiffs and the California Class members could or should have reasonably avoided.

402.    Toyota's acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750 *et seq.*, and California Commercial Code § 2313.

403.    As a direct and proximate result of Toyota's violations of the CLRA, Plaintiffs and the California Class have suffered injury-in-fact and/or actual damage.

404.    Plaintiffs and the California Class members seek to enjoin Toyota from further unlawful, unfair, and/or fraudulent acts or practices, to obtain restitutionary disgorgement of all monies and revenues Toyota has generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200.

## COUNT XII

## VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW

### (Cal. Bus. & Prof. Code § 17500, *et seq.*)

### (Brought by Plaintiffs Medeiros, Bennett-Hauser, Alcaraz, Eun, Kent, and Kwan on behalf of the California Class)

405.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

406.    Plaintiffs Jason Medeiros, Nancy Bennett-Hauser, Glenn Alcaraz, Chong Eun, Andrea Kent, and Nancy Kwan (for the purpose of this section, "Plaintiffs") bring this cause of action on behalf of themselves and the California Class.

407.    California Business & Professions Code § 17500 states:  "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

408.    Toyota caused to be made or disseminated through California and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care Toyota should have known to be untrue and misleading to consumers, including Plaintiffs and the California Class members.

409.    Toyota has violated section 17500 because its misrepresentations and omissions regarding the safety, reliability, and functionality of the Class Vehicles were material and likely to deceive a reasonable consumer.

410.    Plaintiffs and the California Class members have suffered injuries in fact, including the loss of money or property, resulting from Toyota's unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Class Vehicles, Plaintiffs and the California Class members relied on Toyota's misrepresentations and/or omissions with respect to the Class Vehicles' safety and reliability. Toyota's representations were untrue because it distributed the Class Vehicles with the Toyota Brake Defect. Had Plaintiffs and the California Class members known this, they would not have purchased or leased the Class Vehicles or would not have paid as much for them. Accordingly, Plaintiffs and the California Class members did not receive the benefit of their bargain.

411.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Toyota's business. Toyota's wrongful conduct is part of a pattern or generalized

course of conduct that is still perpetuated and repeated, both in the state of California and nationwide.

412.    Plaintiffs, individually and on behalf of the California Class members, request that the Court enter such orders or judgments as may be necessary to enjoin Toyota from continuing its unfair, unlawful, and/or deceptive practices, and restore to Plaintiffs and the California Class members any money Toyota acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

**COUNT XIII**

**BREACH OF IMPLIED WARRANTY**

**(Cal. Com. Code §§ 2314 and 10212)**

**(Brought by Plaintiffs Medeiros, Bennett-Hauser, Alcaraz, Eun, Kent, and Kwan on behalf of the California Class)**

413.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

414.    Plaintiffs Jason Medeiros, Nancy Bennett-Hauser, Glenn Alcaraz, Chong Eun, Andrea Kent, and Nancy Kwan (for the purpose of this section, "Plaintiffs") bring this cause of action on behalf of themselves and the California Class.

415.    Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under California Commercial Code §§ 2104(1) and 10103(c), and a "seller" of motor vehicles under § 2103(1)(d).

416.    With respect to leases, Toyota is and was at all relevant times a "lessor" of motor vehicles under California Commercial Code § 10103(a)(16).

417.    The Class Vehicles are and were at all relevant times "goods" within the meaning of California Commercial Code §§ 2105(1) and 10103(a)(8).

418.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to California Commercial Code §§ 2314 and 10212.

419.    Toyota was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Toyota knew or had reason to know of the specific use for which the Class Vehicles were purchased.

420.    Toyota provided Plaintiffs and the California Class members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, inter alia, the Class Vehicles suffered from the Toyota Brake Defect at the time of sale. Therefore, the Class Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

421.    Toyota implied that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their brake systems manufactured, supplied, distributed, and/or sold by Toyota were safe and reliable for the purpose for which they were installed; and (ii) a warranty that the Class Vehicles would be fit for their intended use.

422.    Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and the California Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles suffer from a defective design(s) and/or manufacturing defect(s).

423.    Toyota's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

424.     As a direct and proximate result of Toyota's breach of the implied warranty of merchantability, Plaintiffs and the other California Class members have been damaged in an amount to be proven at trial.

## COUNT XIV

## BREACH OF EXPRESS WARRANTY

### (Cal. Com. Code §§ 2313 and 10210)

**(Brought by Plaintiffs Medeiros, Bennett-Hauser, Alcaraz, Eun, Kent, and Kwan on behalf of the California Class)**

425.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

426.     Plaintiffs Jason Medeiros, Nancy Bennett-Hauser, Glenn Alcaraz, Chong Eun, Andrea Kent, and Nancy Kwan (for the purpose of this section, "Plaintiffs") bring this cause of action on behalf of themselves and the California Class.

427.     Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under California Commercial Code §§ 2104(1) and 10103(c), and a "seller" of motor vehicles under § 2103(1)(d).

428.     With respect to leases, Toyota is and was at all relevant times a "lessor" of motor vehicles under California Commercial Code § 10103(a)(16).

429.     834. The Class Vehicles are and were at all relevant times "goods" within the meaning of California Commercial Code §§ 2105(1) and 10103(a)(8).

430.     Toyota provided all purchasers and lessees of the Class Vehicles with the express warranties described herein, which became part of the basis of the parties' bargain. Accordingly, Toyota's warranties are express warranties under state law.

431.     Toyota distributed the defective parts causing the Toyota Brake Defect in the Class Vehicles, and said parts are covered by Toyota's warranties granted to all purchasers and lessees of the Class Vehicles.

432.    Toyota breached these warranties by selling and leasing Class Vehicles with the Toyota Brake Defect, requiring repair or replacement within the applicable warranty periods, and refusing to honor the warranties by providing free repairs or replacements during the applicable warranty periods.

433.    Plaintiffs notified Toyota of its breach within a reasonable time, and/or they were not required to do so because affording Toyota a reasonable opportunity to cure its breaches would have been futile. Toyota also knew about the Toyota Brake Defect but chose to conceal it as a means of avoiding compliance with its warranty obligations.

434.    As a direct and proximate cause of Toyota's breach, Plaintiffs and the California Class members bought or leased Class Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class Vehicles suffered a diminution in value. Plaintiffs and the California Class members have incurred and will continue to incur costs related to the Toyota Brake Defect's diagnosis and repair.

435.    Any attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Toyota's warranty limitations are unenforceable because it knowingly sold a defective product without giving notice to Plaintiffs or California Class members.

436.    The time limits contained in Toyota's warranty period were also unconscionable and inadequate to protect Plaintiffs and the California Class members. Among other things, Plaintiffs and the California Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Toyota. A gross disparity in bargaining power existed between Toyota and Plaintiffs and the California Class members because Toyota knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

437.    Plaintiffs and the California Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Toyota's conduct.

438.    As a direct and proximate result of the Toyota's breach of express warranties, Plaintiffs and the other California Class members have been damaged in an amount to be determined at trial.

## COUNT XV

## VIOLATIONS OF THE SONG-BEVERLY ACT – BREACH OF IMPLIED WARRANTY
### (Cal. Civ. Code §§ 1792, 1791.1, *et seq.*)

### (Brought by Plaintiffs Medeiros, Bennett-Hauser, Alcaraz, Eun, Kent, and Kwan on behalf of the California Class)

439.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

440.    Plaintiffs Jason Medeiros, Nancy Bennett-Hauser, Glenn Alcaraz, Chong Eun, Andrea Kent, and Nancy Kwan (for the purpose of this section, "Plaintiffs") bring this cause of action on behalf of themselves and the California Class.

441.    Plaintiffs and the other Class members who purchased or leased the Class Vehicles in California are "buyers" within the meaning of California Civil Code § 1791(b).

442.    The Class Vehicles are "consumer goods" within the meaning of California Civil Code § 1791(a).

443.    Toyota is a "manufacturer" of the Class Vehicles within the meaning of California Civil Code § 1791(j).

444.    Toyota impliedly warranted to Plaintiffs and the other California Class members that its Class Vehicles were "merchantable" within the meaning of California Civil Code §§ 1791.1(a) & 1792, however, the Class Vehicles do not have the quality that a buyer would reasonably expect.

- 164 -

445.    California Civil Code § 1791.1(a) states:

"Implied warranty of merchantability" or "implied warranty that
goods are merchantable" means that the consumer goods meet
each of the following:

(1)  Pass without objection in the trade under the contract description.

(2)  Are fit for the ordinary purposes for which such goods are used.

(3)   Are adequately contained, packaged, and labeled.

(4)  Conform to the promises or affirmations of fact made
on the container or label.

446.    The Class Vehicles would not pass without objection in the automotive trade because the existence of the Brake Defect renders the Class Vehicles not fit for the purpose of providing safe and reliable transportation.

447.    Toyota provided Plaintiffs and the California Class members with an implied warranty that the Class Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. The Class Vehicles, however, are not fit for their ordinary purpose because, inter alia, the Class Vehicles suffered from an inherent defect at the time of sale.

448.    Toyota impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, inter alia, the following: (i) a warranty that the Class Vehicles were manufactured, supplied, distributed, and/or sold by Toyota were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles would be fit for their intended use—providing safe and reliable transportation—while the Class Vehicles were being operated.

449.    Contrary to the applicable implied warranties, the Class Vehicles were not fit for their ordinary and intended purpose. Instead, the Class Vehicles are defective, including, but not limited to, the Toyota Brake Defect.

450.    As a direct and proximate result of Toyota's breach of the implied warranty of merchantability, Plaintiffs and the California Class members received goods whose defective

- 165 -

condition substantially impairs their value to Plaintiffs and the California Class members. Plaintiffs and the California Class members have been damaged as a result of the diminished value of the Class Vehicles, the Class Vehicles' malfunctioning, and the nonuse of their Class Vehicles.

451.    Pursuant to California Civil Code §§ 1791.1(d) and 1794, Plaintiffs and the other California Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

452.    Pursuant to Cal. Civ. Code § 1794, Plaintiffs and the other California Class members are entitled to costs and attorneys' fees.

453.    Toyota's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

**COUNT XVI**

**COMMON LAW FRAUDULENT CONCEALMENT**

**(Based on California Law)**

**(Brought by Plaintiffs Medeiros, Bennett-Hauser, Alcaraz, Eun, Kent, and Kwan on behalf of the California Class)**

454.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

455.    Plaintiffs Jason Medeiros, Nancy Bennett-Hauser, Glenn Alcaraz, Chong Eun, Andrea Kent, and Nancy Kwan (for the purpose of this section, "Plaintiffs") bring this cause of action on behalf of themselves and the California Class.

456.    Toyota made material omissions concerning a presently existing or past fact in that, for example, Toyota did not fully and truthfully disclose to its customers the true nature of the Toyota Brake Defect which was not readily discoverable by them until many years after

purchase or lease of the Class Vehicles. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

457.    Toyota was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

458.    In addition, Toyota had a duty to disclose these omitted material facts because they were known and/or accessible only to Toyota who had superior knowledge and access to the facts, and Toyota knew they were not known to or reasonably discoverable by Plaintiffs and the California Class members. These omitted facts were material because they directly impact the safety of the Class Vehicles.

459.    Toyota was in exclusive control of the material facts and such facts were not known to the public or the California Class members. Toyota also possessed exclusive knowledge of the defects rendering Class Vehicles inherently more dangerous and unreliable than similar vehicles.

460.    Toyota actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs and the California Class members to purchase the Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

461.    Plaintiffs and the California Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs and the California Class members were justified.

462.    Plaintiffs and the California Class members reasonably relied on these omissions and suffered damages as a result.

463.    As a result of these omissions and concealments, Plaintiffs and the California Class members incurred damages including loss of intrinsic value and out-of-pocket costs related to repair of the systems.

464.    Toyota's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs and the California Class members. Toyota's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT XVII

## FAILURE TO RECALL/RETROFIT

### (Based on California Law)

### (Brought by Plaintiffs Medeiros, Bennett-Hauser, Alcaraz, Eun, Kent, and Kwan on behalf of the California Class)

465.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

466.    Plaintiffs Jason Medeiros, Nancy Bennett-Hauser, Glenn Alcaraz, Chong Eun, Andrea Kent, and Nancy Kwan (for the purpose of this section, "Plaintiffs") bring this cause of action on behalf of themselves and the California Class.

467.    Toyota manufactured, marketed, distributed, sold, or otherwise placed into the stream of U.S. commerce the Class Vehicles, as set forth above.

468.    Toyota knew or reasonably should have known that the Class Vehicles were dangerous when used in a reasonably foreseeable manner and posed an unreasonable risk.

469.    Toyota became aware that the Class Vehicles were dangerous when used in a reasonably foreseeable manner and posed an unreasonable risk after the Vehicles were sold.

470.    Toyota failed to recall the Class Vehicles in a timely manner or warn of the dangers posed by Class Vehicles. In addition, Toyota's Customer Support Program in connection with the Toyota Brake Defect, discussed *infra*, was ineffective because it did not mitigate or

otherwise resolve the dangers posed by the Toyota Brake Defect in Class Vehicles that have not previously registered specified diagnostic trouble codes.

471. A reasonable manufacturer in same or similar circumstances would have timely and properly recalled the Class Vehicles.

472. Plaintiffs and California Class members were harmed by Toyota's failure to recall the Class Vehicles properly and in a timely manner and, as a result, have suffered damages, including their out-of-pocket costs, losses, and inconvenience expended in complying with the false recall and caused by Toyota's ongoing failure to properly recall, retrofit, and fully repair the Class Vehicles.

473. Toyota's failure to timely recall the Class Vehicles was a substantial factor in causing the harm to Plaintiffs and California Class members as alleged herein.

E. **Claims Brought on Behalf of the Colorado Class**

**COUNT XVIII**

**VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT**

**(Col. Rev. Stat. § 6-1-101, *et seq.*)**

**(Brought by Plaintiff Owens on behalf of the Colorado Class)**

474. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

475. Plaintiff Stephanie Owens (for the purpose of this section, "Plaintiff") brings this cause of action on behalf of herself and the Colorado Class.

476. Toyota is a "person" under section 6-1-102(6) of the Colorado Consumer Protection Act ("Colorado CPA"), Col. Rev. Stat. § 6-1-101 *et seq.*

477. Plaintiff and the Colorado Class members are "consumers" for purposes of section 6-1-113(1)(a) of the Colorado CPA, each of whom purchased or leased one or more Class Vehicles.

478. In the course of their business, Toyota participated in deceptive trade practices that violated the Colorado CPA, as described above and below. Toyota is directly liable for these violations of law.

479. Toyota failed to disclose and actively concealed the dangerous risk of brake failure in the Class Vehicles.

480. Toyota engaged in deceptive trade practices prohibited by the Colorado CPA, including (1) knowingly making a false representation as to the characteristics, uses, and benefits of the Class Vehicles that had the capacity or tendency to deceive Plaintiff and the Colorado Class members; (2) representing that the Class Vehicles are of a particular standard, quality, and grade even though Toyota knew or should have known they are not; (3) advertising the Class Vehicles with the intent not to sell them as advertised; and (4) failing to disclose material information concerning the Class Vehicles that was known to Toyota at the time of advertisement or sale with the intent to induce Plaintiff and the Colorado Class members to purchase or lease the Class Vehicles.

481. Toyota knew that the brake system in the Class Vehicles was defectively designed or manufactured, would fail without warning, and was not suitable for its intended use. Toyota, nevertheless, failed to warn Plaintiff or the Colorado Class members about these inherent dangers despite having a duty to do so.

482. Toyota had the duty to Plaintiff and the Colorado Class members to disclose the Toyota Brake Defect and the defective nature of the Class Vehicles because:

        a)    Toyota was in a superior position to know the true state of facts about the Toyota Brake Defect and associated repair costs in the Class Vehicles;

        b)    Plaintiff and the Colorado Class members could not reasonably have been expected to learn or discover that the Class Vehicles had dangerous defects until manifestation of the defects;

      c)      Toyota knew that Plaintiff and the Colorado Class members could not reasonably have been expected to learn about or discover the Toyota Brake Defect and its associated repair costs; and

      d)      Toyota actively concealed the Defect, its causes, and resulting effects, by asserting to Plaintiff and Colorado Class members that their brake systems failed for reasons other than the Toyota Brake Defect.

483.    Toyota's practices significantly affected the public as consumers of the Class Vehicles, which pose an unreasonable risk of death or serious bodily injury to Plaintiff and the Colorado Class members, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to incidents of brake failure.

484.    Whether or not a vehicle's brake systems work properly is a fact a reasonable consumer would consider important in selecting a vehicle to purchase or lease. When Plaintiff and the Colorado Class members bought a Class Vehicle for personal, family, or household purposes, they reasonably expected the vehicle would have non-defective brakes.

485.    Toyota's deceptive practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Colorado Class members, about the true safety and reliability of the Class Vehicles.

486.    Plaintiff and the Colorado Class members suffered injury-in-fact to their legally protected property interests as a result of Toyota's violations of the Colorado CPA. Plaintiff and the Colorado Class members currently own or lease, or within the class period have owned or leased, the defective Class Vehicles.

487.    Pursuant to section 6-1-113(2) of the Colorado CPA, Plaintiff and the Colorado Class members seek monetary relief against Toyota measured as the greater of (a) the amount of actual damages sustained, (b) statutory damages in the amount of $500 for each Plaintiff, and/or (c) three times the amount of actual damages based on Toyota's bad faith conduct.

## COUNT XIX

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

## (Col. Rev. Stat. § 4-2-314 and 4-2.5-212)

### (Brought by Plaintiff Owens on behalf of the Colorado Class)

488.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

489.    Plaintiff Stephanie Owens (for the purpose of this section, "Plaintiff") brings this cause of action on behalf of herself and the Colorado Class.

490.    Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under Colorado Revised Statutes §§ 4-2-104(1) and 4-2.5-103(3), and a "seller" of motor vehicles under section 4-2-103(1)(d).

491.    With respect to leases, Toyota is and was at all relevant times a "lessor" of motor vehicles under Colorado Revised Statutes § 4-2.5-103(1)(p).

492.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Colorado Revised Statutes §§ 4-2-105(1) and 4-2.5-103(1)(h).

493.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Colorado Revised Statutes §§ 4-2-313 and 4-2.5-212.

494.    The Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that their brake systems are defective.

495.    Toyota was provided notice of these issues by numerous complaints as alleged previously herein.

496.    As a direct and proximate result of Toyota's breaches of the warranties of merchantability, Plaintiff and the other Colorado Class members have been damaged in an amount to be proven at trial.

**COUNT XX**

**BREACH OF EXPRESS WARRANTY**

**(Colo. Rev. Stat. §§ 4-2-313 and 4-2.5-210)**

**(Brought by Plaintiff Owens on behalf of the Colorado Class)**

497.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

498.    Plaintiff Stephanie Owens (for the purpose of this section, "Plaintiff") brings this cause of action on behalf of herself and the Colorado Class.

499.    Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under Colorado Revised Statutes §§ 4-2-104(1) and 4-2.5-103(3), and a "seller" of motor vehicles under section 4-2-103(1)(d).

500.    With respect to leases, Toyota is and was at all relevant times a "lessor" of motor vehicles under Colorado Revised Statutes § 4-2.5-103(1)(p).

501.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Colorado Revised Statutes §§ 4-2-105(1) and 4-2.5-103(1)(h).

502.    In the course of selling the Class Vehicles, Toyota expressly warranted in writing that the vehicles were covered by a Basic Warranty.

503.    Toyota provided all purchasers and lessees of the Class Vehicles with the express warranties described herein, which became part of the basis of the parties' bargain. Accordingly, Toyota's warranties are express warranties under state law.

504.    Toyota distributed the defective parts causing the Toyota Brake Defect in the Class Vehicles, and said parts are covered by Toyota's warranties granted to all purchasers and lessees of the Class Vehicles.

505.    Toyota breached these warranties by selling and leasing Class Vehicles with the Toyota Brake Defect, requiring repair or replacement within the applicable warranty periods, and

- 173 -

refusing to honor the warranties by providing free repairs or replacements during the applicable warranty periods.

506.     Plaintiff notified Toyota of its breach within a reasonable time, and/or they were not required to do so because affording Toyota a reasonable opportunity to cure its breaches would have been futile, as Toyota had received notice of these issues through numerous complaints, as alleged herein.

507.     Toyota also knew about the Toyota Brake Defect but chose to conceal it as a means of avoiding compliance with its warranty obligations.

508.     Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiff and the Colorado Class members whole and because Toyota has failed and/or refused to adequately provide the promised remedies within a reasonable time.

509.     Accordingly, recovery by Plaintiff and the Colorado Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and thus Plaintiff and the Colorado Class members seek all remedies as allowed by law.

510.     Also, as alleged in more detail herein, at the time that Toyota warranted and sold the vehicles they knew that the vehicles did not conform to the warranties and were inherently defective, and Toyota wrongfully and fraudulently misrepresented and/or concealed material facts regarding their vehicles. Plaintiff and the Colorado Class members were therefore induced to purchase the vehicles under false and/or fraudulent pretenses. The enforcement under these circumstances of any limitations whatsoever precluding the recovery of incidental and/or consequential damages is unenforceable.

511.     Any attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Toyota's warranty limitations are unenforceable because it knowingly sold a defective product without giving notice to Plaintiff or Colorado Class members.

512.    The time limits contained in Toyota's warranty period were also unconscionable and inadequate to protect Plaintiff and the Colorado Class members. Among other things, Plaintiff and the Colorado Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Toyota. A gross disparity in bargaining power existed between Toyota and Plaintiff and the Colorado Class members because Toyota knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

513.    Plaintiff and the Colorado Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Toyota's conduct.

514.    Due to the breach of warranties set forth herein, Plaintiff and the Colorado Class members assert as an additional and/or alternative remedy, as set forth in Colorado Revised Statutes § 4-2-711, for a revocation of acceptance of the goods, and for a return to Plaintiff and the Colorado Class members of the purchase price of all vehicles currently owned and for such other incidental and consequential damages as allowed under Colorado Revised Statutes §§ 4-2-711 and 4-2-608.

515.    As a direct and proximate cause of Toyota's breach, Plaintiff and the Colorado Class members bought or leased Class Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class Vehicles suffered a diminution in value. Plaintiff and the Colorado Class members have incurred and will continue to incur costs related to the Toyota Brake Defect's diagnosis and repair.

516.    As a direct and proximate result of the Toyota's breach of express warranties, Plaintiff and the Colorado Class members have been damaged in an amount to be determined at trial.

## COUNT XXI

## BREACH OF COMMON LAW WARRANTY

### (Based on Colorado Law)

### (Brought by Plaintiff Owens on behalf of the Colorado Class)

517.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

518.    Plaintiff Stephanie Owens (for the purpose of this section, "Plaintiff") brings this cause of action on behalf of herself and the Colorado Class.

519.    To the extent Toyota's repair or adjust commitment is deemed not to be a warranty under Colorado's Uniform Commercial Code provisions, Plaintiff and the Colorado Class members plead in the alternative under common law warranty and contract law.

520.    Toyota limited the remedies available to Plaintiff and the Colorado Class members to just repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota. Toyota breached this warranty or contract obligation by failing to repair the Defective Vehicles evidencing a sudden unintended acceleration problem, including those that were recalled, or to replace them.

521.    As a direct and proximate result of Toyota's breach of contract or common law warranty, Plaintiff and the Colorado Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT XXII

## FRAUD BY CONCEALMENT

### (Based on Colorado Law)

### (Brought by Plaintiff Owens on behalf of the Colorado Class)

522.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

- 176 -

523.     Plaintiff Stephanie Owens (for the purpose of this section, "Plaintiff") brings this cause of action on behalf of herself and the Colorado Class.

524.     Toyota made material omissions concerning a presently existing or past fact in that, for example, Toyota did not fully and truthfully disclose to its customers the true nature of the Toyota Brake Defect which was not readily discoverable by them until many years after purchase or lease of the Class Vehicles. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

525.     Toyota was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

526.     In addition, Toyota had a duty to disclose these omitted material facts because they were known and/or accessible only to Toyota who had superior knowledge and access to the facts, and Toyota knew they were not known to or reasonably discoverable by Plaintiff and the Colorado Class members. These omitted facts were material because they directly impact the safety of the Class Vehicles.

527.     Toyota was in exclusive control of the material facts and such facts were not known to the public or the Colorado Class members. Toyota also possessed exclusive knowledge of the defects rendering Class Vehicles inherently more dangerous and unreliable than similar vehicles.

528.     Toyota actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff and the Colorado Class members to purchase the Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

529.    Plaintiff and the Colorado Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiff and the Colorado Class members were justified.

530.    Plaintiff and the Colorado Class members reasonably relied on these omissions and suffered damages as a result.

531.    As a result of these omissions and concealments, Plaintiff and the Colorado Class members incurred damages including loss of intrinsic value and out-of-pocket costs related to repair of the systems.

532.    As a result of the concealment and/or suppression of the facts, Plaintiff and the Colorado Class members sustained damage. Plaintiff and the Colorado Class members reserve their right to elect either to (a) rescind their purchase or lease of the Class Vehicles and obtain restitution or (b) affirm their purchase or lease of the Class Vehicles and recover damages.

533.    Toyota's acts were done fraudulently, maliciously, or willfully for purposes of Colorado Revised Statutes § 13-21-102. Toyota's conduct warrants an assessment of exemplary damages in an amount equal to the amount of the actual damages awarded to Plaintiff and the Class members.

## COUNT XXIII

## UNJUST ENRICHMENT

### (Based on Colorado Law)

### (Brought by Plaintiff Owens on behalf of the Colorado Class)

534.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

535.    Plaintiff Stephanie Owens (for the purpose of this section, "Plaintiff") brings this cause of action on behalf of herself and the Colorado Class.

536.    As a result of their wrongful and fraudulent acts and omissions, as set forth above, Toyota charged a higher price for the Class Vehicles than Plaintiff and the Colorado Class members would have paid had they had the information Toyota withheld from them.

537.    For these reasons, Toyota obtained monies which rightfully belong to Plaintiff and the Colorado Class. It would be inequitable and unjust for Toyota to retain these wrongfully obtained profits.

538.    Plaintiff Owens, therefore, seeks an order establishing Toyota as constructive trustees of the profits unjustly obtained, plus interest.

**F.    <u>Claims Brought on Behalf of the Florida Class</u>**

**COUNT XXIV**

**VIOLATION OF FLORIDA UNFAIR & DECEPTIVE TRADE PRACTICES ACT**

**(Fla. Stat. § 501.201, *et seq.*)**

**(Brought by Plaintiffs Siegel, Vasquez, Vasquez, and Winia on behalf of the Florida Class)**

539.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

540.    Plaintiffs David Siegel, Gregory Vasquez, Madeline Vasquez, and Yvette Winia (for the purpose of this section, "Plaintiffs") bring this cause of action on behalf of themselves and the Florida Class.

541.    Plaintiffs and the Florida Class members are "consumers" within the meaning of the Florida Unfair and Deceptive Trade Practices Act ("FUDTPA"), Fla. Stat. § 501.203(7).

542.    Toyota engaged in "trade or commerce" within the meaning of Florida Statutes § 501.203(8).

543.    The FUDTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

544.    Toyota knowingly failed to disclose, concealed, suppressed and/or omitted material facts regarding the Defect and associated safety hazard and misrepresented the standard, quality, or grade of the Class Vehicles, which directly caused harm to the Plaintiff. Toyota actively suppressed the fact that the brake systems in Class Vehicles are defective and present a safety hazard because of materials, workmanship and/or manufacturing defects.

545.    Further, Toyota employed unfair and deceptive trade practices to deny repair or replacement of the Toyota Brake Defect under warranty and within a reasonable time in violation of the FUDTPA. Toyota also breached its warranties as alleged herein in violation of the FUDTPA.

546.    Toyota's unfair and deceptive trade practices were likely to deceive a reasonable consumer. Plaintiffs and members of the Florida Class had no reasonable way to know that Class Vehicles contained braking systems that were defective in materials, workmanship, and/or manufacture and posed a safety risk. Toyota possessed superior knowledge as to the quality and characteristics of the Class Vehicles, including the Toyota Brake Defect and associated safety risks, and any reasonable consumer would have relied on Toyota's misrepresentations and omissions as Plaintiffs and members of the Florida Class did.

547.    Toyota intentionally and knowingly misrepresented and omitted facts regarding defective braking systems and associated safety hazard with the intent to mislead Plaintiffs and Florida Class members. Toyota knew, or should have known, that brake system was defective and prone to fail and expose drivers and the public to an associated safety hazard.

548.    Toyota had the duty to Plaintiffs and the Florida Class members to disclose the Toyota Brake Defect and the defective nature of the Class Vehicles because:

  a)    Toyota was in a superior position to know the true state of facts about the Toyota Brake Defect and associated repair costs in the Class Vehicles;

b) Plaintiffs and the Florida Class members could not reasonably have been expected to learn or discover that the Class Vehicles had dangerous defects until manifestation of the defects;

c) Toyota knew that Plaintiffs and the Florida Class members could not reasonably have been expected to learn about or discover the Toyota Brake Defect and its associated repair costs; and

d) Toyota actively concealed the Toyota Brake Defect, its causes, and resulting effects, by asserting to Plaintiffs and Florida Class members that their brake systems failed for reasons other than the Toyota Brake Defect.

549. Toyota's unfair and deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Tokyo Brake Defect were intended to mislead consumers and did mislead Plaintiff and Florida Class members.

550. As a direct and proximate result of Toyota's violations of the FUDTPA, Plaintiffs and members of the Florida Class have suffered actual damages and/or injury in fact, including, *inter alia*: (1) out-of-pocket monies for diagnosis, repair and/or replacement of the defective braking systems; (2) the difference in value between the Class Vehicles promised and warranted, and the Class Vehicles containing the Toyota Brake Defect.

551. Plaintiffs and members of the Florida Class seek actual damages against Toyota in an amount to be determined at trial and statutory, treble, and/or punitive damages under the FUDTPA. Plaintiffs and members of the Florida Class also seek an order enjoining Toyota's unfair, unlawful, and/or deceptive practices and awarding costs, attorneys' fees and restitution, disgorgement of funds, and any other just and proper relief available under the FUDTPA.

552. Pursuant to Florida Statute § 501.201, Plaintiffs will serve the Florida Attorney General with a copy of this complaint because they seek injunctive relief.

## COUNT XXV

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

## (Fla. Stat. § 672.314)

**(Brought by Plaintiffs Siegel, Vasquez, Vasquez, and Winia on behalf of the Florida Class)**

553.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

554.    Plaintiffs David Siegel, Gregory Vasquez, Madeline Vasquez, and Yvette Winia (for the purpose of this section, "Plaintiffs") bring this cause of action on behalf of themselves and the Florida Class.

555.    Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under Florida Statutes Annotated §§ 672.104(1) and 680.1031(3)(k), and a "sellers" of motor vehicles under section 672.103(1)(d).

556.    With respect to leases, Toyota is and was at all relevant times a "lessor" of motor vehicles under Florida Statutes Annotated § 680.1031(1)(p).

557.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Florida Statutes Annotated §§ 672.105(1) and 680.1031(1)(h).

558.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Florida Statutes Annotated §§ 672.314 and 680.212.

559.    These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective.

560.    Toyota was provided notice of these issues by numerous complaints as alleged herein.

561.    Plaintiffs and the Florida Class members have had sufficient dealings with either the Toyota or its agents (dealerships) to establish privity of contract between Plaintiffs and the

Florida Class members. Notwithstanding this, privity is not required in this case because Plaintiffs and the Florida Class members are intended third-party beneficiaries of contracts between Toyota and its dealers; specifically, they are the intended beneficiaries of Toyota's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

562. Finally, privity is also not required because the Class Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

563. As a direct and proximate result of Toyota's breach of the warranties of merchantability, Plaintiffs and the Florida Class members have been damaged in an amount to be proven at trial.

**COUNT XXVI**

**BREACH OF EXPRESS WARRANTY**

**(Fla. Stat. § 672.313)**

**(Brought by Plaintiffs Siegel, Vasquez, Vasquez, and Winia on behalf of the Florida Class)**

564. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

565. Plaintiffs David Siegel, Gregory Vasquez, Madeline Vasquez, and Yvette Winia (for the purpose of this section, "Plaintiffs") bring this cause of action on behalf of themselves and the Florida Class.

566. Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under Florida Statutes Annotated §§ 672.104(1) and 680.1031(3)(k), and is a "seller" of motor vehicles under section 672.103(1)(d).

567. With respect to leases, Toyota is and was at all relevant times a "lessor" of motor vehicles under Florida Statutes Annotated § 680.1031(1)(p).

568.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Florida Statutes Annotated §§ 672.105(1) and 680.1031(1)(h).

569.    In the course of selling the Class Vehicles, Toyota expressly warranted in writing that the Class Vehicles were covered by a warranty, as set forth above.

570.    Toyota breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Toyota. Toyota has not repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

571.    In addition to the written warranties Toyota issued, Toyota expressly warranted several attributes, characteristics, and qualities, as set forth above.

572.    Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the Florida Class members whole and because Toyota has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

573.    Accordingly, recovery by Plaintiffs and the Florida Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs and the Florida Class members seek all remedies as allowed by law.

574.    Also, as alleged in more detail herein, at the time that Toyota warranted and sold the vehicles, it knew that the vehicles did not conform to the warranties and were inherently defective, and Toyota wrongfully and fraudulently misrepresented and/or concealed material facts regarding their vehicles. Plaintiffs and the Florida Class members were therefore induced to purchase the Class Vehicles under false and/or fraudulent pretenses.

575.    Moreover, many of the damages flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to Toyota's fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a

reasonable time, and any limitation on Plaintiffs and the Florida Class members' remedies would be insufficient.

576.     Toyota has been provided notice of these issues by numerous complaints as described herein.

577.     As a direct and proximate result of Toyota's breach of express warranties, Plaintiffs and the other Florida Class members have been damaged in an amount to be determined at trial.

**COUNT XXVII**

**BREACH OF CONTRACT/COMMON LAW WARRANTY**

**(Based on Florida Law)**

**(Brought by Plaintiffs Siegel, Vasquez, Vasquez, and Winia on behalf of the Florida Class)**

578.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

579.     Plaintiffs David Siegel, Gregory Vasquez, Madeline Vasquez, and Yvette Winia (for the purpose of this section, "Plaintiffs") bring this cause of action on behalf of themselves and the Florida Class.

580.     To the extent Toyota's repair or adjust commitment is deemed not to be a warranty under Florida's Commercial Code, Plaintiffs and the Florida Class members plead in the alternative under common law warranty and contract law theories  Toyota limited the remedies available to Plaintiffs and the Florida Class members to just repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota, and/or warranted the quality or nature of those services to Plaintiffs.

581.     Toyota breached this warranty or contract obligation by failing to repair the Class Vehicles evidencing a sudden unintended acceleration problem, including those that were recalled, or to replace them.

582.     As a direct and proximate result of Toyota's breach of contract or common law warranty, Plaintiffs and the Florida Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

### COUNT XXVIII

### FRAUD BY CONCEALMENT

### (Based on Florida Law)

### (Brought by Plaintiffs Siegel, Vasquez, Vasquez, and Winia on behalf of the Florida Class)

583.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

584.     Plaintiffs David Siegel, Gregory Vasquez, Madeline Vasquez, and Yvette Winia (for the purpose of this section, "Plaintiffs") bring this cause of action on behalf of themselves and the Florida Class.

585.     Toyota made material omissions concerning a presently existing or past fact in that, for example, Toyota did not fully and truthfully disclose to its customers the true nature of the Toyota Brake Defect which was not readily discoverable by them until many years after purchase or lease of the Class Vehicles. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

586.     Toyota was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

587.     In addition, Toyota had a duty to disclose these omitted material facts because they were known and/or accessible only to Toyota who had superior knowledge and access to the facts, and Toyota knew they were not known to or reasonably discoverable by Plaintiffs and the

Florida Class members. These omitted facts were material because they directly impact the safety of the Class Vehicles.

588.    Toyota was in exclusive control of the material facts and such facts were not known to the public or the Florida Class members. Toyota also possessed exclusive knowledge of the defects rendering Class Vehicles inherently more dangerous and unreliable than similar vehicles.

589.    Toyota actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs and the Florida Class members to purchase the Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

590.    Toyota still have not made full and adequate disclosure and continue to defraud Plaintiffs and the Florida Class members.

591.    Plaintiffs and the Florida Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs and the Florida Class members were justified.

592.    Plaintiffs and the Florida Class members reasonably relied on these omissions and suffered damages as a result.

593.    As a result of these omissions and concealments, Plaintiffs and the Florida Class members incurred damages including loss of intrinsic value and out-of-pocket costs related to repair of the systems.

594.    Toyota's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs and the Florida Class members. Toyota's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT XXIX

## UNJUST ENRICHMENT

### (Based on Florida Law)

**(Brought by Plaintiffs Siegel, Vasquez, Vasquez, and Winia on behalf of the Florida Class)**

595.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

596.     Plaintiffs David Siegel, Gregory Vasquez, Madeline Vasquez, and Yvette Winia (for the purpose of this section, "Plaintiffs") bring this cause of action on behalf of themselves and the Florida Class.

597.     Toyota had knowledge of the safety defects in the Class Vehicles, which it failed to disclose to Plaintiffs and the Florida Class members.

598.     As a result of their wrongful and fraudulent acts and omissions, as set forth above, pertaining to the design defect of their vehicles and the concealment of the defect, Toyota charged a higher price for the Class Vehicles than Plaintiffs and the Florida Class members otherwise would have paid, and Toyota obtained monies which rightfully belong to Plaintiffs and the Florida Class members.

599.     Toyota appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and the Florida Class members, who without knowledge of the safety defects paid a higher price for vehicles than they otherwise would have paid. It would be inequitable and unjust for Toyota to retain these wrongfully obtained profits.

600.     Therefore, Plaintiffs and the Florida Class members are entitled to restitution and an order establishing Toyota as constructive trustees of the profits unjustly obtained, plus interest.

**G.**     **Claims Brought on Behalf of the Illinois Class**

**COUNT XXX**

**VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE TRADE**

**PRACTICES ACT**

**(815 ILCS 505/1, *et seq.* and 720 ILCS 295/1a)**

**(Brought by Plaintiffs Rivera and Rivera on behalf of the Illinois Class)**

601.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

602.     Plaintiffs Raul Rivera and Cristina Rivera (for the purpose of this section, "Plaintiffs") bring this cause of action on behalf of themselves and the Illinois Class.

603.     Toyota is and was at all relevant times a "person" as that term is defined in 815 Illinois Compiled Statutes § 505/1(c).

604.     Plaintiffs and the Illinois Class are and were at all relevant times "consumers" as that term is defined in 815 Illinois Compiled Statutes § 505/1(e).

605.     In Illinois, the "Consumer Fraud and Deceptive Business Practices Act," 815 ILCS § 505/1, *et seq.*, prohibits "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' . . . ."

606.     Plaintiffs and the Illinois Class members were injured by Toyota's deceptive misrepresentations, concealments and omissions and these misrepresentations, concealments and omissions were material and deceived Plaintiffs and the Illinois Class members. Because Plaintiffs and the Illinois Class members relied on Toyota's misrepresentations, concealments

and omissions when purchasing and/or leasing Toyota's Class Vehicles, they were injured at the time of purchase and/or lease.

607.    Toyota does business in Illinois, sells and distributes vehicles in Illinois, and engaged in deceptive acts and practices in connection with the sale and lease of the Class Vehicles in Illinois and elsewhere in the United States.

608.    Toyota knowingly failed to disclose, concealed, suppressed and/or omitted material facts regarding the Defect and associated safety hazard and misrepresented the standard, quality, or grade of the Class Vehicles, which directly caused harm to Plaintiffs and the Illinois Class members. Toyota actively suppressed the fact that the brake systems in Class Vehicles are defective and present a safety hazard because of materials, workmanship and/or manufacturing defects.

609.    Toyota's unfair and deceptive trade practices were likely to deceive a reasonable consumer. Plaintiffs and members of the Illinois Class had no reasonable way to know that Class Vehicles contained braking systems that were defective in materials, workmanship, and/or manufacture and posed a safety risk. Toyota possessed superior knowledge as to the quality and characteristics of the Class Vehicles, including the Defect and associated safety risks, and any reasonable consumer would have relied on Toyota's misrepresentations and omissions as Plaintiffs and members of the Illinois Class did.

610.    Toyota had the duty to Plaintiffs and the Illinois Class members to disclose the Toyota Brake Defect and the defective nature of the Class Vehicles because:

        a)    Toyota was in a superior position to know the true state of facts about the Toyota Brake Defect and associated repair costs in the Class Vehicles;

        b)    Plaintiffs and the Illinois Class members could not reasonably have been expected to learn or discover that the Class Vehicles had dangerous defects until manifestation of the defects;

c)      Toyota knew that Plaintiffs and the Illinois Class members could not reasonably have been expected to learn about or discover the Toyota Brake Defect and its associated repair costs; and

d)      Toyota actively concealed the Toyota Brake Defect, its causes, and resulting effects, by asserting to Plaintiffs and Illinois Class members that their brake systems failed for reasons other than the Toyota Brake Defect.

611.    Toyota's unfair and deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Toyota Brake Defect were intended to mislead consumers and misled Plaintiffs and Illinois Class members.

612.    Toyota's violations present a continuing risk to Plaintiffs as well as to the general public. Toyota's unlawful acts and practices complained of herein affect the public interest.

613.    As a direct and proximate result of Toyota's violations, Plaintiffs and members of the Illinois Class have suffered actual damages and/or injury in fact, including, inter alia: (1) out-of-pocket monies for diagnosis, repair and/or replacement of the defective braking systems; (2) the difference in value between the Class Vehicles promised and warranted, and the Class Vehicles containing the Toyota Brake Defect.

614.    Plaintiffs and members of the Illinois Class seek actual damages against Toyota in an amount to be determined at trial and statutory, treble, and/or punitive damages under the Illinois Consumer Fraud and Deceptive Business Practices Act. Plaintiffs and members of the Illinois Class also seek an order enjoining Toyota's unfair, unlawful, and/or deceptive practices and awarding costs, attorneys' fees and restitution, disgorgement of funds, and any other just and proper relief available under the Illinois Consumer Fraud and Deceptive Business Practices Act.

615.    Pursuant to 815 Illinois Compiled Statutes § 505/10a(d), Plaintiffs will mail a copy of the complaint to the Illinois Attorney General.

## COUNT XXXI

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

## (810 ILCS §§ 5/2-314 and 5/2A-212)

### (Brought by Plaintiffs Rivera and Rivera on behalf of the Illinois Class)

616.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

617.    Plaintiffs Raul Rivera and Cristina Rivera (for the purpose of this section, "Plaintiffs") bring this cause of action on behalf of themselves and the Illinois Class.

618.    Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under 810 Illinois Compiled Statutes §§ 5/2-104(1) and 5/2A-103(3), and a "seller" of motor vehicles under section 5/2-103(1)(d).

619.    With respect to leases, Toyota is and was at all relevant times a "lessor" of motor vehicles under 810 Illinois Compiled Statutes § 5/2A-103(1)(p).

620.    The Class Vehicles are and were at all relevant times "goods" within the meaning of 810 Illinois Compiled Statutes §§ 5/2-105(1) and 5/2A-103(1)(h).

621.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 810 Illinois Compiled Statutes §§ 28-2-314 and 28-12-212.

622.    Toyota was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Toyota knew or had reason to know of the specific use for which the Class Vehicles were purchased.

623.    Toyota provided Plaintiffs and the Illinois Class members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, inter alia, the Class Vehicles suffered from the Toyota Brake Defect at the time of sale.

- 192 -

Therefore, the Class Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

624.     Toyota implied that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their brake systems manufactured, supplied, distributed, and/or sold by Toyota were safe and reliable for the purpose for which they were installed; and (ii) a warranty that the Class Vehicles would be fit for their intended use.

625.     Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and the Illinois Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles suffer from a defective design(s) and/or manufacturing defect(s).

626.     Toyota's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

627.     As a direct and proximate result of Toyota's breach of the implied warranty of merchantability, Plaintiffs and the other Illinois Class members have been damaged in an amount to be proven at trial.

## COUNT XXXII

## BREACH OF EXPRESS WARRANTY

## (810 ILCS §§ 5/2-313 and 5/2A-210)

### (Brought by Plaintiffs Rivera and Rivera on behalf of the Illinois Class)

628.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

629.     Plaintiffs Raul Rivera and Cristina Rivera (for the purpose of this section, "Plaintiffs") bring this cause of action on behalf of themselves and the Illinois Class.

- 193 -

630.    Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under 810 Illinois Compiled Statutes §§ 5/2-104(1) and 5/2A-103(3), and a "seller" of motor vehicles under section 5/2-103(1)(d).

631.    With respect to leases, Toyota is and was at all relevant times a "lessor" of motor vehicles under 810 Illinois Compiled Statutes § 5/2A-103(1)(p).

632.    The Class Vehicles are and were at all relevant times "goods" within the meaning of 810 Illinois Compiled Statutes §§ 5/2-105(1) and 5/2A-103(1)(h).

633.    In the course of selling the Class Vehicles, Toyota expressly warranted in writing that the Class Vehicles were covered by a warranty, as set forth above.

634.    Toyota breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Toyota. Toyota has not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

635.    In addition to the written warranties Toyota issued, Toyota expressly warranted several attributes, characteristics, and qualities, as set forth above.

636.    Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the Illinois Class members whole and because Toyota has failed and/or refused to adequately provide the promised remedies within a reasonable time.

637.    Accordingly, recovery by Plaintiffs and the Illinois Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs and the Illinois Class members seek all remedies as allowed by law.

638.    Also, as alleged in more detail herein, at the time that Toyota warranted and sold the vehicles they knew that the vehicles did not conform to the warranties and were inherently defective, and Illinois wrongfully and fraudulently misrepresented and/or concealed material facts regarding their vehicles. Plaintiffs and the Illinois Class members were therefore induced to purchase the Class Vehicles under false and/or fraudulent pretenses.

639.    Moreover, many of the damages flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to Toyota's fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs and the Illinois Class members' remedies would be insufficient.

640.    Toyota has been provided notice of these issues by numerous complaints as described herein.

641.    As a direct and proximate result of Toyota's breach of express warranties, Plaintiffs and the other Illinois Class members have been damaged in an amount to be determined at trial.

**COUNT XXXIII**

**BREACH OF COMMON LAW WARRANTY**

**(Based on Illinois Law)**

**(Brought by Plaintiffs Rivera and Rivera on behalf of the Illinois Class)**

642.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

643.    Plaintiffs Raul Rivera and Cristina Rivera (for the purpose of this section, "Plaintiffs") bring this cause of action on behalf of themselves and the Illinois Class.

644.    To the extent Toyota's repair or adjust commitment is deemed not to be a warranty under Illinois's Uniform Commercial Code provisions, Plaintiffs and the Illinois Class members plead in the alternative under common law warranty and contract law.

645.    Toyota limited the remedies available to Plaintiffs and the Illinois Class members to just repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota. Toyota breached this warranty or contract obligation by failing to repair the

Defective Vehicles evidencing a sudden unintended acceleration problem, including those that were recalled, or to replace them.

646.    As a direct and proximate result of Toyota's breach of contract or common law warranty, Plaintiffs and the Illinois Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT XXXIV

## FRAUD BY CONCEALMENT

### (Based on Illinois Law)

### (Brought by Plaintiffs Rivera and Rivera on behalf of the Illinois Class)

647.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

648.    Plaintiffs Raul Rivera and Cristina Rivera (for the purpose of this section, "Plaintiffs") bring this cause of action on behalf of themselves and the Illinois Class.

649.    Toyota made material omissions concerning a presently existing or past fact in that, for example, Toyota did not fully and truthfully disclose to its customers the true nature of the Toyota Brake Defect which was not readily discoverable by them until many years after purchase or lease of the Class Vehicles. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

650.    Toyota was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

651.    In addition, Toyota had a duty to disclose these omitted material facts because they were known and/or accessible only to Toyota who had superior knowledge and access to the

facts, and Toyota knew they were not known to or reasonably discoverable by Plaintiffs and the Illinois Class members. These omitted facts were material because they directly impact the safety of the Class Vehicles.

652.    Toyota was in exclusive control of the material facts and such facts were not known to the public or the Illinois Class members. Toyota also possessed exclusive knowledge of the defects rendering Class Vehicles inherently more dangerous and unreliable than similar vehicles.

653.    Toyota actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs and the Illinois Class members to purchase the Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

654.    Plaintiffs and the Illinois Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs and the Illinois Class members were justified.

655.    Plaintiffs and the Illinois Class members reasonably relied on these omissions and suffered damages as a result.

656.    As a result of these omissions and concealments, Plaintiffs and the Illinois Class members incurred damages including loss of intrinsic value and out-of-pocket costs related to repair of the systems.

657.    As a result of the concealment and/or suppression of the facts, Plaintiffs and the Illinois Class members sustained damage. Plaintiffs and the Illinois Class members reserve their right to elect either to (a) rescind their purchase or lease of the Class Vehicles and obtain restitution or (b) affirm their purchase or lease of the Class Vehicles and recover damages.

658.    As a result of these omissions and concealments, Plaintiffs and the California Class members incurred damages including loss of intrinsic value and out-of-pocket costs related to repair of the systems.

659.    Toyota's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs and the Florida Class members. Toyota's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT XXXV

## UNJUST ENRICHMENT

### (Based on Illinois Law)

### (Brought by Plaintiffs Rivera and Rivera on behalf of the Illinois Class)

660.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

661.    Plaintiffs Raul Rivera and Cristina Rivera (for the purpose of this section, "Plaintiffs") bring this cause of action on behalf of themselves and the Illinois Class.

662.    As a result of their wrongful and fraudulent acts and omissions, as set forth above, pertaining to the design and/or manufacturing defect of their vehicles and the concealment of the defect, Toyota charged a higher price for their vehicles than the vehicles' true value and Toyota obtained monies which rightfully belong to Plaintiffs and the Illinois Class members.

663.    Toyota enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and the Illinois Class members, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Toyota to retain these wrongfully obtained profits.

664.    Plaintiffs, therefore, seek an order establishing Toyota as a constructive trustee of the profits unjustly obtained, plus interest.

**H.**    **Claims Brought on Behalf of the New Jersey Class**

**COUNT XXXVI**

**VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT**

**(N.J. Stat. Ann. § 56:8-1, *et seq.*)**

**(Brought by Plaintiffs Pabon and Feinberg on behalf of the New Jersey Class)**

665.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

666.    Plaintiffs Enrique Pabon and Bryan Feinberg (for the purpose of this section, "Plaintiffs") bring this cause of action on behalf of themselves and the New Jersey Class.

667.    Plaintiffs, the New Jersey Class members, and Toyota are persons under the New Jersey Consumer Fraud Act, N.J. Stat. Ann.§ 56:8-1(d).

668.    Toyota engaged in "sales" of "merchandise" within the meaning of New Jersey Statutes § 56:8-1(c), (e). Toyota's actions as set forth herein occurred in the conduct of trade or commerce.

669.    The New Jersey Consumer Fraud Act ("CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby . . . ."  N.J. Stat. Ann. § 56:8-2.

670.    In the course of Toyota's business, it knowingly failed to disclose and actively concealed the dangerous risk of brake failure in the Class Vehicles. This was an unlawful practice in that Toyota represented that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; represented that the Class Vehicles are of a particular

- 199 -

standard and quality when they are not; and advertised the Class Vehicles with the intent not to sell them as advertised. Toyota knew or should have known that its conduct violated the CFA.

671.    Toyota failed to disclose and actively concealed the dangerous risk of brake failure in the Class Vehicles.

672.    Toyota engaged in deceptive trade practices prohibited by the New Jersey CFA, including (1) knowingly making a false representation as to the characteristics, uses, and benefits of the Class Vehicles that had the capacity or tendency to deceive Plaintiffs and the New Jersey Class members; (2) representing that the Class Vehicles are of a particular standard, quality, and grade even though Toyota knew or should have known they are not; (3) advertising the Class Vehicles with the intent not to sell them as advertised; and (4) failing to disclose material information concerning the Class Vehicles that was known to Toyota at the time of advertisement or sale with the intent to induce Plaintiffs and the New Jersey Class members to purchase or lease the Defective Vehicles.

673.    Toyota knew that the brake system in the Class Vehicles was defectively designed or manufactured, would fail without warning, and was not suitable for its intended use. Toyota, nevertheless, failed to warn Plaintiffs or the New Jersey Class members about these inherent dangers despite having a duty to do so.

674.    Toyota had the duty to Plaintiffs and the New Jersey Class members to disclose the Toyota Brake Defect and the defective nature of the Class Vehicles because:

      a)    Toyota was in a superior position to know the true state of facts about the Toyota Brake Defect and associated repair costs in the Class Vehicles;

      b)    Plaintiffs and the New Jersey Class members could not reasonably have been expected to learn or discover that the Class Vehicles had dangerous defects until manifestation of the defects;

c) Toyota knew that Plaintiffs and the New Jersey Class members could not reasonably have been expected to learn about or discover the Toyota Brake Defect and its associated repair costs; and

d) Toyota actively concealed the Defect, its causes, and resulting effects, by asserting to Plaintiffs and New Jersey Class members that their brake systems failed for reasons other than the Toyota Brake Defect.

675. Toyota's practices significantly affected the public as consumers of the Class Vehicles, which pose an unreasonable risk of death or serious bodily injury to Plaintiffs and the New Jersey Class members, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to incidents of brake failure.

676. Whether or not a vehicle's brake systems work properly is a fact a reasonable consumer would consider important in selecting a vehicle to purchase or lease. When Plaintiff and the New Jersey Class members bought a Class Vehicle for personal, family, or household purposes, they reasonably expected the vehicle would have non-defective brakes.

677. Toyota's deceptive practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the New Jersey Class members, about the true safety and reliability of the Class Vehicles.

678. Toyota's unlawful practices have caused substantial harm to consumers.

679. The brake defects alleged herein were material to Plaintiffs and to the New Jersey Class members. Had Plaintiffs and the New Jersey Class members known that the Class Vehicles had these material safety defects, they would not have purchased the Class Vehicles or would not have paid as much for them.

680. Plaintiffs and the New Jersey Class members suffered ascertainable loss of money or property caused by Toyota's unlawful practices. Plaintiffs and the New Jersey Class members overpaid for their vehicles and did not receive the benefit of their bargain. The value of the Class

- 201 -

Vehicles has diminished now that the safety issues have come to light, and Plaintiffs and the New Jersey Class members now own or lease the Class Vehicles, which are unsafe.

681.     Plaintiffs and the New Jersey Class members are entitled to recover legal and/or equitable relief, treble damages, and reasonable attorneys' fees pursuant to New Jersey Statutes Annotated § 56:8-19.

682.     Pursuant to New Jersey Statutes Annotated § 56:8-20, Plaintiffs will mail a copy of the complaint to the Attorney General of New Jersey within ten (10) days of filing.

### COUNT XXXVII

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (N.J. Stat. Ann. § 12A:2-314)

**(Brought by Plaintiffs Pabon and Feinberg on behalf of the New Jersey Class)**

683.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

684.     Plaintiffs Enrique Pabon and Bryan Feinberg (for the purpose of this section, "Plaintiffs") bring this cause of action on behalf of themselves and the New Jersey Class.

685.     Plaintiffs, the New Jersey Class members, and Toyota are persons under the New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-1(d).

686.     Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under New Jersey Statutes Annotated § 12A:2-104(1) and a "seller" of motor vehicles under section 2-103(1)(d).

687.     With respect to leases, Toyota is and was at all relevant times a "lessor" of motor vehicles under New Jersey Statutes Annotated § 12A:2A-103(1)(p).

688.     The Class Vehicles are and were at all relevant times "goods" within the meaning of New Jersey Statutes Annotated §§ 12A:2-105(1) and 2A-103(1)(h).

689.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to New Jersey Statutes Annotated §§ 12A:2-314 and 2A-212.

690.    These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that there are defects in the brake systems, nor do the Class Vehicles have an adequate fail-safe to protect against brake failure.

691.    Toyota has been provided notice of these issues by numerous complaints as described herein.

692.    As a direct and proximate result of Toyota's breach of the warranties of merchantability, Plaintiffs and the New Jersey Class members have been damaged in an amount to be proven at trial.

## COUNT XXXVIII

## BREACH OF EXPRESS WARRANTY

## (N.J. Stat. Ann. § 12A:2-313)

**(Brought by Plaintiffs Pabon and Feinberg on behalf of the New Jersey Class)**

693.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

694.    Plaintiffs Enrique Pabon and Bryan Feinberg (for the purpose of this section, "Plaintiffs") bring this cause of action on behalf of themselves and the New Jersey Class.

695.    Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under New Jersey Statutes Annotated § 12A:2-104(1) and a "seller" of motor vehicles under section 2-103(1)(d).

696.    With respect to leases, Toyota is and was at all relevant times a "lessor" of motor vehicles under New Jersey Statutes Annotated § 12A:2A-103(1)(p).

- 203 -

697.    The Class Vehicles are and were at all relevant times "goods" within the meaning of New Jersey Statutes Annotated §§ 12A:2-105(1) and 2A-103(1)(h).

698.    In the course of selling the Class Vehicles, Toyota expressly warranted in writing that the Class Vehicles were covered by a warranty, as set forth above.

699.    Toyota breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Toyota. Toyota has not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

700.    In addition to the Toyota's express warranty, Toyota expressly warranted several attributes, characteristics, and qualities, as set forth above.

701.    Furthermore, the limited warranty of repair and/or adjustments to defective parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the New Jersey Class members whole, and because Toyota has failed and/or refused to adequately provide the promised remedies within a reasonable time.

702.    Accordingly, recovery by Plaintiffs and the New Jersey Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs will seek all remedies as allowed by law.

703.    Also, as alleged in more detail herein, at the time that Toyota warranted and sold the vehicles they knew that the vehicles did not conform to the warranties and were inherently defective, and Toyota wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Class Vehicles.

704.    Moreover, many of the damages flowing from the purchase and use of the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on available remedies would be insufficient to make Plaintiffs and the New Jersey Class members whole.

705.    Finally, due to the Toyota's breach of warranties as set forth herein, Plaintiffs and the New Jersey Class members assert as an additional and/or alternative remedy, as set for in New Jersey Statutes Annotated § 12A:2-608, for revocation of acceptance of the goods, and for a return to Plaintiffs and to the New Jersey Class members, of the purchase price of all vehicles they currently own. Toyota has been provided notice of these issues by numerous complaints, including the complaints alleged herein.

706.    As a direct and proximate result of Toyota's breach of express warranties, Plaintiffs and the New Jersey Class members have been damaged in an amount to be determined at trial.

**COUNT XXXIX**

**BREACH OF CONTRACT**

**(Based on New Jersey Law)**

**(Brought by Plaintiffs Pabon and Feinberg on behalf of the New Jersey Class)**

707.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

708.    Plaintiffs Enrique Pabon and Bryan Feinberg (for the purpose of this section, "Plaintiffs") bring this cause of action on behalf of themselves and the New Jersey Class.

709.    Plaintiffs, the New Jersey Class members, and Toyota are persons under the New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-1(d).

710.    To the extent Toyota repair or adjust commitment is deemed not to be a warranty under New Jersey's Commercial Code, Plaintiffs plead a common law contract claim in the alternative. Toyota limited the remedies available to Plaintiffs and the New Jersey Class members to just repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota, and/or warranted the quality or nature of those services to Plaintiffs and the New Jersey Class members.

711.    Toyota breached this contract obligation by failing to repair the Class Vehicles evidencing a sudden unintended acceleration problem, including those that were recalled, or to replace them.

712.    As a direct and proximate result of Toyota's breach of contract, Plaintiffs and the New Jersey Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**COUNT XL**

**UNJUST ENRICHMENT**

**(Based on New Jersey Law)**

**(Brought by Plaintiffs Pabon and Feinberg on behalf of the New Jersey Class)**

713.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

714.    Plaintiffs Enrique Pabon and Bryan Feinberg (for the purpose of this section, "Plaintiffs") bring this cause of action on behalf of themselves and the New Jersey Class.

715.    Plaintiffs, the New Jersey Class members, and Toyota are persons under the New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-1(d).

716.    Toyota had knowledge of the safety defects in the Class Vehicles, which it failed to disclose to Plaintiffs and the New Jersey Class members.

717.    As a result of their wrongful and fraudulent acts and omissions, as set forth above, pertaining to the design defect of their vehicles and the concealment of the defect, Toyota charged a higher price for its vehicles than the vehicles' true value. Toyota accordingly received a benefit from Plaintiffs and the New Jersey Class members to their detriment.

718.    Toyota appreciated, accepted and retained the benefits conferred by Plaintiffs and the New Jersey Class members, who without knowledge of the safety defects paid a higher price for vehicles that Plaintiffs would have paid less money for had they known about the Toyota

Brake Defect. It would be inequitable and unjust for Toyota to retain these wrongfully obtained profits.

719.     Plaintiffs and the New Jersey Class members, therefore, are entitled to restitution and to seek an order establishing Toyota as constructive trustees of the profits unjustly obtained, plus interest.

I.     **Claims Brought on Behalf of the North Carolina Class**

## COUNT XLI

## VIOLATIONS OF NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT

### (N.C. Gen. Stat. § 75-1.1, *et seq.*)

### (Brought by Plaintiff Felts on behalf of the North Carolina Class)

720.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

721.     Plaintiff Lois Felts (for the purpose of this section, "Plaintiff") brings this cause of action on behalf of herself and the North Carolina Class.

722.     Plaintiff and the North Carolina Class members are persons under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.* ("NCUDTPA").

723.     Toyota's acts and practices complained of herein were performed in the course of Toyota's trade or business and thus occurred in or affected "commerce," as defined in North Carolina General Statutes § 75-1.1(b).

724.     The NCUDTPA makes unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]" The NCUDTPA provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the NCUDTPA. N.C. Gen. Stat. § 75-16.

- 207 -

725.    In the course of their business, Toyota participated in deceptive trade practices that violated the NCUDTPA, as described above and below. Toyota is directly liable for these violations of law.

726.    Toyota failed to disclose and actively concealed the dangerous risk of brake failure in the Class Vehicles.

727.    Toyota engaged in deceptive trade practices prohibited by the NCUDTPA, including (1) knowingly making a false representation as to the characteristics, uses, and benefits of the Class Vehicles that had the capacity or tendency to deceive Plaintiff and the North Carolina Class members; (2) representing that the Class Vehicles are of a particular standard, quality, and grade even though Toyota knew or should have known they are not; (3) advertising the Class Vehicles with the intent not to sell them as advertised; and (4) failing to disclose material information concerning the Class Vehicles that was known to Toyota at the time of advertisement or sale with the intent to induce Plaintiff and the North Carolina Class members to purchase or lease the Defective Vehicles.

728.    Toyota knew that the brake system in the Class Vehicles was defectively designed or manufactured, would fail without warning, and was not suitable for its intended use. Toyota, nevertheless, failed to warn Plaintiff or the North Carolina Class members about these inherent dangers despite having a duty to do so.

729.    Toyota had the duty to Plaintiff and the North Carolina Class members to disclose the Toyota Brake Defect and the defective nature of the Class Vehicles because:

a)    Toyota was in a superior position to know the true state of facts about the Toyota Brake Defect and associated repair costs in the Class Vehicles;

b)    Plaintiff and the North Carolina Class members could not reasonably have been expected to learn or discover that the Class Vehicles had dangerous defects until manifestation of the defects;

- 208 -

      c)     Toyota knew that Plaintiff and the North Carolina Class members could not reasonably have been expected to learn about or discover the Toyota Brake Defect and its associated repair costs; and

      d)     Toyota actively concealed the Toyota Brake Defect, its causes, and resulting effects, by asserting to Plaintiff and North Carolina Class members that their brake systems failed for reasons other than the Toyota Brake Defect.

730.    Toyota's practices significantly affected the public as consumers of the Class Vehicles, which pose an unreasonable risk of death or serious bodily injury to Plaintiff and the North Carolina Class members, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to incidents of brake failure.

731.    Whether or not a vehicle's brake systems work properly is a fact a reasonable consumer would consider important in selecting a vehicle to purchase or lease. When Plaintiff and the North Carolina Class members bought a Class Vehicle for personal, family, or household purposes, they reasonably expected the vehicle would have non-defective brakes.

732.    Toyota's deceptive practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the North Carolina Class members, about the true safety and reliability of the Class Vehicles.

733.    By intentionally failing to disclose material information regarding the Class Vehicles' braking systems, Toyota engaged in an unfair or deceptive act or practice, in that Toyota's practices were immoral, unethical, unscrupulous, or substantially injurious to consumers.

734.    Toyota's acts and practices were deceptive in the sense that they had the capacity or tendency to deceive, because they induced Plaintiff and the North Carolina Class members to purchase the Class Vehicles when they would not have done so, or would have paid materially less, had they been aware of the information Toyota withheld.

- 209 -

735.    Toyota's acts and practices proximately caused actual injury to Plaintiff and the other North Carolina Class members, as Plaintiff would not have purchased the Class Vehicles, or would have paid materially less for the Class Vehicles, if not for Toyota's misrepresentations and omissions.

736.    Plaintiff and the North Carolina Class members are entitled to all actual and consequential damages resulting from Toyota's unfair and deceptive practices. Plaintiff and the North Carolina Class members are also entitled to recovery of treble damages as provided in North Carolina General Statutes § 75-16. Plaintiff and the North Carolina Class members are further entitled to attorneys' fees and costs based on Toyota's willful violation of the statute.

## COUNT XLII

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

## (N.C. Gen. Stat. § 25-2-314)

### (Brought by Plaintiff Felts on behalf of the North Carolina Class)

737.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

738.    Plaintiff Lois Felts (for the purpose of this section, "Plaintiff") brings this cause of action on behalf of herself and the North Carolina Class.

739.    Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under North Carolina General Statutes § 25-2-314(1) and "sellers" of motor vehicles under section 25-2-103(1)(d).

740.    With respect to leases, Toyota is and was at all relevant times a "lessor" of motor vehicles under North Carolina General Statutes § 25-2A-103(1)(p).

741.    The Class Vehicles are and were at all relevant times "goods" within the meaning of North Carolina General Statutes §§ 25-2-105(1) and 25-2A-103(1)(h).

742.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to North Carolina General Statutes §§ 25-2-314 and § 25-2A-212.

743.     The Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles are inherently defective in that the brake system has a defect that makes the car inherently dangerous for its intended use.

744.     Toyota has been provided notice of these issues by numerous complaints, including complaints by its own certified dealers, as described above.

745.     As a direct and proximate result of Toyota's breach of the warranties of merchantability, Plaintiff and the North Carolina Class have been damaged in an amount to be proven at trial.

**COUNT XLIII**

**BREACH OF EXPRESS WARRANTY**

**(N.C.G.S.A. §§ 25-2-313 and 252A-210)**

**(Brought by Plaintiff Felts on behalf of the North Carolina Class)**

746.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

747.     Plaintiff Lois Felts (for the purpose of this section, "Plaintiff") brings this cause of action on behalf of herself and the North Carolina Class.

748.     Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under North Carolina General Statutes § 25-2-314(1) and "sellers" of motor vehicles under section 25-2-103(1)(d).

749.     With respect to leases, Toyota is and was at all relevant times a "lessor" of motor vehicles under North Carolina General Statutes § 25-2A-103(1)(p).

750.    The Class Vehicles are and were at all relevant times "goods" within the meaning of North Carolina General Statutes §§ 25-2-105(1) and 25-2A-103(1)(h).

751.    In the course of selling the Class Vehicles, Toyota expressly warranted in writing that the Class Vehicles were covered by a warranty, as set forth above.

752.    Toyota breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Toyota. Toyota has not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

753.    In addition to the Toyota's express warranty, Toyota expressly warranted several attributes, characteristics, and qualities, as set forth above.

754.    Furthermore, the limited warranty of repair and/or adjustments to defective parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the North Carolina Class members whole, and because Toyota has failed and/or refused to adequately provide the promised remedies within a reasonable time.

755.    Accordingly, recovery by Plaintiff and the North Carolina Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs will seek all remedies as allowed by law.

756.    Also, as alleged in more detail herein, at the time that Toyota warranted and sold the vehicles they knew that the vehicles did not conform to the warranties and were inherently defective, and Toyota wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Class Vehicles.

757.    Moreover, many of the damages flowing from the purchase and use of the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on available remedies would be insufficient to make Plaintiff and the North Carolina Class members whole.

758.     Accordingly, recovery by Plaintiff and the other North Carolina Class members is not restricted to the limited warranty promising to repair and/or correct a manufacturing defect, and Plaintiff, individually and on behalf of the other North Carolina Class members, seeks all remedies as allowed by law.

759.     Also, as alleged in more detail herein, at the time Toyota warranted and sold or leased the Class Vehicles, it knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Toyota had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Plaintiff and the other North Carolina Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

760.     Finally, because of Toyota's breach of warranty as set forth herein, Plaintiff and the other North Carolina Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and the other North Carolina Class members of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

761.     Toyota has been provided notice of these issues by numerous complaints, including complaints by its own certified dealers, as described above.

762.     As a direct and proximate result of Toyota's breach of the warranties of merchantability, Plaintiff and the North Carolina Class have been damaged in an amount to be proven at trial.

## COUNT XLIV

## BREACH OF CONTRACT/COMMON-LAW WARRANTIES

### (Based on North Carolina Law)

### (Brought by Plaintiff Felts on behalf of the North Carolina Class)

763.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

764.     Plaintiff Lois Felts (for the purpose of this section, "Plaintiff") brings this cause of action on behalf of herself and the North Carolina Class.

765.     To the extent Toyota's agreements with Plaintiff and/or the North Carolina Class members are deemed not to constitute warranties under North Carolina law, Plaintiff and the North Carolina Class members seek damages pursuant to common-law warranty and contract law theories. Toyota limited the remedies available to Plaintiff and the North Carolina Class members to just those repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota, and/or warranted the quality or nature of those services to Plaintiff and the North Carolina Class members.

766.     Toyota breached this warranty or contract obligation by failing to repair the Class Vehicles, or to replace them.

767.     As a direct and proximate result of Toyota's breach of contract or common law warranty, Plaintiff and the North Carolina Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT XLV

## FRAUDUENT CONCEALMENT AND/OR OMISSION

### (Based on North Carolina Law)

### (Brought by Plaintiff Felts on behalf of the North Carolina Class)

768.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

769.     Plaintiff Lois Felts (for the purpose of this section, "Plaintiff") brings this cause of action on behalf of herself and the North Carolina Class.

770.     As set forth above, Toyota concealed and/or suppressed material facts concerning the safety of their vehicles, which they were legally obligated to disclose.

771.    Toyota had a duty to disclose defects in the Class Vehicles' braking systems because Toyota consistently marketed the Class Vehicles as safe and proclaimed that safety is one of Toyota's highest corporate priorities. Once Toyota made representations to the public about safety, it was under a duty to disclose these omitted facts because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

772.    Toyota made material omissions concerning a presently existing or past fact in that, for example, Toyota did not fully and truthfully disclose to its customers the true nature of the Brake Defect which was not readily discoverable by them until many years after purchase or lease of the defective Class Vehicles. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

773.    In addition, Toyota had a duty to disclose these omitted material facts because they were known and/or accessible only to Toyota who had superior knowledge and access to the facts, and Toyota knew they were not known to or reasonably discoverable by Plaintiff and the North Carolina Class members. These omitted facts were material because they directly impacted the safety of the defective Class Vehicles.

774.    Toyota was in exclusive control of the material facts and such facts were not known to the public or the North Carolina Class members. Toyota also possessed exclusive knowledge of the defects rendering defective Class Vehicles inherently more dangerous and unreliable than similar vehicles.

775.    Toyota actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff and the North Carolina Class members to purchase the defective Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

776.     Plaintiff and the North Carolina Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiff and the North Carolina Class members were justified. Toyota was in exclusive control of the material facts and such facts were not known to the public or to Plaintiff and the North Carolina Class members.

777.     Plaintiff and the North Carolina Class members reasonably relied on these omissions and suffered damages as a result.

778.     Toyota still has not made full and adequate disclosure and continues to defraud Plaintiff and the North Carolina Class.

779.     As a result of the concealment and/or suppression of the facts, Plaintiff and the North Carolina Class members sustained damage. Should Plaintiff and/or other North Carolina Class members seek to affirm the sale, these damages include the difference between the actual value of that which Plaintiff and/or such North Carolina Class members paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits. Should Plaintiff and/or other North Carolina Class members seek to rescind the purchase, then Plaintiff and such North Carolina Class members are entitled to restitution and consequential damages.

780.     Toyota's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights and wellbeing of Plaintiff and the North Carolina Class members, for the purpose of enriching Toyota. Toyota's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof at trial.

## COUNT XLVI

## UNJUST ENRICHMENT

### (Based on North Carolina Law)

### (Brought by Plaintiff Felts on behalf of the North Carolina Class)

781.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

782.     Plaintiff Lois Felts (for the purpose of this section, "Plaintiff") brings this cause of action on behalf of herself and the North Carolina Class.

783.     As a result of its wrongful and fraudulent acts and omissions, as set forth above, pertaining to the Class Vehicles, Toyota charged a higher price for the Class Vehicles than Plaintiff otherwise would have paid, and thus obtained monies which rightfully belong to Plaintiff and to North Carolina Class members.

784.     Toyota knowingly enjoyed the benefit of increased financial gains, to the detriment of Plaintiff and the North Carolina Class members, each of whom paid a higher price for vehicles than they would have paid had they known the true facts regarding the condition of the Class Vehicles' braking systems.

785.     Plaintiff and the North Carolina Class members, therefore, are entitled to restitution and seek an order establishing Toyota as constructive trustees of the profits unjustly obtained, plus interest.

**J.**     **Claims Brought on Behalf of the Washington Class**

## COUNT XLVII

## VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT

### (Wash. Rev. Code Ann. § 19.86.010, *et seq.*)

### (Brought by Plaintiff Turner on behalf of the Washington Class)

786.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

- 217 -

787.    Plaintiff Laura Turner (for the purpose of this section, "Plaintiff") brings this cause of action on behalf of herself and the Washington Class.

788.    Toyota, Plaintiff, and the Washington Class members are "persons" within the meaning of Washington Revised Code § 19.86.010(2).

789.    Toyota is engaged in "trade" or "commerce" within the meaning of Washington Revised Code § 19.86.010(2).

790.    The Washington Consumer Protection Act ("Washington CPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.86.020.

791.    In the course of their business, Toyota participated in deceptive trade practices that violated the Washington CPA, as described above and below. Toyota is directly liable for these violations of law.

792.    Toyota failed to disclose and actively concealed the dangerous risk of brake failure in the Class Vehicles.

793.    Toyota engaged in deceptive trade practices prohibited by the Washington CPA, including (1) knowingly making a false representation as to the characteristics, uses, and benefits of the Class Vehicles that had the capacity or tendency to deceive Plaintiff and the Washington Class members; (2) representing that the Class Vehicles are of a particular standard, quality, and grade even though Toyota knew or should have known they are not; (3) advertising the Class Vehicles with the intent not to sell them as advertised; and (4) failing to disclose material information concerning the Class Vehicles that was known to Toyota at the time of advertisement or sale with the intent to induce Plaintiff and the Washington Class members to purchase or lease the Defective Vehicles.

794.    Toyota knew that the brake system in the Class Vehicles was defectively designed or manufactured, would fail without warning, and was not suitable for its intended use. Toyota,

nevertheless, failed to warn Plaintiff or the Washington Class members about these inherent dangers despite having a duty to do so.

795.    Toyota had the duty to Plaintiff and the Washington Class members to disclose the Toyota Brake Defect and the defective nature of the Class Vehicles because:

    a)    Toyota was in a superior position to know the true state of facts about the Toyota Brake Defect and associated repair costs in the Class Vehicles;

    b)    Plaintiff and the Washington Class members could not reasonably have been expected to learn or discover that the Class Vehicles had dangerous defects until manifestation of the defects;

    c)    Toyota knew that Plaintiff and the Washington Class members could not reasonably have been expected to learn about or discover the Toyota Brake Defect and its associated repair costs; and

    d)    Toyota actively concealed the Toyota Brake Defect, its causes, and resulting effects, by asserting to Plaintiff and Washington Class members that their brake systems failed for reasons other than the Toyota Brake Defect.

796.    Toyota's practices significantly affected the public as consumers of the Class Vehicles, which pose an unreasonable risk of death or serious bodily injury to Plaintiff and the Washington Class members, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to incidents of brake failure.

797.     Whether or not a vehicle's brake systems work properly is a fact a reasonable consumer would consider important in selecting a vehicle to purchase or lease. When Plaintiff and the Washington Class members bought a Class Vehicle for personal, family, or household purposes, they reasonably expected the vehicle would have non-defective brakes.

798.    Toyota's deceptive practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Washington Class members, about the true safety and reliability of the Class Vehicles.

799.    By intentionally failing to disclose material information regarding the Class Vehicles' braking systems, Toyota engaged in an unfair or deceptive act or practice, in that Toyota's practices were immoral, unethical, unscrupulous, or substantially injurious to consumers.

800.    Toyota's acts and practices were deceptive in the sense that they had the capacity or tendency to deceive, because they induced Plaintiff and the Washington Class members to purchase the Class Vehicles when they would not have done so, or would have paid materially less, had they been aware of the information Toyota withheld.

801.    Toyota's acts and practices proximately caused actual injury to Plaintiff and the other Washington Class members, as Plaintiff would not have purchased the Class Vehicles, or would have paid materially less for the Class Vehicles, if not for Toyota's misrepresentations and omissions.

802.    Toyota had an ongoing duty to all its customers to refrain from unfair and deceptive practices under the Washington CPA in the course of its business.

803.    Toyota's violations present a continuing risk to Plaintiff as well as to the general public. Toyota's unlawful acts and practices complained of herein affect the public interest.

804.    Pursuant to Washington Revised Code § 19.86.090, Plaintiff and the Washington Class seek an order enjoining Toyota's unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Washington CPA. Because Toyota's actions were willful and knowing, Plaintiffs' damages should be trebled. *Id.*

**COUNT XLVIII**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

**(Wash. Rev. Code §§ 62A.2-313 and 62A.2A-210)**

**(Brought by Plaintiff Turner on behalf of the Washington Class)**

805.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

806.   Plaintiff Laura Turner (for the purpose of this section, "Plaintiff") brings this cause of action on behalf of herself and the Washington Class.

807.   Toyota, Plaintiff, and the Washington Class are "persons" within the meaning of Washington Revised Code § 19.86.010(2).

808.   Toyota is engaged in "trade" or "commerce" within the meaning of Washington Revised Code § 19.86.010(2).

809.   The Washington Consumer Protection Act ("Washington CPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.86.020.

810.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Washington Revised Code §§ 62A.2-314 and 62A.2A-212.

811.   The Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles are inherently defective in that the brake system has a defect that makes the car inherently dangerous for its intended use.

812.   Toyota has been provided notice of these issues by numerous complaints, including complaints by its own certified dealers, as described above.

813.    As a direct and proximate result of Toyota's breach of the warranties of merchantability, Plaintiff and the Washington Class have been damaged in an amount to be proven at trial.

## COUNT XLIX

## BREACH OF EXPRESS WARRANTY

## (Wash. Rev. Code §§ 62A.2-313 and 62A.2A-210)

### (Brought by Plaintiff Turner on behalf of the Washington Class)

814.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

815.    Plaintiff Laura Turner (for the purpose of this section, "Plaintiff") brings this cause of action on behalf of herself and the Washington Class.

816.    Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under Washington Revised Code §§ 62A.2-104(1) and 62A.2A-103(1)(t), and a "seller" of motor vehicles under section 2.103(a)(4).

817.    With respect to leases, Toyota is and was at all relevant times "lessors" of motor vehicles under Washington Revised Code § 62A.2A-103(1)(p).

818.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Washington Revised Code §§ 62A.2-105(1) and 62A.2A-103(1)(h).

819.    In the course of selling the Class Vehicles, Toyota expressly warranted in writing that the Class Vehicles were covered by a warranty, as set forth above.

820.    Toyota breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Toyota. Toyota has not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

821.    In addition to the Toyota's express warranty, Toyota expressly warranted several attributes, characteristics, and qualities, as set forth above.

822.    Furthermore, the limited warranty of repair and/or adjustments to defective parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the Washington Class members whole, and because Toyota has failed and/or refused to adequately provide the promised remedies within a reasonable time.

823.    Accordingly, recovery by Plaintiff and the Washington Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff will seek all remedies as allowed by law.

824.    Also, as alleged in more detail herein, at the time that Toyota warranted and sold the vehicles they knew that the vehicles did not conform to the warranties and were inherently defective, and Toyota wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Class Vehicles.

825.    Moreover, many of the damages flowing from the purchase and use of the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on available remedies would be insufficient to make Plaintiff and the Washington Class members whole.

826.    Accordingly, recovery by Plaintiffs and the other Washington Class members is not restricted to the limited warranty promising to repair and/or correct a manufacturing defect, and Plaintiff, individually and on behalf of the other Washington Class members, seeks all remedies as allowed by law.

827.    Also, as alleged in more detail herein, at the time Toyota warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Toyota had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Plaintiffs and the other Washington Class members

were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

828.     Finally, because of Toyota's breach of warranty as set forth herein, Plaintiff and the other Washington Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and the other Washington Class members of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

829.     Toyota has been provided notice of these issues by numerous complaints, including complaints by its own certified dealers, as described above.

830.     As a direct and proximate result of Toyota's breach of the warranties of merchantability, Plaintiff and the Washington Class have been damaged in an amount to be proven at trial.

**COUNT L**

**FRAUDUENT CONCEALMENT AND/OR OMISSION**

**(Based on Washington Law)**

**(Brought by Plaintiff Turner on behalf of the Washington Class)**

831.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

832.     Plaintiff Laura Turner (for the purpose of this section, "Plaintiff") brings this cause of action on behalf of herself and the Washington Class.

833.     As set forth above, Toyota concealed and/or suppressed material facts concerning the safety of their vehicles, which they were legally obligated to disclose.

834.     Toyota had a duty to disclose defects in the Class Vehicles' braking systems because Toyota consistently marketed the Class Vehicles as safe and proclaimed that safety is one of Toyota's highest corporate priorities. Once Toyota made representations to the public about safety, it was under a duty to disclose these omitted facts because where one does speak

- 224 -

one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

835.    Toyota made material omissions concerning a presently existing or past fact in that, for example, Toyota did not fully and truthfully disclose to its customers the true nature of the Toyota Brake Defect which was not readily discoverable by them until many years after purchase or lease of the Class Vehicles. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

836.    In addition, Toyota had a duty to disclose these omitted material facts because they were known and/or accessible only to Toyota who had superior knowledge and access to the facts, and Toyota knew they were not known to or reasonably discoverable by Plaintiff and the Washington Class members. These omitted facts were material because they directly impacted the safety of the Class Vehicles.

837.    Toyota was in exclusive control of the material facts and such facts were not known to the public or the Washington Class members. Toyota also possessed exclusive knowledge of the defects rendering Class Vehicles inherently more dangerous and unreliable than similar vehicles.

838.    Toyota actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff and the Washington Class members to purchase the defective Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

839.    Plaintiff and the Washington Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiff and the Washington Class members were justified.

Toyota was in exclusive control of the material facts and such facts were not known to the public or to Plaintiff and the Washington Class members.

840.    Plaintiff and the Washington Class members reasonably relied on these omissions and suffered damages as a result.

841.    Toyota still has not made full and adequate disclosure and continues to defraud Plaintiff and the Washington Class.

842.    As a result of the concealment and/or suppression of the facts, Plaintiff and the Washington Class members sustained damage. Should Plaintiff and/or other Washington Class members seek to affirm the sale, these damages include the difference between the actual value of that which Plaintiff and/or such Washington Class members paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits. Should Plaintiff and/or other Washington Class members seek to rescind the purchase, then Plaintiff and such Washington Class members are entitled to restitution and consequential damages.

843.    Toyota's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights and wellbeing of Plaintiff and the Washington Class members, for the purpose of enriching Toyota. Toyota's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof at trial.

### COUNT LI

### UNJUST ENRICHMENT

### (Based on Washington Law)

### (Brought by Plaintiff Turner on behalf of the Washington Class)

844.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

845.    Plaintiff Laura Turner (for the purpose of this section, "Plaintiff") brings this cause of action on behalf of herself and the Washington Class (for the purpose of this section, "Plaintiff") brings this cause of action on behalf of herself and the Washington Class.

846.    As a result of its wrongful and fraudulent acts and omissions, as set forth above, pertaining to the Class Vehicles, Toyota charged a higher price for the Class Vehicles than Plaintiff otherwise would have paid, and thus obtained monies which rightfully belong to Plaintiff and to Washington Class members.

847.    Toyota knowingly enjoyed the benefit of increased financial gains, to the detriment of Plaintiff and the Washington Class members, each of whom paid a higher price for vehicles than they would have paid had they known the true facts regarding the condition of the Class Vehicles' braking systems.

848.    Plaintiff and the Washington Class members, therefore, are entitled to restitution and seek an order establishing Toyota as constructive trustees of the profits unjustly obtained, plus interest.

## VIII   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, respectfully request that this Court:

a.    determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

b.    appoint Plaintiffs as the representatives of the Class and their counsel as Class counsel;

c.    award all actual, general, special, incidental, statutory, punitive, and consequential damages and restitution to which Plaintiffs and members of the Class are entitled;

d.    award pre-judgment and post-judgment interest on any monetary relief;

e.      grant appropriate injunctive and/or declaratory relief, including, without

limitation, an order that requires Toyota to repair, recall, and/or replace the Class

vehicles and to extend the applicable warranties to a reasonable period of time, or,

at a minimum, to provide Plaintiffs and Class members with appropriate curative

notice regarding the existence and cause of the Toyota Brake Defect.

f.      award reasonable attorneys' fees and costs; and

g.      grant such further relief that this Court deems appropriate.


Dated:  May 7, 2020                          Respectfully submitted,

                                             By: _____*/s/ Bruce W. Steckler*_____
                                                 Bruce W. Steckler
                                                 L. Kirstine Rogers
                                                 **STECKLER GRESHAM COCHRAN PLLC**
                                                 12720 Hillcrest Road, Suite 1045
                                                 Dallas, Texas 75230
                                                 Telephone: (972) 387-4040
                                                 Facsimile: (972) 387-4041
                                                 bruce@stecklerlaw.com
                                                 krogers@sgc.law

                                                 *Interim Liaison Counsel for Consolidated*
                                                 *Plaintiffs and the Putative Class*

                                                 Richard D. McCune (Admitted *Pro Hac Vice*)
                                                 David C. Wright (Admitted *Pro Hac Vice*)
                                                 Steven A. Haskins (Admitted *Pro Hac Vice*)
                                                 Mark I. Richards (Admitted *Pro Hac Vice*)
                                                 **MCCUNE WRIGHT AREVALO, LLP**
                                                 3281 E. Guasti, Road, Suite 100
                                                 Ontario, California 91761
                                                 Telephone: (909) 557-1250
                                                 Facsimile: (909) 557-1275
                                                 rdm@mccunewright.com
                                                 dcw@mccunewright.com
                                                 sah@mccunewright.com
                                                 mir@mccunewright.com

                                                 *Interim Lead Counsel for Consolidated*
                                                 *Plaintiffs and the Putative Class*

Stephen R. Basser (Admitted *Pro Hac Vice*)
Samuel M. Ward (Admitted *Pro Hac Vice*)
**BARRACK, RODOS & BACINE**
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874
sbasser@barrack.com
sward@barrack.com

Jordan L. Lurie (Admitted *Pro Hac Vice*)
Ari Y. Basser (Admitted *Pro Hac Vice*)
**POMERANTZ LLP**
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 432-8492
jllurie@pomlaw.com
abasser@pomlaw.com

Kimberly A. Justice (Admitted *Pro Hac Vice*)
Jonathan M. Jagher (Admitted *Pro Hac Vice*)
**FREED KANNER LONDON & MILLEN LLC**
923 Fayette Street
Conshohocken, PA 19428
Telephone: (610) 234-6487
Facsimile: (224) 632-4521
kjustice@fklmlaw.com
jjagher@fklmlaw.com

*Interim Plaintiffs' Executive Committee Counsel for Consolidated Plaintiffs and the Putative Class*

Thomas B. Bennett (TX Bar No. 02151400)
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson St. NW, Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
tbennett@baileyglasser.com

Todd A. Walburg (*Pro Hac Vice* Pending)
**BAILEY & GLASSER LLP**
475 14th Street, Suite 610
Oakland, California 94612
Telephone: (510) 207-8633
Facsimile: (510) 463-0241

- 229 -

twalburg@baileyglasser.com

*Attorneys for Plaintiff Nancy Kwan*
*and the Putative Class*

## JURY DEMAND

Plaintiffs, on behalf of themselves and the putative Class, demand a trial by jury on all issues so triable.

Dated:  May 7, 2020                 Respectfully submitted,

By:___*/s/ Bruce W. Steckler*_____
Bruce W. Steckler
L. Kirstine Rogers
**STECKLER GRESHAM COCHRAN PLLC**
12720 Hillcrest Road, Suite 1045
Dallas, Texas 75230
Telephone: (972) 387-4040
Facsimile: (972) 387-4041
bruce@stecklerlaw.com
krogers@sgc.law

*Interim Liaison Counsel for Consolidated*
*Plaintiffs and the Putative Class*

Richard D. McCune (Admitted *Pro Hac Vice*)
David C. Wright (Admitted *Pro Hac Vice*)
Steven A. Haskins (Admitted *Pro Hac Vice*)
Mark I. Richards (Admitted *Pro Hac Vice*)
**MCCUNE WRIGHT AREVALO, LLP**
3281 E. Guasti, Road, Suite 100
Ontario, California 91761
Telephone: (909) 557-1250
Facsimile: (909) 557-1275
rdm@mccunewright.com
dcw@mccunewright.com
sah@mccunewright.com
mir@mccunewright.com

*Interim Lead Counsel for Consolidated*
*Plaintiffs and the Putative Class*

Stephen R. Basser (Admitted *Pro Hac Vice*)
Samuel M. Ward (Admitted *Pro Hac Vice*)
**BARRACK, RODOS & BACINE**

600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874
sbasser@barrack.com
sward@barrack.com

Jordan L. Lurie (Admitted *Pro Hac Vice*)
Ari Y. Basser (Admitted *Pro Hac Vice*)
**POMERANTZ LLP**
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 432-8492
jllurie@pomlaw.com
abasser@pomlaw.com

Kimberly A. Justice (Admitted *Pro Hac Vice*)
Jonathan M. Jagher (Admitted *Pro Hac Vice*)
**FREED KANNER LONDON & MILLEN
LLC**
923 Fayette Street
Conshohocken, PA 19428
Telephone: (610) 234-6487
Facsimile: (224) 632-4521
kjustice@fklmlaw.com
jjagher@fklmlaw.com

*Interim Plaintiffs' Executive Committee Counsel
for Consolidated Plaintiffs and the Putative
Class*

Thomas B. Bennett (TX Bar No. 02151400)
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson St. NW, Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
tbennett@baileyglasser.com

Todd A. Walburg (*Pro Hac Vice* Pending)
**BAILEY & GLASSER LLP**
475 14th Street, Suite 610
Oakland, California 94612
Telephone: (510) 207-8633
Facsimile: (510) 463-0241
twalburg@baileyglasser.com

*Attorneys for Plaintiff Nancy Kwan
and the Putative Class*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically in compliance with Civil Rule CV-5 on May 7, 2020. A copy of this filing will be served via email through CM/ECF system to all counsel who have consented to receive electronic notifications.

*/s/ Bruce W. Steckler*
Bruce W. Steckler