**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS**

| | |
|---|---|
| IN RE TOYOTA HYBRID BRAKE LITIGATION. | Consolidated Case No. 4:20-CV-00127-ALM |

**<u>TOYOTA DEFENDANTS' MOTION AND MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' MASTER CONSOLIDATED CLASS ACTION COMPLAINT</u>**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

FACTS ALLEGED IN THE COMPLAINT ...................................................................... 3

   I.   Named Plaintiff Allegations ................................................................................ 3

   II.   Plaintiffs' Claims ............................................................................................... 11

STANDARD ..................................................................................................................... 12

ARGUMENT .................................................................................................................... 12

   I.   Plaintiffs' Express Warranty Claims Are Deficient........................................... 12

      A.   Plaintiffs fail to state claims for breach of the NVLW because none plead in-warranty failure or presentment. ...................................................................................... 12

      B.   TMS' express warranty does not cover design defects. ................................. 16

      C.   Several Plaintiffs do not allege reliance on the NVLW as required by their state laws. 17

   II.   Plaintiffs Fail to State Implied Warranty Claims............................................... 17

      A.   Plaintiffs fail to adequately allege their vehicles were unmerchantable. ....... 17

      B.   Any implied warranty is limited to the duration of the NVLW. .................... 19

      C.   Plaintiffs are not in privity with the Toyota Defendants................................ 19

      D.   Plaintiffs' implied warranty claims are untimely........................................... 20

   III.   Plaintiffs' Magnusson-Moss Warranty Act Claim Also Fails For Multiple Reasons.... 21

   IV.   Plaintiffs' Fraud Based Claims Are Deficient................................................... 22

      A.   Plaintiffs fail to satisfy the heightened pleading standard Of Rule 9(b). ....... 23

      B.   Plaintiffs' fraud-based consumer protection and fraudulent concealment claims also fail because Plaintiffs fail to allege Toyota's pre-sale knowledge. ............................. 25

      C.   The Florida plaintiffs' consumer-fraud claims are also untimely. ................. 27

      D.   Fraudulent concealment is not an independent cause of action under Illinois, Texas, and Washington Law............................................................................................. 28

      E.   The economic loss doctrine bars several fraud-based claims and the California Plaintiffs' failure to recall claim.................................................................... 28

   V.   Plaintiffs Fail to Plead Unjust Enrichment ..................................................... 29

CONCLUSION.................................................................................................................. 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<small>CASES</small>

*Adams v. Nissan N. Am.*,
    395 F. Supp. 3d 838, 853-54 (S.D. Tex. 2018)......................................................19

*Alban v. BMW of N. Am., Inc.*,
    2010 WL 3636253 (D.N.J. Sept. 8, 2010) ..............................................................14

*Aprigliano v. Am. Honda Motor Co., Inc.*,
    979 F.Supp.2d 1331 (S.D. Fla. 2013) ..............................................................14, 15

*Aquino v. C.R. Bard, Inc.*,
    413 F.Supp.3d 770, 787 (N.D. Ill. 2019) ...............................................................18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................................12

*Beaty v. Ford Motor Co.*,
    2020 WL 639408 (W.D. Wash. Feb. 11, 2020).......................................................25

*Beck v. FCA US LLC*,
    273 F. Supp. 3d 735 (E.D. Mich. 2017)............................................................24, 25

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................12

*Breeden v. Richmond Cmty. Coll.*,
    171 F.R.D. 189 (M.D.N.C. 1997) ...........................................................................25

*Cadena v. Am. Honda Motor Co.*,
    No. CV 18-4007-MWF, 2019 WL 3059931 (C.D. Cal. May 29, 2019) .................26

*Cangemi v. Advocate South Suburban Hosp.*,
    845 N.E.2d 792 (Ill. App. 2006) ..............................................................................28

*Carlson v. General Motors Corp.*,
    883 F.2d 287 (4th Cir. 1989) ...................................................................................18

*Carlton v. Paccar Inc.*,
    2016 WL 6921127 (C.D. Cal. May 2, 2016) ..........................................................18

*Cipollone v. Liggett Group, Inc.*,
    505 U.S. 504 (1992).................................................................................................12

*Clark v. Green Tree Servicing LLC,*
    69 F. Supp. 3d 1203 (D. Colo. 2014) .......................................................................28

*Clemens v. DaimlerChrysler Corp.,*
    534 F.3d 1017 (9th Cir. 2008) ..............................................................12, 14, 20, 21

*Coba v. Ford Motor Co.,*
    932 F.3d 114 (3d Cir. 2019) ....................................................................................16

*Cross v. Ciox Health, LLC,*
    2020 WL 534289 (E.D.N.C. Feb. 3, 2020) ..............................................................24

*Daugherty v. Am. Honda Motor Co.,*
    144 Cal. App. 4th 824 (2006) ..................................................................................14

*David v. Am. Suzuki Motor Corp.,*
    629 F.Supp.2d 1309 (S.D. Fla. 2009) ......................................................................29

*Demaria v. Nissan N. Am., Inc.,*
    2016 WL 374145 (N.D. Ill. Feb. 1, 2016) ...............................................................25

*Doe v. Boys Clubs of Greater Dallas, Inc.,*
    907 S.W.2d 472 (Tex. 1995) ....................................................................................25

*Duquesne Light Co. v. Westinghouse Elec. Corp.,*
    66 F.3d 604 (3d Cir. 1995) ......................................................................................12

*F.D.I.C. v. Bathgate,*
    27 F.3d 850 (3d Cir. 1994) ................................................................................24, 25

*Fargo Mach. & Tool Co. v. Kearney & Trecker Corp.,*
    428 F. Supp. 364 (E.D. Mich. 1977) .......................................................................18

*Fisher v. Harley0Davidson Motor Grp. LLC,*
    2019 WL 8014364 (S.D. Fla. Oct. 18, 2019) ..........................................................19

*Frith v. Guardian Life Ins. Co. of Am.,*
    9 F.Supp.2d 734 (S.D. Tex. 1998) .....................................................................24, 25

*Goodman v. HTC Am., Inc.,*
    2012 WL 2412070 (W.D. Wash. June 26, 2012).................................................24, 25

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.,*
    525 F. App'x. 94 (3d Cir. 2013) ..............................................................................26

*Great Northern Ins. Co. v. Toto U.S.A., Inc.,*
    2016 WL 4091177 (D. Colo. July 13, 2016) ...........................................................19

iii

*Greenberger v. GEICO Gen. Ins. Co.*,
    631 F.3d 392 (7th Cir. 2011) ...............................................................22

*Hammond v. BMW of N. Am., LLC*,
    No. CV 18-226 DSF, 2019 WL 2912232 (C.D. Cal. June 26, 2019) ....................28

*Harris Grp. v. Robinson*,
    209 P.3d 1188 (Colo. App. 2009) .........................................................29

*Haskins v. Symantec Corp.*,
    654 F. App'x 338 (9th Cir. 2016) .........................................................24

*In re Myford Touch Consumer Litig.*,
    2015 WL 5118308 (N.D. Cal. Aug. 31, 2015) .........................................14

*In re Nexus 6P Prods. Liab. Litig.*,
    293 F. Supp. 3d 999 (N.D. Cal. 2018) ...................................................26

*In re OnStar Contract Litig.*,
    600 F. Supp. 2d 861 (E.D. Mich. 2009) .................................................12

*Ingalls v. Edgewater Private Equity Fund III, L.P.*,
    2005 WL 2647962 (S.D. Tex. Oct. 17, 2005) ..........................................24

*J.C. v. Society of Jesus*,
    457 F.Supp.2d 1201 (W.D. Wash. 2006) ................................................28

*Jarrett v. Panasonic Corp. of N. Am.*,
    8 F.Supp.3d 1074 (E.D. Ark. 2013) ......................................................25

*Jimenez v. Superior Court*,
    29 Cal. 4th 473 (2002) .....................................................................28

*Karpowicz v. Gen. Motors Corp.*,
    1998 WL 142417 (N.D. Ill. Mar. 26, 1998) ............................................12

*Kearney v. Bayerische Motoren Werke Aktiengesellschaft*,
    2018 WL 4144683 (D.N.J. Aug. 29, 2018) .............................................14

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ............................................................22

*Koch v. Royal Wine Merchants, Ltd.*,
    847 F. Supp. 2d 1370 (S.D. Fla. 2012) ..................................................22

*Leon v. Cont'l AG*,
    301 F. Supp. 3d 1203 (S.D. Fla. 2017) ..................................................28

*Llort v. BMW of North Am., LLC*,
   2020 WL 2928472 (W.D. Tex. June 2, 2020) ........................................................29

*Majdipour v. Jaguar Land Rover N. Am., LLC*,
   No. 12-07849, 2015 WL 1270958 (D.N.J. Mar. 18, 2015) ....................................28

*Marchionna v. Ford Motor Co.*,
   1995 WL 476591 (N.D. Ill. Aug. 10, 1995) ..........................................................22

*Marlborough Holdings Grp. Ltd. V. Pliske Marine, Inc.*,
   2011 WL 13322673 (S.D. Fla. Mar. 18, 2011)........................................................18

*Maxwell v. Remington Arms Co., LLC*,
   2014 WL 5808795 (M.D.N.C. Nov. 7, 2014)..........................................................18

*McGuire v. BMW of N. Am., LLC*,
   2014 WL 2566132 (D.N.J. June 6, 2014) ................................................................29

*McQueen v. BMW of N. Am., LLC*,
   2014 WL 656619 (D.N.J. Feb. 20, 2014) ................................................................28

*Mesa v. BMW of N. Am., LLC*,
   904 So.2d 450 (Fla. Dist. Ct. App. 2005) ..............................................................20

*Mexia v. Rinker Boat Co.*,
   174 Cal. App. 4th 1297 (2009) ..............................................................................20

*Morris v. BMW of N. Am., LLC*,
   2014 WL 793550 (D.N.J. Feb. 26, 2014) ...............................................................25

*Mosqueda v. American Honda Motor Co., Inc.*,
   2020 WL 1698710 (C.D. Cal. Mar. 6, 2020)...........................................................28

*Mydlach v. DaimlerChrysler Corp.*,
   875 N.E.2d 1047 (Ill. 2007) ...................................................................................14

*Neuser v. Carrier Corp.*,
   2007 WL 484779 (W.D. Wis. Feb. 9, 2007).............................................................19

*O'Connor v. BMW of N. Am., LLC*,
   2020 WL 1303285 (D. Colo. Mar. 19, 2020) ..........................................................16

*Omni USA, Inc. v. Parker-Hannifin Corp.*,
   964 F. Supp. 2d 805 (S.D. Tex. 2013) ...................................................................18

*Orthoflex, Inc. v. ThermoTek, Inc.*,
   2013 WL 4045206 (N.D. Tex. Aug. 9, 2013)..........................................................16

*Perez v. Volkswagen Grp. Of Am., Inc.*,
  2013 WL 1661434 (W.D. Ark. Apr. 17, 2013)............................................................14, 18, 19

*Philips v. Ford Motor Co.*,
  No. 14-CV-02989, 2016 WL 1745948 (N.D. Cal. May 3, 2016)...........................................20

*Platt v. Winnebago Indus., Inc.*,
  2018 WL 10798654 (D. Colo. Sept. 14, 2018)...............................................................16, 21

*Priebe v. Autobarn, Ltd.*,
  240 F.3d 584 (7th Cir. 2001) ...............................................................................................18

*Prima Tek II, L.L.C. v. Klerk's Plastic Indus.*,
  525 F.3d 533 (7th Cir. 2008) ...............................................................................................29

*Ranta Constr. Inc. v. Anderson*,
  190 P.3d 835 (Colo. App. 2008)..........................................................................................14

*Roberts v. Electrolux Home Prods., Inc.*,
  No. CV-12-1644, 2013 WL 7753579 (CD. Cal. Mar. 4, 2013).............................................28

*Roe v. Ford Motor Co.*,
  2019 WL 3564589 (E.D. Mich. Aug. 6, 2019) .......................................................................16

*Sampler v. City Buick Geo, Inc.*,
  10 F. Supp. 2d 934 (N.D. Ill. 1998) ................................................................................14, 19

*Scanlan v. Tex. A&M Univ.*,
  343 F.3d 533 (5th Cir. 2003) ...............................................................................................16

*Schechter v. Hyundai Motor Am.*,
  2019 WL 3416902 (D.N.J. July 29, 2019)............................................................................21

*Schepler v. Am. Honda Motor Co., Inc.*,
  No. CV 18-6043-GW(AFMx), 2019 WL 398000 (C.D. Cal. Jan. 29, 2019) .........................16

*Schiesser v. Ford Motor Co.*,
  2017 WL 1283499 (N.D. Ill. Apr. 6, 2017) ..........................................................................14

*Seismic Wells, LLC v. Matthews*,
  2015 WL 11027778 (N.D. Tex. Sept. 11, 2015).....................................................................28

*Sharrad, McGee & Co. v. Suz's Software, Inc.*,
  396 S.E.2d 815 (N.C. Ct. App. 1990) ...................................................................................20

*Sheeran v. Blyth Shipholding S.A.*,
  2015 WL 9048979 (D.N.J. Dec. 16, 2015).............................................................................24

*Sheris v. Nissan N. Am. Inc.*,
   2008 WL 2354908 (D.N.J. June 3, 2008) ...........................................................18

*Skeen v. BMW of N. Am., LLC*,
   2014 WL 283628 (D.N.J. Jan. 24, 2014) ...........................................................18

*Speier-Roche v. Volksw Agen Grp. of Am. Inc.*,
   2014 WL 1745050 (S.D. Fla. Apr. 30, 2014) ......................................................28

*Stevenson v. Mazda Motor of Am., Inc.*,
   2015 WL 3487756 (D.N.J. June 2, 2015) ...........................................................19

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir.2007) ..............................................................................24

*Szajna v. Gen. Motors Corp.*,
   115 Ill. 2d 294, 503 N.E.2d 760 (1986) .............................................................20

*Temple v. Fleetwood Enters., Inc.*,
   133 F. App'x 254 (6th Cir. 2005) .......................................................................22

*Varner v. Domestic Corp.*,
   2017 WL 3730618 (S.D. Fla. Feb. 7, 2017) .......................................................25

*Voelker v. Porsche Cars N. Am., Inc.*,
   353 F.3d 516 (7th Cir. 2003) .............................................................................16

*White v. Volkswagen Grp. of Am., Inc.*,
   2013 WL 685298 (W.D. Ark. Feb. 25, 2013) ...............................................22, 25

*Wozniak v. Ford Motor Company*,
   2019 WL 108845 (E.D. Mich. Jan. 4, 2019) .....................................................14

*Zambrano v. CarMax Auto Superstores, LLC*,
   2014 WL 228435 (S.D. Cal. Jan. 21, 2014) .......................................................18

*Zwicker v. Gen. Motors Corp.*,
   2007 WL 5309204 (W.D. Wash. July 26, 2007) ................................................29

**RULES**

Fed. R. Civ. P. 8 ...........................................................................................12, 24

Fed. R. Civ. P. 9(b) ...........................................................................3, 12, 22, 24

Fed. R. Civ. P. 12(b)(2) .........................................................................................1

Fed. R. Civ. P. 12(b)(6) .........................................................................................1

**S**TATUTES

15 U.S.C. § 1232 ................................................................................................24

15 U.S.C. § 2304(a)(4) .......................................................................................22

15 U.S.C. § 2310(a)(3) .......................................................................................21

15 U.S.C. § 2310(d)(3)(C) ..................................................................................21

15 U.S.C. § 2310(e) ............................................................................................22

Ark. Code Ann. §§ 4-2-314, 4-2-316 .................................................................19

Ark. Code § 4-2A-212 ........................................................................................20

Cal. Civ. Code § 1791.1(a) & 1792 ....................................................................18

Cal. Com. Code § 2314 .......................................................................................20

Cal. Com. Code § 2316 .......................................................................................19

Cal. Com. Code § 2725 .......................................................................................20

Cal. Com. Code § 2725(1) ..................................................................................16

Colo. Rev. Stat. § 4-2-3 ......................................................................................19

Colo. Rev. Stat. § 4-2-725 ..................................................................................20

Colo. Rev. Stat. § 6-1-105(1)(u) .........................................................................25

Fla. Stat. § 95.11(3)(f) ........................................................................................28

Fla. Stat. § 95.11(3)(k) ...................................................................................20, 21

Fla. Stat. § 672.316 .............................................................................................19

Florida's Unfair & Deceptive Trade Practices Act .............................................28

Ill. Comp. Stat. § 5/2-316 ...................................................................................19

Ill. Comp. Stat. § 5/2-725 ...................................................................................21

Magnuson Moss Warranty Act .............................................................................2

N.C. Gen. Stat. § 25–2–316 ...............................................................................19

N.C. Gen. Stat. § 25-2-725 .................................................................................21

N.J.S.A § 12A:2-725(1) .................................................................................21

N.J. Stat. Ann. § 12A:2-316 .........................................................................19

Song-Beverly Act ..........................................................................................20

Tex. Bus. & Com. Code § 2.316 ...................................................................19

Tex. Bus. & Com. Code § 2.725 ...................................................................21

U.C.C. ............................................................................................................19

U.C.C. § 2-316 ..............................................................................................19

Wash. Rev. Code § 62A.2-316 .....................................................................19

By this Motion, Defendants Toyota Motor Sales, U.S.A., Inc. ("TMS"), Toyota Motor North America, Inc. ("TMNA"), and Toyota Engineering & Manufacturing North America, Inc. ("TEMA")[1] (collectively "Toyota Defendants") seek the dismissal of this putative class action pursuant to Fed. R. Civ. P. 12(b)(6), on the grounds that Plaintiffs have failed to state a claim for breach of the Magnusson-Moss Warranty Act, breach of express warranty, breach of implied warranties, violations of state consumer protection statutes, fraudulent concealment, failure to recall/retrofit, and unjust enrichment under the laws of Texas, Arkansas, California, Colorado, Florida, Illinois, New Jersey, North Carolina, and Washington.

This motion is based on supporting authorities, of all other facts the Court may or should take notice of, all files, records, and proceedings in this case, and any oral argument the Court may entertain.

## **INTRODUCTION**

The twenty named plaintiffs seeking to represent a nationwide class, as well as nine state subclasses, allege the Toyota Defendants designed, manufactured, advertised, marketed and sold 2010-2015 Prius and Prius PHV, 2012-2015 Prius V, 2012-2014 Camry Hybrid, and 2013-2015 Avalon Hybrid vehicles (the "Putative Class Vehicles") with an alleged brake defect in violation of various state consumer protection laws and in breach of purportedly applicable warranties. Specifically, Plaintiffs (who allege brake issues varying from no brake issues in eight years owning their vehicles, to a mushy pedal feel, to the "Vehicle pulled down to one side," to warning lights illuminating, to complete loss of braking and many issues in between) claim the Putative Class Vehicles contain defective brake booster pump assemblies, which "cause their braking system to fail." Plaintiffs also claim Toyota's Customer Support Program ("CSP"), under which Toyota has

---

[1] Toyota Motor Corporation ("TMC") conditionally joins this motion subject to the Court's ruling on its Federal Rule of Civil Procedure Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction.

notified customers that it will extend the new vehicle limited warranty to cover, without charge, replacement of a brake booster pump assembly in need of repair for up to 10 years or 150,000 miles (this modifies Toyota's original 36 month/36,000 mile warranty), is insufficient to address the brake booster pump assembly issue. Plaintiffs' specific claims include, *inter alia*: (1) violation of various state consumer protection statutes, (2) fraudulent concealment, (3) breach of express warranty, (4) breach of implied warranty, (5) violation of the federal Magnuson Moss Warranty Act, and (6) unjust enrichment.

Putting aside that Plaintiffs' 232-page/848-paragraph Master Consolidated Class Action Complaint ("CAC") is replete with inaccuracies; that Toyota is providing free repairs under the CSP to all putative class members that have a brake booster assembly manifesting symptoms of incipient failure or that has failed; that this case should be dismissed or stayed based on the doctrine of primary jurisdiction in deference to NHTSA's ongoing investigation of the brake booster pump assembly issue initiated by third-party Roger Hogan[1]; and this Court lacks jurisdiction over TMC,[2] Plaintiffs' claims fail on multiple additional grounds, including Plaintiffs failure to allege prima facie facts that are required to pursue their claims.[3]

Plaintiffs assert claims for breach of Toyota's New Vehicle Limited Warranty ("NVLW"), which accompanies every new Toyota vehicle. As Plaintiffs correctly allege, the NVLW provides, in relevant part, that the "warranty covers repairs and adjustments needed to correct defects in materials or workmanship" and that coverage is for 36 months or 36,000 miles, whichever occurs first. None of the Plaintiffs claim they experienced the alleged defect (let alone any warrantable

---

[1] *See* accompanying Motion to Dismiss or Stay Based on the Doctrine of Primary Jurisdiction.

[2] *See* TMC's accompanying Motion to Dismiss Pursuant to 12(b)(2).

[3] For the Court's convenience, Toyota provides a chart summarizing the basis for dismissal as to each of the Plaintiffs. *See* App'x A.

2

braking issue) within the NVLW's time and mileage limitations, nor does any Plaintiff plead in-warranty presentment, as they must, to pursue their breach of warranty claims. In fact, many of the Plaintiffs do not allege they experienced any brake issue and others do not allege they brought their vehicle to a Toyota dealership for any brake repair. Plaintiffs' warranty claims are further barred as a matter of law, for among other reasons: (1) Plaintiffs only plead a design issue, (2) Plaintiffs lack privity with any of the Toyota Defendants, and/or (3) Plaintiffs' claims are time-barred.

Plaintiffs also fail to satisfy Rule 9(b) pleading obligations for their consumer protection claims—which all sound in fraud—and their fraudulent concealment claims. Unable to identify any actual misrepresentations made by the Toyota Defendants related to the braking system in their vehicles, Plaintiffs allege fraud by omission, hoping to hide behind what they believe is a more "relaxed" pleading standard applied to omissions cases. But "relaxed", assuming such a standard exists, does not mean non-existent. Even though Plaintiffs' claims are based on an omission, they still must allege facts explaining what the Toyota Defendants should have disclosed to them or where the allegedly omitted information should or could have been revealed to them, and that the Toyota Defendants had presale knowledge of the alleged defect. These allegations are conspicuously absent from the CAC or completely deficient.

For these and the many other reasons discussed below, not one of the Plaintiffs' claims is adequately pled. The Court should dismiss the CAC in its entirety.

## FACTS ALLEGED IN THE COMPLAINT

## I.    NAMED PLAINTIFF ALLEGATIONS[4]

---

[4] It is evident from the face of the CAC that the named plaintiffs' experiences are not representative of each other, let alone of the putative class they seek to represent. Although the Toyota Defendants strongly believe Plaintiffs will be unable to certify a class, the Toyota Defendants acknowledge

3

<u>Given the number of plaintiffs, below are the salient facts needed by the Court to address</u> <u>Toyota's motion to dismiss arguments.</u>

***<u>Kamran Khan (AR)</u>***: **Vehicle**: 2010 Prius. **Purchased New or Used:** Used from an individual. **Purchase date**: May 2019. **Reliance**: none alleged. **Experienced a Claimed Braking Issue**: Yes. **Description of Alleged Braking Issue**: Shortly after purchasing his used 2010 Prius, Khan noticed "the brakes failed to respond to normal foot pressure, requiring Mr. Khan to apply the brake almost all the way to the floor to get the vehicle to stop." Khan also claims he "witnessed the Vehicle's master warning light, brake system warning light, and/or slip indicator light illuminate in response to these events." **Brought Vehicle to Toyota Dealer to Evaluate Alleged Brake Issue**: Not alleged. CAC at ¶¶ 30-33.

***<u>Jason Medeiros (CA)</u>***: **Vehicle**: 2015 Prius Hatchback. **Purchased New or Used**: Used from a Toyota dealer. **Purchase date**: Undisclosed date. **Reliance**: Window sticker. **Experienced a Claimed Braking Issue**: Yes. **Description of Alleged Braking Issue**: Within the first 10,000 miles of purchasing his vehicle on an undisclosed date with undisclosed mileage, he "noticed that when driving over dips, railroad tracks, manhole covers, and other bumpy obstacles, the Vehicle continued to travel at previous speeds even when he depressed the brake pedal to slow down the Vehicle."[5] Medeiros also claims on several occasions, he witnessed the "Vehicle's master warning

---

that this Court has been reluctant to make this determination at the pleading stage. For that reason and because the CAC should be dismissed, the Toyota Defendants are not moving to specifically dismiss Plaintiffs' class allegations, although it is clear from the CAC, the putative class alleged is not plausible.

[5] It is worth noting (and should this case survive the pleadings the Toyota Defendants will demonstrate) that based on the description in the CAC, Medeiros (and several other Plaintiffs) experienced normal Anti-Lock Brake ("ABS") activation. This activation is normal, and while a driver can sometimes feel the ABS activation, there is no material impact on braking performance. *See* 2015 Prius Owners Manual at 304 at https://www.toyota.com/t3Portal/document/om-

light, brake system warning light, and/or slip indicator light illuminate in response to these events."

**Brought Vehicle to Toyota Dealer to Evaluate Alleged Brake Issue**: After receiving a "'bulletin letter' making him aware of a potential problem with the brakes, whereupon he took his Vehicle to his local Toyota dealership who told him "the Vehicle was functioning normally." *Id*. at ¶¶ 37-43.

*Nancy Bennett-Hauser (CA)*: **Vehicle**: 2012 Prius V. **Purchased new or used**: New. **Purchase date**: Undisclosed date. **Reliance**: Window sticker. **Experienced a Claimed Braking Issue**: No. **Brought Vehicle to Toyota Dealer to Evaluate Alleged Brake Issue:** After learning of Toyota's "Customer Support Program," through a third party, Bennett-Hauser contacted a Toyota dealership to inquire why she did not receive the CSP. She was told by the dealer that her vehicle was not included in the CSP. *Id*. at ¶¶ 46-53.

*Glenn Alcaraz (CA)*: **Vehicle**: 2015 Prius II. **Purchased new or used**: Used from his mother. **Purchase date**: February 2015. **Reliance**: none alleged. **Experienced a Claimed Braking Issue**: Yes. **Description of Alleged Braking Issue**: In 2019, Mr. Alcaraz "began to notice that the brake pedal was feeling soft and that his ABS warning light was flashing." **Brought Vehicle to Toyota Dealer to Evaluate Alleged Brake Issue**: No, but a third party repair facility told him "that there was nothing wrong with the brakes." *Id*. at ¶¶ 56-60.

---

s/OM47791U/xhtml/OM47791U.html?locale=en. The Prius ABS activation issue, as described by Medeiros and other Plaintiffs, was already fully litigated in *In Re Toyota Motor Corp. Hybrid Brake Marketing Sales Practices and Products Liab. Litig*., a multi-district class action litigation that was before Judge Cormac J. Carney, of the Central District of California. In that case, Judge Carney denied certification, and granted Toyota's motion for summary judgment, 915 F.Supp.2d 1151 (CDCA 2013), because the plaintiff "has not shown that he has suffered any legally cognizable injury as a result of the ABS in his vehicle." Judge Carney also denied class certification and granted summary judgment in a companion litigation that focused on the 2004-09 Prius. *See* 959 F.Supp.2d 1244 (C.D. Cal. 2013).

*Chong Eun (CA)*: **Vehicle**: 2013 Prius. **Purchased new or used**: New. **Purchase date**: It appears Mr. Eun does not know when or where his 2013 Toyota Prius was purchased. *Id.* at ¶ 64 alleging "on information and belief" his vehicle was purchased new from Toyota of Huntington Beach. **Reliance**: Although Mr. Eun does not appear to know where or when exactly he purchased his vehicle, he claims he relied on the window sticker. **Experienced a Claimed Braking Issue**: Yes. **Description of Alleged Braking Issue**: Eun claims he experienced the "Toyota Brake Defect on numerous occasions," one of which resulted in him rear ending a vehicle in front of him when he was traveling at a "low rate of speed." **Brought Vehicle to Toyota Dealer to Evaluate Alleged Brake Issue**: After rear ending another vehicle, Mr. Eun "complained to his local Toyota dealership about the brake defect." The technicians at the dealership told Mr. Eun "nothing was wrong with the Vehicle's brakes." After receiving a "bulletin letter," he contacted a local dealership. The dealership informed Mr. Eun that his vehicle was ineligible for replacement of the brake booster pump and brake booster assembly under the CSP. *Id.* at ¶¶ 63-70.

*Andrea Kent (CA)*: **Vehicle**: 2014 Prius V. **Purchased new or used**: New. **Purchase date**: July 2014. **Reliance**: Window sticker. **Alleged Braking Issue**: Yes. **Experienced a Claimed Braking Issue**: "Experienced brake failure in or about August 2014 when she tried to apply the brakes and had to put the pedal all the way to the floor to activate them. There was no brake system warning light or malfunction indicator illuminated prior to this incident occurring." **Brought Vehicle to Toyota Dealer to Evaluate Alleged Brake Issue**: Following this incident, Ms. Kent allegedly "presented" her vehicle to a Toyota dealership. After evaluating the vehicle, the dealership technicians told her "nothing wrong with the Vehicle's brakes." Ms. Kent claims that since this time she has continued to experience the "brake pedal traveling all the way to the floor" without any warning light or messages. *Id.* at ¶¶ 73-79.

*Nancy Kwan (CA)*: **Vehicle**: 2015 Prius. **Purchased new or used**: Undisclosed. **Purchase date**: On an undisclosed date from an undisclosed location. In fact, Ms. Kwan does not know if her vehicle was purchased in California. *See id*. ¶ 83 (alleging that "based on information and belief, [her 2015 Prius was] purchased in California."). **Reliance**: Although Ms. Kwan does not appear to know where, when, or even in what state her vehicle was purchased, she alleges she relied on the window sticker. **Experienced a Claimed Braking Issue**: None alleged. **Brought Vehicle to Toyota Dealer to Evaluate Alleged Brake Issue**: Not alleged. *Id*. at ¶¶ 82-85.

*Stephanie Owens* **(CO)**: **Vehicle**: 2013 Prius. **Purchased new or used**: Undisclosed but date of purchase suggests was purchased used. **Date of Purchase**: On or around April 2015. **Reliance**: Window sticker. **Experienced a Claimed Braking Issue**: Yes. **Description of Alleged Braking Issue**: Beginning in 2018, she experienced the alleged defect on "numerous occasions" and "on at least four occasions, the Toyota Brake Defect resulted in loss of braking power—with the brake pressing completely to the floor—and sudden loss of vehicle control." **Brought Vehicle to Toyota Dealer to Evaluate Alleged Brake Issue**: After receiving a "bulletin letter" in August 2019, she "presented" her vehicle to a Toyota dealership for "diagnostic testing." After performing the "diagnostic testing," she was told by the dealership, she was "ineligible for the replacement of the brake booster assembly and the brake booster pump assembly." After continuing to experience "the performance in the following months, Ms. Owens presented the vehicle to a different Toyota dealership." After performing more diagnostic testing and field tests, the dealership told her she was "ineligible for the replacement of the brake booster assembly and the brake booster pump assembly." Ms. Owens claims she would go out of pocket for the repair, which she was told would cost $3,100, but could not get the repair "until the parts became available due to being on national backorder." *Id*. at ¶¶ 89-98.

***David Siegel (FL)***: **Vehicle**: 2012 Prius. **Purchased new or used:** Used from a Mercedes-Benz dealership**. Purchase Date**: In or around 2014. **Reliance**: Not alleged. **Experienced a Claimed Braking Issue**: Yes. **Description of Alleged Braking Issue:** "experienced the Toyota Brake Defect on several occasions." **Brought Vehicle to Toyota Dealer to Evaluate Alleged Brake Issue**: Not alleged. *Id*. at ¶¶ 101-102.

***Gregory Vasquez and Madeline Vasquez (NC, purchased in FL)***: **Vehicle**: 2011 Prius. **Purchased new or used**: New. **Purchase Date**: In or around May 2011. **Reliance**: Window Sticker. **Experienced a Claimed Braking Issue**: Yes. **Description of Alleged Braking Issue**: In or around March 2019, the Vasquezes noticed abnormal sound resonating from the vehicle's brakes. They also noticed that the vehicle's brakes felt "'spongy' requiring an unusual amount of force before they fully engaged." According to the CAC, these problems became progressively worse over the course of the next eight to nine months. **Brought Vehicle to Toyota Dealer to Evaluate Alleged Brake Issue:** After presenting their vehicle to a Toyota dealer, the dealer first replaced the brake module. After the ABS warning light illuminated, ***the dealership replaced the brake booster pump and brake booster pump assembly "without costs to the Vasquez Plaintiffs."*** *Id*. at ¶¶ 110-118.

***Yvette Winia (FL)***: **Vehicle**: 2012 Prius V. **Purchased new or used**: Used from Eau Gallie Auto Sales. **Purchase Date**: November 2019. **Reliance:** None alleged. **Experienced a Claimed Braking Issue**: Yes. **Description of Alleged Braking Issue:** In January 2020, her husband drove over a pot hole and when he pressed his foot on the brake pedal, his brakes failed, causing his vehicle to strike another vehicle, resulting in damage to both vehicles. **Brought Vehicle to Toyota Dealer to Evaluate Alleged Brake Issue:** After the incident, Ms. Winia presented her vehicle to

a Toyota dealership. The dealership technician could not "identify the problem and did not replace any parts." *Id*. at ¶¶ 123-128.

> ___Raul Rivera and Cristina Rivera (IL)___: **Vehicle**: 2010 Prius. **Purchased new or used**: Used. **Purchase Date**: February 2014. **Reliance:** None alleged. **Experienced a Claimed Braking Issue**: Yes. **Description of Alleged Braking Issue**: Shortly after purchase, Mr. Rivera noticed that "every time he applied the brake and hit a bump in the road, the brake pedal drops to zero pressure causing the vehicle to spring forward. This causes Mr. Rivera to aggressively push down on the brake pedal to avoid slamming into vehicles in front of him." **Brought Vehicle to Toyota Dealer to Evaluate Alleged Brake Issue**: The Toyota dealership they contacted attributed the problem to the floor mats and removed them. According to the Rivera, the "issue continues without the floor mats." *Id*. at ¶¶ 131-135.

> ___Enrique Pabon (NY, purchased in NJ)___: **Vehicle**: 2013 Avalon Hybrid. **Purchased new or used**: New. **Purchase Date**: Undisclosed. **Experienced a Claimed Braking Issue**: Yes. **Description of Alleged Braking Issue**: "Experienced the Toyota Brake Defect on several occasions." **Reliance**: Window sticker. **Experienced a Claimed Braking Issue**: None alleged. **Brought Vehicle to Toyota Dealer to Evaluate Alleged Brake Issue**: Not alleged, but claims he has taken his vehicle to his local dealership "numerous times for regular maintenance but has never been told that the Vehicle's brake booster assembly and brake pump were defective and/or eligible for replacement under the Customer Support Program." *Id*. at ¶¶ 138-145.

> ___Bryan Feinberg (NJ)___: **Vehicle**: 2015 Avalon Hybrid. **Purchased new or used**: New. **Purchase Date**: Undisclosed. **Reliance**: Window Sticker. **Experienced a Claimed Braking Issue**: None alleged. **Brought Vehicle to Toyota Dealer to Evaluate Alleged Brake Issue**: Not alleged. *Id*. at ¶¶ 149-155.

*Lois Felts (NC)*: **Vehicle**: 2013 Camry Hybrid. **Purchased new or used**: New. **Purchase Date**: Undisclosed. **Reliance**: Window sticker. **Experienced a Claimed Braking Issue**: Yes. **Description of Alleged Braking Issue**: On December 21, 2019, Ms. Felts was involved in a single vehicle auto-collision. While driving at a low rate of speed, Ms. Felts attempted to engage the brakes, but this failed to stop the Vehicle. As a result, the Vehicle continued across a three-lane highway and crashed into a curb. Because of damage to the undercarriage, Ms. Felts' insurance carrier calculated a total loss of the Vehicle's value. Ms. Felts never claims she had the vehicle evaluated to determine the cause of the collision. **Brought Vehicle to Toyota Dealer to Evaluate Alleged Brake Issue**: Not alleged. *Id*. at ¶¶ 159-164.

*Willie Rose (TX)*: **Vehicle:** 2013 Avalon Hybrid. **Purchased New or Used**: New. **Purchase date**: March 13, 2013. **Reliance**: None alleged. **Experienced a Claimed Braking Issue**: Yes. **Description of Alleged Braking Issue**: On an undisclosed date when a vehicle in front of Rose stopped abruptly, he applied the brakes and his vehicle "pulled down to one side." Rose also claims that his son says "the Vehicle's brakes had felt funny and had not reacted normally as they do on different vehicles he had driven." Finally, Rose claims that in 2019, his vehicle's brakes "felt mushy and soft" and he experienced several incidents in which the brake pedal "had to be applied almost all the way to the floor." **Brought Vehicle to Dealer to Evaluate Alleged Braking Issue**: In January 2020, one of his children took his vehicle to a Toyota dealer to have the brakes checked. The dealer said the "brakes were fine." *Id*. ¶ 16-20.

*Jeffrey Warner Rasco (TX)*: **Vehicle**: 2010 Prius. **Purchased New or Used**: New. **Purchase date**: November 2010. **Reliance**: None alleged. **Experienced a Claimed Braking Issue**: Yes **Description of Alleged Braking Issue**: "On several occasions…upon applying the

brakes that they did not take." **Brought Vehicle to Dealer to Evaluate Alleged Brake Issue**: Not alleged. *Id*. at ¶¶ 23-27.

*Laura Turner (WA)*: **Vehicle**: 2014 Prius. **Purchased new or used**: Used. **Purchase Date**: November 2017. **Reliance**: None alleged. **Experienced a Claimed Braking Issue**: None alleged. **Brought Vehicle to Toyota Dealer to Evaluate Alleged Brake Issue**: Not alleged. *Id*. at ¶¶ 169-170.

<div align="center">* * *</div>

All the Plaintiffs (except **Kwan (CA)**) claim had they known about the alleged defect at the time they purchased their vehicles, they would not have purchased or would have paid substantially less for their vehicles. *Id*. at ¶¶ 21, 28, 35, 44, 54, 61, 71, 80, 99, 108, 121, 129, 136, 147, 157, 167, 175. All the Plaintiffs also claim they suffered an ascertainable loss as result of Toyota's omission and/or misrepresentations associated with the alleged defect and Toyota's refusal to correct the defect, including, but not limited to, out-of-pocket losses, diminished value to their vehicles, and other consequential damages. *Id*. at ¶¶ 22, 29, 36, 45, 55, 62, 72, 81, 88, 100, 109, 122, 130, 137, 148, 158, 168, 176.

## II.    PLAINTIFFS' CLAIMS

Plaintiffs are seeking to represent a nationwide class of "all persons or entities in the United States who are current or former owners and/or lessees of a Class Vehicles," as well state classes for "persons or entities in the state of [Texas, Arkansas, California, Colorado, Florida, Illinois, New Jersey, North Carolina and Washington] who purchased or leased a Class Vehicle." *Id*. at ¶¶ 241-242.  The recall remedies Plaintiffs seek is an order "grant[ing] appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Toyota to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of

time, or at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the Toyota Brake Defect." *Id*. at prayer for relief subparagraph (e). Plaintiffs are also seeking "actual, general, special, incidental, statutory, punitive, and consequential damages and restitution," as well as "reasonable attorneys' fees and costs." *Id*. at ¶¶ subparagraphs (c) and (f).

## STANDARD

A complaint must allege enough facts to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8. Labels, conclusions, and mere assertions are not "facts" entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not '*show[n]*'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 678–79 (quoting Rule 8; emphasis added). As discussed further below, to the extent Plaintiffs are alleging fraud, they must plead those claims with particularity. Fed. R. Civ. P. 9(b).

## ARGUMENT

I.    **PLAINTIFFS' EXPRESS WARRANTY CLAIMS ARE DEFICIENT**

A.    **Plaintiffs fail to state claims for breach of the NVLW because none plead in-warranty failure or presentment.**

"A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 525 (1992).[6]

---

[6] "To allow a customer to seek [relief] beyond the limits specified in [an express] warranty would in effect compel the manufacturer to insure all latent defects for the entire life of the product and would place a burden on the manufacturer for which it did not contract." *In re OnStar Contract Litig.*, 600 F. Supp. 2d 861, 877 (E.D. Mich. 2009); *see also Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) ("If a manufacturer determines the useful life and warrants the product for a lesser period of time, we can hardly say that the warranty is implicated when the

Plaintiffs state in the CAC that "[u]nder the Limited New Vehicle Warranty, Toyota agreed to repair reported defects within the earlier of 3 years or 36,000 miles." CAC at ¶ 222. This is partially incorrect. Pursuant to the NVLW, as Plaintiffs correctly quote in the same paragraph, TMS (not all of the Toyota Defendants) agreed to make "repairs and adjustments needed to correct defects *in materials or workmanship of any part supplied by Toyota*…." Plaintiffs are correct that "Toyota instructs vehicle owners and lessees to bring their vehicles to a certified dealership for warranty repairs." *Id*. at ¶ 222.

To establish a breach of the NVLW, Plaintiffs must allege they experienced the alleged defect during the warranty period and/or they presented their vehicles to an authorized Toyota dealer within the warranty period.[7] No Plaintiff meets this basic requirement.

---

item fails after the warranty period expires."); *Karpowicz v. Gen. Motors Corp.*, 1998 WL 142417, at *4 (N.D. Ill. Mar. 26, 1998) ("Case law uniformly holds that time-limited warranties do not protect buyers against defects that existed before but are not discovered until after the expiration of the warranty period."); *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 616 (3d Cir. 1995) ("'[L]atent defects' discovered after the term of the warranty are not actionable.").

[7] **Arkansas**: *Perez v. Volkswagen Grp. Of Am., Inc.*, 2013 WL 1661434, at *4 (W.D. Ark. Apr. 17, 2013). **California**: *Clemens*, 534 F.3d at 1023 (9th Cir. 2008) (applying California law; citing *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 830 (2006)); *In re Myford Touch Consumer Litig.*, 2015 WL 5118308, at *5 (N.D. Cal. Aug. 31, 2015) (courts "uniformly require the plaintiff to give the defendant a chance to perform warranty service before the defendant can be held liable for breach of warranty"). **Colorado**: *Ranta Constr. Inc. v. Anderson*, 190 P.3d 835, 845-46 (Colo. App. 2008) (affirming judgment in favor of defendant where plaintiff did not give defendant opportunity to cure alleged breach of warranty). **Florida**: *Aprigliano v. Am. Honda Motor Co., Inc.*, 979 F.Supp.2d 1331, 1340 (S.D. Fla. 2013). **Illinois**: S*chiesser v. Ford Motor Co.*, 2017 WL 1283499, at *3–4 (N.D. Ill. Apr. 6, 2017) (dismissing claim for failure to allege presentment before NVLW expired); *Mydlach v. DaimlerChrysler Corp.*, 875 N.E.2d 1047, 1060–61 (Ill. 2007); *Sampler v. City Buick Geo, Inc.*, 10 F. Supp. 2d 934, 941 (N.D. Ill. 1998) ("A buyer may not bring an action for breach of an express or implied warranty based on the defects which become evidence after the expiration of those warranties."). **New Jersey**: *Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, 2018 WL 4144683, at *15 (D.N.J. Aug. 29, 2018) ("But none of Plaintiffs' allegations claim that they presented their vehicles to BMW NA for repair. BMW NA cannot have breached the NVLW if it never had the opportunity to comply with it"); *Alban v. BMW of N. Am., Inc.*, 2010 WL 3636253, at *7 (D.N.J. Sept. 8, 2010). **North Carolina**: *Wozniak v. Ford Motor Company*, 2019 WL 108845, at *2 (E.D. Mich. Jan. 4, 2019) (plaintiff "must allege both the timeline between the start of the warranty period and the sought-after repairs and the

13

Some of the Plaintiffs purchased their vehicles used *after* the NVLW expired, so clearly they could not have experienced the alleged defect within the warranty period and/or presented their vehicles to an authorized Toyota dealer within the warranty period: **Khan (AR)**: purchased his 2010 Prius used in 2019, at least six years after the NVLW expired, *Id*. at ¶ 31; **Winia (FL)**: purchased her 2012 Prius V in 2019, at least four years after the NVLW expired, *Id*. at ¶ 124; **Riveras (IL)**: purchased their 2010 Prius in 2014, at least a year after the NVLW expired, *Id*. at ¶ 132; **Medeiros (CA)**: purchased his 2015 Prius hatchback used, but does not allege when he purchased his vehicle so there is no way to determine whether he was within the NVLW time limitations when he allegedly experienced a brake issue or when he "took the Vehicle to his local dealership…and told service technicians there about the problem." *Id*. at ¶ 38, 43.

Some of the Plaintiffs never alleged they experienced any brake issue, let alone they presented their vehicles to a Toyota dealer for repair during the warranty period: **Bennett-Hauser (CA), Kwan (CA), Feinberg (NJ),** and **Turner (WA)**. *Id*. at ¶¶ 46-55, 154-155, 169-176. Some of the Plaintiffs allege they experienced a brake issue, but do not allege they presented their vehicles to a Toyota dealers for a repair: **Rasco, (TX)**, **Alcaraz** (CA), **Siegel (FL),** and **Felts (NC).** *Id*. at ¶¶ 27, 60, 103, 164. **Pabon (NJ)** alleges he took his vehicle to his local Toyota dealership numerous times for regular maintenance, but despite alleging "he experienced the Toyota Brake Defect," he does not allege he ever mentioned the alleged "Toyota Brake Defect" to the dealership. *Id*. at ¶ 140-145. He also does not allege his date of purchase, when he experienced the alleged "Toyota Brake Defect," and/or the mileage on his vehicle when he allegedly experienced the "Toyota Brake Defect." *Id*. at ¶¶ 138-145.

---

mileage on their vehicles at the time of presentment") (dismissing NC, as well as FL IL, NJ, among other state, claims for failure to present vehicle under warranty).

Another group of Plaintiffs allege they presented their vehicles to a Toyota dealer for something related to their brakes (not necessarily the alleged defect), but their allegations affirmatively demonstrate their vehicles were no longer covered by the NVLW when they claim they experienced an alleged brake issue and/or allegedly presented their vehicles for a brake related issue. **Rose (TX):** purchased his vehicle in March 2013, and alleges he took the vehicles to have the brakes checked in January 2020, four years after the latest time the NVLW could have expired. *Id*. at ¶¶ 17, 20. **Alcaraz (CA):** purchased his 2015 Prius used from his mother, who purchased it in December 2014, and alleges he had his vehicle serviced on October 23, 2019, almost two years after the latest time the NVLW could have expired, *Id*. at ¶¶ 57, 60. **Owens (CO):** purchased her vehicle in or around April 2015, and alleges she presented her vehicle after August 2019, 16 months after the latest time the NVLW could have expired. *Id*. at ¶¶ 90, 95.

Not only do the facts alleged by the **Vasquezes (FL)** (who purchased their vehicle in May 2011 and presented their vehicle in or around January 2020) affirmatively demonstrate their vehicle was no longer covered by the NVLW when they purportedly experienced a brake issue and presented their vehicle for repair, but ***their vehicle was fixed free of charge.*** *Id*. at ¶¶ 111, 116. So they clearly do not have a breach of warranty claim. *Aprigliano.* 979 F.Supp.2d at 1340 ("a manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty.").

**Eun (CA)** alleges he presented his 2013 Prius to a Toyota dealer in 2016, but does not allege when he purchased his vehicle or the mileage on his vehicle at the time he experienced the alleged brake issue and "complained to his local Toyota dealership about the brake defect." *Id*. at ¶ 69. Thus, he does not allege sufficient facts to demonstrate his vehicle was within the NVLW's time and mileage limitations when he allegedly experienced a brake issue and/or presented the

15

vehicle for repair. **Kent (CA)** alleges she purchased her 2014 Prius in July 2014, and presented

her vehicle to a Toyota dealer in August 2014 (*Id*. at ¶¶ 74, 78-79), so she was likely within the

NVLW period, but that is of no import, because Kent's (and possibly Eun's) claim

for breach of express warranty is  time  barred  by  the  four-year statute of limitations under Cal.

Com. Code § 2725(1).

Accordingly, none of the 20 named plaintiffs plead claims for breach of express warranty.

To the extent Plaintiffs claim the warranties "fails in its essential purpose" (CAC ¶¶ 508, 572, 636,

701, 754, 822), this too must be rejected. No Plaintiff alleges they brought their vehicles in for

repair during the NVLW period so they cannot claim that the NVLW, the purpose of which was

to provide repair or replacement *during* the warranty period, failed its essential purpose.[8]

Additionally, because TMS is the sole warrantor under the NVLW (Ex. A)[9], to the extent

Plaintiffs' express warranty claims survive, Plaintiffs do not state a breach of express warranty

claim against the other Toyota Defendants.

### B.   TMS' express warranty does not cover design defects.

At least in part Plaintiffs are alleging a defect in design. CAC ¶¶ 1, 3. As numerous courts

have recognized "warranties for materials and/or workmanship fail to cover design defects."[10]

---

[8] *Roe v. Ford Motor Co.*, 2019 WL 3564589, at *11 (E.D. Mich. Aug. 6, 2019) (plaintiffs who did not present vehicles for repair during the warranty period could not plead that the warranties failed their essential purpose); *Platt v. Winnebago Indus., Inc.*, 2018 WL 10798654, at *7-8 (D. Colo. Sept. 14, 2018) (warranty did not fail its essential purpose where plaintiffs never gave defendant an opportunity to repair or replace the alleged defects in plaintiffs' RV).

[9] A court may consider documents attached to a motion to dismiss where the documents are referred to in the complaint and central to the plaintiffs' claims, as the NVLW is here. *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). Exhibit A consists of the relevant portions from the warranty book for a 2013 Prius and is representative of the warranty booklets for the other putative class vehicles.

[10] *Schepler v. Am. Honda Motor Co., Inc.*, No. CV 18-6043-GW(AFMx), 2019 WL 398000, at *8 (C.D. Cal. Jan. 29, 2019); *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 527 (7th Cir. 2003); *Coba v. Ford Motor Co.*, 932 F.3d 114, 123 (3d Cir. 2019); *Orthoflex, Inc. v. ThermoTek, Inc.*, 2013 WL 4045206, at *8 (N.D. Tex. Aug. 9, 2013); *O'Connor v. BMW of N. Am., LLC*, 2020 WL

For that reason as well, this Court should dismiss Plaintiffs' express-warranty claims, either in their entirety or to the extent they allege a design defect.

>    C.    **Several Plaintiffs do not allege reliance on the NVLW as required by their states' laws.**

>    **Plaintiffs Khan (AR)**, **Siegel (FL)**, **Vasquezes (FL)**, **Winia (FL)**, **Rivera (IL)**, **Felts (NC)**, **Rose (TX)**, and **Rasco (TX)** fail to plead reliance on the NVLW in making their purchase decision (CAC ¶¶ 31, 102, 111, 124, 132, 160, 17, 24), as required by their states' laws.[11]

## II.    PLAINTIFFS FAIL TO STATE IMPLIED WARRANTY CLAIMS

>    A.    **Plaintiffs fail to adequately allege their vehicles were unmerchantable.**

An implied warranty is a limited guarantee imposed by law. "In the case of automobiles, courts have found that the implied warranty of merchantability requires only that a vehicle is fit for driving." *Carlton v. Paccar Inc.*, 2016 WL 6921127, at *3 (C.D. Cal. May 2, 2016).[12] Plaintiffs

---

1303285, at *5 (D. Colo. Mar. 19, 2020).

[11] **Arkansas**: *Perez*, 2013 WL 1661434, at *4 (applying Arkansas law "this failure to plead that [they] relied on the Warranty as the basis of [their] bargain is fatal to [their] express warranty claim[s]."); **Florida**: *Marlborough Holdings Grp. Ltd. V. Pliske Marine, Inc.*, 2011 WL 13322673, at *10 (S.D. Fla. Mar. 18, 2011); **Illinois**: *Aquino v. C.R. Bard, Inc.*, 413 F.Supp.3d 770, 787 (N.D. Ill. 2019); **North Carolina**: *Maxwell v. Remington Arms Co., LLC*, 2014 WL 5808795, at *3 (M.D.N.C. Nov. 7, 2014) ("Under North Carolina law, a breach of express warranty claim requires a showing of . . . the plaintiff's reliance on the warranty in choosing to purchase the product"); **Texas**: *Omni USA, Inc. v. Parker-Hannifin Corp.*, 964 F. Supp. 2d 805, 814-15 (S.D. Tex. 2013) ("To prevail on a breach of express warranty claim the plaintiff must demonstrate that he relied upon the warranty.").

[12] S*ee also Carlson v. General Motors Corp.*, 883 F.2d 287, 297 (4th Cir. 1989) ("Since cars are designed to provide transportation, the implied warranty of merchantability is simply a guarantee that they will operate in a safe condition and substantially free of defects. Thus, where a car can provide safe, reliable transportation, it is generally considered merchantable."); *Zambrano v. CarMax Auto Superstores, LLC*, 2014 WL 228435, at *7 (S.D. Cal. Jan. 21, 2014) ("An implied warranty of merchantability does not promise a perfect or even problem-free vehicle—it only assures the buyer that the car will at least function for its intended purpose."); *Skeen v. BMW of N. Am., LLC*, 2014 WL 283628, at *16 (D.N.J. Jan. 24, 2014) ("A claim for breach of implied warranty must ordinarily arise shortly after purchase—there will typically be no claim for breach of implied warranty where plaintiffs have driven their cars without problems for years."); *Sheris v. Nissan N. Am. Inc.*, 2008 WL 2354908, at *6 (D.N.J. June 3, 2008);

fail to allege their vehicles were unmerchantable.[13] Some of the named plaintiffs never allege they experienced any brake issue: **Bennett-Hauser (CA)**, **Kwan (CA)**, **Feinberg (NJ)**, and **Turner (WA)**). CAC ¶¶ 46-55, 82-88, 101-09, 134-48. 169-76. For others, they (or a previous owner) drove their vehicles for years without experiencing any issue: **Rose (TX)** (5 years), **Khan (AR)** (9 years), **Alcaraz (CA)** (5 years), **Eun (CA)** (3 years), **Owens (CO)** (5 years), **Vasquez (FL)** (9 years), **Winia (FL)** (8 years), **Rivera (IL)** (4 years), and **Felts (NC)** (6 years). CAC ¶¶ 16-19, 31-33, 57-60, 64-69, 90-94, 111-115, 124-126, 132-134, 159-164. For others (**Medeiros (CA)**, **Pabon (NJ)** and **Rasco (TX)** (¶¶ 23-27, 37-42, 138-140) they do not allege when they purchased their vehicle and/or when they experienced a brake issue so the Court does not have the information it needs to evaluate whether these Plaintiffs sufficiently pled their breach of implied warranty claims.

The allegations (or lack thereof) of the named plaintiffs are a far cry from plausible allegations that each vehicle was unmerchantable at the time it was first sold, be it to one of the Plaintiffs or otherwise. That some Plaintiffs allege out-of-pocket expenses for their out-of-warranty repairs (for a hodge podge of brake issues) does not somehow transform their merchantable vehicles into unmerchantable ones. To the contrary, "mechanical failures in new and complex machines are expected"—every failure "does not constitute a breach of warranty." *Fargo Mach. & Tool Co. v. Kearney & Trecker Corp.*, 428 F. Supp. 364, 370 (E.D. Mich. 1977). Indeed, TMS' promise to repair defects in materials and/or workmanship properly presented within established time-and-mileage limits "is a recognition of potential defects (in a statistical sense, the

---

("[c]ourts across the country" agree "that plaintiffs may not recover for breach of the implied warranty of merchantability under the facts where plaintiffs have driven their cars without problems for years.").

[13] The failure to allege the vehicles were unmerchantable applies to not only all of Plaintiffs' implied warranty claims, but also the California Plaintiffs' Song-Beverly Implied Warranty claim. Cal. Civ. Code § 1791.1(a) & 1792.

inevitability of defects) in [Toyota's] product and an allocation of risk associated with such defects." *Neuser v. Carrier Corp.*, 2007 WL 484779, at *5 (W.D. Wis. Feb. 9, 2007). Plaintiffs cannot retroactively reallocate their share of the risk for alleged failures (and for some, no failures) that occurred after all warranties expired.

B.    **Any implied warranty is limited to the duration of the NVLW.**

Pursuant to U.C.C. § 2-316, manufacturers may impose limitations on implied warranties.[14] The NVLW expressly and conspicuously limits the duration of any implied warranties to the term of the NVLW, *i.e.*, 36,000 miles or 36 months. Ex. A. Plaintiffs' failure to allege the alleged brake defect manifested in their vehicles during the NVLW period is also fatal to their implied warranty claims.[15]

C.    **Plaintiffs are not in privity with the Toyota Defendants.**

**Medeiros (CA), Bennett-Hauser (CA), Alcaraz (CA), Eun (CA), Kent (CA), Kwan (CA), Siegel (FL), Vasquezes (FL), Winia (FL), Rivera (IL), Felts (NC),** and **Turner (WA)** do not allege that they purchased their vehicles from any of the Toyota Defendants. CAC. ¶¶ 38, 47, 57, 64, 74, 83, 102, 111, 124. 132, 160, 170. Thus, their breach of the implied warranty claims fail

---

[14] This provision of the U.C.C. has been adopted and codified in eight of the nine states at issue. Ark. Code Ann. §§ 4-2-314, 4-2-316*;* Cal. Com. Code § 2316; Colo. Rev. Stat. § 4-2-3; Fla. Stat. § 672.316; 810 Ill. Comp. Stat. § 5/2-316; N.J. Stat. Ann. § 12A:2-316; 16; N.C. Gen. Stat. § 25–2–316; Tex. Bus. & Com. Code § 2.316; Wash. Rev. Code § 62A.2-316.

[15] *Perez*, 2013 WL 1661434, at *6 ("[s]ince the implied warranty's duration is equal to the written Warranty's, the implied warranty also expired."); *Adams v. Nissan N. Am.*, 395 F. Supp. 3d 838, 853-54 (S.D. Tex. 2018) (dismissing implied warranty claims where Plaintiffs did not allege defect manifested during warranty period); *Great Northern Ins. Co. v. Toto U.S.A., Inc.*, 2016 WL 4091177, at *1 (D. Colo. July 13, 2016) (applying express warranty's 3-year duration to limit implied warranties); *Fisher v. Harley-Davidson Motor Grp. LLC*, 2019 WL 8014364, at *5 (S.D. Fla. Oct. 18, 2019) (dismissing implied warranty claim because Plaintiff did not allege a defect manifested during the express warranty period); *Stevenson v. Mazda Motor of Am., Inc.*, 2015 WL 3487756, at *12 (D.N.J. June 2, 2015) (same); *Sampler,* 10 F. Supp. 2d at 945.

for lack of privity under their states' laws.[16] Additionally, since **Medeiros (CA)**, **Alcaraz (CA)**, and **Kwan (CA)** do not allege they purchased their vehicles new from Toyota, their Song-Beverly Implied Warranty claims should be dismissed because "the distributor or retailer is liable for the sale of used products, not the original product manufacturer." *Goldstein v. General Motors,* 2020 WL 1849659, at * 10 (S.D. Cal. Apr. 13, 2020).

### D.   Plaintiffs' implied warranty claims are untimely.

To the extent any of the named plaintiffs plead an implied-warranty claim, those would have accrued at the time of tender, and as a result, their claims are untimely:

| *Plaintiff and state* | | *Tender date or model year[17]and CAC ¶* | | *SOL* | *Statute* | *Date SOL Expired* |
|---|---|---|---|---|---|---|
| Khan | AR | 2010MY | ¶ 31 | 4 yrs | Ark. Code § 4-2A-212 | 2014 |
| Alcaraz | CA | 12/2014 | ¶ 57 | 4 yrs. | Cal. Com. Code § 2725 | 12/2018 |
| Bennett-Hauser | CA | 2012MY | ¶ 23 | 4 yrs. | Cal. Com. Code § 2725 | 2016 |
| Eun | CA | 2013MY | ¶ 64 | 4 yrs. | Cal. Com. Code § 2725 | 2017 |
| Kent[18] | CA | 7/2014 | ¶ 74 | 4 yrs. | Cal. Com. Code § 2725 | 7/2018 |

---

[16] **California**: *Clemens,* 534 F.3d at 1023 (under California Commercial Code § 2314, the plaintiff "must stand in vertical contractual privity with the defendant."); **Florida**: *Mesa v. BMW of N. Am., LLC,* 904 So.2d 450, 458 (Fla. Dist. Ct. App. 2005); **Illinois**: *Szajna v. Gen. Motors Corp.*, 115 Ill. 2d 294, 311, 503 N.E.2d 760, 767 (1986); **North Carolina**: *Sharrad, McGee & Co. v. Suz's Software, Inc.*, 396 S.E.2d 815, 818 (N.C. Ct. App. 1990); **Washington**: *Babb*, 186 Wash. App. at 1003 (finding that breach of implied warranty claims against boat manufacturer should be dismissed because "[l]ack of contractual privity has historically been a defense to claims of breach of warranty," including claims for breach of implied warranty of merchantability based on allegations that plaintiffs were third-party beneficiaries).

[17] In this chart, the tender date is provided for new vehicle purchases and the model year is provided for used vehicle purchases or when the new vehicle purchase date was not alleged. The used-vehicle purchasers do not allege when their vehicles were first tendered, but given the model year, any leave to replead would be futile.

[18] Although Courts have found that tolling doctrines may apply to violations of California's Song-Beverly Act-Breach of Implied Warranty claims, Kent's Song-Beverly claim is untimely because she allegedly experienced the alleged defect in 2014. Thus, like the statute of limitations for her implied warranty claim, her Song-Beverly Implied Warranty Claim expired in 2018. *Philips v.*

| Plaintiff and state | | Tender date or model year[17] and CAC ¶ | | SOL | Statute | Date SOL Expired |
|---|---|---|---|---|---|---|
| Kwan | CA | 2015MY | ¶ 83 | 4 yrs. | Cal. Com. Code § 2725 | 2019 |
| Medeiros | CA | 2015MY | ¶ 24 | 4 yrs. | Cal. Com. Code § 2725 | 2019 |
| Owens | CO | 2013MY | ¶ 25 | 3 yrs. | Colo. Rev. Stat. § 4-2-725; id. § 13-80-101 | 2016 |
| Siegel | FL | 2012MY | ¶ 26 | 4 yrs. | Fla. Stat. § 95.11(3)(k) | 2016 |
| Vasquez | FL | 5/2011 | ¶ 111 | 4 yrs. | Fla. Stat. § 95.11(3)(k) | 5/2015 |
| Winia | FL | 2012MY | ¶ 124 | 4 yrs. | Fla. Stat. § 95.11(3)(k) | 2016 |
| Rivera | IL | 2010MY | ¶ 27 | 4 yrs. | 810 Ill. Comp. Stat. § 5/2-725 | 2014 |
| Felts | NC | 2013MY | ¶ 33 | 4 yrs. | N.C. Gen. Stat. § 25-2-725 | 2017 |
| Feinberg | NJ | 2015MY | ¶ 30 | 4 yrs. | N.J.S.A § 12A:2-725(1) | 2019 |
| Pabon | NJ | 2013MY | ¶ 28 | 4 yrs. | N.J.S.A § 12A:2-725(1) | 2017 |
| Rasco | TX | 11/2010 | ¶ 33 | 4 yrs | Tex. Bus. & Com. Code § 2.725 | 11/2014 |
| Rose | TX | 3/2013 | ¶ 37 | 4 yrs. | Tex. Bus. & Com. Code § 2.725 | 3/2017 |
| Turner | WA | 2014 MY | ¶ 35 | 4 yrs. | Rev. Code Wash § 62A.2-725(1) | 2018 |

## III.   PLAINTIFFS' MAGNUSSON-MOSS WARRANTY ACT CLAIM ALSO FAILS

### FOR MULTIPLE REASONS

A claim under the MMWA will "stand or fall" along with the underlying state-law warranty claims. *Platt,* 2018 WL 10798654, at *4 (quoting *Clemens,* 534 F.3d at 1022). Plaintiffs, having

---

*Ford Motor Co.*, No. 14-CV-02989, 2016 WL 1745948, at *6 (N.D. Cal. May 3, 2016) ("[A]lthough '[t]he Song-Beverly Act does not include its own statute of limitations, California courts have held that the statute of limitations for an action for breach of warranty under the Song-Beverly Act is governed by the same statute that governs the statute of limitations for warranties arising under the [California] Commercial Code [§ 2725].' ") (quoting *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1305-06 (2009)).

failed to adequately plead predicate state warranty claims, cannot pursue individual MMWA claims. But that is not the only reason Plaintiffs' MMWA claim fails.

First, because the MMWA requires at least 100 named plaintiffs, and here there are only 20, the Court should dismiss the claim. 15 U.S.C. § 2310(d)(3)(C) ("if the action is brought as a class action and the number of named plaintiffs is less than one hundred.")

Second, the MMWA also provides that if a warranty requires consumers to resort initially to an informal dispute settlement procedure, the consumer "may not commence a civil action" under the Act without first doing so. 15 U.S.C. § 2310(a)(3); *see also Schechter v. Hyundai Motor Am.*, 2019 WL 3416902, at *15 (D.N.J. July 29, 2019) (dismissing MMWA claim where Plaintiff did not comply with dispute resolution procedure set forth in express warranty). Here, Toyota's NVLW required Plaintiffs to participate in specific dispute-resolution programs. Ex. A. at 17. None of the named plaintiffs allege they complied with the specified dispute resolution procedures.

Third, under 15 U.S.C. § 2310(e), Plaintiffs' MMWA claims also fail unless they each afforded Toyota a "reasonable opportunity to cure" the alleged defect. Because no Plaintiff pled they properly presented their vehicle *twice*, as required, their MMWA claims fail for this additional reason. *See Temple v. Fleetwood Enters., Inc.*, 133 F. App'x 254, 268 (6th Cir. 2005); *Marchionna v. Ford Motor Co.*, 1995 WL 476591, at *11 (N.D. Ill. Aug. 10, 1995) (the word "attempts" in 15 U.S.C. § 2304(a)(4) connotes at least two tries).

## IV.   PLAINTIFFS' FRAUD BASED CLAIMS ARE DEFICIENT

Unable to point to any physical injuries (there were none) and unable to assert viable warranty claims (there are not any), Plaintiffs resort to accusations of fraud. As discussed below, the fraud-based claims are not pled with the level of specificity required by Rule 9(b) and also fail for numerous, independent reasons.

A.    **Plaintiffs fail to satisfy the heightened pleading standard of Rule 9(b).**

Each of Plaintiffs' fraudulent-concealment and consumer-protection claims "sound in fraud" and must meet Rule 9(b)'s heightened pleading standard.[19] Yet none of the Plaintiffs plead their fraud claims with sufficient particularity as required by Rule 9(b).

Plaintiffs' complaint lacks specific allegations as to "who" supposedly misrepresented or omitted material facts. With respect to **Khan (AR)**, **Medeiros (CA)**, **Alcaraz (CA) Siegel (FL)**, **Winia (FL)**, **Rivera (IL)**, and **Turner (WA)** who purchased their vehicles used, *see* CAC ¶¶ 31, 38, 57, 102, 124, 132, 170, they cannot allege they were defrauded at the time of their purchases by a misrepresentation or omission attributable to any Toyota Defendant since no Toyota Defendant was in any way involved with their purchase transactions. Additionally, Plaintiffs fail to adequately plead who omitted or concealed material facts. Rather, the CAC lumps all of the defendants together as "Toyota" and fails to distinguish each defendant's specific conduct. Rule 9(b) "does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant ... and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir.2007).[20] Here, it is entirely unclear which

---

[19] **Arkansas**: *White v. Volkswagen Grp. of Am., Inc.*, 2013 WL 685298, at *7 (W.D. Ark. Feb. 25, 2013) (ADTPA); **California**: *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125, 1127 (9th Cir. 2009) (CLRA, UCL, and FAL); **Colorado**: *Scott*, 2015 WL 1417527, at *12 (CCPA); **Illinois**: *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011) (claims brought pursuant to the ICFA "are subject to the same heightened pleading standards as other fraud claims; as such, they must satisfy the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure"); **Florida**: *Koch v. Royal Wine Merchants, Ltd.*, 847 F. Supp. 2d 1370, 1380 (S.D. Fla. 2012); **New Jersey**: *F.D.I.C. v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994) (NJCFA); **North Carolina**: *Cross v. Ciox Health, LLC*, 2020 WL 534289, at *7 (E.D.N.C. Feb. 3, 2020) (NCUDTPA); **Texas**: *Frith v. Guardian Life Ins. Co. of Am.*, 9 F.Supp.2d 734, 742-43 (S.D. Tex. 1998) (TDTPA); **Washington**: *Goodman v. HTC Am., Inc.*, 2012 WL 2412070, at *16 (W.D. Wash. June 26, 2012) (WCPA).

[20] *See also Ingalls v. Edgewater Private Equity Fund III, L.P.*, 2005 WL 2647962, at *5 (S.D. Tex.

particular Toyota Defendant is responsible for the allegedly deceptive conduct (or any of the conduct alleged in the CAC).

Also absent from the CAC is the "what," "where," and "when" of the allegedly fraudulent omissions. Many of the Plaintiffs do not allege what they were exposed to or relied on in making their purchase and plead no facts about what or where Toyota should have disclosed omitted information (**Rose (TX)**, **Rasco (TX)**, **Khan (AR)**, **Alcaraz (CA)**, **Siegel (FL)**, **Winia (FL)**, **Rivera (IL)** and **Turner (WA))**. CAC ¶¶ 22, 29, 36, 62, 109, 130, 137, 176. There claims should be dismissed.[21]

The rest of the named plaintiffs (even those who do not remember where or when they purchased their vehicle) alleged they relied on the window sticker on the vehicle. Assuming this is true, this does not save their claims. Every automotive manufacturer of new vehicles is required to affix to the windshield or side window a sticker known as the Monroney label. 15 U.S.C. § 1232. The contents of a Monroney label are mandated pursuant to 15 U.S.C. § 1232, *e.g.*, (price, country of origin, etc.) and to make sure it is legible. *Id*. Obviously the Toyota Defendants (or any automotive manufacturer) could not possibly list every potential "defect" on that sticker, and if they tried, it would obscure required information. Thus, to the extent there was anything to disclose (which there was not), the Toyota Defendants could not have disclosed the alleged defect on the

---

Oct. 17, 2005) ("[A] complaint alleging fraud may not group the defendants together . . . Group pleading fails to satisfy the requirement that the who, what, where, why, and when of the fraud be specified.") (internal quotation omitted); *Sheeran v. Blyth Shipholding S.A.*, 2015 WL 9048979, at *3 (D.N.J. Dec. 16, 2015) ("Courts in this district generally agree that this type of 'group pleading' does not satisfy Rule 8, because it does not place Defendants on notice of the claims against each of them.").

[21] *See, e.g., Haskins v. Symantec Corp.*, 654 F. App'x 338, 339 (9th Cir. 2016) (affirming dismissal when plaintiff "did not allege that she read and relied on a specific misrepresentation"); *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 749-50 (E.D. Mich. 2017) (dismissing claims where Plaintiffs did not allege when or where they "ever saw, heard, or relied on" representations).

Monroney label and Plaintiffs have failed to allege, as they must to pursue their claims, where the Toyota Defendants should have otherwise disclosed the allegedly omitted information.

### B. Plaintiffs' fraud-based consumer protection and fraudulent concealment claims also fail because Plaintiffs fail to allege Toyota's pre-sale knowledge.

Although Plaintiffs' consumer protection claims require Plaintiffs to plead varying elements under the applicable states' laws, they are all fatally defective for one reason: Plaintiffs have not adequately alleged facts that make it plausible the Toyota Defendants had pre-sale knowledge of the alleged brake booster pump assembly defect.[22] Similarly, the tort of fraudulent concealment requires Plaintiffs to show Toyota knew of the alleged defect."[23]

Plaintiffs' allegations with respect to the Toyota Defendants' knowledge are boilerplate and devoid of actual facts. CAC ¶ 211. Such generic allegations are "insufficient to support an

---

[22] **Arkansas**: *Jarrett v. Panasonic Corp. of N. Am.*, 8 F.Supp.3d 1074, 1085 (E.D. Ark. 2013) (holding conclusory allegations about defendant allegedly "concealing, suppressing, or omitting material facts in connection with the sale or advertisement" of the product did not sufficiently plead ADTPA claim); **Colorado**: *See also* Colo. Rev. Stat. § 6-1-105(1)(u) (prohibits failure to disclose material information *known* at the time of an advertisement or sale); **Florida**: *Varner v. Domestic Corp.*, 2017 WL 3730618, at *15 (S.D. Fla. Feb. 7, 2017) (dismissing consumer protection claims under California, Florida, North Carolina and Texas, among other state laws where plaintiffs did not plead facts sufficient to show the defendant's knowledge of the alleged safety risk omission); **Illinois**: *Demaria v. Nissan N. Am., Inc.*, 2016 WL 374145, at *9 (N.D. Ill. Feb. 1, 2016) (claims of fraudulent concealment and for violation of the Illinois CFA required pleading knowledge of the alleged defect at the time of the relevant sale); **New Jersey**: *Morris v. BMW of N. Am., LLC*, 2014 WL 793550, at *7 (D.N.J. Feb. 26, 2014) (dismissing NJCFA claim where plaintiff failed to plead facts to show defendant possessed knowledge about the alleged defect at any time prior to plaintiff's purchase of the vehicle and intentionally failed to disclose same to plaintiff); **North Carolina**: *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 196 (M.D.N.C. 1997) (holding that fraud by omission is satisfied if one party takes affirmative steps to conceal material facts of a defect or has knowledge of a defect); **Texas**: *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 479 (Tex. 1995) (a failure to disclose material information under the TDTPA necessarily requires that the defendant have *known* the information and failed to bring it to the plaintiff's attention); **Washington**: *Beaty v. Ford Motor Co.*, 2020 WL 639408, at *3 (W.D. Wash. Feb. 11, 2020) (holding manufacturer's knowledge of a similar defect in another model vehicle was insufficient to establish manufacturer's knowledge of defect in plaintiff's vehicle as required for WCPA claim).

[23] Fraudulent concealment claims are asserted under the laws of California, Colorado, Florida, Illinois, North Carolina, Texas, and Washington

inference that a defendant knew about a design defect at the product's time of sale." *Beck*, 273 F. Supp. 3d at 753 (collecting cases). In fact, rather than supporting the Toyota Defendants' alleged knowledge of a presale defect, the far more likely and logical inference from Plaintiffs' allegations is that the Toyota Defendants did not have pre-sale knowledge of the alleged defect. For example, under Plaintiffs' illogical theory, the Toyota Defendants would have undertaken the time and expense of testing the brake system in their vehicles, and the Putative Class Vehicles, only to ignore the test results after (according to Plaintiffs) they identified a defect in the braking system of the Putative Class Vehicles. Rather than supporting knowledge of a presale defect, the far more likely and logical inference from these facts is that pre-release testing did not identify the alleged defect.

Plaintiffs devote close to 100 pages of their CAC to Vehicle Owner Questionnaires customers fill out on NHTSA's website and ask the Court to infer Toyota's presale knowledge from these anonymous hearsay complaints made by unidentified third-party consumers on NHTSA's website. *See* CAC. ¶¶ 207, 210. There are several problems with this suggestion. First, numerous courts have held that customer complaints themselves establish only that customers complained, not that an underlying defect necessarily existed. *Cadena v. Am. Honda Motor Co*., No. CV 18-4007-MWF (PJWx), 2019 WL 3059931, *12 (C.D. Cal. May 29, 2019) (holding that the multiple complaints to NHTSA do not show pre-sale knowledge because the complaint fails to allege that "Honda ever actually tracked" these complaints). Second, the NHTSA complaints Plaintiffs include in the CAC demonstrate varied and disparate experiences with the braking system, and thus could not demonstrate the existence of any particular defect, much less Toyota's presale knowledge of the alleged defect. Finally, ignoring the fact that the complaints do not identify any particular defect, Plaintiffs fail to plead any facts demonstrating that the number or

substance of consumer complaints, even if known by the Toyota Defendants, was sufficient to put Toyota on notice that a defect was actually present and what the defect might be. The vast majority of the 91 NHTSA complaints Plaintiffs include in the CAC *post-date* the initial sale of Plaintiffs' vehicles. This number of complaints is statistically infinitesimal in light of the allegedly "hundreds of thousands" of putative class vehicles sold, and is therefore, insufficient to infer Toyota's presale knowledge.[24]

At bottom, Plaintiffs "cannot equate [Toyota's] design choices with fraudulent conduct simply by saying so." *See McQueen v. BMW of N. Am., LLC*, 2014 WL 656619, at *5 (D.N.J. Feb. 20, 2014) ("[I]t is a circular argument that could be used to impute knowledge" to "any manufacturer who designs and markets a product that is later alleged to be defective–'I (consumer) believe this item to be defective; you (manufacturer) designed the item and sold it; ergo, you knew it was defective, and thus you defrauded me when you elected not to tell me about the defect.'"). Consequently, all of Plaintiffs' common law fraud and consumer protection claims fail.

### C.     The Florida plaintiffs' consumer-fraud claims are also untimely.

Discovery may reveal whether other Plaintiffs' fraud and consumer-fraud claims are time-barred, but the **Vasquezes (FL)** and **Siegel's (FL)** violation of Florida's Unfair & Deceptive Trade Practices Act ("FL DUTPA") claims are time-barred without the need for discovery. The limitations period for a FL DUTPA claim is four-years, Fla. Stat. § 95.11(3)(f). The discovery rule does not apply to FL DUTPA claims. *See, e.g.*, *Speier-Roche v. Volkswagen Grp. of Am. Inc.*, 2014 WL 1745050, at *6 (S.D. Fla. Apr. 30, 2014). **Siegel (FL)** purchased his used vehicle in 2014 so the statute of limitation on his FL DUTPA claim expired in 2018. CAC ¶ 102. The **Vasquezes**

---

[24] *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 999, 909–10 (N.D. Cal. 2018) (post-purchase complaints could not establish defendant's pre-purchase knowledge of defect); *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F. App'x. 94, 104 (3d Cir. 2013) (same).

**(FL)** purchased their vehicle in 2011 so the statute of limitation on their FL DUTPA claim expired in 2015. *Id.* at 111.

> **D.** **Fraudulent Concealment is not an independent cause of action under Illinois, Texas, and Washington Law.**

Under Illinois, Texas, and Washington law, fraudulent concealment is not an independent cause of action, but only a tolling provision.[25] The fraudulent concealment claims of **Rivera (IL), Rose (TX)**, **Rasco (TX)** and **Turner (WA)** should be dismissed for this additional reason.

> **E.** **The economic loss doctrine bars several fraud-based claims and the California plaintiffs' failure to recall claim.**

Plaintiffs predicate their common-law fraud claims on benefit-of-the-bargain and contract-like damages, including out-of-pocket loss and diminution in value. Absent additional injuries, the economic loss doctrine bars the common-law fraud claims of **Medeiros (CA)**, **Bennett-Hauser (CA)**, **Alcaraz (CA)**, **Eun (CA)**, **Kent (CA)**, **Kwan (CA)**, **Owens (CO)**, **Siegel (FL)**, **Vasquez (FL)**, and **Winia (FL)**.[26]

The California Plaintiffs allege a "Failure to Recall/Retrofit" claim. CAC ¶¶ 465-473. Not only is this cause of action not widely accepted, and limited to very specific situations not

---

[25] *Seismic Wells, LLC v. Matthews*, 2015 WL 11027778, at *4 (N.D. Tex. Sept. 11, 2015); *Cangemi v. Advocate South Suburban Hosp.*, 845 N.E.2d 792, 805 (Ill. App. 2006) ("Fraudulent concealment . . . is not a cause of action in and of itself; rather, it acts as an exception to the time limitations imposed on other, underlying causes of action."); *J.C. v. Society of Jesus*, 457 F.Supp.2d 1201, 1203 (W.D. Wash. 2006) (granting motion to dismiss where plaintiff "improperly designated fraudulent concealment as an independent cause of action.").

[26] *See Mosqueda v. American Honda Motor Co., Inc*., 2020 WL 1698710, at *12-13 (C.D. Cal. Mar. 6, 2020); *Clark v. Green Tree Servicing LLC*, 69 F. Supp. 3d 1203, 1223 (D. Colo. 2014); *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1224–25 (S.D. Fla. 2017); *Hammond v. BMW of N. Am., LLC*, No. CV 18-226 DSF (MRWx), 2019 WL 2912232, at *2 (C.D. Cal. June 26, 2019) (citing *Jimenez v. Superior Court*, 29 Cal. 4th 473, 481-84 (2002)).

applicable here,[27] it is precluded by the economic loss rule.[28]

## V. PLAINTIFFS FAIL TO PLEAD UNJUST ENRICHMENT

As an initial matter, Plaintiffs' unjust enrichment claims merely recite each of Plaintiffs' failed fraud claims. CAC ¶¶ 324, 536, 598, 662, 717, 783, 846. As discussed above, Plaintiffs did not suffer any injury as a result of the conduct about which they complain, so pleading those same claims under the guise of "unjust enrichment" also fails. That is not the only reason Plaintiffs' unjust enrichment claims should be dismissed.

First, under the laws of Colorado, Florida, Illinois, and Washington, unjust enrichment is an equitable cause of action that is unavailable when the underlying wrongs are properly addressed by a legal remedy.[29] The alleged brake defect forms the basis for Plaintiffs' unjust enrichment claims, which is wholly duplicative of Plaintiffs' warranty and fraud claims. CAC ¶¶ 324, 536, 598, 662, 717, 783, 846. Their proper remedy, if any, arises from their warranty or fraud claims, and their unjust enrichment claim should be dismissed.

Second, unjust enrichment is not an independent cause of action in Texas or New Jersey, so the unjust enrichment claims of **Rose (TX)**, **Rasco (TX)**, **Pabon (NJ)**, and **Feinberg (NJ)** must be dismissed as a matter of law.[30]

---

[27] *Roberts v. Electrolux Home Prods., Inc.*, No. CV-12-1644, 2013 WL 7753579, at *11 (CD. Cal. Mar. 4, 2013).

[28] *Sharma*, 2014 WL 2795512, at *6; *Majdipour v. Jaguar Land Rover N. Am., LLC*, No. 12-07849, 2015 WL 1270958, at *17 (D.N.J. Mar. 18, 2015) (applying California law to claim of "Failure to Recall/Retrofit" plaintiffs' Range Rover vehicles; claims dismissed for failure to plead injury other than alleged economic losses under California law).

[29] *Prima Tek II, L.L.C. v. Klerk's Plastic Indus.*, 525 F.3d 533, 541 (7th Cir. 2008) ("Illinois law is again clear: damages for unjust enrichment are not awardable where, as here, there is contract between the parties on the subject indispute"); *see also Harris Grp. v. Robinson*, 209 P.3d 1188, 1205-06 (Colo. App. 2009); *David v. Am. Suzuki Motor Corp.*, 629 F.Supp.2d 1309, 1324 (S.D. Fla. 2009); *Zwicker v. Gen. Motors Corp.*, 2007 WL 5309204, at *5 (W.D. Wash. July 26, 2007).

[30] *Llort v. BMW of North Am., LLC*, 2020 WL 2928472, at *10 (W.D. Tex. June 2, 2020); *McGuire*

29

Finally**, Felts (NC)** has not conferred a benefit on Toyota. **Felts (NC)** is a third-hand purchaser of her vehicle and Toyota received no monetary benefit from her purchase. *Barchiesi v. Charlotte School of Law, LLC*, 2017 WL 3573823, at *5 (W.D.N.C. Aug. 17, 2017). And any out-of-pocket repair cost incurred by **Felts (NC)** following the expiration of the warranty likewise confers no benefit on Toyota. Additionally, based on the allegations in CAC, it is clear that other Plaintiffs could not have conferred any benefit on Toyota. For example, **Siegel (FL)** purchased his vehicle used from a "Mercedes-Benz dealership," *Id*. at ¶ 102, and **Winia (FL)** purchased her vehicle used from "Eau Gallie Auto Sales." *Id*. at ¶ 124.

## <u>CONCLUSION</u>

For the reasons discussed above, the Toyota Defendants respectfully request that Plaintiffs' CAC should be dismissed in its entirety.

Dated: July 20, 2020

<div style="margin-left: 40%;">

Respectfully submitted,

By:  */s/ Clyde M. Siebman*
      Clyde M. Siebman

SIEBMAN FORREST BURG &SMITH, LLP
Clyde M. Siebman (Tex. SBN 18341600)
clydesiebman@siebman.com
Federal Courthouse Square
300 N. Travis
Sherman, TX 75090
Telephone: (903) 870-0070

SHOOK, HARDY & BACON LLP
Michael L. Mallow ( *pro hac vice*)
mmallow@shb.com
Rachel A. Straus (*pro hac vice*)
rstraus@shb.com

</div>

*v. BMW of N. Am., LLC*, 2014 WL 2566132, at *3 (D.N.J. June 6, 2014).

2049 Century Park East, Suite 3000
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

BOWMAN AND BROOKE LLP
Cary A. Slobin (Tex. SBN
00797445)
cary.slobin@bowmanandbrooke.co
m
5830 Granite Parkway Suite 1000
Plano, TX 75024
Telephone: (972) 616.1766
Facsimile: (972) 616.1701

*Attorneys for the Toyota
Defendants*
.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Civil Rule CV-5 on July 20, 2020. A copy of this filing will be served via electronic mail to counsel for all parties to the case.

/s/ Clyde M. Siebman