# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| IN RE: TOYOTA HYBRID BRAKE | § | |
| LITIGATION | § | |
| | § | Consolidated Case No.  4:20-CV-127 |
| | § | Judge Mazzant |
| | § | |

## <u>MEMORANDUM OPINION & ORDER</u>

Pending before the Court is Proposed Intervenor's Motion to Intervene for the Limited Purpose of Moving (1) to Dismiss, Stay, or Transfer and (2) for Reconsideration of Order Appointing Counsel (Dkt. #20).  Having considered the relevant pleadings, the Court finds that the Motion should be denied.

## BACKGROUND

This litigation began on January 22, 2020, in the United States District Court for the Central District of California.  Jason Medeiros ("Medeiros") and Nancy Bennett-Hauser ("Bennett-Hauser") filed a class-action complaint against Defendants Toyota Motor Corporation ("TMC") and Toyota Motor Sales, U.S.A., Inc. ("TMS").  Compl., *Medeiros v. Toyota Motor Corp.*, No. 2:20-cv-683-RGK-MAA (C.D. Cal. Jan. 22, 2020), ECF No. 1.  In their complaint, Medeiros and Bennett-Hauser alleged eight causes of action against the Defendants, all of which centered around allegations of "breach of the manufacturer's warranty and for unfair or deceptive acts or practices pertaining to [the] design and manufacture" of the "Class Vehicles"—the "2010-2015 Prius and Prius PHV, 2012-2015 Prius V, 2012-2014 Camry Hybrid, and 2013-2015 Avalon Hybrid."  *Id.* at 1, ¶ 1.  Specifically, plaintiffs alleged that Defendants "designed and/or manufactured defective break booster pump assemblies in the Class Vehicles, which cause[d] the Class Vehicles' braking systems to fail."  *Id.*, ¶ 3.  The alleged causes of action were as follows: (1) violations of the

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*; (2) violations of the Consumers Legal Remedies Act, CAL. CIV. CODE § 1750 *et seq.*; (3) violations of the California Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200; (4) violation of California false advertising law, CAL. BUS. & PROF. CODE § 17500 *et seq.*; (5) breach of express warranty based on California law; (6) breach of implied warranty based on California law; (7) common law fraudulent concealment based on California law; and (8) breach of implied warranty under the Song-Beverly Act, CAL. CIV. CODE §§ 1791.1, 1792 *et seq.  See* Compl. 118–28, ¶¶ 90–155, *Medeiros v. Toyota Motor Corp.*, No. 2:20-cv-683-RGK-MAA (C.D. Cal. Jan. 22, 2020), ECF No. 1.

One month later, Laura Turner ("Turner") and Glenn Alcaraz ("Alcaraz") filed a similar class action against TMC and TMS in the United States District Court for the Central District of California.  Compl., *Turner v. Toyota Motor Corp.*, No. 5:20-cv-320-PA-SHK (C.D. Cal. Feb. 18, 2020), ECF No. 1.  In their complaint, Turner and Alcaraz alleged ten causes of action against the Defendants, all of which pertained to allegations of "breach of warranty and for unfair and deceptive acts or practices arising from [Defendants'] design, manufacture, and sale" of the "Defective Class Vehicles"—the "2010-2015 Prius and Prius PHV, 2012-2015 Prius V, 2012-2015 Avalon Camry Hybrid, and 2013-2015 Avalon Hybrid vehicles."  *Id.* at 1, ¶ 1.  In particular, Turner and Alcaraz allege that the Defective Class Vehicles were "plagued by and possess[ed] a dangerous design and/or manufacturing defect in their braking systems . . . , which defect is more specifically associated with the brake booster pump assemblies with master cylinder in the Defective Class Vehicles and cause[d] said vehicles' braking systems to fail."  *Id.*, ¶ 2.  The Turner/Alcaraz complaint, in addition to the same causes of action pleaded in the Medeiros/Bennett-Hauser complaint, alleged two additional causes of action: (1) unjust enrichment based on California law; and (2) violations of the Washington Consumer Protection

2

Act, WASH. REV. CODE § 19.86.020.  *See* Compl. 33–34, ¶¶ 142–46; 35–36, ¶¶ 154–60, *Turner v.*
*Toyota Motor Corp.*, No. 5:20-cv-320-PA-SHK (C.D. Cal. Feb. 18, 2020), ECF No. 1.

Three days later, Mariano Alaniz ("Alaniz"), the movant and would-be intervenor in the
action now before the Court, filed a class-action lawsuit against TMC and TMS in the United
States District Court for the Northern District of California.  Compl., *Alaniz v. Toyota Motor Corp.*,
No. 4:20-cv-01351-JST (N.D. Cal. Feb. 21, 2020), ECF No. 1.  In his complaint, Alaniz alleges
eight causes of action against the Defendants, all centered on allegations of "a design defect in the
braking system" of the "Class Vehicles"—the "2010-2015 Prius and Prius PHV, 2012-2015 Prius
V, 2012-2014 Camry Hybrid, and 2013-2015 Avalon Hybrid." *Id.* at 2, ¶ 1.  Specifically, Alaniz
alleges that the Class Vehicles "contain defective brake booster pump assemblies," defects which
will allegedly "impede[] the Class Vehicles' ability to stop, posing a severe and material safety
hazard," and "cause owners of Class Vehicles to incur costly repairs while also reducing the resale
and intrinsic value of the Class Vehicles." *Id.*, ¶ 2.  The majority of the claims for relief Alaniz
pleads are also found in either the Medeiros/Bennett-Hauser complaint or the Turner/Alcaraz
complaint.  Alaniz's complaint differs in two respects: (1) the cause of action for fraud based on
California law is expanded to fraud generally as opposed to fraudulent concealment; and (2) his
pleadings include a cause of action for negligent misrepresentation. *See id.* at 40–43, ¶¶ 66–83.

On February 24, 2020, Chong Eun, Stephanie Owens, Enrique Pabon, Bryan Feinberg,
David Siegal, Gregory Vasquez, Madeline Vasquez, and Lois Felts ("Original Eastern District
Plaintiffs") filed a class action suit against TMC and TMS in the United States District Court for
the Eastern District of Texas (Dkt. #1).  In their complaint, Original Eastern District Plaintiffs
alleged thirty different causes of action against the Defendants, focusing on the alleged "breach of
the manufacturer's warranty and for unfair or deceptive acts or practices pertaining to

[Defendants'] design and manufacture" of the "Class Vehicles," which included the "2010-2015 Prius and Prius PHV, 2012-2015 Prius V, 2012-2014 Camry Hybrid, and 2013-2015 Avalon Hybrid" (Dkt. #1 at p. 1).  In particular, Original Eastern District Plaintiffs allege that the Class Vehicles "contain a significant design and/or manufacturing defect in their braking systems," "which cause their braking systems to fail" and "directly affects [Original Eastern District] Plaintiffs' use, enjoyment, safety, and value of the Class Vehicles" (Dkt. #1 at p. 2).  In addition to alleging the same causes of action as those in the Medeiros/Bennett-Hauser complaint, the Turner/Alcaraz complaint, and the Alaniz complaint, the Original Eastern District Plaintiffs' complaint also alleges similar causes of action under the state laws of Colorado, Florida, New Jersey, and North Carolina (*see* Dkt. #1 at pp. 124–65).[1]

Then on March 11, 2020, Willie Rose ("Rose") and Jeffrey Warner Rasco ("Rasco") filed their own class-action complaint against TMC and TMS in the United States District Court for the Eastern District of Texas.  Compl., *Rose v. Toyota Motor Corp.*, No. 4:20-cv-00199-ALM (E.D. Tex. Mar. 11, 2020), ECF No. 1.  In the complaint, Rose and Rasco alleged ten causes of action against the Defendants, all based on allegations of "breach of warranty and for unfair and deceptive acts or practices arising from Toyota's design, manufacture, and sale" of the "Defective Class Vehicles"—the "2010-2015 Prius and Prius PHV, 2012-2015 Prius V, 2012-2015 Avalon Camry Hybrid, and 2013-2015 Avalon Hybrid."  *Id.* at 2.  Rose and Rasco specifically alleged that the Defective Class Vehicles were "plagued by and possess[ed] a dangerous design and/or

---

[1] Unlike the Alaniz complaint, the Original Eastern District Plaintiffs' complaint alleges fraudulent concealment based on California law as opposed to fraud generally.  *Compare* (Dkt. #1 at p. 135), *with* Compl. 40–41, ¶¶ 66–73, *Alaniz v. Toyota Motor Corp.*, No. 4:20-cv-01351-JST (N.D. Cal. Feb. 21, 2020), ECF No. 1.  Additionally, while the Original Eastern District Plaintiffs' complaint does not allege unjust enrichment based on California law as the Alaniz complaint does, the Original Eastern District Plaintiffs' complaint did include causes of action for unjust enrichment based on the laws of Colorado, Florida, New Jersey, and North Carolina.  *Compare* (Dkt. #1 at pp. 144, 151–52, 158, 162–63), *with* Compl. 48–49, ¶¶ 122–28, *Alaniz v. Toyota Motor Corp.*, No. 4:20-cv-01351-JST (N.D. Cal. Feb. 21, 2020), ECF No. 1.

manufacturing defect in their braking systems," "directly, materially, and adversely affect[ing] [Rose's, Rasco's] and Class Members' use and enjoyment of the Defective Class Vehicles, their safety, and their value." *Id.* The majority of the claims for relief Rose and Rasco pleaded are also found in the complaints detailed by the Court above. The Rose/Rasco complaint included two causes of action not previously alleged against Defendants: (1) breach of implied warranty under Texas law, TEX. BUS. & COM. CODE § 2.314; and (2) breach of express warranties, TEX. BUS. & COM. CODE § 2.313.

Next, on March 20, 2020, the two then-pending cases in the Central District of California— the Medeiros/Bennett-Hauser action and the Turner/Alcaraz action—were voluntary dismissed without prejudice in accordance with Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure. *See* Notice of Voluntary Dismissal, *Medeiros v. Toyota Motor Corp.*, No. 2:20-cv-683-RGK-MAA (C.D. Cal. Mar. 20, 2020), ECF No. 14; Notice of Voluntary Dismissal, *Turner v. Toyota Motor Corp.*, No. 5:20-cv-320-PA-SHK (C.D. Cal. Mar. 20, 2020), ECF No. 22. Importantly, the litigants in these now-dismissed cases reappeared later—in the action currently before the Court (*see* Dkt. #28).

Three days after the voluntary dismissals, Yvette Winia ("Winia"), Raul Rivera ("R. Rivera"), Cristina Rivera ("C. Rivera"), and Kamran Khan ("Khan") filed a class action against TMC and TMS in the United States District Court for the Eastern District of Texas. Compl., *Winia v. Toyota Motor Corp.*, No. 4:20-cv-00240-ALM (E.D. Tex. Mar. 23, 2020), ECF No. 1. This complaint alleged six causes of action against the Defendants, focusing on allegations that the "Class Vehicles"—the "2010-2015 Prius or Prius PHV, 2012-2015 Prius V, 2012-2014 Camry Hybrid, or 2013-2015 Avalon Hybrid"—"contain[ed] a significant defect in their braking systems and pose[d] an immediate and significant safety hazard to vehicle operators and the public." *Id.*

at 2.  In particular, these plaintiffs alleged that the defect in the braking systems of the Class Vehicles was "dangerous and life threatening and adversely affect[ed] [the plaintiffs'] use, enjoyment, safety, and value of the Class Vehicles."  *Id.*  A number of the claims for relief Winia, R. Rivera, C. Rivera, and Khan plead are also found in the complaints previously detailed by the Court.[2]  The complaint included three causes of action not previously alleged against Defendants: (1) violations of the Florida Unfair and Deceptive Trade Practices Act, FLA. STAT. §§ 501.201 *et seq.*; (2) violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILL. COMP. STAT. 505/1 *et seq.*; and (3) violation of the Arkansas Deceptive Trade Practices Act, ARK. CODE ANN. §§ 4–88–101 *et seq.*

On April 3, 2020, plaintiffs in the three related cases filed a joint Unopposed Motion to Consolidate Cases Pursuant to Federal Rules of Civil Procedure, Rule 42(a) and Set Deadline for Filing Consolidated Complaint (Dkt. #10) in the Eastern District of Texas.  On that same day, Bonnie Hendricks ("Hendricks") filed a class-action lawsuit against TMC and TMS in the United States District Court for the Southern District of Ohio that is similar to those previously filed in other courts.  Compl., *Hendricks v. Toyota Motor Corp.*, No. 1:20-cv-00263-ATSB (S.D. Ohio Apr. 3, 2020), ECF No. 1.

Four days later, the Court granted the motion to consolidate under Rule 42(a), renaming the consolidated action "*In re: Toyota Hybrid Brake Litigation*" and placing the consolidated action's master docket and master file under "Case No. 4:20-cv-00127-ALM" (Dkt. #11 at p. 3). On April 9, 2020, plaintiffs in the now-consolidated action ("Plaintiffs") filed an Unopposed

---

[2] Two counts alleged by these plaintiffs—breach of express warranty and breach of implied warranty—are based on the laws of states from which the putative classes originate, those being Arkansas, Florida, and Illinois.  Compl. 25, 29–31, *Winia v. Toyota Motor Corp.*, No. 4:20-cv-00240-ALM (E.D. Tex. Mar. 23, 2020), ECF No. 1.

Motion for Appointment of Interim Class Counsel Pursuant to Federal Rules of Civil Procedure, Rule 23(g) (Dkt. #12).

Before the Court ruled on the motion to appoint interim class counsel, attorneys for TMC and TMS, as well as would-be intervenor Alaniz, filed notices of appearance on April 9 and 10, 2020 (Dkts. #13–16).  Notably, Alaniz filed a Notice of Forthcoming Motion to Intervene for Purposes of Moving to Stay, Dismiss, or Transfer Action Pursuant to First-Filed Rule (Dkt. #17) on the same day that Alaniz's attorney filed his appearance.  On April 13, 2020, the Court granted the motion to appoint interim class counsel (Dkt. #19).

Also on April 13, 2020, Alaniz filed his Motion to Intervene for the Limited Purpose of Moving (1) to Dismiss, Stay or Transfer and (2) for Reconsideration of Order Appointing Counsel, now pending before the Court (Dkt. #20).  In the motion, Alaniz requests three forms of relief, specifically that the Court:

> (1) permit mandatory, or in the alternative, permissive intervention into the this [sic] action for the limited purpose of allowing Proposed Intervenor to move to dismiss, transfer, or stay pursuant to the first-filed rule, and to allow Proposed Intervenor to seek reconsideration of the Order appointing counsel; (2) transfer this action to the Northern District of California; and (3) reconsider its order appointing counsel.

(Dkt. #20 at p. 14).

Two days later, in the Northern District of California, Defendants filed a Motion to Transfer or Stay Proceedings, in which they petition the district court in the Northern District of California to transfer the action to the Eastern District of Texas or, in the alternative, to stay the action before it until the consolidated action in the Eastern District "is fully adjudicated."  Def.'s Mot. to Transfer or Stay Proceedings 20, *Alaniz v. Toyota Motor Corp.*, No. 4:20-cv-01351-JST (N.D. Cal. Apr. 15, 2020), ECF No. 16.  Alaniz subsequently filed his response in opposition to TMC's motion to transfer on April 29, 2020.  Pl.'s Opp'n to Def.'s Mot. to Transfer or Stay

Proceedings, *Alaniz v. Toyota Motor Corp.*, No. 4:20-cv-01351-JST (N.D. Cal. Apr. 29, 2020), ECF No. 18.

As motions careened back and forth in the Northern District of California, the dispute over Alaniz's motion to intervene continued before the Court.  On April 27, 2020, Defendants filed their Response in Opposition to Alaniz's Motion to Intervene for the Limited Purpose of Moving (1) to Dismiss, Stay or Transfer and (2) for Reconsideration of Order Appointing Counsel (Dkt. #22).  On the same day, Plaintiffs filed their own Response in Opposition to Alaniz's Motion to Intervene for the Limited Purpose of Moving (1) to Dismiss, Stay or Transfer and (2) for Reconsideration of Order Appointing Counsel (Dkt. #23).  Alaniz filed his Reply to the Responses on May 4, 2020 (Dkt. #25).  Three days later, on May 7, 2020, Plaintiffs filed their Master Consolidated Class Action Complaint ("Master Amended Complaint"), which comprehensively identified the putative class representatives and the corresponding causes of action across the proposed classes (Dkt. #28).  Among the plaintiffs listed in the Master Amended Complaint were Plaintiffs, as well as Medeiros, Bennett-Hauser, Turner, and Alcaraz—the plaintiffs from the voluntarily dismissed actions originating in the Central District of California[3] (Dkt. # 28 at pp. 7–10, 22–23).  On May 11, 2020, Plaintiffs filed a Sur-Reply in Opposition to Alaniz's Motion to Intervene for the Limited Purpose of Moving (1) to Dismiss, Stay or Transfer and (2) for Reconsideration of Order Appointing Counsel (Dkt. #34).

The parallel actions have all come to temporary resting points.  The Northern District of California issued an order on May 14, 2020, that stays proceedings in the case until the Court decides "whether Alaniz will be allowed to intervene in the consolidated cases there and, if so,

---

[3] The Master Amended Complaint also includes Nancy Kwan ("Kwan") (Dkt. #28 at pp. 12–13).  She originally filed her class-action complaint on May 4, 2020, and was subsequently brought into the consolidated action on May 7. Compl., *Kwan v. Toyota Motor Corp.*, No. 4:20-cv-00367-ALM (E.D. Tex. May 4, 2020), ECF No. 1; Order, *Kwan v. Toyota Motor Corp.*, No. 4:20-cv-00367-ALM (E.D. Tex. May 7, 2020), ECF No. 8.

whether those cases should be transferred" to the Northern District of California.  Order, *Alaniz v. Toyota Motor Corp.*, No. 4:20-cv-01351-JST (N.D. Cal. May 14, 2020), ECF No. 27.  The Southern District of Ohio has issued a number of notation orders for limited stays of the proceedings to allow for the Court to rule on Alaniz's motion to intervene.  The Court proceeds to do its part in untangling this complex litigation.

## THRESHOLD ISSUE – FIRST-TO-FILE RULE[4]

The "first-to-file" rule stands for the "principle of comity requir[ing] federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs."  *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*, 751 F.2d 721, 728 (5th Cir. 1985); *see Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) ("The 'first to file' rule is grounded in principles of comity and sound judicial administration.").  The rule's ultimate aim is to avoid three potential, undesirable outcomes: (1) "the waste of duplication," (2) "rulings which may trench upon the authority of sister courts," and (3) "piecemeal resolution of issues that call for a uniform result." *W. Gulf Mar. Ass'n*, 751 F.2d at 729.  "[W]hen related cases are pending before two federal courts," the first-to-file rule generally allows "the court in which the case was last filed [to] refuse to hear it if the issues raised by the cases substantially overlap."[5]  *Int'l Fid. Ins. Co. v. Sweet Little*

---

[4] Addressing Alaniz's "first-to-file" argument at the outset ensures that the Court may properly hear this case.  *See Gregory-Portland Indep. Sch. Dist. v. Tex. Educ. Agency*, 576 F.2d 81, 82 (5th Cir. 1978) ("Prior to any determination on the intervention issue, it is necessary for the court to satisfy that the case was properly heard below."); *see also, e.g.*, *Lopez v. Spartan Energy Servs., LLC*, No. CV SA-15-CA-1053-DAE, 2016 WL 11582848, at *3 (W.D. Tex. Mar. 4, 2016) (conducting the first-to-file analysis as a threshold issue), *report and recommendation adopted*, No. 5:15-CV-1053-DAE, 2016 WL 11582845 (W.D. Tex. Mar. 17, 2016).  Courts do not look at jurisdictional issues as "condition[s] precedent" when applying the first-to-file rule.  *See Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603–05 (5th Cir. 2011).

[5] From a purely temporal perspective, the first-to-file rule functions like a stopwatch, applying even when complaints are filed within minutes or seconds of each other.  *See Wynnewood Ref. Co., L.L.C. v. Occupational Safety & Health Review Comm'n*, 933 F.3d 499, 500 (5th Cir. 2019).

*Mexico Corp.*, 665 F.3d 671, 677–78 (5th Cir. 2011) (internal quotations marks omitted) (quoting *Cadle*, 174 F.3d at 603).

To determine if substantial overlap exists, courts in the Fifth Circuit examine "whether 'the core issue was the same' or if 'much of the proof adduced would likely be identical.'" *Id.* at 678 (footnote and ellipses omitted) (first quoting *W. Gulf Mar. Ass'n*, 751 F.2d at 730; and then quoting *Mann Mfg., Inc. v. Hortex Inc.*, 439 F.2d 403, 407 (5th Cir. 1971)). Though the cases need not be identical for the first-to-file rule to apply, *In re Amerijet Int'l, Inc.*, 785 F.3d 967, 976 (5th Cir. 2015), they "must be 'more than merely related.'" *Brocq v. Lane*, No. 3:16-CV-2832-D, 2017 WL 1281129, at *2 (N.D. Tex. Apr. 6, 2017) (quoting *Buckalew v. Celanese*, *Ltd.*, No. CIV.A. G-05-315, 2005 WL 2266619, at *2 (S.D. Tex. Sept. 16, 2005)). If overlap between the cases is less than complete, courts have looked to additional factors, such as "the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." *Save Power Ltd.*, 121 F.3d at 951 (internal quotation marks omitted) (quoting *TPM Holdings, Inc. v. Intra–Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996)). If substantial overlap exists, "the proper course of action is for the court to transfer the case to the first-filed court to determine which case should, in the interests of sound judicial administration and judicial economy, proceed." *Wells Fargo Bank, N.A. v. W. Coast Life Ins.*, 631 F. Supp. 2d 844, 847 (N.D. Tex. 2009) (citing *Cadle*, 174 F.3d at 606); *see Texas Health Mgmt. LLC v. HealthSpring Life & Health Ins. Co., Inc.*, 380 F. Supp. 3d 580, 588 n.6 (E.D. Tex. 2019) (affirming that district courts should not act as "super appellate court[s]" when applying the first-to-file rule).

Even though Alaniz asserts that his case is now the first-filed (Dkt. # 20 at pp. 3–4, 11), the Court disagrees. From Alaniz's perspective, when the two cases filed in the Central District of California—both of which were filed prior to Alaniz's complaint in the Northern District of

California—were dismissed, his claim became the "first-filed active case" (Dkt. #20 at p. 2 n.1). But both of these cases were dismissed voluntarily without prejudice under Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure on the same day.  *See* Notice of Voluntary Dismissal, *Medeiros v. Toyota Motor Corp.*, No. 2:20-cv-683-RGK-MAA (C.D. Cal. Mar. 20, 2020), ECF No. 14; Notice of Voluntary Dismissal, *Turner v. Toyota Motor Corp.*, No. 5:20-cv-320-PA-SHK (C.D. Cal. Mar. 20, 2020), ECF No. 22.  Shortly thereafter, plaintiffs in these two cases appeared as plaintiffs in the Master Amended Complaint (Dkt. #28 at pp. 7–9, 13–15).  Stating a desire to maintain and "pursue their claims in the Eastern District of Texas" (Dkt. #22 at p. 6), these plaintiffs carried their first-to-file status into the consolidated action.  *See Yesh Music v. Lakewood Church*, 727 F.3d 356, 360 (5th Cir. 2013) (holding that "a Rule 41(a)(1)(A) voluntary dismissal" does not "terminate[], close[], [or] end[]" a cause of action as long as a plaintiff "acts to re-file [the] claim in the future").  Alaniz's reliance on the *Greer* case works against his argument.  While he rightly asserts that the district court there did grant a motion to transfer the third filed action to the second filed court after the first filed action was voluntarily dismissed" (Dkt. #25 at p. 5), the *Greer* Court did so because the first filed case had been voluntarily dismissed without seeking to re-file the claim in the future.  *See Greer v. Carolina Cas. Ins. Co.*, No. 117CV00125GHDDAS, 2017 WL 4477732, at *3 (N.D. Miss. Oct. 6, 2017).   The Court cannot agree with Alaniz's argument that he is now the first to file.

But even if the plaintiffs from the Central District of California cases did lose their first-to-file status, the outcome of the Court's analysis remains the same.  Alaniz originally filed his complaint on February 21, 2020, (Dkt. #20, Exhibit A), and the consolidated case in the Eastern District of Texas was filed on February 24, 2020, (Dkt. #1).[6]  Both cases name TMC and TMS as

---

[6] The earliest filed action in the consolidated case was *Eun*—the complaint having been filed on February 24, 2020. To ensure due consideration of the first-to-file rule and corollary substantive rights of the parties, the Court uses the

defendants.  Both cases also "make the same exact allegation: that the class vehicles contain defective brake booster pump assemblies" (Dkt. #20 at p. 11).  And the causes of action alleged in Alaniz's complaint squares almost entirely with the federal and California causes of action in the Master Amended Complaint.  *Compare* (Dkt. #20, Exhibit A at pp. 43–56), *with* (Dkt. #28 at pp. 134–36, 153–69).  At first glance, this situation seems apt for straightforward application of the first-to-file rule.

But Alaniz's assertion that a finding of substantial overlap is "the end of this Court's inquiry" is patently wrong (*see* Dkt. #20 at p. 11; *see also* Dkt. #25 at p. 8).  Mechanical application of the first-to-file rule is not required on every occasion and may very well be inappropriate in specific instances.  *See, e.g.*, *Hunt-Collin Elec. Co-op, Inc. v. Rayburn Country Elec. Co-op, Inc.*, No. CIV. A. S-87-211-CA, 1988 WL 428654, at *2 (E.D. Tex. Feb. 5, 1988) ("Blindly applying the first-to-file rule only on the basis of the actual filing dates . . . would not further the goals of the rule." (cleaned up)).  Only "[i]n the absence of *compelling circumstances*" should it be employed.  *Mann Mfg., Inc.*, 439 F.2d at 407 (emphasis added).  While the Fifth Circuit has provided limited "guidance or examples as to what sort of circumstances it would consider 'compelling,'" *Twin City Ins. Co. v. Key Energy Servs., Inc.*, No. CIV A H-09-0352, 2009 WL 1544255, at *4 (S.D. Tex. June 2, 2009), rigidly applying the first-to-file rule when compelling circumstances present themselves leads to the abandonment of the "comity principles that underlie the . . . rule" itself.  *See W. Gulf Mar. Ass'n*, 751 F.2d at 730; *see also, e.g.*, *Schauss v. Metals Depository Corp.*, 757 F.2d 649, 654 n.8 (5th Cir. 1985).

---

filing date in the *Eun* action as the filing date for the consolidated action as a whole.  *See Hall v. Hall*, 138 S. Ct. 1118, 1125 (2018) ("[W]e underst[an]d consolidation not as completely merging the constituent cases into one, but instead as enabling more efficient case management while preserving the distinct identities of the cases and the rights of the separate parties in them."); *see also Harcon Barge Co. v. D & G Boat Rentals, Inc.*, 746 F.2d 278, 287 (5th Cir. 1984) ("The parties may not by consolidation, of course, be deprived of some substantive right available to them in an individual suit now consolidated.").

Fifth Circuit courts have specifically identified two situations in which compelling circumstances prevent the application of the first-to-file rule.  *See, e.g.*, *Dewan v. M-I, L.L.C.*, No. CIV.A. H-12-3638, 2014 WL 2981362, at *4 (S.D. Tex. June 27, 2014).  First, under the "bad faith" exception, the first-to-file rule should be disregarded when "a party engage[s] in bad faith conduct, by inducing an opposing party to delay filing of a lawsuit, so that he c[an] file a preemptive lawsuit."  *Chapa v. Mitchell*, No. A-05-CV-769-JN, 2005 WL 2978396, at *2 (W.D. Tex. Nov. 4, 2005) (citing *Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661, 663 (5th Cir. 1967)).  Second, under the "anticipatory-filing" exception, the first-to-file rule should be set aside when "a party files a declaratory judgment action in anticipation of a suit by its adversary, which can create an opportunity for forum-shopping."[7]  *True View Surgery Ctr. One, L.P. v. Goodman Glob. Holdings, Inc.*, No. CV H-15-3287, 2016 WL 755494, at *6 (S.D. Tex. Feb. 24, 2016).  Yet even when the situation in a given case falls outside one of these recognized circumstances, the ultimate decision "to apply the first-to-file rule is discretionary, and involves determinations concerning 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'"  *Tex. Instruments Inc. v. Micron Semiconductor, Inc.*, 815 F. Supp. 994, 997 (E.D. Tex. 1993) (brackets omitted) (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952)); *see Buffalo Wild Wings, Inc. v. BWR McAllen*, Inc., No. CIV.A. H-10-1265, 2010 WL 2640122, at *2 (S.D. Tex. June 30, 2010) ("While the first-to-file rule 'should not be regarded lightly,' it is not a 'rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration.'" (quoting *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982))).

---

[7] "But, merely filing a declaratory action 'is not in itself improper anticipatory litigation or otherwise abusive forum shopping.'"  *Novak Druce Connolly Bove & Quigg, LLP v. Arochi*, CV H-18-3490, 2019 WL 4222700, at *2 (S.D. Tex. Sept. 5, 2019) (quoting *Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 391 (5th Cir. 2003)).

Adding an additional wrinkle to the application of the first-to-file rule here is that the instant action was brought under Rule 23.   Class actions can be highly effective tools in "further[ing] procedural fairness and efficiency," *see Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 402 (2010), but the first-to-file rule does not comport neatly with the class-action device.   "Multiple timely fil[ed class actions] might not line up neatly . . . [and] could be filed in different districts, at different times," *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1811 (2018), potentially leading to "procedural and substantive unfairness to the defendant" and inducing a complex-litigation headache for federal courts.   *See Bartolucci v. 1-800 Contacts, Inc.*, 245 F. Supp. 3d 38, 51 (D.D.C. 2017).   And even though "multiple filings may aid a district court" in making critical determinations "early on" in the litigation process, *China Agritech*, 138 S. Ct. at 1811, "[g]iven the breadth of the courts' discretion, . . . the first-[to-file] rule is not firm and does not solve the dueling class action problem."   Rhonda Wasserman, *Dueling Class Actions*, 80 B.U. L. Rᴇᴠ. 461, 520 (2000).

Keeping these principles in mind, the Court now takes up and holistically analyzes the first-to-file rule in the context of this litigation.[8]

Neither Plaintiffs nor Defendants argue that the bad faith or anticipatory-filing exceptions apply here.   The closest any party to the consolidated action comes to invoking one of these recognized circumstances is that Alaniz is simply bringing a "copycat" of the Medeiros/Bennett-

---

[8] Some district courts in Texas apply the § 1404 analysis by analogy to weigh the "balance of convenience" for purposes of the first-to-file analysis.  *E.g.*, *Gonzalez v. Unitedhealth Group, Inc.*, No. 6:19-CV-00700-ADA, 2020 WL 2992174, at *4 (W.D. Tex. June 3, 2020); *In re Enron Corp. Secs., Derivative & "ERISA'' Litig.*, MDL No. 1446, 2008 WL 4166172, at *15 (S.D. Tex. Aug. 29, 2008).  Others do not.  *E.g.*, *TravelPass Group LLC v. Caesars Entm't Corp.*, No. 5:18-CV-00153-RWS, 2019 WL 4071784, at *6 (E.D. Tex. Aug. 29, 2019); *Adam Corp./Group v. Fed. Deposit Ins. Corp.*, No. 3:07-CV-1993-L (BH), 2008 WL 11425403, at *5 & n.3 (N.D. Tex. Mar. 24, 2008), *report and recommendation adopted sub nom. The Adam Corp./Group v. FDIC*, No. 3:07-CV-1993-L, 2008 WL 11425404 (N.D. Tex. Apr. 21, 2008).  Because the Court's analysis and corresponding conclusions account for the "rationale underlying" the discrete § 1404 and first-to-file analyses—"namely the practical problems and judicial inefficiency caused by parallel litigation"—the Court does not conduct a § 1404-like analysis here.  *See ExpressJet Airlines, Inc. v. RBC Capital Markets Corp.*, No. CIV A H-09-992, 2009 WL 2244468, at *10 n.4 (S.D. Tex. July 27, 2009).

Hauser complaint and is riding the "coattails" of the Medeiros/Bennett-Hauser and Turner/Alcaraz suits (Dkt. #22 at p. 7).  Instead, Plaintiffs and Defendants primarily argue that the considerations of judicial economy undergirding the first-to-file rule allow the Court to set the rule aside.  In particular, Plaintiffs offer that they, along with their counsels, "have met and conferred, consolidated their cases into a single complaint, and voluntarily formed an interim leadership structure to represent them through the class certification stage of the litigation" (Dkt. #23 at p. 7).  They have done so "voluntarily, cooperatively, and quickly," even adding another plaintiff through consolidation under Rule 42(a) (Dkt. #34 at p. 3).  *See* Order, *Kwan v. Toyota Motor Corp.*, No. 4:20-cv-00367-ALM (E.D. Tex. May 7, 2020), ECF No. 8.  Additionally, Plaintiffs, as well as Defendants, have expressed their specific desire to litigate this consolidated action in the Eastern District of Texas (Dkt. #22 at p. 8; Dkt. #23 at p. 7; Dkt. #34 at p. 4).  Since Alaniz's motion ripened, Plaintiffs have filed the Master Amended Complaint, which "consolidates claims brought by residents of nine different states who have brought 50 individual and putative class claims"— including those brought under California law by California residents, just like Alaniz (Dkt. #34 at p. 3; *see* Dkt. #28).  Plaintiffs and Defendants have also exchanged various motions and pleadings critical to this action.  (*see* Dkts. #39–41, 45–47, 49–51, 53–55).  In sum, Plaintiffs argue that they "have saved months of time by voluntarily cooperating to organize this litigation," and "Proposed Intervenor's effort to use the first-filed rule" "invites the very delay the Plaintiffs have attempted to avoid" (Dkt. #34 at p. 4).

The Court is inclined to agree with the parties to the consolidated action.  Nowhere does Alaniz offer any argument as to the efficiency and equity of the Court dismissing, staying, or transferring the case.  His pleadings rely on some jurisdictional argumentation, but his primary contention is that his case was the first filed—and therefore the Court is "still required to enforce"

the first-to-file rule (Dkt. #25 at p. 8).  Even though the contours of the first-to-file rule are not crystal clear, the Court cannot recognize the version of the rule for which Alaniz advocates. Simply on its face, such an unwavering command would not come close to achieving the policies underlying the first-to-file rule.  *See W. Gulf*, 751 F.2d at 729 (stating that the manifest concerns of the first-to-file rule are "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result").  And applying the rule in the procrustean fashion Alaniz suggests would morph the first-to-file rule into something entirely unrecognizable.

Moreover, given the time and resources expended toward the consolidated action, giving effect to Alaniz's conception of the first-to-file rule "would actually undercut the values of economy, consistency, and comity that the rule is designed to maximize."  *See Cadle*, 174 F.3d at 604.  Plaintiffs have worked together over the last six months "to consolidate and organize this case in a court of competent jurisdiction and appropriate venue, and to streamline matters to avoid duplicative and needless litigation in order to proceed to the merits of the litigation" (Dkt. #34 at p. 1).  This is no small feat in an action of this size and magnitude.  Even further, the coordination to consolidate the respective actions and voluntarily agree to an interim class counsel structure has been efficient and effective.  The Court must ensure that "a class action is an appropriate way to resolve the controversy," "the representative parties will fairly and adequately protect the interests of the class," and "the pleading and trial of the case is conducted *fairly and efficiently*."  *Bernard v. Gulf Oil Co.*, 596 F.2d 1249, 1259 (5th Cir. 1979) (emphasis added).  One of the most certain ways to "minimize[e] the waste of resources inherent in duplicative suits," especially in the context of "dueling class actions filed on behalf of the same class," is to transfer the suits to a single court and consolidate them into a single proceeding.  Wasserman, *supra*, at 508.  This is exactly what

Plaintiffs have done here, and the Court declines to disincentivize party practices that further judicial economy.

Of final note, the Court remains uncertain of the first-to-file rule's applicability here because the comity between federal courts the rule seeks to catalyze is already present.  The "purpose of the comity principle is of paramount importance" for the federal judiciary, protecting federal courts from "unnecessary burden[s]" and "the embarrassment of conflicting judgments." *Church of Scientology of Cal. v. U.S. Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979), *overruled on other grounds by Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016).  But the perils that the first-to-file rule guard against will not arise if "judicial acts are mutually recognized" by "courts of different jurisdictions"—the black-letter definition of comity.  *See Comity*, BLACK'S LAW DICTIONARY (11th ed. 2019).  In this instance, the other courts with similar open cases have already stayed their proceedings until the Court rules on Alaniz's motion to intervene.  *See, e.g.*, Order, *Alaniz v. Toyota Motor Corp.*, No. 4:20-cv-01351-JST (N.D. Cal. May 14, 2020), ECF No. 27.  By taking these actions, the United States District Courts for the Northern District of California and Southern District of Ohio are functionally operating as later-filed courts, thereby regarding the Court as the effective first-filed court.  To undo the comity already present among these three district courts would hinder "[w]ise judicial administration." *See Kerotest*, 342 U.S. at 183.

Applying the first-to-file rule here, the Court finds that the instant case is the first-to-file, and even if not, the Court exercises its discretion in light of compelling circumstances and declines to apply the first-to-file rule.

The Court now addresses the rest of Alaniz's motion.

## LEGAL STANDARDS

### I.    Motion to Intervene

Because lawsuits are often not just "private fight[s]" and can impact nonparties significantly, courts may allow initially absent litigants to intervene in a dispute "on personal application." 7C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1901 (3d ed. 2007).  The doctrine of intervention generally allows "outsiders . . . interested in the outcome" of a lawsuit to "conduct discovery, participate fully at trial, and pursue an appeal in the event of an adverse judgment."  Caleb Nelson, *Intervention*, 106 VA. L. REV. 271, 274 (2020).  *But see Beauregard, Inc. v. Sword Servs. L.L.C.*, 107 F.3d 351, 352–53, 352 n.2 (5th Cir. 1997) (indicating that courts may impose conditions on intervenors).  The Federal Rules of Civil Procedure allow for two forms of intervention: intervention of right and permissive intervention.  FED. R. CIV. P. 24.

Courts must grant a motion to intervene if (1) the application for intervention is timely; (2) the applicant has an interest relating to the property or transaction which is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect such interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit.  FED. R. CIV. P. 24(a)(2); *see St. Bernard Parish v. Lafarge North America, Inc.*, 914 F.3d 969, 974 (5th Cir. 2019).[9]  "Failure to satisfy any one requirement precludes intervention of right." *Entergy Gulf States La., L.L.C. v. E.P.A.*, 817 F.3d 198, 203 (5th Cir. 2016) (quoting *Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs of the Orleans Levee Dist.*, 493 F.3d 570, 578 (5th Cir. 2007)).  "Nonetheless, 'the inquiry under subsection (a)(2) is a flexible one, . . . and intervention of right must be measured by a practical

---

[9] Courts must also grant motions to intervene when a federal statute offers such "unconditional right."  FED. R. CIV. P. 24(a)(1).  But neither party cites to such a statute, and the Court therefore proceeds without considering 24(a)(1).

rather than technical yardstick.'"  *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996)

(en banc) (brackets omitted) (quoting *United States v. Tex. E. Transmission Corp.*, 923 F.2d 410,

413 (5th Cir. 1991)).

   If not required, then intervention is simply permissive.  Anyone with "a claim or defense

that shares . . . a common question of law or fact" with the "main action" may intervene as long as

such intervention does not "unduly delay or prejudice the adjudication of the rights of the original

parties."[10]  FED. R. CIV. P. 24(b)(1)(B), (b)(3).  The decision to permit intervention is "wholly

discretionary," even if a common question of law or fact exists or the requirements of Rule 24(b)

are satisfied.  *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987)

(quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.* (*NOPSI III*), 732 F.2d 452,

471 (5th Cir. 1984) (en banc)).  "[P]recedent is of very little value" in this determination because

"[t]he exercise of discretion by a particular judge, responding to all the circumstances of a

particular case, is not likely to be of much help to another judge faced with a different case."  7C

WRIGHT ET AL., *supra*, § 1913.  Absent "clear abuse of discretion," a district court's denial of

permissive intervention will remain undisturbed.  *United States v. City of New Orleans*, 540 F.

App'x 380, 381 (5th Cir. 2013); *see Aransas Project v. Shaw*, 404 F. App'x 937, 942 (5th Cir.

2010) (explaining that the abuse of discretion standard, as applied to denials of permissive

intervention, "permits reversal if [a] court's ruling is based on legal error or a clearly erroneous

evidentiary assessment").

   The movant bears the burden of establishing the propriety of intervention.  *Wal–Mart

Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016).  Even so,

---

[10] Courts may also permit intervention when a federal statute offers a "conditional right" to do so.  FED. R. CIV. P. 24(b)(1)(A).  Further, "federal or state governmental officer[s] or agenc[ies]" may intervene at a court's discretion under specific circumstances.  *See* FED. R. CIV. P. 24(b)(2).  Because neither party addresses these subsections of Rule 24(b), the Court does not either.

"Rule 24 is to be liberally construed."  *Texas v. United States*, 805 F.3d 653, 656 (5th Cir. 2015) (internal quotation marks omitted) (quoting *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014)). Intervention should be allowed "where no one would be hurt and greater justice could be attained." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (internal quotation marks omitted) (quoting *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970)).  But "[l]iberality does not equate with rights of indiscriminate intervention." *Stadin v. Union Elec. Co.*, 309 F.2d 912, 918 (8th Cir. 1962).  Rule 24 "set[s] bounds that must be observed."  7C WRIGHT ET AL., *supra*, § 1904.  Practicality is the lodestar in intervention analysis, with courts contextually "considering the particular facts and circumstances of the case."[11]  *Adam Joseph Res. v. CNA Metals Ltd.*, 919 F.3d 856, 864 (5th Cir. 2019) (citing *Brumfield*, 749 F.3d at 342).

Worth noting as well is the unique relationship between intervention and class actions. Over the last 125 years, intervention and class actions have been two of the "principal devices" that have dealt with the reality that "a lawsuit often is not merely a private fight and will have implications on those not named as parties."[12]  7C WRIGHT ET AL., *supra*, § 1901.  Functionally, intervention can serve as "a means whereby class members can monitor the representation of their rights." *Walker v. City of Mesquite*, 858 F.2d 1071, 1073–74 (5th Cir. 1988) (internal quotation marks omitted) (quoting *Guthrie v. Evans*, 815 F.2d 626, 628 (11th Cir. 1987), *abrogated on other grounds by Devlin v. Scardelletti*, 536 U.S. 1 (2002)).  Importantly, from a result-oriented view,

---

[11] This is so because of the pivotal nature of intervention in the class-action context.  Even if a litigant manages to intervene in a class action, there remains "something less than the full 'master of the complaint' autonomy guaranteed individual litigants, because the appearing class member loses the right to determine when, where, with whom, and against whom to file suit."  Jay Tidmarsh, *Rethinking Adequacy of Representation*, 87 TEX. L. REV. 1137, 1141 n.51 (2009).

[12] In fact, the way intervention and class actions function today is due at least in part to past interactions with one another.  *See, e.g.*, *Atlantis Dev. Corp. v. United States*, 379 F.2d 818, 823–25 (5th Cir. 1967); *see also* FED. R. CIV. P. 24 advisory committee's note to 1966 amendment ("[T]his amendment draws upon the revision of the related Rule[] . . . 23 (class actions), and the reasoning underlying that revision."); David L. Shapiro, *Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators*, 81 HARV. L. REV. 721, 731 n.46 (1968).

denying intervention can have critical effects for class members attempting to intervene in an action, especially in situations involving 23(b)(1) or 23(b)(2) classes because of the inability to opt out of these types of classes.[13] FED. R. CIV. P. 23(b)(1)–(2); *see Woolen v. Surtran Taxicabs, Inc.*, 684 F.2d 324, 332 (5th Cir. 1982).  And although the rules governing class actions and intervention possess similar language in certain subsections, *compare, e.g.*, FED. R. CIV. P. 23(a)(4) ("[T]he representative parties will fairly and adequately protect the interests of the class."), *with* FED. R. CIV. P. 24(a)(3) ("[U]nless existing parties adequately represent that interest."), the functions of and procedures inherent to each differ significantly.  Nevertheless, these rules must be read so they are "applied harmoniously."[14]  7B WRIGHT ET AL., *supra*, § 1799.

## II.    Motion to Reconsider Order Appointing Interim Counsel

Even though the "'Motion to Reconsider' is found nowhere in the Federal Rules of Civil Procedure, it [is] one of the more popular indoor courthouse sports at the district court level." *Westport Ins. Corp. v. Stengel*, 571 F. Supp. 2d 737, 738 (E.D. Tex. 2005) (quoting *Louisiana v. Sprint Comms. Co.*, 899 F. Supp. 282, 284 (M.D. La. 1995)); *see Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990) ("The Federal Rules do not recognize a 'motion for reconsideration' *in haec verba*."), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994).  Motions to reconsider serve the "very limited purpose . . . [of]

---

[13] The Fifth Circuit has held that the potentially preclusive effects resulting from grant or denial of a motion to intervene in the class-action context are absent for 23(b)(3) classes because members of these classes have the option "to opt out under 23(c)(2) or to enter an appearance through counsel of his choosing." *Woolen*, 684 F.2d at 332; *accord Grilli v. Metro. Life Ins. Co., Inc.*, 78 F.3d 1533, 1536 (11th Cir. 1996).  The Eighth Circuit has recently called this understanding into question.  *See Smith v. SEECO, Inc.*, 865 F.3d 1021, 1024–25 (8th Cir. 2017) (explaining that Rules 23 and 24 and their respective advisory committee notes "would be unnecessary if intervention as of right could be rejected simply because a class member may opt out and litigate separately").  *See generally* Edward F. Sherman, *Class Actions and Duplicative Litigation*, 62 IND. L.J. 507, 510–11, 522–27 (1987).

[14] Applying Rules 23 and 24 in synchronicity is particularly important given the historical development of the two rules.  The main reason Rule 24 exists in its current form is that the 1966 amendments sought to overrule *Sam Fox Publishing Co. v. United States*, 366 U.S. 683 (1961), which effectively nullified Rule 24(a)(2)—specifically the adequate-representation prong—in class-action lawsuits.  *See* Carl Tobias, *Standing to Intervene*, 1991 WIS. L. REV. 415, 429 & n.93.

'permit[ting] a party to correct manifest errors of law or fact, or to present newly discovered evidence.'" *Polen v. Allstate Vehicle & Prop. Ins. Co.*, No. 4:16-CV-00842, 2017 WL 3671370, at *1 (E.D. Tex. June 30, 2017) (quoting *Krim v. pcOrder.com, Inc.*, 212 F.R.D. 329, 331 (W.D. Tex. 2002)).  Granting a motion to reconsider "is an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (citing *Clancy v. Employers Health Ins. Co.*, 101 F. Supp. 2d 463, 465 (E.D. La. 2000)).

"Mere disagreement with a district court's order does not warrant reconsideration of [an] order." *Westport Ins. Corp.*, 571 F. Supp. 2d at 738 (citing *Krim*, 212 F.R.D. at 332).  Moreover, parties should present their strongest arguments upon initial consideration of a matter—motions for reconsideration cannot serve as vehicles for parties to "restate, recycle, or rehash arguments that were previously made." *Domain Prot., LLC v. Sea Wasp, LLC*, No. 4:18-CV-792, 2020 WL 4583464, at *3 (E.D. Tex. Aug. 10, 2020) (citing *Krim*, 212 F.R.D. at 332); *see Texas Instruments, Inc. v. Hyundai Elecs. Indus., Co.*, 50 F. Supp. 2d 619, 621 (E.D. Tex. 1999) ("[M]otions for reconsideration 'should not be used to raise arguments that could, and should, have been made before the entry of judgment or to re-urge matters that have already been advanced by a party.'" (brackets and ellipsis omitted)).  A "district court's 'opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *A&C Constr. & Installation, Co. WLL v. Zurich Am. Ins. Co.*, 963 F.3d 705, 709 (7th Cir. 2020) (quoting *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988)).

## ANALYSIS

### I.    Motion to Intervene

Alaniz seeks to intervene in this consolidated case as of right, FED. R. CIV. P. 24(a)(2), or, in the alternative, permissively, FED. R. CIV. P. 24(b)(1)(B).  The Court first addresses

requirements mutual to both forms of intervention, and "because the bases for allowing intervention under each section are different," the Court then addresses each form of intervention in turn.  *See Edwards*, 78 F.3d at 999.

### a.  Pleading Requirement

At the outset, the Court notes that Alaniz's motion to intervene was not "accompanied by a pleading that sets out the claim . . . for which intervention is sought."  FED. R. CIV. P. 24(c); *see* (Dkt. #20 at p. 4 n.3).  "Such a pleading is critical in defining the scope and nature of the claims" Alaniz intends to litigate.  *See City Bank v. Compass Bank*, No. EP-09-CV-96-KC, 2010 WL 1424275, at *7 (W.D. Tex. Apr. 6, 2010).  Although the language of Rule 24(c) states that a motion for intervention *must* be accompanied by such a pleading, "[t]he circuits appear to be split in their approach to enforcement of Rule 24(c), with a majority favoring a permissive interpretation of the rule."  *Liberty Surplus Ins. Companies v. Slick Willies of Am., Inc.*, No. CIV.A. H-07-0706, 2007 WL 2330294, at *1 (S.D. Tex. Aug. 15, 2007).[15]  In spite of Alaniz not submitting pleadings along with his motion to intervene per Rule 24(c), the Court considers his motion under the lenient approach taken by other courts in the Fifth Circuit.

### b.  Timeliness

Though timeliness of a proposed intervenor's application is the only required element for both intervention of right and permissive intervention, 7C WRIGHT ET AL., *supra*, § 1902, this term is not "of exactitude or . . . precisely measurable dimensions."  *McDonald*, 430 F.2d at 1074.  In fact, "Rule 24 fails to define it, and the Advisory Committee Note furnishes no clarification."  *SEC v. Sethi Petroleum LLC*, No. 4:15-CV-00338, 2020 WL 363777, at *8 (E.D. Tex. Jan. 22, 2020)

---

[15] "For example, the Fifth Circuit has permitted intervention even in the absence of a motion to intervene."  *Team Worldwide Corp. v. Wal-Mart Stores, Inc.*, No. 2:17-CV-00235-JRG, 2017 WL 6059303, at *7 (E.D. Tex. Dec. 7, 2017) (citing *Farina v. Mission Inv. Tr.*, 615 F.2d 1068, 1075 (5th Cir. 1980)).

(internal quotations marks omitted) (quoting *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263 (5th Cir. 1977)).  This definitional murkiness begets an "accommodating flexibility toward both the court and the litigants if it is to be successfully employed to regulate intervention in the interest of justice." *McDonald*, 430 F.2d at 1074.  Given the flexibility of the timeliness requirement, "much must necessarily be left to the sound discretion of the court." 7C WRIGHT ET AL., *supra*, § 1916. Any determinations made by the Court in this respect cannot be overturned "unless that discretion is abused." *NAACP v. New York*, 413 U.S. 345, 366 (1973).

Despite its name, the timeliness requirement is "not limited to chronological considerations"—the totality of the circumstances must be considered.  *Stallworth*, 558 F.2d at 263.  Each consideration examined is not accorded the same weight, however.  *See, e.g.*, *Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1126 (5th Cir. 1970) ("[T]he more important question is not the mere length of time but the possibility of prejudice to existing parties that the delay may cause."). The Fifth Circuit has "distill[ed] four factors that must be considered in passing on the timeliness of a petition for leave to intervene," *Stallworth*, 558 F.2d at 264, which are:

> (1) The length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene; (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case; (3) the extent of the prejudice that the would-be intervenor may suffer if intervention is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.

*St. Bernard Parish*, 914 F.3d at 974 (quoting *Sommers v. Bank of Am., N.A.*, 835 F.3d 509, 512–13 (5th Cir. 2016)).  And while the Fifth Circuit provides district courts with this analytical framework, determining timeliness under Rule 24 must remain "contextual."  *Espy*, 18 F.3d at 1205.

Alaniz argues that his motion to intervene is timely because he "moved quickly to seek intervention" in the action before the Court (Dkt. #20 at p. 5).  The Court agrees.  The various actions in the Eastern District of Texas were consolidated by order of the Court on April 7, 2020 (Dkt. #11).  Three days later, Alaniz filed his Notice of Forthcoming Motion to Intervene for Purposes of Moving to Stay, Dismiss, or Transfer Action Pursuant to First-Filed Rule (Dkt. #17), at which point the parties to the consolidated action became aware of Alaniz's intention to intervene.  On April 13, 2020, Alaniz filed his motion to transfer (Dkt. #20).  The length of time during which Alaniz actually knew or reasonably should have known of his interest in the consolidated case before he petitioned for leave to intervene was minimal.  Neither Plaintiffs nor Defendants dispute this in their responses to Alaniz's motion (*see* Dkts. #22–23).  Considering that the consolidated action was not even a week old when Alaniz moved to intervene and the likelihood of prejudice being low for the original parties to the action, the Court views the circumstances of the situation as weighing in Alaniz's favor and accordingly finds that the Motion is timely.

### c.  Intervention of Right

To establish that he is entitled to intervention of right, Alaniz must satisfy the four elements required by Rule 24(a)(2):  (1) timeliness of application; (2) interest in the property; (3) situation of the applicant; and (4) adequacy of representation.  *See Texas*, 805 F.3d at 657.  Because Alaniz's application for intervention was timely and the adequate-representation prong is ultimately dispositive here, the Court assumes without deciding that Alaniz satisfies the second and third

prongs of Rule 24(a)(2).  The Court now proceeds to analyze whether existing parties adequately represent Alaniz's interest.

Nonparties have a right to intervene in litigation in which their interests are inadequately represented.  *See* FED. R. CIV. P. 24(a)(2).  This aspect of Rule 24 has been an important factor in the intervention-of-right analysis since the rule was first adopted.[16]  7C WRIGHT ET AL., *supra*, § 1909.  As the Fifth Circuit has stated, "[R]epresentation is adequate if no collusion is shown between the representative and an opposing party, if the representative does not have or represent an interest adverse to the proposed intervenor and if the representative does not fail in the fulfillment of his duty."  *Martin v. Kalvar Corp.*, 411 F.2d 552, 553 (5th Cir. 1969) (per curiam). "The [would-be intervenor] 'need not show that the representation by existing parties will be, for certain, inadequate.'"  *Entergy Gulf States*, 817 F.3d at 203 (quoting *Brumfield*, 749 F.3d at 345). While "the burden 'cannot be treated as so minimal as to write the requirement completely out of the rule,'" *id.* (quoting *Haspel*, 493 F.3d at 578), the would-be intervenor need only show that representation of their interests "'may be' inadequate[,] and the burden of making that showing should be treated as minimal."  *Edwards*, 78 F.3d at 1005 (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)).

To ensure that this requirement "ha[s] some teeth," two presumptions exist.  *Brumfield*, 749 F.3d at 345.  The first presumption is inapplicable here because it "is restricted . . . to . . . suits involving matters of sovereign interest," applying only "when the putative representative is a governmental body or officer charged by law with representing the interests of the absentee."

---

[16] In fact, at least one appellate court has interpreted Supreme Court precedent as identifying the adequate-representation element to be the most pivotal consideration in deciding whether intervention of right is appropriate for a case brought under Rule 23.  *See Tech. Training Associates, Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 697 (11th Cir. 2017) (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 594 (2013)) ("[A]n absent class member's right to intervene turns on whether it can satisfy the [Rule 24(a)(2)] adequate representation prong . . . ."); *see also In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 314 (3d Cir. 2005) ("[W]hen absent class members seek intervention as a matter of right, the gravamen of a court's analysis must be on the . . . adequacy of representation.").

*Edwards*, 78 F.3d at 1005.  The second presumption "arises when the would-be intervenor has the same ultimate objective as a party to the lawsuit."  *Id.*  In this situation, the would-be intervenor "must demonstrate adversity of interest, collusion, or nonfeasance" to surmount the presumption of adequate representation by the existing parties.[17]  *See Int'l Tank Terminals, Ltd. v. M/V Acadia Forest*, 579 F.2d 964, 967 (5th Cir. 1978) (internal quotation marks omitted) (quoting *Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976)); *see also Ordnance Container Corp. v. Sperry Rand Corp.*, 478 F.2d 844, 845 (5th Cir. 1973) (per curiam) ("[S]ince the ultimate objectives of both [the plaintiffs] and [the would-be intervenor] . . . are identical, the presumption is that the interests of [the would-be intervenor] will be adequately protected by [the plaintiffs].").  One circuit court has gone as far as announcing a presumption of adequate representation in the class-action context, which arises "when the persons attempting to intervene are members of a class already involved in the litigation or are intervening only to protect the interests of class members."  *Swinton v. SquareTrade, Inc.*, 960 F.3d 1001, 1005 (8th Cir. 2020) (internal quotation marks omitted) (quoting *Jenkins by Jenkins v. Missouri*, 78 F.3d 1270, 1275 (8th Cir. 1996)).

Alaniz asserts that he has an interest in "retaining control of the litigation as class representative[]"[18] (Dkt. #20 at p. 6).  To support this argument, Alaniz makes a generalized

---

[17] This list is non-exhaustive, representing only three ways the "very complex variable" of adequate representation can be disproved by a party.  *See Texas*, 805 F.3d at 662 n.5 (quoting 7C WRIGHT ET AL., *supra*, § 1909).

[18] The Court does not address Alaniz's argument that he has an "interest in application of the first-filed rule" (Dkt. #20 at p. 6).  Even if Alaniz had directed the Court to any authority stating that an individual litigant could hold such an interest, the Court already addressed the merits of the first-to-file rule in the context of this litigation.  The Court also does not take up Alaniz's argument regarding an interest in having his preferred class counsel.  Absent a statutory provision to the contrary, putative class representatives do not have the final say as to class counsel, interim or otherwise.  *See* FED. R. CIV. P. 23(g)(1)–(3); *see also* MANUAL FOR COMPLEX LITIGATION § 21.27 (4th ed. 2004) ("Rule[] . . . 23(g) recognize[s] that the certification decision and order require judicial appointment of counsel for the class and any subclasses.").  Courts may appoint interim class counsel prior to certification and must appoint class counsel upon certification.  FED. R. CIV. P. 23(g)(2).  And whether there are multiple applicants to serve as class counsel—or even just one—courts are not required to appoint a specific applicant—or any of the applicants at all.  *See id.*; *see also Buettgen v. Harless*, 3:09-CV-1049-K, 2011 WL 1938130, at *10 (N.D. Tex. May 19, 2011) ("[E]ven in the absence of opposition, the party seeking appointment of class counsel bears the burden of affirmatively proving that counsel is competent and qualified to represent the class.").  As drafted, the language of Rule 23(g) "recognize[s] the importance of judicial evaluation of the proposed lawyer for the class" and entrusts courts with ensuring fair and

statement that this interest is one "which substantive law recognizes as belonging to" him (Dkt. #20 at p. 6).  He further asserts that this interest will not be represented because Plaintiffs "will not enforce it," which will lead to the absence of "any representation of Proposed Intervenor's interests at all" (*see* Dkt. #20 at p. 8).

For purposes of the intervention-of-right analysis, the Court assumed without deciding that Alaniz "interest relating to the property or transaction that is the subject of the action" because the interest element is satisfied "by the very nature of Rule 23 representative litigation."  *In re Cmty. Bank of N. Virginia*, 418 F.3d at 314.  The class-action device serves to "avoid[] a multiplicity of actions," "enabl[e] claim processing through representatives," and "prevent[] inconsistent adjudications" through centralized determination of similarly situated litigants' substantive rights—namely, their interest in the proper resolution of "the claims or defenses of the class."  *See* 1 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 1:9 (5th ed. 2011 & Supp. 2020) [hereinafter NEWBERG].  The Fifth Circuit recognizes the substantive interest that would-be intervenors might have in class-action lawsuits on multiple occasions.  *See, e.g.*, *Martin*, 411 F.2d at 553; *Woolen*, 684 F.2d at 333–34; *Lelsz v. Kavanagh*, 710 F.2d 1040, 1044–45 (5th Cir. 1983).

The interest Alaniz claims—controlling the litigation as class representative—is not the type of interest envisioned by the drafters of these rules.  This is so for two key reasons.

First, the interest advanced by Alaniz as "direct, substantial, [and] legally protectable" does not comport with Rule 24(a)(2)'s substantive conception of an interest.  *See United States v. Mississippi*, 958 F.2d 112, 115 (5th Cir. 1992) (internal quotation marks omitted) (quoting *Diaz*, 427 F.2d at 1125).  Alaniz does not cite any authority indicating that control over litigation is a

---

adequate representation of the class interests.  *See* FED. R. CIV. P. 23 advisory committee's note to 1998 amendment. The Court would be unable to recognize Alaniz's asserted interest in a putative class representative's *carte blanche* appointment of class counsel without entirely circumventing the text of Rule 23.

protectable interest under Rule 24(a).  *See Glover v. Ferrero USA, Inc.*, No. CIV.A. 11-1086 FLW, 2011 WL 5007805, at *6 (D.N.J. Oct. 20, 2011) ("Importantly, Propsed [sic] Intervenors have cited no case law to support the proposition that non-parties to an action whose only interest in the action is its transfer or dismissal may intervene for such a purpose.").  The only case Alaniz turns to for his argument is *Cajun Electric Power Cooperative, Inc. v. Gulf States Utilities Co.*, 940 F.2d 117 (5th Cir. 1991), from which he asserts that a would-be intervenor "must have an interest which substantive law recognizes as belonging to the applicant" (Dkt. #20 at p. 6).  While this is an accurate statement of law, *Cajun Electric* is inapposite to Alaniz's line of reasoning.  That case involved two utility companies suing one another over contractual matters, both of whom were subject to the same state regulatory authority.  *Cajun Elec.*, 940 F.2d at 119.  The regulatory agency moved to intervene in the dispute between the parties under Rule 24(a)(2).  *Id.*  The interest prong of the Rule 24(a) test was ultimately decided in the would-be intervenor's favor, but not for the reason Alaniz cites to the case—the *Cajun Electric* intervenor succeeded because the *Gulf States* case dictated the outcome for regulator-intervenors such as the regulatory authority in *Cajun Electric*.  *Id.* at 120; *see Gulf States Utils. Co. v. Ala. Power Co.*, 824 F.2d 1465, 1476 (5th Cir. 1987) ("[N]OPSI III governs intervention by *non-regulators* and is inapposite to the case before us.").

    *NOPSI III* is the case from which the *Cajun Electric* panel actually drew the principle Alaniz calls upon here.  *See Cajun Elec.*, 940 F.2d at 119 (quoting *NOPSI III*, 732 F.2d at 464).  Even though *NOPSI III* controls the analysis for determining interests in a Rule 24(a)(2) involving non-regulatory intervenors, the case and its progeny are equally unhelpful to Alaniz.  This strand of caselaw makes clear that rights recognized by substantive law for purposes of intervention of right do not include interests that are wholly "economic," *Texas*, 805 F.3d at 658; *see, e.g., NOPSI*

*III*, 732 F.2d at 466 (holding that the proposed intervenors' only remaining interest was "purely economic" and therefore did not warrant intervention), nor "speculative," *Bear Ranch, LLC v. HeartBrand Beef, Inc.*, 286 F.R.D. 313, 316 (S.D. Tex. 2012) (citing *Texas v. Dep't of Energy*, 754 F.2d 550, 550–52 (5th Cir. 1985)); *see, e.g.*, *Int'l Tank Terminals*, 579 F.2d at 968 (holding that "the possibility that future arbitration might occur in which the interests of the defendants and the appellant might clash" was too speculative to warrant intervention).   Since the Master Amended Complaint incorporates, at a minimum, the same questions of law—and likely of fact— as those brought forward by Alaniz, *and* the would-be intervenor foregoes explaining how these interests of his are inadequately represented by the litigants currently before the Court, his repeated overtures invoking an interest in controlling the litigation rings hollow.   This asserted interest is likely nothing more than economic or speculative in nature.   Regardless, it is certainly not a direct, substantial, and legally protectable interest that can "justify intervention under Fifth Circuit precedent."   *See Bear Ranch*, 286 F.R.D. at 317.

Second, even if Alaniz's asserted interest in retaining control of the class litigation was protectable, he has not demonstrated any "adversity of interest, collusion, or nonfeasance" to overcome the presumption of adequate representation.   Nowhere in his motion to intervene or his subsequent reply does Alaniz allege that Plaintiffs have acted in any manner indicating "adversity of interest, collusion, or nonfeasance" (*see* Dkt. #20 at pp. 6–10, Dkt. #25 at pp. 9–11).   Moreover, disagreement over litigation decisions is almost always insufficient to demonstrate inadequate representation under Rule 24(a)(2).[19]   Unless decisions lawyers make in the course of litigation actually threaten the fair and adequate representation of a putative class's interests, these choices would not fall "within the purview of the federal courts."   *Cf. United States v. Perry Cnty. Bd. of*

---

[19] *But see, e.g.*, *Entergy Gulf States*, 817 F.3d at 204–05 (finding parties' diverging interests in litigation tactics germane for intervention purposes in that "unique situation").

*Ed.*, 567 F.2d 277, 280 (5th Cir. 1978).  If this sort of decision did in fact suffice to show inadequate representation, "intervention of right would become almost automatic."  *Stadin*, 309 F.2d at 919. In fact, the *Perry County* case supports the notion that a "mere difference of opinion concerning the tactics with which the litigation should be handled does not[, under Rule 24(a)(2),] make inadequate the representation of those whose interests are identical with that of an existing party or who are formally represented in the lawsuit."  7C WRIGHT ET AL., *supra*, § 1909; *see Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987) (citing *Perry Cnty. Bd. of Ed.*, 567 F.2d at 280); *Jenkins*, 78 F.3d at 1275 (same); *see also Saldano v. Roach*, 363 F.3d 545, 555 (5th Cir. 2004) (holding that the Texas Attorney General's litigation decision did not "make[] him an inadequate representative of the State's interest" in a particular matter).  Because federal courts generally agree that "the requirement of Rule 24 would have no meaning" if "disagreement with an existing party over trial strategy qualified as inadequate representation," *Jones v. Prince George's Cnty.*, 348 F.3d 1014, 1020 (D.C. Cir. 2003) (internal quotation marks omitted) (quoting *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 181 (2d Cir. 2001)), the Court cannot find that Alaniz has rebutted the presumption of adequate representation here.

Even if Alaniz had successfully rebutted the adequate-representation presumption, the Court remains unconvinced that he sufficiently demonstrates Plaintiffs' inadequate representation of his interests under Rule 24(a)(2).  Evaluating adequacy of representation in the class-action context involves important and intricate considerations "because the members of the class will be bound by the judgment."[20]   7B WRIGHT ET AL., *supra*, § 1799.   The drafters of the 1966 amendments to the Federal Rules of Civil Procedure specifically contemplated the relation between Rules 23 and 24 as pertains to adequate representation, commenting that "a member of a

---

[20] This excludes situations in which "the action is brought under Rule 23(b)(3) and the member has opted out of the action, as provided in Rule 23(c)(2)(B)."  7B WRIGHT ET AL., *supra*, § 1799.

class should have the right to intervene in a class action if he can show the inadequacy of the representation of his interest by the representative parties before the court."[21]  FED. R. CIV. P. 24 advisory committee's note to 1966 amendment.  While this statement seems straightforward, the applicable analysis proves less so.

As the Court mentioned previously, Rules 23 and 24 contain distinct adequate-representation elements.  To achieve class certification, putative class representatives must prove, among other things, that they "will fairly and *adequately protect* the interests of the class."  FED. R. CIV. P. 23(a)(4) (emphasis added).  Similarly, to be granted intervention of right, would-be intervenors must demonstrate that the "existing parties" to the action do not "*adequately represent* th[e] interest" of the would-be intervenors.  FED. R. CIV. P. 24(a)(2) (emphasis added).  A leading treatise succinctly identifies the main difficulty of the overlap between these rules:

> The requirement of showing inadequate representation is a particularly tricky element . . . [because] a court is independently required under Rule 23(a)(4) to determine that the class representatives (and, conventionally, class counsel) are adequate representatives of the class.  If the court has done that, an intervenor's later protestation that she is not adequately represented is confounding as it appears to require relitigation of the adequacy finding.  Indeed, some courts have held that a finding that the class representatives are adequate under Rule 23 precludes later intervention because the inadequacy prong of Rule 24 cannot logically be met. However, courts have generally interpreted the "adequately represented" prong of Rule 24 to set a lower bar than that of Rule 23, meaning a class could be adequately represented for preclusion purposes under Rule 23, yet an intervenor could be

---

[21] Throughout this analysis, the Court remains cognizant of the effect that intervention of right can have in the class-action context—not just on would-be intervenors, but also on putative class representatives.  While would-be intervenors can suffer serious harm from being disallowed to join particular actions, putative class representatives can suffer just as much harm from having the integrity of their class challenged on adequate-representation grounds.  *See Lelsz*, 710 F.2d at 1044 ("[T]he overlapping character of the [Rule 23(a)(4) and Rule 24(a)(2)] inquiries into adequacy of representation suggests that when intervention of right is appropriate, class certification may also be called into question.").

permitted to become part of the case employing the looser inadequacy standard of Rule 24.

3 NEWBERG, *supra*, § 9:35 (footnotes omitted).

Despite being an uncommon issue, the overlap of the Rule 23 and 24 adequate-representation prongs has come before courts in this circuit previously.  The Court finds three Fifth Circuit opinions instructive.

The Fifth Circuit's exploration of the Rule 23 and 24 adequate-representation overlay in *Woolen v. Surtran Taxicabs, Inc.* is particularly illuminating guideposts for the Court's approach to this issue.  The case involved disgruntled taxicab drivers as class plaintiffs, on behalf of all permit-holding taxicab drivers within ten counties surrounding the Dallas/Fort Worth airport, suing Surtran Taxicabs and several cities for restraining trade and monopolization of the market in violation of the Sherman Act.  684 F.2d at 326–27.  Around the same time, another set of plaintiffs filed their own suit,[22] pursuing related (but not entirely identical) causes of action against (mostly) the same defendants.  *Id.*  These suits ended up consolidated for discovery purposes, which led to escalation of "antagonism and conflict" between the plaintiffs in the two suits.  *Id.* at 327.  "[O]ne of the more glaring examples" of this inter-party animosity occurred when the non-class-action plaintiffs filed a motion to intervene in the class action plaintiffs' suit, alleging that the class action should not be certified because the would-be intervenors were "not adequately represented" and "their interests [we]re antagonistic to other members of the class."  *Id.* at 327–28.  The non-class-action plaintiffs contended to have "an absolute right to intervene" under Rule 24(a)(2) on account of their inadequately represented interest.  *Id.* at 329.

Although the Fifth Circuit ultimately resolved the dispute by remanding the case back to the district court to develop a more complete record on the merits of intervention of right, *see id.*

---

[22] The competing suit was "not in the form of a class action."  *Woolen*, 684 F.2d at 327.

at 334, the opinion's consideration of the issue at hand provides relevant insight.  Writing for the panel, Judge Brown explained that the district court had failed to analyze the interaction of Rules 23 and 24 properly, instead "equat[ing] the determination of adequacy of representation for purposes of class action representation under Rule 23(a)(4) with adequacy of representation for purposes of intervention under Rule 24(a)(2)."  *Id.* at 331.  As the panel explained, when understood appropriately, "intervention of right under Rule 24(a) and class action certification under Rule 23 are two separate and distinct theories."  *Id.*  Seeing as Rule 24 "clearly leaves room" for a nonparty litigant to intervene when "claiming inadequacy of representation without necessarily claiming that he will be precluded by the other action," "a lower threshold or showing of inadequacy for purposes of intervention as opposed to class action certification" must exist.  *Id.* at 334.

Turning to the facts before them, the panel then applied this "lower threshold" to the two actions at issue.  Apart from the combativeness between the attorneys in the separate cases, the pivotal difference in interests between the two groups of plaintiffs was the form of relief sought for the alleged antitrust violations—the class action plaintiffs had fixated on injunctive relief, while the non-class-action plaintiffs maintained interest in damages.  *Id.* at 333.  And because the class-action plaintiffs and their counsel failed to adequately represent and protect the non-class-action plaintiffs' interest in a damages remedy, it was "clear" that the class-action plaintiffs were "not aligned" with the non-class-action plaintiffs.  *See id.*  This extended discussion on the applicable legal standard to a situation involving the overlap of 23(a)(4) and 24(a)(2) aids

the Court's subsequent analysis.  But *Woolen* further demonstrates that the representation of a would-be intervenor's interest can be inadequate even if the causes of action are the same.

Next, in *Martin v. Kalvar Corp.*, the Fifth Circuit affirmed the denial of intervention of right in a case involving a corporation's shareholder seeking personal expenses incurred in the course of a shareholders' derivative action.  *See* 411 F.2d at 553.  The proposed intervenor argued that his interest in "alleged personal expenses incurred in attempting to prevent" a particular corporate action was not adequately represented by the plaintiff shareholders.  *Id.*  The Fifth Circuit disagreed with his argument and affirmed the district court's decision.  *Id.*  The panel indicated that his adequate-representation argument failed because (1) the would-be intervenor acknowledged that the suit had been brought on behalf of the corporation and "not for the immediate benefit of the shareholder representatives" and (2) his asserted interest in recovering these expenses involved him acting in a personal capacity and not "as a derivative stockholder for the benefit" of the corporation.  *Id.*

Then in *Gabriel v. Standard Fruit & Steamship Co.*, the Fifth Circuit also affirmed the denial of intervention of right, this time in a class action brought against Standard Fruit and Steamship Company by the company's banana handlers and their respective unions for breach of a collective bargaining contract.  *See* 448 F.2d 724, 725–26 (5th Cir. 1971) (per curiam).  There, 113 proposed intervenors sought to participate in the litigation, arguing that their interests were inadequately represented.  *Id.*  While the panel made clear that, based on the record before them, they were not entirely sure why the district court had made certain decisions pertaining to different aspects of the classes, they found the district court's decision to "first adjudicate whether the defendant had breached the collective bargaining agreement" appropriate—and ultimately dispositive.  *Id.*  Even though the would-be intervenors may very well have had grounds to

intervene of right on a particular issue, the district court's decision to first adjudicate the interest as to which "there was no contention that all [class members we]re not similarly situated" caused the proposed intervenors' adequate-representation argument to fail.  *See id.* at 725–26.

Using these cases as guidance and applying them here, Alaniz remains unable to show that his interest in the subject matter of the litigation is inadequately represented by Plaintiffs.  Even in light of the "lower threshold" for adequate representation described in *Woolen*, comparing Alaniz's complaint with the Master Amended Complaint plainly illustrates the near-identical interests between the actions.  The facts alleged by putative class representatives in both complaints are practically carbon copies of one another from a substantive perspective.  *Compare* Compl. 8–11, 35–36, *Alaniz v. Toyota Motor Corp.*, No. 4:20-cv-01351-JST (N.D. Cal. Feb. 21, 2020), ECF No. 1, *with* (Dkt. #28 at pp. 27–130).   The defendants in both actions are effectively the same.  *Compare* Compl. 5–7, *Alaniz v. Toyota Motor Corp.*, No. 4:20-cv-01351-JST (N.D. Cal. Feb. 21, 2020), ECF No. 1, *with* (Dkt. #28 at pp. 23–27).  The Master Amended Complaint alleges the exact same causes of action—with a few (inconsequential) rhetorical differences—as those in Alaniz's complaint.  *Compare* Compl. 40–53, *Alaniz v. Toyota Motor Corp.*, No. 4:20-cv-01351-JST (N.D. Cal. Feb. 21, 2020), ECF No. 1, *with* (Dkt. #28 at pp. 134–36, 153–69).   Both complaints seek to certify the same types of classes.[23]  *Compare* Compl. 36, *Alaniz v. Toyota Motor Corp.*, No. 4:20-cv-01351-JST (N.D. Cal. Feb. 21, 2020), ECF No. 1, *with* (Dkt. #28 at p. 131).   And the two complaints request almost indistinguishable forms of relief.  *Compare* Compl. 53, *Alaniz v. Toyota Motor Corp.*, No. 4:20-cv-01351-JST (N.D. Cal. Feb. 21, 2020), ECF No. 1, *with* (Dkt. #28 at pp.

---

[23] Alaniz might argue that his complaint additionally seeks certification under 23(b)(1) while the Master Amended Complaint does not.  *See* Compl. 36, *Alaniz v. Toyota Motor Corp.*, No. 4:20-cv-01351-JST (N.D. Cal. Feb. 21, 2020), ECF No. 1.  This difference, however, is insignificant at this stage.  Unlike in *Woolen*, the two complaints here seek class certification under 23(b)(2)—a class type from which members cannot opt out.  *See* 684 F.2d at 332.  As such, the fears of the non-class-action plaintiffs the Fifth Circuit validated in *Woolen* are not present in this case.  *See id.* at 327–28, 332.

227–28).  Moreover, Alaniz does not argue that he is dissimilarly situated from Plaintiffs as the would-be intervenors did in *Gabriel*.  *See* 448 F.2d at 725.  And given the pleadings currently before the Court, Alaniz appears to advocate for this case to be tried in an alternative forum out of a personal preference, not "for the benefit" of the putative class members.  *See Martin*, 411 F.2d at 553.  Looking at the totality of the circumstances, the Court finds that if any daylight exists between these complaints, it is negligible at best.

Taking the foregoing analysis together with the minimal, conclusory language Alaniz offers in his motion to intervene and subsequent reply, the Court finds that Plaintiffs adequately represent the interests in this case for purposes of Alaniz's proposed intervention.  *See Ordnance Container Corp.*, 478 F.2d at 845 (finding "conclusory language" insufficient to warrant intervention of right).  Ultimately, it appears that Alaniz simply "prefers one outcome" to another, which is insufficient to justify intervention of right.  *See Texas*, 805 F.3d at 657.  And "[w]hen a proposed intervenor has not alleged any substantive disagreement between it and the existing parties to the suit, and instead has vested its claim for intervention entirely upon a disagreement over litigation strategy or legal tactics," the Court stands "hesitant to accord the applicant full-party status."  *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1306 (9th Cir. 1997).  Such is the case here.

### d.  Permissive Intervention

Even though Rule 24 does not mandate Alaniz's intervention in the consolidated action, the Court may allow him to intervene permissively.  The decision to grant permissive intervention rests entirely with the Court.  *Howse v. S/V Canada Goose I*, 641 F.2d 317, 323 (5th Cir. 1981).  "In exercising discretion on a timely motion, the Court considers if the intervenor has a claim or defense that shares with the main action a common question of law or fact, and whether the

intervention will cause undue delay or prejudice."[24]  *Nevada v. United States Dep't of Labor*, No. 4:16-CV-731, 2017 WL 3780085, at *3 (E.D. Tex. Aug. 31, 2017) (citing FED. R. CIV. P. 24(b)(1)(B), (b)(3)); *see Graves v. Walton County Bd. of Educ.*, 686 F.2d 1135, 1140 n.3 (5th Cir. Unit B 1982) ("Under Rule 24(b), a district court may permit intervention if to do so will not unduly delay or prejudice adjudication of the rights of the original parties.").  But even when the requirements of Rule 24(b) are satisfied, the district court may deny permissive intervention. *NOPSI III*, 732 F.2d at 471; *see* 3 NEWBERG, *supra*, § 9:36 ("Permissive intervention thus tends to be granted somewhere between the Scylla of the intervenor adding nothing to the case, meaning she is likely adequately represented and her presence will just slow things down, and the Charybdis of the intervenor adding too much to the case, meaning the applicant is not necessarily adequately represented but may unduly delay or prejudice the proceedings.").

The Court denies Alaniz's motion for permissive intervention based on the likelihood of "unduly delay or prejudice [in] the adjudication of the original parties' rights."  *See* FED. R. CIV. P. 24(b)(3).  Even if the 24(b)(3) requirement was formally satisfied, the Court would still exercise its discretion and deny Alaniz's motion.  Plaintiffs and Defendants express concern regarding the delay or prejudice that Alaniz's intervention might cause if allowed (*see* Dkt. #22 at pp. 9–10; Dkt. #23 at pp. 8–9), and the Court finds these worries to be legitimate.[25]  And while it may have been

---

[24] The determination as to the common question of law or fact between the applicant and the main action is not discretionary—"it is a question of law."  *Stallworth*, 558 F.2d at 269.  "The 'claim or defense' portion of [Rule 24(b)(1)(B)] has been construed liberally, and indeed the Supreme Court has said that it 'plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation.'"  *In re Estelle*, 516 F.2d 480, 485 (5th Cir. 1975) (quoting *SEC v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 459 (1940)).

[25] Allowing Alaniz to intervene at this point under Rule 24(b) may have the unintended consequence of disincentivizing parties from pursuing efficient litigation strategies, thereby deterring "the just, speedy, and inexpensive determination of every action and proceeding."  *See* FED. R. CIV. P. 1.  The *Woolen* panel even lamented that, in a case like the one currently before the Court, intervention might not be "the best route through this Serbonian Bog," and that the exact course of action Plaintiffs took here—consolidating their cases—"offer[s] the most, and perhaps only, manageable solution."  *See* 684 F.2d at 334.

Alaniz's contention at the time of filing this motion that "unduly delay or prejudice" would not result from permissive intervention because "a consolidated complaint has not even been filed yet" and "[t]here is no scheduling order" (Dkt. #20 at p. 9), such is no longer the case.  Since Alaniz originally filed his motion to intervene, the following pleadings have been filed:  the Master Amended Complaint (Dkt. #28); three separate motions to dismiss by Defendants (Dkts. #39–41); Plaintiffs' responses to the motions to dismiss (Dkts. #45–47); Defendants' replies to these responses (Dkts. #49–51); and Plaintiffs' sur-replies to these replies (Dkts. #53–55).  Pausing the litigation now would almost certainly unduly harm or prejudice Plaintiffs, Defendants, and, most importantly, members of the putative classes.  At this point, "intervention is unnecessary, unwarranted, and would simply cause needless delay and add to litigation costs."  *See Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 60 (E.D.N.Y. 2010).  The Court therefore denies Alaniz's motion to intervene under Rule 24(b)(1)(B).[26]

## II.  Motion to Reconsider Order Appointing Interim Counsel

The Court next addresses Alaniz's request for reconsideration of the order appointing interim class counsel (*see* Dkt. #19).  Alaniz advances two main arguments.  First, the Court should reconsider its appointment of interim class counsel because "it is not actually 'unopposed'" (Dkt. #20 at pp. 12–13; *see* Dkt. #25 at pp. 11–12).  Second, he urges the Court to reconsider its decision because appointing interim class counsel is "both premature and inappropriate" since the related cases "should be consolidated in one court before" determining class counsel (Dkt. #20 at p. 12; *see* Dkt. #25 at p. 12).

---

[26] Because the Court denies Alaniz entrance to this action as a party, the only way Alaniz's request for venue transfer could be effected is by the Court's power under 28 U.S.C. § 1404 to transfer a case *sua sponte*.  *Mills v. Beech Aircraft Corp., Inc.*, 886 F.2d 758, 761 (5th Cir. 1989).  The Court declines to do so here.  *See Jarvis Christian Coll. v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988) ("Decisions to effect a 1404 transfer are committed to the sound discretion of the transferring judge . . . .").

Motions for reconsideration are "construed under either Federal Rule of Civil Procedure 59(e) or 60(b)." *James Roa v. City of Denison*, 4:18-CV-168, 2019 WL 6003295, at *1 (E.D. Tex. Oct. 2, 2019) (quoting *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004)).  Either way, *parties* to an action are generally the only ones who may offer a motion for reconsideration. *See Ross v. Marshall*, 426 F.3d 745, 752–53 (5th Cir. 2005); *see also, e.g.*, *In re Lease Oil Antitrust Litig. (No. II)*, MDL No. 1206, 2008 WL 356505, at *2–3 (S.D. Tex. Jan. 30, 2008) (explaining that the would-be intervenor could not bring a motion for reconsideration because it was not a party to the proceedings and therefore did not have standing); *SEC v. Provident Royalties, LLC*, CIV. 3:09-CV-1238-L, 2010 WL 27185, at *2 (N.D. Tex. Jan. 5, 2010) (same).  Because the Court denied Alaniz's motion for intervention, he is not a party to this action—and therefore does not have standing to file a motion for reconsideration.  As such, the Court does not (and cannot) address Alaniz's motion for reconsideration.

## CONCLUSION

It is therefore **ORDERED** that Proposed Intervenor's Motion to Intervene for the Limited Purpose of Moving (1) to Dismiss, Stay, or Transfer and (2) for Reconsideration of Order Appointing Counsel (Dkt. #20) is **DENIED** in all respects.

**SIGNED this 21st day of October, 2020.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE